UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



2004 OCT 25  P 12: 54

U.S. DISTRICT COURT



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel | : | |
| ROBERT C. SMITH, M.D. | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:02-CV-01205 (WWE) |
| v. | : | |
| | : | |
| YALE NEW HAVEN HOSPITAL, | : | |
| YALE UNIVERSITY, ET AL | : | |
| | : | |
| Defendants. | : | OCTOBER 21, 2004 |

## MEMORANDUM IN SUPPORT OF
## MOTION TO CONSOLIDATE

Pursuant to Fed. R. Civ. P. 42(a) and Local Civil Rule 40(b)1, the defendant Yale

New Haven Hospital ("YNHH") has moved this Court to consolidate the present action with

United States of America, ex rel Robert C. Smith, M.D. v. Yale University and Yale New

Haven Hospital, 3:00-CV-01359 (PCD) (hereafter "Qui Tam One"). This memorandum is

submitted in support of that motion.

## BACKGROUND

Robert C. Smith (hereafter "the Relator") brings the present qui tam action pursuant

to the False Claims Act, 31 U.S.C. § 3730, against YNHH, Yale University ("Yale"), and a

number of New York and New Jersey hospitals and medical institutions. By his Second

Amended Complaint the Relator makes allegations of fraudulent Medicare and Medicaid

billing practices with respect to the delivery of radiology services. The Relator is a

radiologist and a former employee of Yale University.

DONAHUE, DURHAM & NOONAN, P.C.
CONCEPT PARK  •  741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  •  FAX:  (203) 458-4424
JURIS NO. 415438

Qui Tam One is also a qui tam action brought by Robert C. Smith pursuant to the

False Claims Act against YNHH and Yale. In Qui Tam One, the Relator similarly alleges

that Yale and YNHH defrauded the United States by submitting fraudulent and/or false

Medicare and Medicaid bills for radiological services. A copy of the Second Amended

Complaint in Qui Tam One is attached hereto as Exhibit A. For the following reasons,

YNHH respectfully requests that its Motion to Consolidate be granted.

## ARGUMENT

Fed. R. Civ. P. 42(a) provides: "When actions involving a common question of law or

fact are pending before the court . . .It may order all the actions consolidated; and it may

make such orders concerning proceedings therein as may tend to avoid unnecessary costs or

delay." Id. By Local Rule, this District has mandated that related actions should be

consolidated, and all related matters should be assigned to the judge to whom the earliest

filed case was assigned. See Local Civil Rule 40(b)1. Indeed, the plaintiff should have listed

Qui Tam One on the civil cover sheet as a related case when filing the present action.

A court's decision to consolidate cases under Rule 42 will not be disturbed, absent an

abuse of discretion. Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990).

In ruling upon a motion to consolidate, a court should consider:

> Whether the specific risks of prejudice and possible confusion
> [are] overborne by the risk of inconsistent adjudications of
> common factual and legal issues, the burden on parties,
> witnesses, and available judicial resources posed by multiple
> lawsuits, the length of time required to conclude multiple suits
> as against a single one, and the relative expense to all
> concerned of the single-trial, multiple-trial alternatives. Id.

2

These two actions should be consolidated pursuant to Fed. R. Civ. P. 42(a) and Local Rule 40(b)1 because both actions involve common legal and factual issues. A review of the two complaints reveals that the claims being made against Yale and YNHH in the two actions are virtually identical. Indeed, the following paragraphs of the Second Amended Complaints in each action are either identical or virtually identical:

| Qui Tam One | 8 | 19 | 21-29 | 32 | 41-47 | 49-54 | 96-97 |
|---|---|---|---|---|---|---|---|
| Qui Tam Two | 9 | 43 | 44-52 | 54 | 57-63 | 64-69 | 107-108 |

The Relator is the same individual in both actions. In addition, Yale and YNHH are defendants in both actions. Thus, consolidation of these matters is an appropriate vehicle to protect the interests of judicial economy and the interests of the parties and witnesses in avoiding being subjected to duplicative discovery and potentially inconsistent adjudication of common factual and legal issues. Consolidation of this matter with Qui Tam One is proper since both matters are in a very early stage. Indeed, no responsive pleadings have been filed in the present action and no discovery has been undertaken. In Qui Tam One, discovery has been stayed until after the resolution of a pending motion to dismiss. Since these matters are still in their early stages, there can be no credible claim that consolidation of these matters would unduly prejudice any party. See e.g., Callahan v. Unisource Worldwide, 2004 WL 413268 (D.Conn. 2004) (motion to consolidate for discovery purposes granted in matter involving same cause of action, some common defendants in both cases and both cases in early stages).

3

Consolidation is particularly appropriate in the present situation, since both cases involve very technical interpretations of the Medicare and Medicaid statutes and regulations. In this regard, there is pending before Judge Dorsey in the Qui Tam One a Motion to Dismiss, which has been fully briefed. It is contemplated that a similar motion will be filed in the present action, if this action is not consolidated with Qui Tam One. It would clearly save the Court and the parties substantial time and effort if the two cases were consolidated and these issues decided by a single judge.

## CONCLUSION

Consolidation of this case with Qui Tam One will save the Court and the parties considerable time, effort and resources. Discovery and motion practice will be very similar in the two actions, as numerous deponents, relevant documents and witnesses will overlap the two actions. All of these factors strongly militate in favor of consolidation. See DeFigueiredo v. Trans World Airlines, Inc., 55 F.R.D. 44, 47 (S.D.N.Y. 1971); Waste Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F. Supp. 759, 761 (D. Del. 1991) Accordingly, this action should be consolidated with United States of America, ex rel and Robert C. Smith, M.D. v. Yale University and Yale New Haven Hospital, 3:00-CV-01359 (PCD).

THE DEFENDANT
YALE NEW HAVEN HOSPITAL

BY: _____

Patrick M. Noonan (#CT00189)
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168
(203) 458-4424 – Fax

4

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

William J. Doyle                         Carl H. Loewenson, Jr.
Kenneth D. Heath                         Stanley R. Soya
One Century Tower                        J. Alexander Lawrence
265 Church Street                        Morrison & Foerster LLP
New Haven, CT  06508-1832                1290 Avenue of the Americas
                                         New York, NY  10104-0185


Mary Alice Leonhardt                     Peter B. Prestley
Offices Of Mary Alice Leonhardt          Craig T. Dickinson
102 Oak Street                           Madsen, Prestley & Parenteau, LLC
Hartford, CT 06106                       44 Capitol Avenue
                                         Suite 201
                                         Hartford, CT 06106


Stuart M. Gerson                         Jacques J. Parenteau
Epstein Becker & Green                   Madsen, Prestley & Parenteau, LLC
1227 25th Street, NW                     111 Huntington Street
Washington, DC 20037-1175                P.O. Box 1631
                                         New London, CT 06320


and, pursuant to Rule 5(c) of the Local Rules of Civil Procedure, three copies by United
States Postal Service, First Class Mail to:

John Hughes, Esq.
Richard Molot, Esq.
Assistant United States Attorney
Office of the Assistant United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510.

Patrick M. Noonan

5

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

## DISTRICT OF
### Connecticut

United States of America ex.rel
and Robert C. Smith, M.D.

### SUMMONS IN A CIVIL CASE

V.

CASE NUMBER:  3:02cv01205(WWE)

Yale-New Haven Hospital, Inc.,
Yale University, New York Presbyterian
Hospital and Cornell University Joan
and Sanford I. Weill Medical College

A TRUE COPY
ATTEST:

TIMOTHY S. WALL, STATE
NEW HAVEN COUNTY, CON

TO: (Name and address of defendant)

Sarah D. Cohn
Yale-New Haven Hospital
20 York Street
New Haven, CT  06510

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Peter B. Prestley
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue, Suite 201
Hartford, CT  06106

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of
time after service.

KEVIN F. ROWE

CLERK

7-27-04

DATE

(BY) DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA, <u>ex rel</u>
and ROBERT C. SMITH, M.D.      )
     )
     )
             PLAINTIFFS     )
     )
VS.     )
     )
YALE-NEW HAVEN HOSPITAL, INC,     )
YALE UNIVERSITY, NEW YORK PRESBYTERIAN     )
HOSPITAL, CORNELL UNIVERSITY JOAN AND     )
SANFORD I. WEILL MEDICAL COLLEGE,     )
ST. LUKE'S HOSPITAL, THE NEW YORK     )
METHODIST HOSPITAL, BROOKDALE HOSPITAL     )
MEDICAL CENTER, GRACIE SQUARE HOSPITAL,     )
ST. VINCENT'S HOSPITAL MEDICAL CENTER,     )
NORTHERN WESTCHESTER HOSPITAL,     )
ORANGE REGIONAL MEDICAL CENTER, HORTON     )
CAMPUS, ORANGE REGIONAL MEDICAL CENTER,     )
ARDEN HILL CAMPUS, WYCKOFF HEIGHTS     )
MEDICAL CENTER, WINTHROP UNIVERSITY     )
HOSPITAL, WHITE PLAINS HOSPITAL, THE     )
VALLEY HOSPITAL, STAMFORD HEALTH SYSTEM, )
SOUTH NASSAU COMMUNITIES HOSPITAL,     )
ST. BARNABAS HOSPITAL, PALISADES MEDICAL     )
CENTER, NYACK HOSPITAL, NEW YORK     )
WESTCHESTER SQUARE MEDICAL CENTER,     )
HOLY NAME HOSPITAL, THE NEW YORK     )
HOSPITAL QUEENS, MARY IMOGENE BASSETT     )
HOSPITAL, NEW YORK UNITED HOSPITAL     )
MEDICAL CENTER, NEW MILFORD HOSPITAL,     )
LAWRENCE HOSPITAL CENTER, HOSPITAL FOR     )
SPECIAL SURGERY, AND ST. MARY'S HOSPITAL     )
     )
             DEFENDANTS     )

Civil Action
No.3:02cv01205 (WWE)

False Claims Act Action
Pursuant to
31 U.S.C. § 3729, *et seq.*

**FILED IN CAMERA AND
UNDER SEAL**

MARCH 10, 2004

## SECOND AMENDED COMPLAINT

### I.     INTRODUCTION

1.    . This is an action to recover damages and civil penalties on behalf of the United States of America arising from false claims and false statements made by the Defendants in violation of the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended ("FCA"). As alleged herein, all of Defendant Hospitals have violated the FCA by knowingly engaging in improperly billing and retaining payments from the Medicare and Medicaid Programs for producing outpatient Radiological Studies (x-rays, films and images) even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

2.    Defendant Hospitals' use of these schemes to bill the Medicare and Medicaid Programs for unallowable fees for outpatient Radiological Services and to retain those fees violates applicable Medicare and Medicaid Program requirements and subjects the Defendants to liability for damages under the FCA.

3.    Yale-New Haven Hospital, Inc.'s hospital system, including its affiliate, Yale University, and the New York Presbyterian Hospital's hospital system, including its affiliate Cornell University Joan and Sanford I. Weill Medical College, are hospitals where Plaintiff-Relator Robert C. Smith, M.D. learned, through the course of his employment, that the Defendant Hospitals were knowingly billing the Medicare Program for diagnostic Radiology Studies that had not been finalized.

2

4. The Qui Tam Plaintiff-Relator, Robert C. Smith, M.D., is seeking, through this action, to recover damages and civil penalties arising from claims for payments submitted to the United States Government through the Medicare and Medicaid Programs. Plaintiff-Relator Smith estimates that Defendant Hospitals are improperly billing the Medicare Program by more than $24 Million Dollars every year.

## II.  JURISDICTION

5. This is a civil action arising under the laws of the United States to redress violations of the Federal False Claims Act. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3729, *et seq.*, which provides that the United States District Courts shall have exclusive jurisdiction of actions brought under the FCA, and FCA multi-defendant jurisdiction pursuant to 31 U.S.C. §3732(a).

## III.  VENUE

6. Venue is proper in this District pursuant to 31 U.S.C. § 3732 (a) and the fact that at least one defendant, or in the case of multiple defendants, any one defendant can be found in, resides, transacts business, or has performed acts proscribed by 31 U.S.C. § 3729, *et seq.*, in this district. Venue is further supported by the Senate Report which explained the 1986 addition of this Venue section: "The new section 3732 of title 31 [was added] to modernize the jurisdiction and venue provisions of the False Claims Act, by recognizing the existence of multi-defendant and multi-district frauds against the Government." "Multiple suits, of course, increase the cost to the Government to pursue these cases and have a comparable impact upon the judicial resources required for a complete adjudication." "This expansion of jurisdiction and venue is made with a

3

view to provide for more effective litigation by the Government as well as convenience and fairness." 1986 U.S.C.C.A.N. pp. 5266, 5297 (U.S. Senate Report No. 99-345).7. Further, the consolidation of all of Defendant Hospitals in this jurisdiction in this single action is proper because of common questions of law and fact. Common questions of law and fact include the applicability of the FCA to improper Medicare and Medicaid reimbursement claims paid to each Defendant Hospital for the same types of non-reimbursable outpatient Radiology Studies imaging procedures as set forth herein. The techniques used for such improper billing and receipt of payments are pervasive, widespread and common to all Defendant Hospitals, and include the use of computerized software and hardware equipment which was specifically designed to enable and facilitate such fraudulent billing practices.

## IV.  PARTIES

### A.  Plaintiffs

7.  Plaintiff-Relator Robert C. Smith, M.D., is a citizen of the United States, a medical doctor licensed to practice medicine in the States of Connecticut and New York and a resident of the State of New York. Plaintiff-Relator Smith brings this action for violations of the Federal False Claims Act on behalf of himself and the United States Government pursuant to 31 U.S.C. § 3730(b)(1). Plaintiff-Relator Smith is currently a law student at the Fordham University School of Law, and a radiologist practicing in the State of New York. Plaintiff-Relator Smith was employed by, and a Professor of Radiology and Associate Chair of Information Technology and Systems Administration, Department of Radiology, Cornell University Joan and Sanford I. Weill Medical College, New York Presbyterian Hospital until the summer of 2003. He was formerly employed by Yale University commencing on July 1, 1990

4

9.     Defendant Yale University ("Yale") is a corporation organized and existing under the laws of the State of Connecticut, authorized to do business, and so doing business, with its principal place of business in New Haven, Connecticut. Yale operates a medical school, the School of Medicine. Yale's faculty members at the School of Medicine are responsible for providing both professional services to patients of Yale-New Haven hospital as well as administration, supervision and teaching services to Residents and Fellows, technical support staff and the clinical service departments at Yale-New Haven Hospital. Yale's School of Medicine's faculty members are "providers of services" participating in the Medicare and Medicaid Programs within the meaning of 42 U.S.C. § 1395x(u). Yale is remunerated for professional services to Medicare and Medicaid patients by Medicare's intermediaries and by Connecticut Department of Social Services, respectively. Yale is remunerated for administrative, supervision and teaching services, at least in part, by Yale-New Haven Hospital through the monies the Hospital receives from the Medicare Program as a Teaching Hospital operating a Graduate Medical Education ("GME") Residency Program. Yale also receives monies from the Hospital which supplement the Medicare Program payments for administration, supervision and teaching services. Yale also receives money from the Yale-New Haven Hospital to support salaries of Yale Radiology Department Faculty who provide Radiology Services in the YNHH Emergency Department, as well as money to compensate Yale for revenues it may have lost by virtue of radiology patient volume being shifted to Temple Radiology, an outpatient radiology clinic owned and operated by the Hospital's for-profit affiliate, Yale-New Haven Health Ambulatory Services Corporation ("YNHHASC"). YNHHACS is a subsidiary of Yale-New Haven Health Services Corporation. The Yale Faculty Practice represents the clinical

6

activity of the Faculty at the Yale School of Medicine. The Faculty Group is affiliated with Yale-New Haven Hospital.

10: Defendant New York Presbyterian Hospital is a corporation existing in the State of New York that at all times pertinent hereto was the employer of Plaintiff-Relator Smith and an affiliate of the Defendant Cornell University Joan and Sanford I. Weill Medical College.

11. Defendant Cornell University Joan and Sanford I. Weill Medical College ("Cornell") is a corporation existing in the State of New York that at all times pertinent hereto was the employer of Plaintiff-Relator Smith and an affiliate of Defendant New York Presbyterian Hospital.

12. Defendant, St. Luke's Hospital, is located at 1111 Amsterdam Avenue at 114th Street, New York, NY 10025, Southern District of New York. Upon information and belief, Defendant hereto, St. Luke's Hospital was affiliated with Defendant New York Presbyterian Hospital. St. Luke's Hospital is a Medicare provider and receives Medicare payments of approximately $600,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which St. Luke's Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

13. Defendant, The New York Methodist Hospital, is located at 506 Sixth Avenue, Brooklyn, New York 11215, Southern District of New York. Upon information and belief, Defendant hereto, The New York Methodist Hospital was affiliated with Defendant New York

7

Presbyterian Hospital. The New York Methodist Hospital is a Medicare provider and receives Medicare payments of approximately $900,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which The New York Methodist Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

14.    Defendant, Brookdale Hospital Medical Center, is located at One Brookdale Plaza Brooklyn, NY 11212, Southern District of New York. Upon information and belief, Defendant hereto, Brookdale Hospital Medical Center was affiliated with Defendant New York Presbyterian Hospital. Brookdale Hospital Medical Center is a Medicare provider and receives Medicare payments of approximately $1,000,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Brookdale Hospital Medical Center billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

15.    Defendant, Gracie Square Hospital, is located at 420 East 76th Street, New York, NY 10021. Upon information and belief, Defendant hereto, Gracie Square Hospital was

8

affiliated with Defendant New York Presbyterian Hospital. Gracie Square Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Gracie Square Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

16.    Defendant, St. Vincent's Hospital Medical Center, is located at 153 West 11th Street, Cronin Building, Room 1003, New York, NY 10011, Southern District of New York. Upon information and belief, Defendant hereto, St. Vincent's Hospital Medical Center was affiliated with Defendant New York Presbyterian Hospital. St. Vincent's Hospital Medical Center is a Medicare provider and receives Medicare payments of approximately $1,100,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which St. Vincents Hospital Medical Center billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

17.    Defendant, Northern Westchester Hospital, is located at 400 East Main Street, Mount Kisco, NY 10549. Upon information and belief, Defendant hereto, Northern Westchester

9

Hospital was affiliated with Defendant New York Presbyterian Hospital. Northern Westchester Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Northern Westchester Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

18.     Defendant, Orange Regional Medical Center, Horton Campus, is located at 60 Prospect Avenue, Middletown, NY 10940. Upon information and belief, Defendant hereto, Orange Regional Medical Center, Horton Campus, was affiliated with Defendant New York Presbyterian Hospital. Orange Regional Medical Center, Horton Campus is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Orange Regional Medical Center, Horton Campus billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

19.     Defendant, Orange Regional Medical Center, Arden Hill Campus, is located at 4 Harriman Drive, Goshen, NY 10924. Upon information and belief, Defendant hereto, Orange

10

Regional Medical Center, Arden Hill Campus, was affiliated with Defendant New York Presbyterian Hospital. Orange Regional Medical Center, Arden Hill Campus is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Orange Regional Medical Center, Arden Hill Campus billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

20.    Defendant, Wyckoff Heights Medical Center, is located at 374 Stockholm Street, Brooklyn, NY 11237. Upon information and belief, Defendant hereto, Wyckoff Heights Medical Center was affiliated with Defendant New York Presbyterian Hospital. Wyckoff Heights Medical Center is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Wyckoff Heights Medical Center billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

11

21.     Defendant, Winthrop University Hospital, is located at 259 First Street, Mineola, NY 11501.  Upon information and belief, Defendant hereto, Winthrop University Hospital was affiliated with Defendant New York Presbyterian Hospital.  Winthrop University Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies.  During the period, 1993 to 2003, a substantial number of these Studies, for which Winthrop University Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

22.     Defendant, White Plains Hospital, is located at East Post Road, White Plains, NY 10601.  Upon information and belief, Defendant hereto, White Plains Hospital was affiliated with Defendant New York Presbyterian Hospital.  White Plains Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies.  During the period, 1993 to 2003, a substantial number of these Studies, for which White Plains Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

12

23.     Defendant, The Valley Hospital, is located at 223 N. Van Dien Avenue, Ridgewood, NJ 07450. Upon information and belief, Defendant hereto, The Valley Hospital was affiliated with Defendant New York Presbyterian Hospital. The Valley Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which The Valley Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

24.     Defendant, Stamford Health System, is located at Shelburne Road at West Broad Street, Stamford, CT 06904. Upon information and belief, Defendant hereto, Stamford Health System was affiliated with Defendant New York Presbyterian Hospital. Stamford Health System is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Stamford Health System billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

23.     Defendant, The Valley Hospital, is located at 223 N. Van Dien Avenue, Ridgewood, NJ 07450. Upon information and belief, Defendant hereto, The Valley Hospital was affiliated with Defendant New York Presbyterian Hospital. The Valley Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which The Valley Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

24.     Defendant, Stamford Health System, is located at Shelburne Road at West Broad Street, Stamford, CT 06904. Upon information and belief, Defendant hereto, Stamford Health System was affiliated with Defendant New York Presbyterian Hospital. Stamford Health System is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Stamford Health System billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

13

25.     Defendant, South Nassau Communities Hospital, is located at One Healthy Way, Oceanside, NY 11572. Upon information and belief, Defendant hereto, South Nassau Communities Hospital was affiliated with Defendant New York Presbyterian Hospital. South Nassau Communities Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which South Nassau Communities Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

26.     Defendant, St. Barnabas Hospital, is located at Third Avenue and 183rd Street, Bronx, NY 10457. Upon information and belief, Defendant hereto, St. Barnabas Hospital was affiliated with Defendant New York Presbyterian Hospital. St. Barnabas Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which St. Barnabas Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

14

27. Defendant, Palisades Medical Center, is located at 7600 River Road, North Bergen, NJ 07047. Upon information and belief, Defendant hereto, Palisades Medical Center was affiliated with Defendant New York Presbyterian Hospital. Palisades Medical Center is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Palisades Medical Center billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

28. Defendant, Nyack Hospital, is located at 160 North Midland Avenue, Nyack, NY 10960. Upon information and belief, Defendant hereto, Nyack Hospital was affiliated with Defendant New York Presbyterian Hospital. Nyack Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Nyack Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

15

29.    Defendant, New York Westchester Square Medical Center, is located at 2475 St. Raymond Avenue, Bronx, NY 10461. Upon information and belief, Defendant hereto, New York Westchester Square Medical Center was affiliated with Defendant New York Presbyterian Hospital. New York Westchester Square Medical Center is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which New York Westchester Square Medical Center billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

30.    Defendant, Holy Name Hospital, is located at 718 Teaneck Road, Teaneck NJ 07666. Upon information and belief, Defendant hereto, Holy Name Hospital was affiliated with Defendant New York Presbyterian Hospital. Holy Name Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Holy Name Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

16

31.    Defendant, The New York Hospital Queens, is located at 56-45 Main Street, Flushing, NY 11355. Upon information and belief, Defendant hereto, The New York Hospital Queens was affiliated with Defendant New York Presbyterian Hospital. The New York Hospital Queens is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which The New York Hospital Queens billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

32.    Defendant, Mary Imogene Bassett Hospital, is located at One Atwell Road, Cooperstown, NY 13326. Upon information and belief, Defendant hereto, Mary Imogene Bassett Hospital was affiliated with Defendant New York Presbyterian Hospital. Mary Imogene Bassett Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Mary Imogene Bassett Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the

17

Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

33. Defendant, New York United Hospital Medical Center, is located at 406 Boston Post Road, Port Chester, NY 10573. Upon information and belief, Defendant hereto, New York United Hospital Medical Center was affiliated with Defendant New York Presbyterian Hospital. New York United Medical Center is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which New York United Hospital Medical Center billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

34. Defendant, New Milford Hospital, is located at 21 Elm Street, New Milford, CT 06776. Upon information and belief, Defendant hereto, New Milford Hospital was affiliated with Defendant New York Presbyterian Hospital. New Milford Hospital is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which New Milford Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in

18

accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

35.    Defendant, Lawrence Hospital Center, is located at 55 Palmer Avenue, Bronxville, NY 10708. Upon information and belief, Defendant hereto, Lawrence Hospital Center was affiliated with Defendant New York Presbyterian Hospital. Lawrence Hospital Center is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Lawrence Hospital Center billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

36.    Defendant, Hospital for Special Surgery, is located at 535 East 70th Street, New York NY 10021. Upon information and belief, Defendant hereto, Hospital for Special Surgery was affiliated with Defendant New York Presbyterian Hospital. Hospital for Special Surgery is a Medicare provider and receives Medicare payments of approximately $200,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which Hospital for Special Surgery billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter

when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

37. Defendant, St. Mary's Hospital, is located at 135 S. Center Street, Orange NJ 07050, District of New Jersey. Upon information and belief, Defendant hereto, St. Mary's Hospital was affiliated with Defendant New York Presbyterian Hospital. St. Mary's Hospital is a Medicare provider and receives Medicare payments of approximately $300,000 annually for diagnostic Radiology Studies. During the period, 1993 to 2003, a substantial number of these Studies, for which St. Mary's Hospital billed Medicare and received payment, even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements; and/or (c) the Studies were never taken or documented.

## V.    DEFINITIONS

38. Radiological or Radiology Services. The terms "Radiological Services" or "Radiology Services" mean services in which X-rays or other forms of radiant energy (e.g., magnetic resonance imaging and ultrasound or rays from radioactive substances) are utilized for diagnostic or therapeutic purposes, whether furnished on an inpatient or outpatient basis and which otherwise comply with the definition of "Radiological Services" contained in the Medicare Carriers Manual § 256. Radiological Services are comprised of a "Technical Component," involving the performance of a Radiological Study (or test), and a "Professional Component," involving the interpretation (or reading) of the study by a Qualified Physician.

20

Without the Professional Component, the Technical Component alone provides neither diagnostic information nor therapeutic benefit. Radiology Studies taken without diagnostic or therapeutic purpose could be considered harmful because potentially dangerous ionizing radiation is applied without a corresponding benefit to the patient.

39.   <u>Radiological or Radiology Studies</u>. The term "Radiological Studies" or "Radiology Studies" means the actual radiology test or procedure taken at Defendant Hospitals or their affiliates that produces a radiology film, study or image.

40.   <u>Technical Component</u>. The "Technical Component" of Radiological Services is the actual taking of the Radiology Studies or performance of the tests and the reduction of the hard data results onto a film or other imaging media.  It represents the facility portion of the service, e.g., the owner of the equipment.  This includes the technologist, specific radiology equipment, film and film processing, and any facility overhead in providing the service.  The Technical Component is covered under Medicare Part A for inpatient services and hospital-based services, under Medicare Part B for outpatient services and under the Medicaid Program.

41.   <u>Professional Component</u>.  This designation identifies the part of the total Radiological Services provided by a Qualified Physician.  The "Professional Component" is made up of the interpretive skills a Qualified Physician uses in reading a Radiology Study or test. The "Professional (diagnostic or therapeutic) Component" of the Radiological Services, are services which go hand-in-hand with the Technical Component requested by the patient's physician in order to obtain "Radiological Services." The Professional Component is covered under Medicare Part B and under the Medicaid Program.

42.   <u>Hospitals and Radiology Practice Billing Systems</u>.  The majority of Defendant Hospitals' billing systems currently in use nationwide are manufactured by IDX Corporation

21

(IDXRad, formerly DecRad), Cerner Corporation, Eclipsys Corporation, McKesson Corporation (e.g., Healthquest) and Siemens Corporation (e.g., Eagle).  At nearly all Defendant Hospitals, the Hospital will employ or contract with a group of radiologists to provide interpretations of all imaging Studies.  The Hospital and group of radiologists will typically share all or part of the computer systems used to gather patient demographic (and billing) information, schedule radiology services, track radiology services, document completion of radiology services, and report and archive the reports of Radiology Services.  The group of radiologists will bill for the professional component of all radiology services provided at each Hospital and/or their affiliated entities.  Some of the Hospital billing computer systems operate separately from the radiology group computer systems to bill the Technical Component of Radiology Services.  In almost all Hospitals, the Hospital billing system used to bill the Technical Component will interact or communicate with the systems used by the radiologists to bill for the Professional Component. Defendant Hospitals' billing systems (either directly or via intermediary hardware and/or software) provide the vehicle to register and order Radiology Studies via direct entry, track patient status and history, and control film and image management.  At the time a Radiology Study is produced and images or other image data are obtained (or even in the absence of such services being provided), a technologist (usually employed by the Hospital) will "complete" the exam that was (or was supposed to be) performed via electronic or other entry in the Hospital computer system.  In almost all Hospitals, this is the point at which Hospital billing is then initiated. Defendant Hospitals' billing and related computer systems initiate results and archive radiology reporting dating back to date of the system's implementation at the user facility.  They also provide the appropriate tools for the reporting of the results of radiology services, including physician electronic signing of reports.  Many of the applications of these systems can be linked

22

directly between the hospital and its group of radiologists to permit a seamless patient record documentation, reporting and billing.

43.    For example, the "DecRad System" (produced by IDX Corporation) is the Radiology information application for the Computerized Information ("CI") System which supports Yale's and YNHH's Radiology departmental functions.  It provides the vehicle to register and order Radiology Studies via direct entry, track patient status and history, and control film management.  This system initiates results and it archives radiology reporting dating back to 1985.  It also provides the appropriate tool for bar code processing, document writing sign-off monitoring, and user defined report writing.  This application is linked directly between the YNHH and Yale's School of Medicine's Radiology Department to permit a seamless patient record documentation, reporting and billing system.  The DecRad System is utilized by YNHH, Yale and YNHHASC.  It receives automated data transfer ("ADT") information and patient orders from the YNHH CI System and returns results of those orders back for presentation to clinicians.

a.    When a patient is scheduled for a Radiology Study, the study is listed in the DecRad System as "S" (Scheduled) status.

b.    Once the Study is completed by a radiology technologist, the exam status is changed to "C" (Completed) status.  Until the Study is read by a Resident, Fellow or Qualified Radiologist and a report is dictated and entered into the DecRad system, the examination will remain in "C" status.  Any Radiology Study in "C" status will have no report associated with it.

c.    When a report is dictated and placed into the DecRad system, the exam status is changed to "P" (Preliminary Report).

23

 

d.    Reports of Studies interpreted and dictated by a Qualified Radiologist become final after the radiologist has reviewed, edited and approved the transcribed report and certified it with his or her electronic signature. Reports of Studies dictated by a Resident or Fellow must be reviewed, edited and/or approved by the Teaching Physician. After review, the Teaching Physician finalizes the report using his or her electronic signature to sign its certification. Upon finalization the indicated report status is changed to "F" (Finalized). Whether the study is interpreted initially by a Qualified Radiologist, Resident, Fellow or Clinical Physician, proper finalization and certification of the report is required for the Professional Component of Radiology Services to be billed to the Medicare and Medicaid Programs under applicable billing regulations.

## VI.   BACKGROUND

44.    The Secretary of the United States Department of Health and Human Services ("Secretary" and "HHS") is responsible for, *inter alia,* implementing the provisions of Title XVIII of the Social Security Act (the "Medicare Program"), as amended, 42 U.S.C. § 1395, *et seq.* (the "Medicare Act"). The Secretary administers the Medicare Program through the Center for Medicare and Medicaid Services ("CMS"). In turn, the Secretary and CMS contract with private organizations (intermediaries and carriers) to determine the amounts payable to providers for covered services furnished to Medicare and Medicaid beneficiaries and to make payment. The intermediaries and carriers are required by their contract to give effect to law, regulations and rulings, as well as general instructions issued by CMS and found in Manuals and intermediary letters, when determining whether and how much payment is to be made to providers for services furnished to Medicare and Medicaid beneficiaries.

45.   Congress enacted the Medicaid Program in 1965 to provide a comprehensive range of medical services to both the disabled and the poor. Medicaid is financed by federal and state funds. For example, in Connecticut, the State Department of Social Services ("DSS") administers the Medicaid Program.

46.   Part A of the Medicare Program provides generally for the payment of hospital services furnished to inpatients and outpatients. Part B of the Medicare Program pays for various health services not covered by Part A, primarily professional services including those of physicians.

47.   To participate in the Medicare Program, hospitals enter into "provider agreements" with the HHS Secretary. *See* 42 U.S.C. § 1395cc. The Medicare Program pays the hospital directly for covered inpatient and outpatient services provided to Medicare beneficiaries except for any deductible or coinsurance, which are collected from the beneficiaries. *Id.* § 1395cc.

48.   In their capacity as Medicare providers, hospitals are paid for all inpatient and outpatient hospital services they provide to Medicare beneficiaries unless such services are specifically excluded from coverage under Section 1862 of the Social Security Act (42 U.S.C. § 1395y). Inpatient hospital services are defined in the Act as including: "(1) bed and board; (2) such nursing services and other related services, such use of hospital facilities, and such medical social services as are ordinarily furnished by the hospital for the care and treatment of inpatients, and such drugs, biologicals, supplies, appliances, and equipment, for use in the hospital, as are ordinarily furnished by such hospital for the care and treatment of inpatients; and (3) such other diagnostic or therapeutic items or services, furnished by the hospital or by others under arrangements with them made by the hospital, as are ordinarily furnished to inpatients either by

25