UNITED STATE DISTRICT COURT
DISTRICT OF CONNECTICUT

2004 DEC 23  P 1: 29

U.S. DISTRICT COURT
NEW ........ CT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel | : | |
| ROBERT C. SMITH, M.D., | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:02-CV-~~1205~~ (PCD) |
| | : | 1359 |
| v. | : | |
| | : | |
| | : | |
| YALE NEW HAVEN HOSPITAL, | : | |
| YALE UNIVERSITY, ET AL | : | December 7, 2004 |
| | : | |
| Defendants | : | |

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

I.    INTRODUCTION

Plaintiff, Robert C. Smith, M.D., hereby opposes the Motion to Dismiss by

Defendant, Yale New Haven Hospital ("YNHH"), dated November 16, 2004.  Defendant

moves this Court to dismiss this action on the basis of the legal arguments advanced by

Defendants YNHH and Yale University in support of their Motion to Dismiss in the case

of United States of America, ex rel Robert C. Smith, M.D. v. Yale University & Yale

New Haven Hospital, Civil Action No. 3:00-CV-1359 (PCD) (hereafter "Qui Tam One").

Defendant YNHH asserts that reliance on the arguments made by Defendants in support

of the Motion to Dismiss in Qui Tam One is appropriate in this case because "the two

actions have recently been consolidated, and the claims made against Yale New Haven

Hospital in each matter are essentially the same."  (Def's Motion at 1.)  Contrary to

Defendant's claim, the two actions have not been consolidated.  Plaintiff concedes that

there is similarity regarding the claims made against YNHH in this action with those

1

made in Qui Tam One under the "Autosign" procedure, but responds that the same failure

that underlies YNHH's Motion to Dismiss in Qui Tam One prevents YNHH from

obtaining a dismissal here.  Furthermore, the false claim activity referred to in this action

against YNHH represents a billing practice that is more widespread as a false claim

presented against YNHH as well as defendant New York Presbyterian Hospital.

Nevertheless, Defendant YNHH utterly fails to satisfy its burden on a motion to dismiss

in this case just as it has failed to make the case for dismissal relying upon the arguments

of Yale University in Qui Tam One.  Accordingly, this Court should summarily deny

Defendant YNHH's Motion to Dismiss.

II.    BACKGROUND

    A.    Employment History

The instant action arises out of Plaintiff's observation of fraudulent billing

practices in violation of the law governing Medicare and Medicaid while employed as an

Associate Professor of Radiology at Yale University (hereafter "Yale") assigned to cover

the radiology service at YNHH from 1990 until 1999, and as a Professor of Radiology

and Associate Chair of Information Technology and Systems Administration in the

Department of Radiology at Cornell University, Joan and Sanford I. Weill Medical

College, New York Presbyterian Hospital ("NYPH") from 1999 until the summer of

2003.  (Second Amend. Compl. ¶ 7.)  While at each institution, Plaintiff observed that

Defendants YNHH and NYPH unlawfully billed Medicare and Medicaid for radiological

studies that did not satisfy the requirements for a radiological service under the

regulations promulgated by the federal government.

2

Plaintiff alleges that a "Radiological Service" is comprised of a "Technical Component," involving the performance of a radiological study (or test) such as an x-ray, and a "Professional Component," involving the interpretation of the study by a qualified physician. (Second Amend. Compl. ¶ 38.) Without the Professional Component, the Technical Component alone provides neither diagnostic information nor therapeutic benefit. (*Id.*; *see also id.* at ¶¶ 39-41.) Submitting a bill for payment to Medicare or Medicaid for the Technical Component when the study or test was never interpreted or read by a qualified physician violates the laws and regulations governing payment for services provided to beneficiaries of Medicare and Medicaid. (*See* Second Amend. Compl. ¶¶ 44-56.)

While at Yale, Plaintiff observed that the billing system utilized by YNHH allowed YNHH to bill for the Technical Component for radiological studies or tests which were never interpreted or read, and therefore, never utilized for diagnostic or therapeutic purposes. This practice resulted in the billing for studies or tests which were "completed but not read," referring to the status of the study on the computer system known as the "DECrad or IDXrad" system. Plaintiff observed that YNHH automatically submitted bills to Medicare and Medicaid for studies performed on beneficiaries once they were completed, or placed in "C" status, even though those studies were never interpreted or read by a qualified physician and for which no report documenting the interpretation was ever issued. (Second Amend. Compl. ¶ 70; *see also id.* ¶¶ 43, 71-85.)

By submitting claims to Medicare and Medicaid for the delivery of radiological services comprised solely of the Technical Component, YNHH falsely certified that the studies were medically necessary and provided in accordance with the requisite standard

3

of care, an impossibility if no interpretation ever took place. (Second Amend. Compl. ¶ 74.) While employed by Yale, Plaintiff uncovered tens of thousands of "completed but not read" radiology studies, and alleges that approximately 52.5% of the studies were taken for Medicare or Medicaid beneficiaries. (Second Amend. Compl. ¶¶ 72-73.)

Defendant YNHH was fully aware that its billing practices violated the laws governing payment for services provided to Medicare and Medicaid beneficiaries, but failed to take any corrective action to ensure that the "completed but not read" studies were only billed if they were interpreted by a qualified physician and a related Professional Component had been furnished to the Medicare or Medicaid beneficiary. (Second Amend. Compl. ¶¶ 75-77.)

Plaintiff complained internally about the aforementioned fraudulent billing practices and visited with Assistant U.S. Attorneys in the Justice Department in Connecticut several times in 1997 and 1998, where he detailed the fraudulent billing practices that he had observed. In retaliation for his complaints, Defendant Yale harassed and retaliated against Plaintiff to the point where he was forced to leave.[1]

Subsequently, Plaintiff obtained employment at Cornell University (hereafter "Cornell") providing services to "NYPH" commencing in July 1999. Just as he observed while at Yale, Plaintiff observed that NYPH was likewise billing Medicare and Medicaid for "completed but not read" radiology studies which were never interpreted by a qualified physician or used in the diagnosis or treatment of patients. (Second Amend. Compl. ¶ 93.) Plaintiff complained about these unlawful practices to his superiors, but

---

[1] On July 23, 2004, a jury in a related state court action, *Burrell, et. al. v. Yale University,* found that Yale University retaliated against plaintiff and his co-plaintiffs there on account of speaking on matters of public concern related to potential fraud committed on the federal government based on the allegations in the complaint in this case. The jury awarded damages to all plaintiffs in the amount of $5.4 million. This verdict was upheld by Judge Carl Schuman by decision dated November 22, 2004.

they took no corrective action. (Second Amend. Compl. ¶ 92.) Instead, Defendant

Cornell harassed and retaliated against him for making complaints in a pattern which

eventually led to the decision in June 2002 to terminate Plaintiff's employment, effective

June 30, 2003, contrary to the terms of Plaintiff's appointment. (Second Amend. Compl.

¶¶ 112-115.)

      B.    <u>History of this Case</u>

      After leaving Yale in 1999, and after numerous meetings with representatives of

the United States Department of Justice in Connecticut, Plaintiff filed Qui Tam One in

July 2000, under seal, against Yale and YNHH. In it, Plaintiff alleged four theories of

liability, including YNHH's false claim in billing for studies that had been "completed

but not read." Plaintiff also alleged that Yale and YNHH were perpetrating other

fraudulent billing schemes against the government, including (1) the "Autosign" billing

fraud, which allowed YNHH to bill for the Technical Component when the film or study

was lost before it could be reviewed by a qualified radiologist; (2) the Neuroradiology

Fellows fraud, where the Professional Component and the Technical Component were

billed by Yale and YNHH when the qualified physician had falsely certified that he/she

had reviewed the film and the preliminary report; and (3) the Clean-up Project, a

circumstance that found Yale falsely certifying that films were reviewed in order to bill

the Professional Component. The "Autosign" billing fraud in Qui Tam One shares a

similarity to the "completed but not read" fraud alleged in Qui Tam Two, because these

frauds both rely upon the fact that YNHH submitted a bill for payment when the

Technical Component was not accompanied by a Professional Component when, for

whatever reason, the film was lost before a qualified radiologist could interpret the film

and document that diagnosis. The Amended Complaint filed in Qui Tam One did not ultimately include the "completed but not read" fraud claim.

After some time at Cornell and NYPH, however, Plaintiff realized that NYPH was likewise billing the government for radiological studies that had been "completed but not read" and Cornell refused to take any action to prevent this obvious violation of the law. Plaintiff filed the complaint in this action, Qui Tam Two, in July 2002 and the case was assigned to Judge Eginton. On or about March 10, 2004, plaintiff filed an Amended Complaint in Qui Tam Two alleging that YNHH, NYPH and 22 other hospitals in the State of New York were submitting false claims to the government for radiological studies that had been "completed but not read."[2]

On October 21, 2004, Defendant YNHH moved to consolidate Qui Tam Two with Qui Tam One, in which Defendants' Motion to Dismiss is currently pending. In response to Defendant YNHH's Motion to Consolidate, Judge Eginton issued an "Order of Transfer," dated November 3, 2004, transferring this action to this Court. Defendant YNHH now seeks to adopt the briefs submitted by Yale in support of Defendants' Motion to Dismiss Qui Tam One and moves this Court to dismiss this action without submitting any additional legal or factual in support of its Motion.[3]

Defendant YNHH's effort is inadequate to warrant dismissal. Accordingly, Defendant YNHH's Motion to Dismiss should be denied.

---

[2] On November 24, 2004, Plaintiff served his Third Amended Complaint upon Defendants Yale, YNHH, Cornell, and NYPH. In it, Plaintiff withdrew his allegations, without prejudice, against all other defendants which had been named in his Second Amended Complaint.

[3] At this time, YNHH remains the only party Defendant in Qui Tam One. Defendant Yale University recently settled with Plaintiff as to each of the allegations involved in Qui Tam One, including the Neuroradiology Fellows fraud, Autosign, and the Clean-up Project. Thus, it is no longer necessary for this Court to rule on Defendants' Motion to Dismiss in Qui Tam One as it applies to Yale University.

III.    STANDARD OF REVIEW ON A MOTION TO DISMISS

"The function of a motion to dismiss is merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support

thereof. When deciding a motion to dismiss, the Court must accept all well-pleaded

allegations as true and draw all reasonable inferences in favor of the pleader." *General

Motors Corp. v. Watson Enterprises, Inc.*, No. 04-CV-120 (WWE), 2004 WL 2472268 at

*3 (D. Conn. Oct. 27, 2004) (internal citations and quotations omitted).

IV.    DISCUSSION

Defendant YNHH utterly fails to satisfy its burden on a motion to dismiss.

Neither in Defendants' Motion to Dismiss in Qui Tam One, or their Memorandum in

support thereof, nor in YNHH's instant Motion to Dismiss in Qui Tam Two, does YNHH

discuss any of Plaintiff's allegations regarding the "completed but not read" theory of

submitting false claims to Medicare and Medicaid. Therefore, Defendant YNHH's

attempt to rely solely on its submissions in Qui Tam One to defeat Plaintiff's allegations

in Qui Tam Two is illusory. In addition, Defendant's Motion to Dismiss should be

denied because Plaintiff's allegations in Qui Tam Two are clearly as detailed and specific

as those in Qui Tam One. Therefore, to the extent that Defendant seeks to apply the

arguments it made in its Motion to Dismiss in Qui Tam One to defeat Plaintiff's Second

Amended Complaint in Qui Tam Two, Plaintiff relies on his Opposition to Defendants'

Motion to Dismiss in Qui Tam One and incorporates that opposition by reference. Just as

in Qui Tam One, Plaintiff maintains that this Court has subject matter jurisdiction over

his claims as he is an original source under § 3730(e)(4)(B), he has alleged sufficient

particularity under Rule 9(b), and his allegations state a claim under Rule 12(b)(6). (*See*

7

Plaintiff's Opposition in Qui Tam One.)  Consequently, Defendant has utterly failed to satisfy its burden on its Motion to Dismiss.  Accordingly, Defendant's Motion should be denied.

A.      Defendant Has Failed to Satisfy its Burden on a Motion to Dismiss

On a motion to dismiss, all facts alleged are taken as fact, all reasonable inferences are made in favor of the non-moving party, and the moving party must demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief."  *General Motors Corp. v. Watson Enterprises, Inc.*, No. 04-CV-120 (WWE), 2004 WL 2472268 at *3 (D. Conn. Oct. 27, 2004) (internal citations and quotations omitted).  Defendant simply does not come close to meeting its burden in this case.

1.      *Defendant Never Addresses Plaintiff's Allegations Regarding Completed but not Read Radiological Studies*

Defendant YNHH does not address any of the facts alleged regarding the completed but not read studies at issue in Qui Tam Two.  Defendant relies solely on its submissions in Qui Tam One, which do not discuss completed but not read studies.  Thus, Defendant clearly has not established that Plaintiff's allegations in Qui Tam Two regarding radiological studies which have been completed but not read must be dismissed for failure to plead sufficient particularity under Rule 9(b) or failure to state a claim under Rule 12(b)(6).  Accordingly, Defendant's Motion should be denied.

8

2.    *Defendants' Arguments in Qui Tam One Do Not Require*
*Dismissal of Plaintiff's Allegations in Qui Tam Two*

In Defendant YNHHs' Motion to Dismiss in Qui Tam One, Defendant principally

argued that Plaintiff's claims should be dismissed because: (1) Plaintiff did not allege

that he was an original source, (2) Plaintiff's allegations did not satisfy the particularity

requirements of Rule 9(b), and (3) Plaintiff's allegations failed to state a claim under

Rule 12(b)(6).

For many of those reasons already identified in his Opposition, Plaintiff is an

original source, (*see* Opposition at 11-20), his Second Amended Complaint alleges

sufficient particularity to satisfy Rule 9(b), (*see* Opposition at 20-35), and it states a claim

under Rule 12(b)(6), (*see* Opposition at 35-45). As, however, Plaintiff's allegations in

Qui Tam Two are somewhat different than the claims made against Yale in Qui Tam

One, the Second Amended Complaint in Qui Tam Two reflects those differences. For

instance, Plaintiff's Second Amended Complaint in Qui Tam Two clearly alleges that

Defendant billed the government for the Technical component of radiological studies

once they are placed in "C" status and, in addition, Plaintiff provides examples of an

actual invoice where Defendant billed for the Technical component when the

Professional component was never provided. (*See* Second Amend. Compl. ¶¶ 70, 71-73,

79, 81.) Furthermore, the fraudulent practices alleged by Plaintiff in this action are much

more expansive than those alleged in Qui Tam One. As opposed to the false claims

alleged in Qui Tam One, which number well under twenty thousand (20,000), Plaintiff

alleges that Defendant YNHH submitted bills to the government for as many as one

hundred twenty-five thousand (125,000) "completed but not read" radiological studies in

9

violation of the laws and regulations governing Medicare and Medicaid. Thus, as

Plaintiff's allegations in Qui Tam Two are clearly at least as detailed, specific, and

thorough as those in Qui Tam One relating to the "Autosign" billing fraud, if not more so,

Defendant's Motion should be denied.

   a.    **Defendant Fails to Establish Plaintiff Is Not An
          Original Source**

   Numerous courts have held that plaintiffs qualify as an original source when they

observed elements of fraudulent conduct first-hand before the allegations of fraud were

publicly disclosed. *See United States ex rel DeCarlo v. Kiewit/AFC Enterprises, Inc.*,

937 F. Supp. 1039, 1048 (S.D.N.Y. 1996) (recognizing that "the Act seeks to encourage

persons with 'first hand knowledge of the fraudulent misconduct'" or those who were

either involved in the fraud or close observers of it to come forward; holding that a

plaintiff was an original source because he obtained knowledge of the fraud when he

observed it during the course of his employment before any allegations of fraud were

publicly disclosed) (quoting *United States ex rel, Stinson, Lyons, Gerlin & Bustamente,

P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1154 (3d Cir. 1991)); *Wang v. FMC Corp.*,

975 F.2d 1412, 1417 (9th Cir. 1992) (holding that plaintiff had direct and independent

knowledge of publicly disclosed allegations because he gained personal knowledge of the

fraud when he worked on trying to solve the problem.); *United States ex rel. Lamers v.

City of Green Bay*, 998 F. Supp. 971, 983 (E.D. Wisc. 1998) (holding that plaintiff had

direct and independent knowledge of the information underlying the fraudulent

transaction where it was based on first-hand observation that occurred before any public

disclosure); *United States ex rel. Springfield Ry. Co. v. Quinn*, 14 F.3d 645, 656-57 (D.C.

Cir. 1994).

10

For those reasons explained in Plaintiff's Opposition to Defendants' Motion to Dismiss in Qui Tam One ("Opposition"), he was, and is, an original source within the meaning of § 3730(e)(4)(B). (*See* Opposition at 11-20.) As Plaintiff's allegations regarding the "completed but not read" radiological studies were originally an element of Qui Tam One, he observed and acquired first-hand knowledge of YNHH's fraudulent billing practices related to "completed but not read" studies at the same time he observed the fraudulent billing practices that presently comprise Qui Tam One, including "Autosign." In addition, Plaintiff volunteered information relating to the completed but not read studies to the United States Department of Justice in the same meetings during 1998 in which he detailed the fraudulent schemes which presently comprise Qui Tam One. Therefore, just as he was as original source in Qui Tam One, Plaintiff is an original source of his allegations in Qui Tam Two.

        **b.**      **Defendant Fails To Establish Plaintiff Did not Satisfy Rule 9(b)**

Second, Plaintiff's allegations in Qui Tam Two are at least as particular and specific as those made in Qui Tam One and, therefore, they are sufficiently particular to satisfy the requirements of Rule 9(b). As Defendant never explains why Plaintiff's allegations regarding Defendant's practice of billing for "completed but not read" radiological studies fails to satisfy Rule 9(b), its Motion should be denied.

"To meet the requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Phipps v. Comprehensive Community Development Corp.*, 152 F. Supp. 2d 443, 454-55 (S.D.N.Y. 2001) (internal citations and quotations

11

omitted). Said another way, the complaint must allege the who, what, where, when, and

how of the fraudulent practice in order to satisfy the pleading requirements of Rule 9(b).

*United States ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939, 944-45

(N.D. Ill. 2004) (citing *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). "So

long as a defendant has 'fair notice' of the charges against him, the purposes of Rule 9(b)

have been satisfied." *United States v. Warnings*, No. Civ. A. 93-45411994, WL 396432

at *2 (E.D. Pa. July 26, 1994).

In a case within this Circuit, *Mikes v. Strauss*, 889 F. Supp. 746 (S.D.N.Y. 1995),

the plaintiff did not cite any specific examples, but alleged that the defendant was

defrauding the government by filing Medicare claims for unnecessary and excessively

expensive radiological tests. *Mikes*, 889 F. Supp. at 749-750. The Court stated that

"[a]lthough plaintiff does not detail every specific instance when defendants' alleged

overbilling occurred, we think the allegations of spirometry and MRI misuse are

sufficiently specific to put defendants on notice of their alleged fraudulent activity under

circumstances of a *qui tam* action." *Id.* at 751 n.5. *See also United States ex rel. Gear v.*

*Emergency Medical Assoc. of Illinois, Inc.*, No. 00 C 1046, 2004 WL 1433601 (N.D. Ill.

June 25, 2004 (holding that plaintiff satisfied Rule 9(b) because allegations identified the

hospitals, the residents, the regulations allegedly violated, and provided the defendants

with adequate notice).

Plaintiff identified the fraudulent statements by alleging that Defendant

knowingly submitted bills to Medicare and Medicaid for the Technical Component for

radiological studies or tests which were never interpreted or read, and therefore, never

12

utilized for diagnostic purposes once the studies were placed in "C" status in Defendant's billing system. (*See* Second Am. Compl. ¶¶ 1, 2, 65, 70-84.)

Plaintiff clearly identified the speaker by identifying the administrators and persons of authority that created and administered YNHH's billing policy and Plaintiff clearly alleges that the fraudulent practice of billing for radiological studies which were "completed but not read" was perpetrated by Defendant at its Hospital while Plaintiff was in its employ. (*See* Second Am. Compl. ¶¶ 8, 57, 62, 63, 81.)

Finally, Plaintiff has explained why and how the conduct alleged constituted fraud against the government. Plaintiff introduces and explains the complicated maze of relevant Medicare regulations, (*see* Second Am. Compl. ¶¶ 38-56), and explains why Defendant's failure to comply with those regulations and its practice of billing for studies which have been "completed but not read" once they reach "C" status constitutes a fraud upon the government, (*see* Second Am. Compl. ¶¶ 43, 65, 70-84).

    **c.    Defendant Fails to Prove That Plaintiff's Allegations Do Not State a Claim Under Rule 12(b)(6)**

Liability under the False Claims Act occurs when a person (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or] (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid. 31 U.S.C. § 3729(a). *State v. Evans*, 155 Misc. 2d 348, 589 N.Y.S. 2d 223, 1992 N.Y. Misc. LEXIS 424 (1992); *Mikes v. Straus*, 274 F.3d 687, 697 (2nd Cir. 2001). "The False Claims Act requires both knowledge of a claim's falsity and some action by the defendant which causes the claim

13

to be presented to the government." *United States ex rel. Piacentile v. Wolk*, Civ. A. No. 93-5773, 1995 WL 20833 at *4 (E.D. Pa. Jan. 17, 1995) (citing 31 U.S.C.A. § 3729(a)(1), (b) (Supp.1994)).

Plaintiff's Second Amended Complaint alleges that Defendant has knowingly submitted false claims by falsely certifying that the services for which it requested payment were performed in compliance with federal regulations that are a condition of payment. Defendant submitted false claims for the Technical Component and falsely certified that the "completed but not read" studies were medically necessary and provided in accordance with the requisite standard of care. *See Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001) (explaining the factually and legally false certification theories of False Claims Act liability); *United States v. Mackby*, 261 F.3d 821 (9th Cir. 2001); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997). In addition, Plaintiff has alleged that Defendant and its Administrators knowingly caused these fraudulent practices to take place. (*See* Second Am. Compl. ¶¶ 8, 43, 57, 61, 62-71, 74-84.)

Accordingly, as Defendant does not address any of Plaintiff's allegations regarding "completed but not read" studies in its instant Motion to Dismiss and cites no legal authority to support its assertion that the Second Amended Complaint in this action must be dismissed, Defendant YNHH's Motion to Dismiss must be denied.

V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

14

PLAINTIFF
ROBERT C. SMITH, M.D.,

By: _____
Craig T. Dickinson (ct18053)
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue, Suite 201
Hartford, CT 06320
Tel:  (860) 246-2466
Fax:  (860) 246-1794

15

## CERTIFICATION

I hereby certify that a copy of the foregoing were sent on this 7th day of December 2004 via facsimile and regular U.S. Mail, postage prepaid to:

Mary Alice Leonhardt, Esq.
Law Offices of Mary Alice Leonhardt, LLC
102 Oak Street
Hartford, CT 06106

Daniel L. FitzMaurice, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103-3499

Willam J. Doyle, Esq.
Kenneth D. Heath, Esq.
Wiggin & Dana LLP
One Century Tower
265 Church Street, Box 1832
New Haven, CT 06508

David S. Poppick, Esq.
Epstein Becker & Green, P.C.
One Landmark Square
Suite 1800
Stamford, CT 06901

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue, & Noonan, P.C.
741 Boston Post Road
Concept Park
Guilford, CT 06437

James R. Kahn, Esq.
Associate University Counsel
Cornell University
445 East 69th Street
New York, NY 10021

Stuart M. Gerson, Esq.
Epstein Becker & Green, P.C.
1227 25th Street, NW
Suite 700
Washington, DC 20037-1175

Alexander J. Lawrence, Esq.
Carl H. Loewenson
Morrison & Foerster, LLP
1290 Avenue of the Americas
New York NY 10104-0050

and that three (3) copies have been mailed in accordance with Rule 5 of the Federal Rules

of Civil Procedure and Rules 7(d) and 7(e) of the Local Rules of Civil Procedure to:

Richard M. Molot, Esq.
Assistant United States Attorney
Office of the United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

Craig T. Dickinson

16