UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel | : | |
| ROBERT C. SMITH, M.D. | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:02-CV-01205 (PCD) |
| v. | : | |
| | : | |
| YALE NEW HAVEN HOSPITAL, | : | |
| YALE UNIVERSITY, ET AL | : | |
| | : | |
| Defendants. | : | DECEMBER 23, 2004 |

**REPLY MEMORANDUM IN SUPPORT OF YALE NEW HAVEN
HOSPITAL'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Robert C. Smith (hereafter "the Relator") brings the present qui tam action pursuant

to the False Claims Act ("FCA"), 31 U.S.C. § 3730, against Yale New Haven Hospital

(hereafter "YNHH"), Yale University ("Yale"), and a number of New York hospitals and

medical institutions. By his Second Amended Complaint, the Relator makes allegations of

fraudulent Medicare and Medicaid billing practices with respect to the delivery of radiology

services. The Relator is a radiologist and a former employee of Yale University.

This matter was recently transferred from Judge Eginton's docket to this Court upon

motion of YNHH so that the case could be consolidated with United States of America, ex rel

Robert C. Smith, M.D. v. Yale University and Yale New Haven Hospital, 3:00-CV-01359

**DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK  •  741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  •  FAX:  (203) 458-4424
JURIS NO. 415438

(PCD) (hereafter "Qui Tam One").[1]   The United States has declined to intervene in these

actions.


When the present action was transferred to this Court, YNNH moved to dismiss by

adopting the same arguments raised in its Motion to Dismiss and briefs in support that were

filed in Qui Tam One.  Relator asserts that relying on the arguments set forth in the Motion to

Dismiss in Qui Tam One in the pending matter is somehow inappropriate or "illusory"

because Qui Tam One involved allegations that YNNH violated the FCA when it allegedly

sought reimbursement for the technical component of radiological studies that were taken by

YNHH and at a later time processed by Yale using the "Autosign" function while this action

involves a claim that YNHH violated the FCA when it sought reimbursement for the studies

that had been "completed but not read." (Opposition Brief at 5-8). "Completed by not read"

refers to a study where there is no subsequent written report from a radiologist. The fact that a

film is not read by a board certified radiologist does not mean it was never read.  Such films

are routinely read by the orthopedic surgeons, Emergency  Department specialists or other

physicians who utilize the films in the care and treatment of the patient but do not prepare a

separate written report.

---

[1]    Relator is correct in noting that this matter has not yet been consolidated with Qui
Tam One. (Opposition Brief at 1)  However, whether the actions have been consolidated has
no bearing on the issues raised by YNNH's Motion to Dismiss.  YNNH notes that relator has
requested permission to file a Third Amended Complaint.  The arguments set forth in
YNNH's Motion to Dismiss apply equally to the Second and Third Amended Complaint.

Contrary to plaintiff's efforts to distinguish Qui Tam One from Qui Tam Two, the factual and legal premise upon which each complaint is based is precisely the same:  it is plaintiff's theory that the technical component of radiological studies may not be billed until such time as the film has been read by a board certified radiologist and a report written.[2]  Whether the claims are based upon the Autosign scenario or the "completed but not read" scenario is of no consequence to the arguments set forth in the original Motion to Dismiss.  All of these claims should be dismissed for three separate reasons that apply equally to the Autosign and the "completed but not read" claims.  This matter, as well as Qui Tam One, should be dismissed because (1) the court lacks subject matter jurisdiction due to the fact that Smith is not the original source of his claims; (2) plaintiff's complaint does not meet the requirements of Fed. R. Civ. P. 9(b); and (3) the Second Amended Complaint fails to state a claim upon which relief can be granted.  In addition, this matter should be dismissed on two additional grounds: 1) the FCA is inapplicable to this claim because the relator only asserts that claims were presented to a grantee of federal funds – not directly to an

---

[2]    Indeed, with respect to YNHH, there is no distinction between the "Autosign" films and the "completed but not read" films.  The fact is that "Autosign" films are a subset of the "completed but not read" films.  In each instance YNHH allegedly billed for the technical component of the study irrespective of whether a board certified radiologist read the film and completed a written report.  As noted in the earlier briefs, "Autosign" was created by Yale University as a mechanism for removing films from the queue where the films had been misplaced.  Yale University created the Autosign function in order to insure that the professional component of these films would not be billed in circumstances where there was no written report.

officer or employee of the federal government as is required by the FCA <u>see</u>, <u>U.S. ex rel. Atkins v. McInteer</u>, 2004 WL 2651341 (N.D. Ala. Oct. 27, 2004); and 2) 31 U.S.C. § 3730(b)(5) provides that when a person brings a qui tam action, no person other than the Government may intervene or bring a related action based upon the facts underlying the pending action.  Given the pendency of Qui Tam One, relator is barred from now bringing this claim in Qui Tam Two.

**Factual Background**

In order to address the issues raised by YNNH's Motion to Dismiss, it is critical to understand the distinction between the technical component and professional component of radiological studies.  The "technical component" of any radiological study is the fee associated with the actual taking of the test and the reduction of the data onto a film or other storage media.  The "professional component" represents the reading of the film by a doctor. YNHH takes the studies upon the direction of a treating physician and bills for the technical component.  Physicians who read studies, such as physicians employed by Yale University, read the films and bill for the professional component. YNHH has no responsibility for, nor does it bill for, the professional component of radiological services.

It is the Relator's contention that YNHH may not bill for the technical component of a radiological study unless a board certified radiologist has interpreted the film and created a written report in spite of the fact that a physician has ordered the taking of the study.   As set forth in the original Motion to Dismiss and herein, there is no statute, regulation or case

which supports this creative proposition.  In its Motion to Dismiss, YNNH identified a

number of appropriate examples of circumstances in which, by design, no radiologist will

review a study.   There is no reason why YNHH may not bill for the taking of the film in

those instances, or in other instances where YNHH has completed its function by taking the

film, notwithstanding the fact that a board certified radiologist does not later interpret the

film and prepare a written report.  The Medicare statutes and regulations were intentionally

devised so as to create a situation where the taking of the film is one service and the reading

of the film is another.  As long as YNHH has done its part by taking the film, it is entitled to

bill for the technical component irrespective of whether a board certified radiologist later

reads the film and prepares a written report.

## ARGUMENT

### A.  Relator Is Not An "Original Source" of His Claims.

It is fundamental that a relator must allege specific facts as opposed to mere

conclusions showing exactly how and when he obtained direct and independent knowledge of

the fraudulent acts alleged. U.S. ex rel. Hafter v. Spectrum Emergency Care Inc., 190 F.3d

1156, 1162 (10th Cir. 1999).  The fact that the relator has simply asserted that this lawsuit

addressed studies that were "completed but not read" as opposed to the Autosign claims set

forth in Qui Tam One belies the fact that relator seeks to distract this Court from the relevant

analysis of this issue.  The difference in these allegations does not alter the inescapable

conclusion that relator is not an original source of his claims in either Qui Tam One or Qui

Tam Two. In this action, as in Qui Tam One, relator has failed to establish that he is an "original source".

**B. Relator's Complaints Fail to Satisfy Fed.R.Civ. P. 9(b).**

Rule 9(b) states, in relevant part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." United States ex rel. Phipps v. Comprehensive Community, 152 F. Supp. 2d 443, 454 (S.D.N.Y. 2001), *quoting* Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

Because the FCA attaches liability only to a false or fraudulent claim, "[e]vidence of an actual false claim is `the *sine qua non* of a False Claim Act violation.'" U.S., ex rel. Karvelas v. Melrose-Wakefield Hospital, 360 F.3d 220, 225 (1st Cir.2004). (quoting U.S., ex rel. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1311 (11th Cir.2002)). Merely assuming that false claims were submitted to the government would strip all meaning from Rule 9(b)'s specificity requirement. Clausen, 290 F.3d at 1312 n.21.

The Rule 9(b) arguments raised in Qui Tam One apply equally to this matter. Rather than address the arguments concerning Rule 9(b), relator simply makes the unsupported and

conclusory claim that that allegations in this case are more expansive – without referencing a

single specific claim identifying the who, what, when and where detail required by Rule 9(b).

There is no description in the present complaint of any discrete incident of the fraudulent

submission of a claim by any defendant.  In fact, in the opposition filed in Qui Tam One,

relator took pains to distinguish Clausen by claiming that he, unlike the relator in Clausen,

was an employee of the defendant, Yale University.  However, like the relator in Clausen,

Smith is not, nor was he ever, an employee of YNNH.  "General averments do not suffice, no

matter how difficult it may be for a relator to meet the stringent requirement of particularity

without first obtaining court aided access to discovery materials from defendant." U.S. ex rel

Atkins, 2004 WL 2651341 (N.D. Ala. 2004).   As the District Court in Atkins eloquently

stated:

> The federal courts are increasingly reluctant to allow fishing
> expeditions by whistle-blowers employing the FCA and hoping for
> federal intervention. The whistle must be blown not only loudly, but
> with Rule 9(b) particularity in the complaint before the courts will
> listen. If the judicial system still operated in the era of the demurrer,
> this complaint of 52 pages could legitimately be subject to demurrer
> for being prolix and/or multifarious. The repetition here of largely
> conclusory allegations aimed at fifteen distinct and geographically
> separated defendants, is elaborate, but length cannot substitute for the
> precision necessary to provide each defendant with allegations of fact
> that he must either confess or deny, because to confess them would be
> to concede liability. Even notice pleading requires the allegation of
> facts that provide both a basis for jurisdiction and a basis for liability.
>
> Atkins, at 2-3.

7

Atkins applies with equal force to the case at bar.  In the pending action and in Qui Tam One,

relator has wholly failed to satisfy the particularity requirements of Rule 9(b).  According,

YNNH's Motion to Dismiss should be granted.

**C.     Relator Has Failed to State a Claim Upon Which Relief May Be Granted.**

Assuming arguendo that relator had alleged facts from which it could be concluded

that he was the original source of these claims and assuming further that he had met the

requirements of Rule 9(b), Smith's Complaint fails to state a claim upon which relief can be

granted.  This argument applies equally to the "Autosign" and "completed but not read"

scenarios.

YNNH has fully performed its services when it bills for all studies that are

"completed but not read," whether or not the study is one that was subject to the "Autosign"

function.[3]  As is the case with Autosign films, YNNH has no control over whether the study

was ultimately read or by whom it was read at the time that YNNH took the films.  At the

time the Hospital took the films, it did so because a treating physician had found the taking of

the film to be "medically necessary."   Since the taking of the films was medically necessary

---

[3]     As noted earlier, "Autosign" films comprise a subset of the "completed but not read" films.  For all such films, the technical component is billed by YNHH once YNHH completes its service.

8

and since the Hospital did all that it was requested to do, it was entitled to bill for the technical component of the study, irregardless of whether Yale University was entitled to bill for the professional component.

Relator's claims in this case and in Qui Tam One are based on a fundamental misapprehension of the Medicare regulations. His position is that unless a board-certified radiologist reviews an x-ray and prepares a report, YNNH may not bill Medicare for the technical component of the radiological study. Smith fails to cite a single case, statute or regulation to support this novel theory. Instead, he simply attempts to muddy the waters by making the illogical, and inaccurate, argument that dismissal is inappropriate because this matter is based upon "completed but not read" films as opposed to Autosign films. As noted above, the Autosign films are also "completed by not read" films.

As set forth in the original Motion to Dismiss, "[t]here is no portion of the [Medicare] Act upon which to base a decision that only board-certified radiologists can furnish x-ray interpretations." See 60 Fed. Reg. 63,123, 63,130 (Dec. 8, 1995). In fact, attending clinical physicians routinely review radiology studies without requesting a written interpretation from a radiologist. There simply is no support for the proposition that the Hospital may not bill for the taking of the film where a board-certified radiologist does not later review the film. Therefore, plaintiff is simply incorrect in his bald assertion that the Hospital may not bill for the technical component of a radiological study where there is no corresponding professional component.

Even assuming arguendo that Smith had alleged that YNNH had submitted a claim with respect to a particular radiological study which was performed but never used for the diagnosis of a patient – for instance if the patient were to die before an interpretation of the study could be made – Smith has failed to point to any case, statute or regulation that would prohibit YNHH from billing for the technical component of that study if at the time that it was ordered, the ordering physician considered the test "medically necessary" for Medicare purposes.  The taking and reading of radiological studies are deemed to be separate services for purposes of Medicare billing; thus, the determination of "medical necessity" must be made separately with respect to each service.  With respect to the technical component, that determination is made when a treating physician orders a study -- not at a later date when the study is read.  Accordingly, there is nothing improper in a hospital billing for the technical component once the film has been taken.

**D.  Relator's Claim Must Fail Since No Claims Were Submitted to a Federal Official.**

The FCA requires that the relator allege that a fraudulent claim be submitted directly to a federal agent or employee. U.S. ex rel. Atkins, 2004 WL 2651341 (N.D. Ala. 2004) (allegations that improper claims were submitted to the Alabama Medicaid Agency as opposed to directly to a federal official or employee could not support a FCA suit); see also, United States, ex rel. Totten v. Bombardier Corporation, 380 F.3d 488 (D.C.Cir.2004).  The Atkins Court relied on Totten in explaining:

> In Totten, the D.C. Circuit found that the FCA had been misused when a
> relator complained that a false claim had been presented to a grantee of federal

funds, as distinguished from the federal government itself. The <u>Totten</u> court pointed out that the FCA creates a cause of action only if a false claim is "presented. ... to an officer or employee of the United States Government." (emphasis supplied). This is the unequivocal, up-front language of 31 U.S.C. § 3729(a)(1). In other words, a false claim, if presented to an entity that, in turn, has received or subsequently receives money from the United States with which to pay the claim, is not actionable, despite the fact that the money, in whole or in part, comes from the United States. In Totten, the grantee of federal funds that had allegedly been defrauded was the National Railroad Passenger Corporation (Amtrak). In the instant case, according to the allegations of the complaint, and judicially knowable facts, the only directly defrauded entity was a grantee, Alabama Medicaid Agency. There is no allegation or suggestion of the direct presentation of any false claim by any defendant to a federal officer or employee.

<u>Atkins</u> is on all fours with the pending matter.  In this matter, the plaintiff expressly asserts that YNNH billed Medicaid through  the State of Connecticut Department of Social Services and billed Medicare through Cigna, Travelers, MetraHealth, Untied Health Care and Empire Medical Services. <u>See</u>, Second Amended Complaint at ¶57.  "Because the FCA has a quasi-criminal aspect (treble damages), it must be strictly construed against the United States and the relator." <u>Atkins</u>, at 2.  Under the well-reasoned analysis in <u>Totten</u> and <u>Atkins</u>, it is clear that both of Smith's Complaints must be dismissed because there are no allegations of any presentation of a false claim directly to a federal officer or employee.


**E.  Since This Matter is Duplicative of Qui Tam One, it Must Be Dismissed.**

31 U.S.C. § 3730(b)(5) provides that when a person brings a qui tam action, no person other than the Government may intervene or bring a related action based upon the facts underlying the pending action. <u>See</u>, <u>United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.</u>, 318 F.3d 214, 217-218 (D.C. Cir. 2003) ("Section 3730(b)(5) bars any

action incorporating the same material elements of fraud as an action filed earlier").  Put

simply, § 3730(b)(5) establishes a first to file rule.

Once Smith brought Qui Tam One, § 3730(b)(5) barred him from subsequently

bringing Qui Tam Two against YNHH.   Based upon the clear language of § 3730(b)(5) and

as set forth in Hampton, YNNH respectfully requests that this matter be dismissed.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in Defendants' original

Memorandum of Law in Support of Motion to Dismiss in Qui Tam One and in the

Memorandum and Reply Memorandum of Yale University in Qui Tam One, YNHH moves

this Court to dismiss the Second Amended Complaint in its entirety.

<div style="margin-left: auto;">

THE DEFENDANT
YALE NEW HAVEN HOSPITAL


BY:_____

Patrick M. Noonan  (#CT00189)
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

</div>

CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

| | |
|---|---|
| William J. Doyle, Esq. | Carl H. Loewenson, Jr., Esq. |
| Kenneth D. Heath, Esq. | Stanley R. Soya, Esq. |
| One Century Tower | J. Alexander Lawrence, Esq. |
| 265 Church Street | Morrison & Foerster LLP |
| New Haven, CT 06508-1832 | 1290 Avenue of the Americas |
| | New York, NY 10104-0185 |
| | |
| Mary Alice Leonhardt, Esq. | Peter B. Prestley, Esq. |
| Offices Of Mary Alice Leonhardt | Craig T. Dickinson, Esq. |
| 102 Oak Street | Madsen, Prestley & Parenteau, LLC |
| Hartford, CT 06106 | 44 Capitol Avenue |
| | Suite 201 |
| | Hartford, CT 06106 |
| | |
| Stuart M. Gerson, Esq. | Jacques J. Parenteau, Esq. |
| Epstein Becker & Green | Madsen, Prestley & Parenteau, LLC |
| 1227 25th Street, NW | 111 Huntington Street |
| Washington, DC 20037-1175 | P.O. Box 1631 |
| | New London, CT 06320 |
| Daniel L. FitzMaurice, Esquire | |
| Day, Berry & Howard | |
| CityPlace I | |
| Hartford, CT 06103-3499 | |

and, pursuant to Rule 5(c) of the Local Rules of Civil Procedure, three copies by United States Postal Service, First Class Mail to:

John Hughes, Esq.
Richard Molot, Esq.
Assistant United States Attorney
Office of the Assistant United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

_____
Patrick M. Noonan

13