IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| <u>ex</u> <u>rel</u>. ROBERT C. SMITH, M.D., | ) | |
| | ) | No. 3:02cv01205 (PCD) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| YALE UNIVERSITY and | ) | |
| YALE-NEW HAVEN HOSPITAL, INC., | ) | January 19, 2005 |
| | ) | |
| Defendants. | ) | ____ |

**UNITED STATES' STATEMENT OF INTEREST IN RESPONSE TO
DEFENDANT YALE NEW HAVEN HOSPITAL'S MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT**

The United States, the real party in interest in this *qui tam* action,[1] submits this Statement

of Interest in connection with the motion to dismiss the second amended complaint by defendant

Yale New Haven Hospital ("YNHH"). The United States submits this Statement of Interest

solely for the purpose of clarifying a point of law made in the Reply Memorandum in Support of

Yale-New Haven Hospital's Motion to Dismiss the Second Amended Complaint, dated

December 23, 2004 (the "Reply Memorandum").[2] In its Reply Memorandum, YNHH argues

**ORAL ARGUMENT IS <u>NOT</u> REQUESTED**

---

[1]The United States remains the real party in interest in a declined *qui tam* action. <u>See,</u>
<u>e.g.</u>, <u>United States ex rel. Hall v. Tribal Development Corp.</u>, 49 F.3d 1208, 1212-13 (7th Cir.
1995).

[2]The United States takes no position on the other arguments YNHH has made in support
of its motion to dismiss.

that the False Claims Act ("FCA") does not apply to the claims it made to Medicare and Medicaid because the claims were submitted to Medicare and Medicaid contractors, and not directly to the federal Government. See Reply Memorandum at 10-11. As we show below, YNHH's argument is based on a recent split decision of the D.C. Circuit, U.S. ex rel. Totten v. Bombardier Corp., 380 F.3d 488 (D.C. Cir. 2004), which the United States contends was wrongly decided. Moreover, even if the Totten decision is adopted by this Court, it only stands for the proposition that the FCA does not protect Government grant money when the grant is provided to the grantee before the alleged fraud occurs. In the instant case, however, which involves claims submitted to Medicare and Medicaid, the claims are paid by the Government after they are submitted to the applicable contractor. Moreover, unlike the facts presented in Totten, in Medicare and Medicaid cases contractors pay the claims on the Government's behalf, using funds from the United States Treasury. Thus, Medicare and Medicaid fraud is always actionable under the FCA even under the Totten decision.

## THE INTEREST OF THE UNITED STATES

This is an action brought by a private party on behalf of the United States under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733. The FCA allows private citizens (known as "relators") to bring actions to redress fraud against the United States and to receive a share of any recovery made on behalf of the United States. The United States has not elected to intervene in and take over this litigation, and the relator has pursued this case pursuant to 31 U.S.C. § 3730(c)(3).

Although the United States has declined to intervene to take over this *qui tam* case, it remains a real party in interest, see United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211,

1214 (9th Cir. 1996), and will receive at least seventy percent of any recovery by the relator.

Moreover, because the vast majority of successful actions under the FCA are either brought by

the Attorney General or otherwise prosecuted by the United States, the United States has a

substantial interest in ensuring that the FCA is correctly interpreted.

## DISCUSSION

### YNHH'S CLAIMS TO MEDICARE AND MEDICAID WERE CLAIMS TO THE FEDERAL GOVERNMENT

YNHH argues that it cannot be held liable under the FCA because the claims at issue

were submitted to Medicare and Medicaid contractors, not to the Government itself.  See Reply

Memorandum, 10-11.  This argument is contrary to the plain language and legislative history of

the FCA, which clearly imposes liability on persons who fraudulently obtain federal money from

Government contractors and grantees.  Defendant's argument is premised on the recent spilt

decision of the D.C. Circuit in U.S. ex rel. Totten v. Bombardier Corp., 380 F.3d 488 (D.C. Cir.

2004) (Totten).  As set forth below, the United States believes the decision of the D.C. Circuit is

wrongly decided.  Moreover, even if the Totten decision were adopted by this Circuit, it does not

stand for the proposition that the FCA does not apply to claims submitted to Government

contractors.  Rather, it stands for the much narrower proposition that the FCA does not protect

Government grant money when the grant is provided to the grantee before the alleged fraud

occurs.

1.    **Totten** **Was Wrongly Decided And Should Not Be Adopted by This Court**

The FCA has always applied to situations in which a defendant fraudulently obtains federal funds through a Government contractor or grantee.[3]  The 1986 amendments to the statute, which were designed to strengthen the statute as a weapon against fraud, clarified this fact.  31 U.S.C. § 3729(a), as amended, contains seven subsections that set forth seven different ways in which a defendant can incur liability under the FCA.  One imposes liability on anyone who "knowingly presents, **or causes to be presented**, to an officer or employee of the United States Government. . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1) (emph. added).  Another imposes liability on anyone who "knowingly, makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2).  To avoid any doubt that the FCA applies to efforts to bilk the Government through innocent contractors, grantees, or other recipients of federal funds, Congress added the following language to the statute in 1986:

> For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c).

---

[3]See U.S. v. Bornstein, 423 U.S. 303 (1976) (subcontractor caused prime contractor to submit false claims to Government); U.S. ex rel. Marcus v. Hess, 317 U.S. 537 (1943)(where defendants colluded on bidding on contracts with local governments that were partially funded by federal Government, FCA applied even without a direct contractual relationship between the defendants and the federal Government).

YNHH's argument is based on the <u>Totten</u> case. Reply Memorandum at 10-11. That case involved allegations that the defendant defrauded National Railroad Passenger Corporation (Amtrak), and that Amtrak paid the defendant with funds that included federal grant money. The majority opinion held that since Amtrak was a Government grantee, rather than a Government agency or instrumentality, fraud against Amtrak would not necessarily violate the FCA. It held that someone that submits a false or fraudulent claim to a Government grantee can only be held liable under the FCA if the grantee subsequently "presents" a claim for reimbursement to the federal Government. <u>Totten</u>, 380 F.3d at 493. It held that the defendant might have violated the FCA if Amtrak had sought payment or reimbursement from the Government <u>after</u> it had been defrauded, but since Amtrak had received the federal funds at issue <u>before</u> it was defrauded, no false or fraudulent claim was ever "presented" to the Government. <u>Id</u>.[4]

As explained in Judge Garland's dissenting opinion, the majority's decision is inconsistent with the text and legislative history of the statute. On its face, § 3729(a)(2) does not include any "presentment" requirement. Moreover, § 3729(c) expressly states that fraud against a Government grantee is covered by the statute "if the United States Government provides any portion of the money or property which is requested or demanded, **or** if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." (emph. added). Clearly, the statute applies regardless of whether the Government is defrauded directly or indirectly, and regardless of whether a grantee receives its federal money before or after it is defrauded. By limiting the FCA to situations

---

[4]Even the <u>Totten</u> majority did not dispute that someone who "causes" a false or fraudulent claim to be presented to an officer or employee of the United States violates 31 U.S.C. § 3729(a)(1).

where a grantee receives federal funds after it was defrauded, the <u>Totten</u> majority renders the first half of 28 U.S.C. §3729(c)'s definition of claim meaningless.

The <u>Totten</u> majority argued that the first half of Section 3729(c) reflected Congress' desire to make clear that a claim exists if the funds requested by the false claim are paid directly to the subcontractor rather than the grantee, not to permit FCA liability to lie where the grantee first receives the funds and is then defrauded. The majority's strained attempt to preserve the meaning of the first "if" clause in Section 3729(c) is unavailing for two reasons. First, there is simply no indication that Congress was concerned about situations where the Government pays sub-grantees directly and we are unaware of any program that actually operates in this fashion. The primary purpose of grant relationships is to enable the Government to avoid having to deal with sub-grantees, and instead to put that onus on the grantee. Second, the majority's interpretation of the first "if" clause suffers from a grammatical flaw. As the dissent explained, the majority's reading incorrectly assumes that the first "if" clause uses the term "provides" in the future, rather than the present, tense. <u>See</u> 380 F.3d at 511.

Not only does the <u>Totten</u> majority's decision go beyond the plain language of the FCA, it is also contrary to the legislative history of the 1986 Amendments. As Judge Garland correctly explained:

> As this court recognized in [*U.S. ex rel. Yesudian v. Howard University*, 153 F.3d 731 (D.C. Cir. 1998)], the purpose of the new definition of "claim" added in 1986 was to " 'clarif[y] that the statute permits the Government to sue under the False Claims Act for frauds perpetrated on Federal grantees, including States and other recipients of federal funds.' " 153 F.3d at 737 (quoting S. Rep. No. 99-345, at 21). The Senate Judiciary Committee stressed that it did not matter whether the claim was made to a government employee or to a grantee. *"[A] false claim is actionable,"* the Committee said, *"although the claims or false statements were made to a party other than the Government,* if the payment thereon would ultimately result in a loss to the United States." S. Rep. No. 99-345, at 10

(emphasis added). And the House Judiciary Committee agreed: *"[C]laims or false statements made to a party other than the Government are covered by this term if payment thereon would ultimately result in a loss to the United States."* H.R.Rep. No. 99-660, at 21 (emphasis added).

Moreover, the "Senate Judiciary Committee indicated that the new subsection was inserted in response to earlier court holdings that 'a fraud against the grantee does not constitute a fraud against the Government of the United States where 'once the United States has made the grant to the State .. . or other institution, it substantially relinquishes all control over the disposition of the money.' " *Yesudian*, 153 F.3d at 737 (quoting S.Rep. No. 99-345, at 21).

Totten, 380 F.3d at 512 (Garland, J., dissenting).

In short, the Government believes strongly that the Totten case was wrongly decided, for the reasons set forth in Judge Garland's dissent. Those who bilk Government programs out of federal funds must be held accountable under the FCA, regardless of the timing of the fraud.

**2.    Even If the Totten Case Was Correctly Decided, It Does Not Apply to Fraud Against Medicare And Medicaid**

This Court does not need to reach the question of whether Totten was correctly decided, because the decision is clearly inapplicable in Medicare or Medicaid cases. Even though the Government relies on private contractors to process Medicare and Medicaid claims, these contractors are acting solely on the Government's behalf, and do not pay the claims with their own funds. With all Medicare and Medicaid claims, the payment of money by the federal Government follows subsequent to, and as a direct result of, the submission of claims by the provider.[5] When someone defrauds Medicare or Medicaid, there is no question that it is the taxpayers, not the contractors, that pay the bill. This is the precise situation that the Totten majority said is covered by the FCA.

---

[5]Health care providers, suppliers and beneficiaries all submit Medicare claims for payment. For ease of reference, we will simply refer to "providers."

Totten involved alleged fraud against Amtrak, a corporation that receives funding from a number of sources, including federal subsidies and passenger fees. The Totten majority repeatedly emphasized "the distinction between the Government and its grantees." Id. at 499. It stated, "[m]aking false records or statements to get a false claim paid or approved by Amtrak is not making or using a 'false record or statement to get a false or fraudulent claim paid or approved *by the Government*.'" Totten, 380 F.3d at 498 (citation omitted, emph. in orig.). It expressed concern that if the Government was allowed to sue the defendant under the FCA for fraud against Amtrak, Amtrak could still sue on its own behalf for the same fraud, potentially resulting in multiple recoveries for the same conduct. Id. at 496.

For the Totten majority, the key fact was that the alleged fraud occurred after Amtrak had received the federal grant money at issue. While the alleged fraud might have caused Amtrak to waste some of the federal grant money it had already received, it was not clear that it would have caused the federal Government to spend any additional money after the fraud occurred. If the fraud had occurred before the grant, the majority held that the FCA would apply:

> False Claims Act liability will attach if the Government *provides* the funds to the grantee *upon presentment of a claim* to the Government. Liability will also attach if, after the grantee presents the claim, the Government *provides* the funds directly to the claimant. . .

Id. at 493 (emph. in orig.).

Unlike Amtrak, the companies that process Medicare and Medicaid claims are not Government grantees, but Government contractors that process claims for Government funds on the Government's behalf. Medicare payments are ultimately made by the Medicare Trust Funds,

not by the Government contractors who process the claims.[6]  Similarly, the federal share of

Medicaid payments are ultimately made from the United States Treasury, although Medicaid

fraud victimizes state governments as well as the federal Government.[7]

Under both the Medicare and Medicaid systems, all of the claims that providers submit to

their contractors are processed in accordance with rules promulgated by the CMS, a federal

Government agency, and claims that are approved lead directly to withdrawals of money from a

Federal Reserve Bank.  Since the claims are paid by the Government after they are submitted to

the applicable contractor, Medicare and Medicaid fraud would always be actionable under the

FCA even under the Totten decision.

In short, even if this Court agrees with the Totten majority, it would not provide a defense

in this case.  Even though YNHH, like all Medicare and Medicaid providers, submitted its

---

[6]    The Federal Hospital Insurance Trust Fund and Federal Supplementary Insurance
Trust Fund, established at Sections 1817 and 1841, respectively, of the Social Security Act, were
created on the books of the United States Treasury.  See also 42 U.S.C. §§ 1395i and 1395t.

[7]    Under the Medicaid system, the contractor for the state in question generates a
"Funding Request Form" that indicates, among other things, how much money will be needed
from the federal Government to cover the federal share of the week's Medicaid claims.  Also,
state Medicaid agencies submit quarterly reports to the HHS that summarize their Medicaid
expenditures for the quarter.  Each report includes the following certification: "This report only
includes expenditures under the Medicaid program . . . that are allowable in accordance with
applicable implementing federal, state, and local statutes, regulations, policies, and the state plan
approved by the Secretary and in effect during the Quarter Ended. . . ."  If some of the claims that
the state paid during the course of the quarter were unallowable under Medicaid rules, this
statement would be false.  Thus, where a Medicaid provider submits a fraudulent Medicaid claim
to its Medicaid contractor, this also results in a false quarterly report to the federal Government
in support of the Medicaid provider's fraudulent claim.

Medicare and Medicaid claims to Government contractors, all of the claims at issue were passed

to, and subsequently paid by, the federal Government.[8]

_____

[8] YNHH also cites to <u>U.S. ex rel. Atkins v. McInteer</u>, 2004 WL 2651341 (N.D. Ala., Oct. 27, 2004), in support of its arguments.  Reply Memorandum at 10.  In <u>Atkins</u>, a  district court judge in an Alabama <u>qui</u> <u>tam</u> case in which the Government had declined to intervene decided *sua sponte* to apply <u>Totten</u>'s reasoning to a Medicaid case.  The <u>Atkins</u> decision is premised on unsupported and incorrect statements of law.  For example, citing only <u>Totten</u>, the court suggested that a Medicaid provider who submits a false claim to a state Medicaid agency, cannot be held liable under the FCA, <u>even if the false claim is subsequently presented to a federal official</u>. <u>Id.</u> at *1.  As discussed above, this goes well beyond the holding of <u>Totten</u>, and is completely inconsistent with the plain language of the statute.  The court also stated, "Because the FCA has a quasi-criminal aspect (treble damages), it must be strictly construed against the United States and the relator." <u>Id.</u>  The court cited no legal authority for this proposition, which is contrary to law. <u>See</u> <u>U.S. v. Niefert-White</u>, 390 U.S. 228, 232 (1968).  Unfortunately, because the judge raised these issues *sua sponte*, neither the Government nor the Relator was given an opportunity to call his attention to any of the case law or the facts regarding Medicaid that are discussed in this brief.

-10-

## <u>CONCLUSION</u>

The United States respectfully requests that the Court consider its legal arguments made above in addressing YNHH's motion to dismiss and hold that claims submitted to Medicare and Medicaid are claims submitted to the federal Government for the purposes of the FCA.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

By:    _____/s/_____
RICHARD M. MOLOT
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT21676
157 Church Street
New Haven, Connecticut 06510
(203) 821-3792


_____/s/_____
MICHAEL F. HERTZ
JOHN HENEBERY
Attorneys, Civil Division
Commercial Litigation Branch
Post Office Box 261
Ben Franklin Station
Washington, DC  20044
Telephone: 202-514-7361

<u>CERTIFICATION OF SERVICE</u>

This is to certify that a true and correct copy of the United States' Statement of Interest in

Response to Defendant Yale New Haven Hospital's Motion to Dismiss the Second Amended

Complaint, was served by first-class mail, this 19th day of January, 2005, on:

Mary Alice Leonhardt, Esq.
102 Oak Street
Hartford, CT 06106

Peter B. Prestley, Esq.
Jacques J. Parentau, Esq.
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue, Suite 201
Hartford, CT 06106

J. Alexander Lawrence
Morrison & Foerster - NY
1290 Avenue Of The Americas
New York, NY 10104-0050

Kenneth D. Heath
Wiggin & Dana
One Century Tower
265 Church Street P.O. Box 1832
New Haven, CT 06508-1832

Patrick M. Noonan
Delaney, Zemetis, Donahue, Durham & Noonan
Concept Park
741 Boston Post Rd.
Guilford, CT 06437

[continued, next page]

Stuart M. Gerson, Esq.

Epstein, Becker & Green

1227 25th Street, N.W.

Washington, D.C. 20037

Daniel L. FitzMaurice

Day, Berry & Howard-Htfd-CT
Cityplace I
185 Asylum St.
Hartford, CT 06103-3499

_____/s/_____
RICHARD M. MOLOT
ASSISTANT U.S. ATTORNEY