UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

UNITED STATES OF AMERICA ex rel. and ROBERT C. SMITH, M.D.,

Plaintiff,

- against -

YALE-NEW HAVEN HOSPITAL, INC., YALE UNIVERSITY, NEW YORK PRESBYTERIAN HOSPITAL AND CORNELL UNIVERSITY JOAN AND SANFORD I. WEILL MEDICAL COLLEGE,

Defendants.

**Civil Action No.
3:02CV01205(PCD)**

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
DEFENDANT CORNELL UNIVERSITY JOAN AND SANFORD I.
WEILL MEDICAL COLLEGE TO DISMISS THE THIRD AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... i

INTRODUCTION AND STATEMENT OF FACTS .................................................................... 1

  A.  The FCA Fraud Claim. ......................................................................................................... 1

  B.  The Retaliation Claims.......................................................................................................... 2

  C.  The New York Common Law Claims. .................................................................................. 4

  D.  The Procedural History. ........................................................................................................ 5

ARGUMENT

POINT I

PLAINTIFF'S FIRST CAUSE OF ACTION ALLEGING FRAUD UNDER 31 U.S.C.
§ 3729 SHOULD BE DISMISSED PURSUANT TO RULES 9(b) AND 12(b)(6) .............. 6

  A.  Plaintiff's First Cause of Action Sounds in Fraud........................................................ 6

  B.  The Applicable Standard Under Rule 9(b). ................................................................... 7

  C.  The Fraud Claim Against Cornell is Not Pleaded with Sufficient Particularity........... 8

    1.  Plaintiff's allegations of Medicare/Medicaid fraud..................................................... 9

    2.  The lack of specificity compels dismissal of the fraud claim against Cornell......... 11

POINT II

PLAINTIFF'S CLAIM FOR RETALIATION UNDER SECTION 3730(h)
SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) ............................................ 15

  A.  Plaintiff's § 3730(h) Retaliation Claim is Barred by the Applicable
      One-Year Statute of Limitations Set Forth in the New York Labor Law.................. 15

  B.  Plaintiff Fails to Plead Adequately the Required Elements of a Retaliation
      Claim Under 31 U.S.C. § 3730(h).............................................................................. 17

    1.  Plaintiff fails to allege facts sufficient to establish that he was engaged
        in protected activity as contemplated by the FCA. .................................................. 18

    2.  Plaintiff has failed to allege that Cornell had notice of any of his purported
        protected activity...................................................................................................... 23

    3.  Plaintiff has failed to allege facts from which it can reasonably be inferred
        that he was not re-appointed because of protected activity...................................... 27

POINT III

PLAINTIFF'S CLAIM UNDER NEW YORK LABOR LAW § 741 IS
TIME-BARRED AND OTHERWISE LEGALLY DEFECTIVE ........................................ 29

    A. Dr. Smith's § 741 Claim is Time-Barred. .................................................................. 30

    B. Dr. Smith Has Waived His Other Employment-related Claims. ................................ 31

        1. The waiver provision found in § 740(7) of the New York Whistleblower
           Law applies to claims asserted under § 741 ............................................................. 31

        2. The broad waiver provision of § 740(7) bars the New York common law
           claims asserted in the Fourth through Seventh Causes of Action. ........................... 32

    C. Cornell is Not an "Employer" as Defined in Section 741. .......................................... 34

    D. Dr. Smith Must Allege Improper Quality of Patient Care by his Employer,
       Not By a Third a Party. .............................................................................................. 35

    E. Allegations of Improper Billing are not Actionable Under § 741. .............................. 36

POINT IV

THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
DEFAMATION ..................................................................................................................... 36

    A. New York's One-Year Statute of Limitations Bars the Defamation Claim. .............. 36

    B. Dr. Smith's Defamation Claim Fails as a Matter of Law, because He Does
       Not Allege any Defamatory Statements. .................................................................... 37

POINT V

PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS .............................................................................................. 40

    A. Plaintiff's Claim Is Barred by the One-Year Statute of Limitations. .......................... 40

    B. Plaintiff Does Not State A Claim For Relief Under New York Law. ......................... 40

POINT VI

PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION
OF EMOTIONAL DISTRESS .............................................................................................. 41

POINT VII

PLAINTIFF FAILS TO STATE A CLAIM OF BREACH OF CONTRACT .................... 42

POINT VIII

THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED AS
AGAINST CORNELL FOR INSUFFICIENCY OF PROCESS BECAUSE
IT WAS NOT ACCOMPANIED BY A SUMMONS............................................................. 43

POINT IX

DEFENDANT CORNELL WAS MISJOINED UNDER RULE 20 AND
THE CLAIMS AGAINST IT SHOULD BE DISMISSED OR SEVERED ........................ 45

A. Cornell is Not Properly Joined in this Action. .......................................................... 45

B. The Misjoinder of Cornell Requires Dismissal of the Claims Against It. .................. 48

C. Absent Dismissal, the Claims Against Cornell Must be Severed and Transferred. .... 49

POINT X

SHOULD THE COURT DECLINE TO DISMISS THE ACTION AGAINST
CORNELL, IT SHOULD BE TRANSFERRED TO THE SOUTHERN
DISTRICT OF NEW YORK ................................................................................................ 50

A. The Southern District of New York is a Forum With Proper
Jurisdiction and Venue. .............................................................................................. 51

B. The Relevant Factors Point Decidedly to the Southern District of New York
as the Most Appropriate Forum in Which to Litigate the Claims Against Cornell. .. 51

1. Location of the events giving rise to the action......................................................... 52

2. Convenience of the parties ....................................................................................... 52

3. Convenience of witnesses ......................................................................................... 53

4. Relative ease of access to proof ............................................................................... 53

5. Availability of process for unwilling witnesses ....................................................... 54

6. Plaintiff's choice of forum ....................................................................................... 54

7. The Forum's familiarity with governing law ........................................................... 54

8. Trial Efficiency ......................................................................................................... 55

9. The Interests of Justice ............................................................................................. 55

CONCLUSION.................................................................................................................... 55

-

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

Abrahams v. Young & Rubicam, 979 F. Supp. 122 (D. Conn. 1997) ............................................39

Alfadda v. Fenn, 159 F.3d 41 (2d Cir. 1998) ................................................................................50

Arroyo v. WestLB Admin., Inc., 54 F. Supp. 2d 224 (S.D.N.Y. 1999) ........................................41

Berwerger v. County of Orange, 121 F. Supp. 2d 334 (S.D.N.Y. 2000) ......................................35

Blusal Meats, Inc. v. United States, 638 F. Supp. 824 (S.D.N.Y. 1986 ........................................13

Bristol-Myers Squibb Co. v. Andrx Pharmaceuticals, LLC, No. 03 Civ. 2503, 2003 U.S.
    Dist. LEXIS 21967 (S.D.N.Y. Dec. 5, 2003) ....................................................................50, 51

Byerly v. Ithaca College, 290 F. Supp. 2d 301 (N.D.N.Y. 2003 ..................................................42

In re Cardiac Devices Qui Tam Litigation, 221 F.R.D. 318 (D. Conn. 2004) ...........................6, 12

Celle v. Filipino Reporter Enterprises, 209 F.3d 163 (2d Cir. 2000) ...........................................37

Devaney v. Chester, 709 F. Supp. 1255 (S.D.N.Y. 1989) ..............................................................6

Douglas v. Syracuse Univ. College of Law, 1995 U.S. Dist. LEXIS 13529 (S.D.N.Y.
    Sept. 18, 1995) ..........................................................................................................................53

Doyle v. Hasbro, Inc., 103 F.3d 186, United States ex rel. v. Barmak, No. 95  2002 U.S.
    Dist. LEXIS 8509 (S.D.N.Y. May 13, 2002) ..............................................................................8

Faldetta v. Lockheed Martin Corp., 98 Civ. 2614, 2000 U.S. Dist. LEXIS 16216
    (S.D.N.Y. Nov. 9, 2000) .................................................................................................. passim

German v. Federal Home Loan Mort. Corp., 896 F. Supp. 1385 (S.D.N.Y. 1995) .................49, 50

Ginett v. Computer Task Group, 962 F.2d 1085 (2d Cir. 1992) ....................................................45

Gold v. Morrison-Knudsen Co., 68 F.3d 1475 (2d Cir. 1995) ........................................................6

Hayduk v. Lanna, 775 F.2d 441 (1st Cir. 1985) ............................................................................10

Hopper v. Anton, 91 F.3d 1261 (9th Cir. 1996) .................................................................... passim

Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176 (3d Cir. 2001) ........................................23

*Kelly v. Schmidberger*, 806 F.2d 44 (2d Cir. 1986) ........................................................................37

*Kloth v. Citibank (South Dakota)*, 33 F. Supp. 2d 115 (D. Conn. 1998) ......................................38

*Lescare Kitchens, Inc. v. Home Depot U.S.A., Inc.*, No. 3:98CV1354, 1998 U.S. Dist.
LEXIS 16242 (D. Conn. Sept. 29, 1998)...................................................................................51

*Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034 (N.D. Ill. 1998) .........................18, 23, 27

*Macaluso v. New York State Dept. of Environmental Conservation*, 115 F.R.D. 16
(E.D.N.Y. 1986)........................................................................................................................43

*McGrane v. The Reader's Digest Association, Inc.*, 863 F. Supp. 183 (S.D.N.Y. 1994) ..............32

*McKenzie v. BellSouth Telecoms, Inc.*, 219 F.3d 508 (6th Cir. 2000) .............................19, 24, 27

*Mikes v. Straus*, 889 F. Supp. 746 (S.D.N.Y. 1995)..........................................................17, 18, 23

*Moor-Jankowski*, 1998 U.S. Dist. LEXIS 12305 ................................................................... *passim*

*Moor-Jankowski v. Board of Trustees of N.Y. Univ.*, 96 Civ. 5997, 1998 U.S. Dist.
LEXIS 12305 (S.D.N.Y. Aug. 10, 1998).................................................................................17

*New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1988 ...........................................49

*O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98 (D. Conn. 1998).......................................51

*Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273 *United States ex rel. Capella v. Norden
Sys.*, No. 3:94-C 2000 U.S. Dist. LEXIS 13352 (D. Conn. Aug. 24, 2000)...............................7

*Owitz v. Beth Israel Medical Center*, 2004 WL. 258087 (Sup. Ct., N.Y. Co. 2004) ..............32, 33

*Probatter Sports, LLC v. Southampton Sports Zone, Inc.*, No. 3:02 CV 1776, 2003 U.S.
Dist. LEXIS 18406 (D. Conn. Aug. 27, 2003)..........................................................................52

*Reed v. United Transport Union*, 488 U.S. 319 (1989) .................................................................16

*Robertson v. Bell Helicopter Textron., Inc.*, 32 F.3d 948 (5th Cir. 1994)................................19, 26

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)..........................................................................36

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)............................................................................7

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972) ................................................................................6

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994)...............................................7, 10

*Smith v. Soros*, 2003 WL. 22097990 (S.D.N.Y. 2003) ...........................................................39, 40

Solas v. Jones, 2005 WL. 525444 (S.D.N.Y., Mar. 7, 2005)..............................................................36

Treglia v. Town of Manlius, 68 F. Supp. 2d 153 (N.D.N.Y. 1999)................................................40

United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., No. 96-CV-
1380, 2000 WL. 17838 (E.D. La. Jan. 10, 200)..........................................................................12

United States ex rel. North Santiam Watershed Council v. Kinross Gold USA, Inc., No.
C 96-3673, 1998 WL. 118176 (N.D. Cal., Mar. 9, 1998)......................................................47, 48

United States ex rel. Butler v. Magellan Health Servs., Inc., 101 F. Supp. 2d 1365 (M.D.
Fla. 2000)....................................................................................................................................12

United States ex rel. Capella v. Norden Sys., Inc., No. 3:94-CV-2063, 2000 U.S. Dist.
LEXIS 13352 (D. Conn. Aug. 24, 2000)..............................................................................11, 14

United States ex rel. Citizens United to Reduce and Block Federal Fraud, Inc. v.
Metropolitan Medical Center, Inc., No. 89-0592-CIV, 1990 U.S. Dist. LEXIS 18339
(S.D. Fla., Jan. 11, 1990)...........................................................................................................45

United States ex rel. DeCarlo v. Kiewit/AFC Enters., Inc., 937 F. Supp. 1039 (S.D.N.Y
1996)...........................................................................................................................................11

United States ex rel. Grynberg v. Alaska Pipeline Co., No. 95-725, 1997 U.S. Dist.
LEXIS 5221 (D.D.C., Mar. 27, 1997)....................................................................................45, 46

United States ex rel. Gublo v. Novacare, Inc., 62 F. Supp. 2d 347 (D. Mass. 1999) ...................11

United States ex rel. LaValley v. First Nat'l Bank, 625 F. Supp. 591 (D.N.H. 1985)...................54

United States ex rel. Lujan v. Hughes Aircraft Co., 162 F.3d 1027 (9th Cir. 1998)...............15, 16

United States ex rel. Mikes v. Straus, 846 F. Supp. 21 (S.D.N.Y. 1994)......................................32

United States ex rel. Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.,
No. 4-96-734, 1997 U.S. Dist. LEXIS 21402 (D. Minn. Mar. 3, 1997)..............................12, 13

United States ex rel. Penizotto v. Bates E. Corp., No. 94-3626 1996, U.S. Dist. LEXIS
10316 (E.D. Pa. Jul. 18, 1996).................................................................................................54

United States ex rel. Pentagon Technologies Int'l Ltd. v. CACI Int'l Inc., No. 96 Civ.
7827, 1997 U.S. Dist. LEXIS 12224 (S.D.N.Y. 1997), aff'd, 172 F.3d 39 (2d Cir.
1999) ..........................................................................................................................................13

United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995 (2d Cir. 1995) ........................43

United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514 (10th Cir. 1996) ................................................................................................................................25, 26

United States ex rel. Stinson, Lyons, Gerlin & Bustamonte P.A. v. Blue Cross & Blue Shield, Inc., 755 F. Supp. 1040 (S.D. Ga. 1990) ........................................................................10

United States ex rel. v. Barmak, No. 95 CV 7637, 2002 U.S. Dist. LEXIS 8509 (S.D.N.Y. May 14, 2002).........................................................................................................11

United States ex rel. Vallejo v. Investronica, Inc., 2 F. Supp. 2d 330 (W.D.N.Y. 1998)...... passim

United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731 (D.C. Cir. 1998)........................19

United States Surgical Corp. v Imagyn Med. Tech., 25 F. Supp. 2d 40 (D. Conn. 1998).............52

United States v. Nature's Farm Prods., No. 00 Civ. 6593, 2004 U.S. Dist. LEXIS 8485 (S.D.N.Y. May 12, 2004)...........................................................................................................54

Van Dusen v. Barrack, 376 U.S. 612 (1964) .................................................................................50

Wanamaker v. Columbian Rope Co., 713 F. Supp. 533 (N.D.N.Y. 1989 ......................................39

Wine Mkts. Int'l v. Bass, 939 F. Supp. 178 (E.D.N.Y. 1996).........................................................52

Zahodnik v. IBM Corp., 135 F.3d 911 (4th Cir. 1997)...................................................................19

## STATE CASES

Bordell v. General Electric Co., 88 N.Y.2d 869 (1996) ................................................................29

Borden v. North Shore University Hospital, 275 A.D.2d 335 (2d Dept. 2002) .......................33, 35

Burlew v. American Mut. Ins. Co., 63 N.Y.2d 412 (1984) .............................................................41

Demas v. Levitsky, 291 A.D.2d 653 (3d Dept. 2002) ....................................................................40

Freihofer v. Hearst Corp., 65 N.Y.2d 135 (1985)........................................................................40

Gonzalez v. John T. Mather Memorial Hospital, 147 Misc. 2d 1082, 599 N.Y.S.2d 467 (Sup. Ct. Suffolk Co. 1990) ........................................................................................................32

Hayles v. Advanced Travel Management Corp., 2004 WL. 26548 (S.D.N.Y. Jan. 5,

Kern v. DePaul Mental Health Services, Inc., 152 A.D.2d 957 (4th Dept. 1989).........................29

Kimmerle v. New York Evening Journal, 262 N.Y. 99 (1933)......................................................37

Maas v. Cornell University, 94 N.Y.2d 87 (1999)........................................................................42

Maas v. Cornell University, 253 A.D.2d 1 (3d Dept. 1999), aff'd, 94 N.Y.2d 87 (1999) .......41, 42

O'Connor v. O'Connor, 201 Conn. 63213 (1986)...........................................................................36

Obolensky v. New York State Division of Human Rights, 67 A.D.2d 1069 (3d Dept.
1979) ..........................................................................................................................................30

Pipas v. Syracuse Home Association, 226 A.D.2d 1097 (2d Dept. 1996).....................................32

Queensborough Community College v. State Human Rights Appeal Board, 41 N.Y.2d
926, 394 N.Y.S.2d 625 (1977)..................................................................................................30

Radice v. ElderPlan, Inc., 217 A.D.2d 690, 630 N.Y.S.2d 326 (2d Dept. 1995) .........................35

Reich v. Manhattan Boiler & Equip. Corp., 91 N.Y.2d 772 (1998)..............................................41

Remba v. Federation Employment and Guidance Service, 76 N.Y.2d 801 (1990).......................35

## FEDERAL STATUTES

31 U.S.C. § 3732(a) .......................................................................................................................48

28 U.S.C. § 1404(a) ..................................................................................................................1, 50

31 U.S.C. § 3730(h) ................................................................................................................ passim

Fed. R. Civ. P. 9(e) ................................................................................................................. passim

Fed. R. Civ. P. 12(b)(2)(4).......................................................................................................passim

Fed. R. Civ. P. 21............................................................................................................................1

## STATE STATUTES

N.Y. Labor Law § 740 ........................................................................................................16, 29, 30

N.Y. Labor Law § 741 ........................................................................................................16, 29, 30

## INTRODUCTION AND STATEMENT OF FACTS

Defendant Cornell University Joan and Sanford I. Weill Medical College ("Cornell") respectfully submits this memorandum of law along with the accompanying Declaration of Gary P. Schulz ("Schulz Decl.") and the Affidavit of Sandra D. McCabe ("McCabe Aff.") and the respective exhibits attached thereto, in support of its motion to dismiss the Third Amended Complaint dated November 24, 2004 in its entirety pursuant to Rules 9(b), 12(b)(2),(4),(5),(6), and 20 of the Federal Rules of Civil Procedure, or in the alternative, to sever any surviving claims and transfer the case against Cornell to the Southern District of New York pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a).

The fifth iteration of plaintiff Robert C. Smith, M.D.'s pleading (characterized as his "Third Amended Complaint") attempts to allege causes of action against Cornell under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA") for fraud (First Cause of Action), retaliation for protected activity under the FCA, 31 U.S.C. § 3730(h) (Third Cause of Action), New York common law claims for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress and breach of contract (Fourth through Seventh Causes of Action), and retaliation in violation of § 741 of the New York Labor Law (Eighth Cause of Action). The Third Amended Complaint, a copy of which is annexed to the Schulz Decl. as Exhibit "A", is remarkably devoid of facts with respect to Cornell. Indeed, it is a complaint in search of a cause of action.

### A. The FCA Fraud Claim.

The FCA fraud claim, as pleaded, relates to the billing practices of the "Defendant Hospitals," not Cornell. In his First Cause of Action, plaintiff alleges that Defendant Hospitals violated the FCA by billing Medicare and Medicaid for "completed but not read" radiological

studies. Plaintiff properly recognizes the distinction between the radiological exams billed by

co-defendant New York Presbyterian Hospital ("NYPH") and those billed by Cornell. The

subject radiological services are divided into a "Technical Component," which is the actual

taking or performance of the exam and the "Professional Component," or the interpretation of

the exam results by a "Qualified Physician." See Third Amended Complaint at ¶¶ 12-15.

According to plaintiff, the Defendant Hospitals, not Cornell, perform and bill for the Technical

Component of the radiological studies. See id. at ¶ 16.

Plaintiff correctly alleges that the physicians' billing systems are separate from the

Defendant Hospitals' systems, see Third Amended Complaint at ¶ 16, and, specifically, that

NYPH and Cornell use separate billing systems, see id. at ¶ 67. There are no allegations that

Cornell's billings for the Professional Component, provided by Cornell-employed physicians,

such as Smith, see id. at ¶ 15, were improper in any way. Indeed, plaintiff specifically alleges

that Cornell's billings were accurate. "In most instances, the University is billing for the correct

exam…." Id. at ¶ 67(c).

Plaintiff fails to identify a single allegedly false or fraudulent claim submitted to the

federal government by Cornell, dooming his FCA fraud claim against Cornell to failure.

### B. The Retaliation Claims.

Plaintiff's federal and state retaliation claims (Second and Third Causes of Action) rely

on several purported acts of retaliation. He alleges, in a single paragraph, that the retaliation

took the form of unspecified harassment, changes in his administrative "privileges," and

receiving notice on June 28, 2002 that his faculty appointment and employment would not be

renewed. Third Amended Complaint at ¶ 207. However, the key allegation of retaliation was

Cornell's decision in June 2002 that "his employment contract and appointment" at Cornell would not be renewed. Id. at ¶ 207(d).

However, in a prior action, Burrell v. Yale University, No. 00-CV-0159421-S (Ct. Super. Waterbury Dist.) ("the State Court Action"), Dr. Smith testified at his deposition that he was not terminated and left Cornell voluntarily. When questioned as to whether he was "asked to leave" Cornell, Dr. Smith's unequivocal response was, "No." See Schulz Decl., Exhibit "B" at p. 454.

> Q.  And you have voluntarily decided, you voluntarily decided to leave Cornell to become a full-time law student, is that right?
>
> A.  That's correct.

Id. at p. 457; see also id. at pp. 451-52. According to Dr. Smith's prior sworn testimony, there simply was no retaliation, under the FCA or New York Labor Law.[1] In addition to this fatal shortcoming, plaintiff's New York Labor Law § 741 claim is subject to dismissal because it is time-barred, he fails to allege that Cornell is an "employer" within the ambit of § 741, and because his alleged complaints about billing relate to conduct not by his former employer, Cornell, but instead by NYPH, a third party.

The retaliation claims against Cornell under § 3730(h) of the FCA (Third Cause of Action) and New York Labor Law § 741 (Eighth Cause of Action) relate to complaints by Dr. Smith while he was employed as a member of the faculty of Cornell from July 1999 through June 2003 in the Department of Radiology as a Professor of Radiology. See Third Amended Complaint at ¶¶ 7, 62. Plaintiff alleges that he began complaining shortly after his arrival at Cornell about "billing, compliance and patient care issues" at Cornell and NYPH. Id. at ¶ 66.

---

[1]  At his deposition on January 24, 2003 (after he alleges he received notice of his non-renewal in June 2002, but before he left Cornell in 2003), Dr. Smith categorically denied that he had lost his position at Cornell, that he would be leaving Cornell in June 2003, or that his position was not renewed. See Schulz Decl., Exhibit "C" at pp. 4-5.

The purported complaints do not relate specifically to any alleged fraudulent bills submitted by Cornell to the government. For this reason, as well as the fact that Dr. Smith failed to conduct any investigation which has disclosed a single false claim submitted by Cornell to the government, and because billing and compliance issues were part of Smith's responsibilities at Cornell, plaintiff has not alleged adequately that he was engaged in protected activity under the FCA, and has similarly failed to allege facts from which it can be reasonably inferred that Cornell had knowledge of any such protected activity. This requires dismissal of his retaliation claim under § 3750(h).

The Third Amended Complaint is not clear which specific internal complaints relate to the New York Labor Law claim. In any event, the non-renewal of Dr. Smith's employment by Cornell in June 2002, is more than two years prior to his assertion of the § 741 claim, establishing it is time-barred by the applicable two-year limitations period.

## C. The New York Common Law Claims.

The additional New York state law causes of action demonstrate the shotgun nature of the Third Amended Complaint, and plaintiff's inability to adhere to basic pleading requirements. Although he styles portions of his complaint as common law claims for defamation, intentional and negligent infliction of emotional distress and breach of contract, he does not include specific allegations supporting any of these claims. For example, plaintiff does not allege any specific defamatory statements by any person, fails to allege any facts which would remotely suggest any extreme or outrageous conduct by Cornell, and fails even to identify the contract allegedly breached by Cornell. Moreover, all of these state common-law claims are time-barred and have

been waived by plaintiff's irrevocable election of remedies occasioned by his pleading of a retaliation claim under New York's Labor Law.[2]

### D. The Procedural History.

The procedural history of this action has been tortuous, to say the least. The initial complaint was filed on July 12, 2002. Plaintiff amended the complaint on September 16, 2003, and again on March 11, 2004. The Department of Justice filed its decision not to intervene on March 15, 2004.

The Court, on March 29, 2004, then partially unsealed the file, ordering service of the Second Amended Complaint on defendants. However, plaintiff did nothing for four months. Instead, he sought to file a Third Amended Complaint on July 27, 2004. Plaintiff attempted, but failed, to comply with the Court's prior Order to serve the Second Amended Complaint. Next, he delivered a Third Amended Complaint (without the accompanying motion to amend) to Cornell. Plaintiff then attempted, but failed, to effect proper service on Cornell of either the Second or Third Amended Complaints. Within the same week, but without notice to defendants, plaintiff filed a motion to amend a pleading that had been filed only the week before. Finally, on November 24, 2004, on his fifth round of pleading, plaintiff filed his motion for leave to serve another Third Amended Complaint, which was granted by the Court on February 25, 2005. It is this fifth pleading, the second version of the Third Amended Complaint, which is the subject of this motion.

---

[2]    Cornell adopts and incorporates herein by reference all arguments presented by defendant NYPH in support of its motion to dismiss the Third Amended Complaint, to the extent they are not inconsistent with those presented herein.

## ARGUMENT

## POINT I

### PLAINTIFF'S FIRST CAUSE OF ACTION
### ALLEGING FRAUD UNDER 31 U.S.C. § 3729 SHOULD
### BE DISMISSED PURSUANT TO RULES 9(b) AND 12(b)(6)

#### A. Plaintiff's First Cause of Action Sounds in Fraud.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud

or mistake, the circumstances constituting fraud or mistake shall be plead with particularity." It

is beyond dispute that Rule 9(b) applies to claims brought pursuant to the False Claims Act.

Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2d Cir. 1995) (citing cases), cert.

denied, 517 U.S. 1213 (1996); In re Cardiac Devices Qui Tam Litigation, 221 F.R.D. 318, 331

(D. Conn. 2004).

The frequently-cited observation in Segal v. Gordon, 467 F.2d 602 (2d Cir. 1972) is

applicable here:

> It is a serious matter to charge a person with fraud and hence no
> one is permitted to do so unless he is in a position and is willing to
> put himself on record as to what the alleged fraud consists of
> specifically.

Id. at 607. The specificity requirements of Rule 9 reflect "the desire to spare defendants the

harm to their reputations attendant to an allegation of fraud absent concrete factual circumstances

supporting the allegation." Devaney v. Chester, 709 F. Supp. 1255, 1260 (S.D.N.Y. 1989).

Dr. Smith accuses "Defendant Hospitals" of defrauding the government, but Cornell is

not a hospital. The only arguable allegation pertaining to Cornell's alleged involvement in this

purported fraud is that Dr. Smith complained that Medicare and Medicaid were being billed

improperly for the "Technical Component" of "Completed but Not Read Radiology Studies."

See Third Amended Complaint at ¶ 67. This overly broad allegation entirely fails to provide Cornell with adequate notice of the particulars of any alleged fraud.

This action was commenced, in its original form, more than two years ago, and the Government has declined to intervene. After this lengthy period of time and four prior attempts at pleading an FCA fraud claim, this *qui tam* relator should not now be permitted to assert serious and potentially damaging accusations of fraud against Cornell without definite and specific factual support required by Fed. R. Civ. P. 9(b).

## B. The Applicable Standard Under Rule 9(b).

The Second Circuit has held that in order to satisfy the requirements of Rule 9(b), a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127-28 (2d Cir. 1994); see also Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004). This standard has become known as the "who, what, when, where, and why test" of pleading under the False Claims Act. See Olsen v. Pratt & Whitney Aircraft, 136 F.3d 273 (2d Cir. 1998); United States ex rel. Capella v. Norden Sys., No. 3:94-CV-2063, 2000 U.S. Dist. LEXIS 13352 (D. Conn. Aug. 24, 2000).

The purpose of the specificity requirement is to ensure that the subject pleading provides the defendant with fair notice of the claim and with adequate information to frame a response. Rombach, 335 F.3d at 171; Capella, 2000 U.S. Dist. LEXIS 13352 at *14. The heightened pleading standard is designed to protect defendants from meritless claims of fraud and to prevent the filing of actions as a tactic to attempt to uncover relevant information during discovery. See

Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996); United States ex rel. v. Barmak, No. 95

CV 7637, 2002 U.S. Dist. LEXIS 8509 (S.D.N.Y. May 13, 2002).

This pleading standard has a special importance in the context of *qui tam* actions brought

by healthcare employees. In deciding whether a Medicare/Medicaid fraud complaint met the

requirements of Rule 9(b), or should be dismissed, one district court commented on the

application of the "who, what, when, where and why test" as follows:

> [The test] permits the court to apply standard, orthodox and
> uniform pleading requirements with respect to specificity without
> fear that, in doing so, risks to health or safety are ignored. It is
> thus important that Qui Tam suits be allowed to proceed where
> meritorious, and equally that they not be used to transmute
> employment disputes initiated for other reasons into daunting
> damage claims making it hazardous for an employer to exercise
> essential discipline required for a workplace to function. An
> adequately detailed complaint is an essential device for
> determining which characterization is most applicable to a case.

United States ex rel. Mikes v. Straus, 853 F. Supp. 115, 118 (S.D.N.Y. 1994) (emphasis added).

As discussed below, these considerations apply here, where plaintiff makes a serious fraud

charge against his former employer, but provides no factual detail of the specific conduct

supporting the claim.

## C. The Fraud Claim Against Cornell is Not Pleaded with Sufficient Particularity.

The factual allegations concerning Cornell are devoid of any specificity whatsoever,

leaving Cornell to guess at the who, what, when, where and why of its alleged fraud.

Compounding the ambiguity and confusion created by his generalized allegations, Dr. Smith

paints with a broad brush commingling the identities and the conduct of two separate and legally

distinct co-defendants, NYPH and Cornell.

### 1. Plaintiff's allegations of Medicare/Medicaid fraud.

The gravamen of plaintiff's fraud claim is that the "Defendant Hospitals" improperly billed the Medicare and Medicaid Programs for the "Technical Component" of the subject radiological studies, or the actual taking of a radiological test or examination, before physicians employed by the defendant medical schools completed the "Professional Component," or the reading and interpretation of those studies, calling into question the medical necessity of the services provided by both the Defendant Hospitals and medical school physicians. See Third Amended Complaint at ¶¶ 1-4. Dr. Smith explains, in great detail, that the Defendant Hospitals perform and bill for the Technical Component of the radiological studies, and the radiologists employed by the affiliated defendant medical schools separately perform and bill for the Professional Component. See id. at ¶¶ 12-17, 29. Thus, the "background" allegations set forth in the Third Amended Complaint draw the proper distinction between services provided and billed for by the Defendant Hospitals and the services provided and billed for by the defendant medical schools.

When it comes to describing the allegedly fraudulent conduct of Cornell, however, plaintiff ignores this distinction. Section B of the Third Amended Complaint is captioned "New York Presbyterian Hospital and Cornell Along With Their Affiliated Hospitals." See Third Amended Complaint at p. 23. Setting aside the fact that there are no other "affiliated hospitals" identified with respect to NYPH or Cornell, the Third Amended Complaint conjoins NYPH with Cornell in an attempt to impose liability upon Cornell for fraud under the FCA despite the fact that the conduct of these two legally separate entities, as described earlier in the Third Amended Complaint, is entirely different—NYPH's billing for the Technical Component as compared with Cornell's billing for the Professional Component of the radiological studies.

The allegations contained in plaintiff's First Cause of Action similarly provide no detail to support his claim of fraud against Cornell under 31 U.S.C. § 3729. Each and every allegation in this claim refers only to "Defendant Hospitals" and fails to allege anything directly against Cornell, or for that matter, against any medical school defendant. See Third Amended Complaint at ¶¶ 77-93. These allegations do not implicate the Professional Component provided by the physicians employed by Cornell. For example, plaintiff repeatedly alleges, "Defendant Hospitals presented and submitted claims to, and received payment from, the Medicare and Medicaid Programs for the Technical Component," see id. at ¶¶ 81-83, but he makes no claim that defendant Cornell presented false or fraudulent claims to, and received payment from, the Medicare and Medicaid Programs for the Professional Component.

For purposes of a Rule 9(b) analysis, the foregoing allegations fail to satisfy the particularity requirements set forth in Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127-28 (2d Cir. 1994). Plaintiff does not identify who at Cornell submitted any alleged false claim; when anyone at Cornell submitted any alleged false claim; where any such alleged false claim originated from, or where any claim was submitted for payment; when any alleged false claim was made by Cornell; or why any bill for the Professional Component of a radiological study submitted to the government by Cornell was false or fraudulent. Indeed, the Third Amended Complaint fails to identify even one specific false or fraudulent bill submitted by Cornell to the government seeking payment for the Professional Component of radiological services. Such pleading falls far short of obligations imposed by Rule 9(b).[3]

---

[3]     One of the purposes of Rule 9(b) is to avoid putting a defendant in a situation where it needs to serve discovery demands simply to find out whether or not facts exist to support the *qui tam* plaintiff's serious, albeit conclusory, fraud claims. The Rule does not permit a plaintiff to file suit first and subsequently search for a cause of action. See Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985). Moreover, a *qui tam* plaintiff "may not . . . engage in discovery to unearth additional facts to support its complaint." United States ex rel. Stinson, Lyons, Gerlin & Bustamonte P.A. v. Blue Cross & Blue Shield, Inc., 755 F. Supp. 1040, 1053 (S.D. Ga. 1990).

### 2.  The lack of specificity compels dismissal of the fraud claim against Cornell.

Courts within the Second Circuit have routinely dismissed False Claims Act *qui tam*
complaints under Rule 9(b) where the relator neglects to adequately plead the who, what, when
where and why of the alleged fraud upon the Government. See, e.g., United States ex rel.
Capella v. Norden Sys., Inc., No. 3:94-CV-2063, 2000 U.S. Dist. LEXIS 13352, *16 (D. Conn.
Aug. 24, 2000) ("Failure to satisfy Rule 9(b) generally results in dismissal of the complaint
without prejudice."); United States ex rel. Vallejo v. Investronica, Inc., 2 F. Supp. 2d 330, 336-
37 (W.D.N.Y. 1998) (dismissing False Claims Act fraud claim under Rule 9(b) based on
plaintiff's failure to allege "exactly where and when [the false statements] were made," "the date
or dates on which these statements were made," or "the individuals responsible for making the
statements"); United States ex rel. v. Barmak, No. 95 CV 7637, 2002 U.S. Dist. LEXIS 8509 at
*15 (S.D.N.Y. May 14, 2002) (dismissing *qui tam* complaint on grounds that "Relator [] should
be able to present Defendants and this Court with an adequately pled complaint outlining the
who, what, when and where of his allegations"); United States ex rel. DeCarlo v. Kiewit/AFC
Enters., Inc., 937 F. Supp. 1039, 1050-51 (S.D.N.Y 1996) (dismissing False Claims Act counts
where the pleading failed to identify specific employees and dates involved in the alleged fraud);
United States ex rel. Gublo v. Novacare, Inc., 62 F. Supp. 2d 347, 354 (D. Mass. 1999)
(dismissing Medicare fraud claims because of relator's failure to "provide the who, what, when,
where and how" of the fraud).  In the absence of specific factual allegations detailing the
deceitful conduct, the FCA fraud count must be dismissed.

Even if plaintiff had adequately identified the allegedly false claims, his allusions to the
widespread fraudulent billing practices of Defendant Hospitals and his general theory of their
liability under the FCA for "completed but not read" radiological studies, do not suffice to plead

a claim against Cornell. See Third Amended Complaint at ¶¶ 77-93. Even when the courts have relaxed the pleading requirements in cases involving complex or extensive schemes of fraud based on notions of judicial economy and efficiency, they still searched the pleadings to ensure that each named defendant was provided with enough specific factual information relating to its conduct to frame a response and prepare a defense. See In re Cardiac Devices Qui Tam Litigation, 221 F.R.D. 318, 336 (D. Conn. 2004); United States ex rel. Butler v. Magellan Health Servs., Inc., 101 F. Supp. 2d 1365, 1369 (M.D. Fla. 2000) (rejecting complaint that merely alleged a theory of general a scheme of Medicare fraud); United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., No. 96-CV-1380, 2000 WL 17838, *4 (E.D. La. Jan. 10, 200) (dismissing fraud claims that failed to identify the alleged improper tests and resulting billings).

In the Cardiac Devices Qui Tam Litigation case, which involved Medicare fraud claims against some 40 hospital defendants relating to a number of cardiovascular devices, the court noted that the Government had provided "categorical information in the complaints about the actual claims that were submitted" along with spreadsheets identifying lists of patients, the devices involved, and dates of service. 221 F.R.D. 318, 336 (D. Conn. 2004). Read in conjunction with the factual allegations in the complaints, the information was held to have adequately identified the submission of specific false claims. Id. at 337 ("This is not a situation where only a general scheme of fraud was alleged that might have resulted in the submission of false claims."). No such specifics are pleaded against Cornell by Dr. Smith in the Third Amended Complaint at issue here.

Similarly, in United States ex rel. Minnesota Ass'n. of Nurse Anesthetists v. Allina Health Sys. Corp., No. 4-96-734, 1997 U.S. Dist. LEXIS 21402 (D. Minn. Mar. 3, 1997), an

- 12 -

association of nurse anesthetists filed an action under the FCA against a number of doctors,

hospitals and administrators alleging that the defendants engaged in a widespread scheme of

fraudulent billing. The court dismissed the complaint citing the fact that the "complaint does not

describe a single instance of the fraudulent conduct that names a specific anesthesiologist on an

exact date at a particular hospital with reference to either the procedure, patient or bill." Id. at

*33-34.[4] The same result should obtain here in light of the fact that the Third Amended

Complaint fails to identify a single specific instance of fraudulent conduct allegedly committed

by Cornell.

## C. The Fraud Claim Against Cornell Should be Dismissed Pursuant to Rule 12(b)(6).

Plaintiff's allegations not only fail under Rule 9(b), but the same pleading deficiencies

also require dismissal of the FCA fraud claim against Cornell under Rule 12(b)(6). In order to

state a claim under the FCA, a plaintiff must allege that: (1) the defendant presented a claim for

payment; (2) the claim was false or fraudulent; (3) the defendant either knew or recklessly

disregarded the falsity of the claim; and (4) because of the false claim the Government sustained

damage. Blusal Meats, Inc. v. United States, 638 F.Supp. 824 (S.D.N.Y. 1986), aff'd, 817 F.2d

1007 (2d Cir. 1987); United States ex rel. Pentagon Technologies Int'l Ltd. v. CACI Int'l Inc.,

No. 96 Civ. 7827, 1997 U.S. Dist. LEXIS 12224 at *29-30 (S.D.N.Y. 1997), aff'd, 172 F.3d 39

(2d Cir. 1999). Here, plaintiff has not adequately alleged any of these elements with respect to

Cornell, but instead relies on mere conclusory statements about the conduct of the Defendant

Hospitals. There is not a single allegation contained in the Third Amended Complaint that

---

[4]    The Allina court also noted that plaintiffs' generic references to "Defendant Hospitals" and "various Defendant Hospitals" in their FCA complaint ran afoul of Rule 9(b). See 1997 U.S. Dist. LEXIS 21402 at *33. Plaintiff in this action uses the same generic labels to identify all four defendants, and combines without distinction NYPH and Cornell. See Third Amended Complaint at ¶¶ 77-93.

Cornell's submission of a bill to Medicare or Medicaid for its provision of the Professional

Component of a radiological study was false or fraudulent or caused the government to pay a

claim it would otherwise have not paid. See United States ex rel. Capella v. Norden Sys., Inc.,

No. 3:94-CV-2063, 2000 U.S. Dist. LEXIS 13352 at *23-24 (D. Conn. Aug. 24, 2000) (liability

under the Act only attaches for false claims that the government would not have paid had it been

aware of the fraud).

Dr. Smith's "completed but not read" theory of liability under the FCA seems to be based

entirely on the Defendant Hospitals' billing for the Technical Component of radiological studies,

and not the defendant medical schools' billing for the Professional Component. See Third

Amended Complaint at ¶ 67. According to this theory, the Defendant Hospitals' billing for the

Technical Component before the completion of Professional Component is the allegedly

fraudulent conduct. See id. The allegations concerning the Professional Component provided by

Cornell therefore seem to be pleaded for the sole purpose of establishing why NYPH's billing for

the Technical Component is allegedly improper under plaintiff's theory of FCA liability.[5]  In

short, plaintiff's fraud claim against Cornell must be dismissed because he has failed to plead

that Cornell submitted a false claim for payment to the government stemming from its provision

of the Professional Component of the subject radiological studies.

---

[5]     In characterizing plaintiff's allegations in this way, Cornell is in no way intending to suggest that plaintiff has
adequately pleaded a claim under the FCA for fraud against NYPH.

## POINT II

### PLAINTIFF'S CLAIM FOR RETALIATION UNDER
### SECTION 3730(h) SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

Plaintiff-realtor's Third Cause of Action attempts to allege retaliation by Cornell and

NYPH in violation of 31 U.S.C. § 3730(h). Dr. Smith alleges that because of his purported

investigation and reporting of patient care, regulatory and compliance issues relating to the

provision of radiology services, he was the victim of harassment and discrimination in the terms

and conditions of his employment by Cornell. Among these are unspecified acts of harassment

by Dr. Sostman, the limitation of Dr. Smith's access to some of the administrative computer

systems, and the loss of certain unspecified administrative privileges and functions. Third

Amended Complaint at ¶ 207(d). The only specific or material act alleged is the decision by

Cornell on June 28, 2002 not to renew Dr. Smith's employment and faculty appointment at

Cornell, effective June 30, 2003. See Third Amended Complaint at ¶ 207.

### A. Plaintiff's § 3730(h) Retaliation Claim is Barred by the Applicable
### One-Year Statute of Limitations Set Forth in the New York Labor Law.

As noted above, Cornell decided not to renew Dr. Smith's employment. See Third

Amended Complaint at ¶ 207(d). The June 28, 2002 date is, therefore, the latest date on which

plaintiff's FCA retaliation cause of action could have accrued. The Second Amended Complaint

was filed on March 10, 2004, and is the first pleading in this action that includes a claim against

Cornell under § 3730(h). Thus, plaintiff's § 3730(h) claim against Cornell was first interposed

approximately 21 months after it accrued.

In United States ex rel. Lujan v. Hughes Aircraft Co., 162 F.3d 1027 (9th Cir. 1998), the

Ninth Circuit held that the six-year statute of limitations contained in § 3731(b) of the FCA does

not apply to retaliation claims under § 3730(h). Id. at 1034-35. The court reasoned that the 1986

amendments to the FCA, "while adding a provision for retaliation claims under § 3730(h), narrowed the application of the six-year statute of limitations to violations of § 3729," such that the amendments "created the retaliation claim but provided no specific statute of limitations for such claims." Id.; see id. at 1035 ("In the absence of some meaningful indication to the contrary, we must . . . presume that, in amending section 3731(b) so that the limitations runs only from the date of a violation of section 3729, Congress did not intend that the statute apply to section 3730(h).") The court in Lujan held that the court was to apply the "'most closely analogous statute of limitations under state law.'" Id., quoting Reed v. United Transport Union, 488 U.S. 319, 323 (1989). The court determined that the most closely analogous limitations period under California law was the one-year statute applicable to wrongful termination in violation of California public policy. Id.

In the case at bar, the most analogous state law statute of limitations is the one-year limitations period provided in New York Labor Law § 740(4)(a), which applies to civil actions brought by an employee who has been the subject of a "retaliatory personnel action" because he or she "discloses or threatens to disclose to a supervisor or public body an activity, policy or practice of the employer that is in violation of a law, rule or regulation which violation threatens the public health or safety." N.Y. Labor Law § 740(2)(a). This prohibition against retaliation therefore applies broadly to retaliatory conduct in any context so long as there is a threat to public health or safety. Indeed, this provision contains inclusive definitions of "employer" and "employee," again demonstrating its broad applicability.[6] In contrast, §741, to which a two–year statute of limitations applies under § 740(4)(d), applies only in the specific context of health care

---

[6]    As discussed in more detail below, the definition of "employer" set forth in section 741 is so narrow and specific that it does not apply to Cornell, further demonstrating that section 741 is a an exceedingly narrow anti-retaliation statute which bears little resemblance to the FCA. See infra Point III.C.

workers and health care employees, and prohibits retaliation only for complaints that relate to the improper quality of patient care. See New York Labor Law §§ 740(d), 741(1)(a), (b) (d) and (3).

The False Claims Act retaliation provision is addressed to protecting employees from retaliation who act "in furtherance of" a *qui tam* action which exposes a fraud on the government, irrespective of the specific context. See 31 U.S.C. § 3730(h). Unlike sections 740(d) and 741 of the New York Labor Law, it is not limited to the healthcare context. In this way, it is more like New York Labor Law § 740, which applies broadly to retaliation against any employee who exposes a threat to public safety or welfare, irrespective of the context. In short, because the scope of § 3730(h) is more analogous to § 740 of the Labor Law than it is to the narrowly drawn § 741, this court should apply the one-year statute of limitation set forth in § 740(4)(a) to plaintiff's FCA retaliation claim, rather than the two-year limitations period contained in § 740(d). Applying this one-year statute of limitations to plaintiff's claim, which as noted above accrued in June of 2002 and was not interposed until March of 2004, plaintiff's retaliation claim under § 3730(h) is time-barred and should be dismissed.

## B. Plaintiff Fails to Plead Adequately the Required Elements of a Retaliation Claim Under 31 U.S.C. § 3730(h)

In order the state a retaliation claim under Section 3730(h), a plaintiff must allege that: (1) he was engaged in conduct protected under the statute; (2) defendant knew or was aware plaintiff was engaged in the protected conduct; and (3) the defendant was terminated or otherwise retaliated against because of the protected conduct. United States ex rel. Vallejo v. Investronica, Inc., 2 F. Supp. 2d 330, 338 (W.D.N.Y. 1998); Mikes v. Straus, 889 F. Supp. 746, 752 (S.D.N.Y. 1995); Faldetta v. Lockheed Martin Corp., 98 Civ. 2614, 2000 U.S. Dist. LEXIS 16216, at * 38 (S.D.N.Y. Nov. 9, 2000); Moor-Jankowski v. Board of Trustees of N.Y. Univ., 96 Civ. 5997, 1998 U.S. Dist. LEXIS 12305, *32 (S.D.N.Y. Aug. 10, 1998). The allegations in the

G272983.1                                    - 17 -

Third Amended Complaint fail to establish any of these three required elements as against

defendant Cornell, requiring dismissal of the Third Cause of Action as to this defendant.

### 1. Plaintiff fails to allege facts sufficient to establish that he was engaged in protected activity as contemplated by the FCA.

To satisfy the first element of a claim under Section 3730(h) a plaintiff must plead facts

demonstrating that prior to his discharge, he was either taking action in furtherance of a private

*qui tam* action or was assisting in an FCA action to be brought by the government. Vallejo, 2 F.

Supp. 2d at 338. While a *qui tam* or FCA action need not actually be filed, the courts within this

Circuit have held that in order to constitute "protected activity," at a minimum, the filing of such

an action by either the employee or the government must be a "distinct possibility" at the time

the assistance was rendered by the employee, or that the employee must be investigating matters

that reasonably could have led to a viable FCA action. Moor-Jankowski, 1998 U.S. Dist. LEXIS

12305 at *32; Faldetta, 2000 U.S. Dist. LEXIS 16216 at * 40; see also Mikes, 889 F. Supp. at

752.

The term "protected activity" is interpreted much more narrowly in the FCA context than

in common law or state law retaliatory discharge/whistleblower claims, in that a plaintiff must

"'demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a

fraud upon the government.'" Moor-Jankowski, 1998 U.S. Dist. LEXIS 12305 at *33 (quoting

Luckey v. Baxter Healthcare Corp., 2 F. Supp. 2d 1034, 1050 (N.D. Ill. 1998). Thus, in order to

qualify as "protected activity" under § 3730(h), the "purpose of the employee's investigatory

activities must contain at least some ingredient of uncovering fraudulent activity." Luckey, 2 F.

Supp. 2d at 1051. Conversely, "an employee's activities that are not related to exposing or

deterring fraud [upon the government] are not 'whistle blowing as envisioned in the paradigm

*qui tam* FCA action.'" (quoting Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996)). To make those activities "protected" under the Act, the plaintiff/employee must take the "important step necessary to support an action under the FCA – pursuit of a belief that [defendant] was defrauding the government." Luckey, 2 F. Supp. 2d at 1053 (emphasis added).

Attempts to get an employer to comply with federal and state regulations, and which are not attempts to recover funds for the government or to uncover alleged fraud against the government, do not fall within the scope of protected activity under § 3730(h). See Zahodnik v. IBM Corp., 135 F.3d 911, 914 (4th Cir. 1997) (reporting by a plaintiff to his supervisor of a "mischarging to the government" in connection with a government contract does not suffice to establish that a plaintiff was engaged in protected activity in furtherance of a *qui tam* action); Hopper, 91 F. 3d at 1269 ("Correcting regulatory problems may be a laudable goal, but one not actionable under the FCA in the absence of actual fraudulent conduct.") Robertson v. Bell Helicopter Textron., Inc., 32 F.3d 948, 951 (5th Cir. 1994) (holding that Section 3730(h) forbids only "discrimination against an employee who has made an intracorporate complaint about fraud against the government" and finding no protected activity where plaintiff's reporting to his superiors regarding charges submitted to federal government failed specifically to characterize those concerns as "illegal", "unlawful" or "*qui tam* action"); see also McKenzie v. BellSouth Telecoms, Inc., 219 F.3d 508 (6th Cir. 2000) ("Assuming that [plaintiff's] falsification complaints have merit and that she understood that BellSouth's consumers were potentially being defrauded, her numerous complaints on the matter were directed at the stress from and pressure to falsify records, not toward an investigation into fraud on the federal government. . . . The remaining complaints about the pressure to falsify records and the newspaper article [regarding alleged fraud on the federal government] do not establish a nexus to government fraud

or create the reasonable possibility of an action or litigation under the FCA. Accordingly, [plaintiff] has failed to establish that she engaged in 'protected activity' under § 3730(h)."); United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 740 (D.C. Cir. 1998) ("Mere dissatisfaction with one's treatment on the job is not, of course, enough. Nor is an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations. . . . To be covered by the False Claims Act, the plaintiff's investigation must concern 'false or fraudulent' claims" (citations omitted)).

Under these standards, Dr. Smith has failed to adequately allege that he was engaged in protected activity because, as the allegations of his Third Amended Complaint make clear, his complaints to Cornell faculty members and administration were not in furtherance of a claim under the FCA. Rather, his complaints were primarily devoted to issues relating to substandard patient care, and alleged inadequacies or inconsistencies in the radiology billing systems utilized by Cornell and NYPH. See, e.g., Third Amended Complaint at ¶ 66 ("Plaintiff Smith has complained about a number of billing, compliance and patient care issues that have existed at New York Presbyterian Hospital and Cornell").

In Faldetta v. Lockheed Martin Corp., 2000 U.S. Dist. LEXIS 16216 (S.D.N.Y. Nov. 9, 2000), the court held that where plaintiff's job was to ensure compliance with government specifications, the mere rejection of defective parts and inquiries into why certain testing on parts was eliminated was conduct which "ordinarily falls within the context of his job responsibilities," and therefore "without more, is insufficient to establish that his actions were connected to Lockheed Martin's fraudulent activity in submitting claims for payment." Id. at *41. Thus, it was determined by the court that as a matter of law, plaintiff had not been engaged in protected activity. See id. at *41-42. See also Moor-Jankowski v. Board of Trustees of N.Y.

G272983.1                                           - 20 -

Univ., 1998 U.S. Dist. LEXIS 12305, *38 (S.D.N.Y. August 10, 1998) (finding plaintiff was not engaged in protected activity when he complained about illegal treatment of animals in connection with federally-funded research where plaintiff was making complaints in his capacity as a member of defendant's Institutional Animal Care and Use Committee).

Here, there are no allegations that Dr. Smith went beyond the scope of his job responsibilities in reporting on the compliance issues concerning radiology services. He came to be aware of those issues by virtue of his position, and the Third Amended Complaint fails to establish that he took any investigatory steps to determine the extent of or particulars concerning any billing issues he purportedly identified. Indeed, as noted above, plaintiff fails to cite a single specific false or fraudulent bill submitted by Cornell that he identified through any investigatory or fact-finding efforts to support his "Completed But Not Read" FCA claim under § 3729(a). See supra Point I.

Plaintiff's own description of the nature of his complaints regarding purported billing issues fails to note the fraudulent component that is the *sine qua non* of protected activity under the FCA. He alleges only that he complained of "[i]mproper[] billing [of] the Medicare and Medicaid Programs and other payers for Completed but Not Read Radiology Studies." Third Amended Complaint at ¶ 67(a); see also id. at ¶ 207(a) (noting reports by Smith about his "concerns of improper billing, compliance issues and compromises of patient care"). No explanation is offered as to what precisely Dr. Smith meant by "improper", and he certainly does not allege that he ever complained to Cornell that it was his belief that Cornell was defrauding the federal government in connection with its or NYPH's billing of radiology services to Medicare or Medicaid.

In a case similar to the one at bar, the court in Moor-Jankowski v. Board of Trustees of

N.Y. Univ., 1998 U.S. Dist. LEXIS 12305, *32 (S.D.N.Y. August 10, 1998), dismissed a claim

under Section 3730(h) on a motion pursuant to Rule 12(b)(6) based in part on a finding that

plaintiffs had failed to allege adequately that they were engaged in protected activity when they

protested to their superiors at New York University about alleged illegal double billing of

overhead costs on government research contracts.  The court made the following observations

concerning the inadequacy of plaintiffs' allegations of purported protected activity:

> [T]he Complaint alleges no facts to indicate that the NYU
> Defendants intended to engage in or actually engaged in any
> improper conduct (such as sending improper or inaccurate bills to
> the government), that Plaintiffs conducted any type of
> investigation of purported improper billing that could precede a qui
> tam action, or that Plaintiffs took any steps directed at exposing a
> fraud upon the government or that might reasonably lead to and
> assist in the filing of a viable FCA action relating to billing fraud.

Id. at *35.  The court therefore found that the allegations in the complaint that plaintiffs were

retaliated against for protesting the alleged double-billing did "not support the conclusion that (1)

FCA litigation was a 'distinct possibility' at the time Plaintiffs complained . . . about the billing

procedure, [and] (2) the Plaintiffs were engaged in protected activity that was calculated or

reasonably could lead to a viable FCA action . . . ." Id. at *34.

In the case at bar, never at any point did Dr. Smith document to Cornell one specific

instance of what he classified as a false or fraudulent bill submitted to Medicare in connection

with radiology services.  The substance of his complaints does not rise to the level of protected

activity as contemplated under § 3731(h). This requires the same result as in Moor-Jankowski –

dismissal of the FCA retaliation claim for failure to state a claim.

### 2.  Plaintiff has failed to allege that Cornell had notice of any of his purported protected activity.

Even assuming that Dr. Smith has alleged that he was engaged in some form of protected activity as contemplated by § 3730(h), the allegations of the Third Amended Complaint fail to establish that Cornell had knowledge of that purported protected activity.  This knowledge element is necessary because "unless the employer is aware that the employee is investigating fraud, the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)."  Hopper v. Anton, 91 F.3d 1261, 1269 (9thCir. 1996).  With regard to this element, the court in Mikes v. Straus held that "an employee must supply sufficient facts from which a reasonable jury could conclude that the employee was discharged because of activities which gave the employer reason to believe that the employee was contemplating a qui tam action against it."  889 F. Supp at 753.

Applying the standard established in Mikes, the court in United States ex rel. Vallejo v. Investronica, Inc., 2 F. Supp. 2d 330 (W.D.N.Y. 1998) held that even if plaintiff were engaged in protected activity when he complained internally about defendants' false statements to agents of the United States, plaintiff had failed to allege facts indicating that defendants were on notice that his purported protected activity was in furtherance of recovering money for the government, requiring dismissal of his claim under § 3730(h).

> Plaintiff alleges only that he complained of the false statements [to agents of the United States to avoid import duties] to his supervisors and other employees.  Although plaintiff states that he believed the false statements were in violation of United States law, he does not allege that he ever informed the defendants of that fact.  For example, plaintiff does not allege that he told the defendants that he was going to report such impropriety to officials of the Government or that he was contemplating his own *qui tam* action.  Moreover, plaintiff has not alleged that he was engaged in activities that would have given 'the employer reason to believe that the employee was contemplating a *qui tam* action against it.' .

> .. These are the types of things that plaintiff would need to allege
> in order to state a claim under § 3730(h).

Id. at 338-39 (quoting Mikes, 889 F.Supp. at 753); see Luckey v. Baxter Healthcare Corp., 2 F.
Supp. 2d 1034, 1050 (N.D. Ill. 1998) ("[W]here an employee voices her concerns about her
employer's improprieties, without incorporating any fraudulent component into her complaints,
the employer cannot be said to have the requisite notice that employee's activities were done to
further a FCA action."); see also Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 193 (3d
Cir. 2001) (defendant employer was not on notice of "distinct possibility" of FCA litigation
where plaintiff never threatened to report his discovery of the defendant law firm's allegedly
fraudulent billing practices to the government, did not file an FCA action until after he was
terminated, and never informed his supervisors he believed that the billing practices were illegal
or that it was causing government funds to be lost or spent); McKenzie v. BellSouth
Telecommunications, Inc., 219 F.3d 508, 518 (6th Cir. 2000) plaintiff's internal complaint about
pressure to falsify repair records and where employer was aware of newspaper article that
discussed a consumer fraud investigation by the Florida state attorney general insufficient to
establish notice to employer of possibility of FCA action); Hopper, 91 F.3d at 1270 (evidence
was insufficient to establish defendant's notice of alleged protected activity where plaintiff
"never gave any indication she was investigating the School District for defrauding the federal
government").

Plaintiff does not allege that at any time prior to Cornell's decision in June 2002 not to
renew his faculty appointment did he raise the specter that Cornell was defrauding the
government by virtue of its billing Medicare or Medicaid for radiology services, or that Cornell
was involved in any other conduct which reasonably could be the basis for a *qui tam* action.

- 24 -

Simply put, Smith's alleged complaints to Cornell about billing do not provide any notice to Cornell of the "distinct possibility" of *qui tam* litigation.

Further undermining the fact that any communications from Smith to Cornell provided the requisite notice of the distinct possibility of a *qui tam* action is the fact that, as noted above, Dr. Smith held the position of Associate Chair of Information Technology and Systems Administration for the Cornell Department of Radiology. Therefore, finding and addressing billing compliance issues was not only part of his job, but would necessarily have been taken by Cornell as just that and not as any indication of a possible FCA claim.

In United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514 (10th Cir. 1996), the Tenth Circuit held that "when seeking legal redress for retaliatory discharge under the FCA, plaintiff has the burden of pleading facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private qui tam action or assisting in an FCA brought by the government." Id. at 1522. Having set forth that pleading requirement, the court noted that its inquiry on the motion to dismiss the FCA retaliation claim was "whether the actions alleged in the complaint could be reasonably described as an 'investigation' sufficient to put defendants on notice of a possible *qui tam* action." Id.

In holding that plaintiff, a consultant to and then a clinical director of a mental health facility operated by defendants, had failed satisfy her burden of pleading facts which would establish that she put defendants on notice that she was taking action in furtherance of an FCA action, the court noted as follows:

> The amended complaint alleges only that plaintiff advised her superiors that defendants were not complying with the minimum program requirements of Medicaid. Yet plaintiff never suggested to defendants that she intended to utilize such noncompliance in furtherance of an FCA action. Plaintiff gave no suggestion that she was going to report such noncompliance to government officials . .

> . nor did she provide any indication that she was contemplating her
> own qui tam action. Rather, the monitoring and reporting activities
> described in plaintiff's complaint were exactly those activities
> plaintiff was required to undertake in fulfillment of her job duties,
> and plaintiff took no steps to put defendants on notice that she was
> acting 'in furtherance of' an FCA action—e.g., that she was
> furthering or intending to further an FCA action rather than merely
> warning defendants of the consequences of their conduct.

Id. at 1523 (citations omitted). Based on this, even though plaintiff had alleged she brought to

the attention of her supervisors "widespread noncompliance with minimum Medicaid program

components for day treatment at defendants' facility" and had further alleged that

notwithstanding those communications, defendants "continued to submit noncomplying claims

to the government that ultimately were paid by Medicaid, see id. at 1517, plaintiff's claim under

§ 3730(h) was held to be legally insufficient to withstand dismissal, id. at 1523. See Robertson

v. Bell Helicopter Textron, Inc., 32 F.3d 948, 952 (5th Cir. 1994) (requisite evidence of notice

was lacking as a matter of law where plaintiff's supervisors were not aware of any investigatory

activities of plaintiff beyond his job responsibilities, plaintiff kept his qui tam intentions to

himself, and plaintiff never characterized his concerns concerning overcharges as involving

conduct that was illegal, unlawful or which would be considered a false claim).

Dr. Smith's allegations are no different than those held to be insufficient to state an FCA

retaliation claim in Ramseyer. Like the plaintiff in Ramseyer, Dr. Smith fails to allege that he

performed any investigation or made any complaints about any radiology billing issues that went

beyond the scope of his job duties, which might conceivably have provided notice to Cornell of

the possibility that his efforts were somehow directed toward a potential *qui tam* action. He has

therefore failed to allege adequately that Cornell had knowledge of his alleged protected activity,

requiring dismissal of the retaliation claim under § 3730(h).

### 3. Plaintiff has failed to allege facts from which it can reasonably be inferred that he was not re-appointed because of protected activity.

Since plaintiff has failed to allege adequately that he was engaged in protected activity and that Cornell had knowledge of the protected activity at the time it took the adverse actions alleged in the Third Amended Complaint, Cornell *a fortiori* could not have taken those actions because of Dr. Smith's protected activity, and therefore could not have possessed the retaliatory intent necessary to be liable under § 3730(h). Ramseyer, 90 F.3d at 1522; Robertson, at 952; Faldetta, 2000 U.S. Dist. LEXIS 16216 at *43. Thus, the third required element for a retaliation claim under § 3730(h) is necessarily lacking.

Even if Dr. Smith has pleaded facts sufficient to establish the first two elements of a retaliation claim under § 3730(h), the facts contained in the Third Amended Complaint fail to establish that Cornell declined to renew Dr. Smith's faculty appointment, or otherwise took any adverse employment action against him, because of any protected activity in which he was engaged. This third element contemplates a causal nexus between the protected activity of a plaintiff and the allegedly adverse employment action taken by a defendant. See Luckey v. Baxter Healthcare Corp., 2 F. Supp. 2d 1034, 1050 (N.D. Ill. 1998) (granting judgment as a matter of law on § 3730(h) retaliation claim where plaintiff "failed to demonstrate a causal connection between her termination and [defendant's] knowledge that she was conducting an investigation into [defendant's] purportedly fraudulent activity"); see McKenzie v. BellSouth Telecommunications, Inc., 219 F.3d 508, 518 (6th Cir. 2000) (noting that "FCA's legislative history states that the employee must show that 'the retaliation was motivated at least in part by the employee's engaging in protected activity,'" quoting S. Rep. No. 99-345, at 35 (1986), reprinted in 1986 U.S.C.C.A.N. at 5300).

G272983.1                                                          - 27 -

As discussed above, the substance of Dr. Smith's underlying FCA theory as pleaded in the Third Amended Complaint is that there is the possibility that "improper" bills could have been submitted to Medicare and Medicaid for the Technical Component of radiology services. As is also noted above, Dr. Smith's Third Amended Complaint concedes that Cornell does not bill at all for the Technical Component, and that Cornell bills only for the Professional Component. See Third Amended Complaint at ¶¶ 14-17, 67, 77-93. Dr. Smith does not allege any fraud or impropriety with respect to Cornell's billing of the Professional Component, nor does he allege that he complained to Cornell about any such fraud or impropriety. See id. at ¶ 67(c). These facts defeat the notion that Cornell acted with the intent to retaliate against him when it decided not to renew his faculty appointment, as alleged. See Third Amended Complaint at ¶ 207(d).

Where, as here, "plaintiff has not alleged any facts to support his conclusion that his harassment and termination was, in fact, in retaliation for protected activity," dismissal of a claim under § 3730(h) on a 12(b)(6) motion for failure to state a claim is warranted. United States ex rel. Vallejo v. Investronica, Inc., 2 F. Supp. 2d 330, 339 (W.D.N.Y. 1998).

Moreover, Dr. Smith's prior sworn testimony negates the conclusion that he lost his position at Cornell due to the retaliatory actions of Cornell, or that he was forced to leave due to harassment. Indeed, Dr. Smith testified that he was not terminated and he left his position at Cornell voluntarily in order to pursue a career in law. See Schulz Decl., Exhibit "C" at pp. 453-57. Under these circumstances, Dr. Smith certainly does not possess a viable § 3730(h) retaliation claim premised upon the alleged loss of his position with Cornell.

## POINT III

### PLAINTIFF'S CLAIM UNDER NEW YORK LABOR LAW § 741
### IS TIME-BARRED AND OTHERWISE LEGALLY DEFECTIVE

Plaintiff's Eighth Cause of Action purports to assert a claim under the New York Labor Law § 741. Section 741 provides a health care employee with protection from retaliation by an employer who identifies and reports improper quality of patient care. Specifically, the law protects an employee who "discloses or threatens to disclose to a supervisor, or to a public body, an activity, policy or practice of the employer or agent that the employee in good faith, reasonably believes constitutes improper quality of patient care" from adverse employment actions. § 741(2)(a). "Improper quality of patient care" means "with respect to patient care, any action or failure to act of an employer which violates any law, rule, regulation or declaratory ruling … where such violation relates to matters which may present a substantial and specific danger to public health or safety or significant threat to the health of a specific patient." § 741(1)(d).

Section 741 is modeled after and borrows many of the provisions from § 740 of the New York Labor Law. Section 740 prohibits employers from retaliating against an employee who "discloses or threatens to disclose to a supervisor or public body an activity, policy or practice of the employer that is in violation of a law, rule or regulation which violation threatens the public health or safety." N.Y. Labor Law § 740(2)(a).

Section 741, which applies only to health care workers, was intended to remedy several perceived deficiencies in § 740. First, § 740 requires "actual knowledge" of a violation by an employee to be protected, while § 741 requires only a "reasonable belief" that a violation exists, thus protecting an employee who is mistaken, but acting in good faith. See Bordell v. General

Electric Co., 88 N.Y.2d 869 (1996). Section 740 requires actual violation of law; a good-faith, reasonable belief that a violation occurred is not sufficient). Second, § 740 requires that the reported violation create a substantial and specific danger to the general public health or safety, while § 741 also includes reporting the threat of harm to an individual patient as a result of the violation as a basis for an action which would not be covered by § 740. See Kern v. DePaul Mental Health Services, Inc., 152 A.D.2d 957 (4th Dept. 1989) (allegations of harm to a specific patient do not state claim under § 740).

## A. Dr. Smith's § 741 Claim is Time-Barred.

The statute of limitations for a claim for relief under § 741 is two years. N.Y. Labor Law § 740(4)(d). Plaintiff does not specify the retaliatory action by Cornell which constitutes the "retaliatory personnel action" prohibited by the statute. He simply concludes that he was "subjected" to retaliatory action by the defendants in violation of" § 741. See Third Amended Complaint at ¶ 469.

However, utilizing the allegations of retaliation in the FCA portion of the Third Amended Complaint, the last possible act of retaliation by Cornell, plaintiff's "employer," would have been his notice of non-renewal on June 28, 2002, to be effective June 30, 2003.[7] See id. at ¶ 207(d). According to the Court's docket sheet, plaintiff did not file his Third Amended Complaint, asserting the § 741 violation until January 12, 2005, over two years after Cornell allegedly provided notice of his non-renewal.[8]

Although the statue itself does not specify when a claim for relief accrues under § 741, discrimination cases and their related statute of limitation periods provide the appropriate

---

[7]  Section 741 did not become effective until April 2, 2002. Accordingly, the law does not cover conduct before that date.

[8]  The Third Amended Complaint is dated November 24, 2004. However, even using this earlier date as the operative date, the claim under § 741 remains time-barred.

benchmark. Anti-retaliation provisions are often found in discrimination laws, and, as in

discrimination cases, § 741 focuses on the intent of the employer in taking adverse job actions

against an employee. In Queensborough Community College v. State Human Rights Appeal

Board, 41 N.Y.2d 926, 394 N.Y.S.2d 625 (1977), the New York Court of Appeals held that a

professor's employment discrimination cause of action arose when she was given notice she

would not be reappointed, not when her current term of employment was over. See also

Obolensky v. New York State Division of Human Rights, 67 A.D.2d 1069, 413 N.Y.S.2d 788

(3d Dept. 1979) (act of giving assistant professor notice that he would not be reappointed started

statute of limitation period running).

     In this action, Cornell notified Dr. Smith in late June 2002 that his appointment would

not be renewed. See Third Amended Complaint at ¶ 207(d). This is the latest time at which any

"retaliatory personnel action" may have occurred, and plaintiff's cause of action accrued. This is

over two years before plaintiff asserted his § 741 claim. Accordingly, the claim is time-barred

and should be dismissed.

### B. Dr. Smith Has Waived His Other Employment-related Claims.

### 1. The waiver provision found in § 740(7) of the New York Whistleblower Law applies to claims asserted under § 741.

     The New York Whistleblower Law contains a broad election of remedies provision.

Section 740(7) provides "the institution of an action in accordance with this section shall be

deemed a waiver of the rights and remedies available under any other contract, collective

bargaining agreement, law, rule or regulation or under the common law." This waiver provision

should be applied to a claim asserted under § 741. By asserting a claim under § 741, plaintiff has

waived his right to seek relief under any other related cause of action.

Section 741 defines the substantive violation of law, but it contains no enforcement provisions. It is only enforceable through the pre-existing procedures of § 740. Section 741(4) provides: "Enforcement: A health care employee may seek enforcement of this section pursuant to" § 740(4)(d). Paragraph (4)(d) of § 740 goes on to state that a health care worker may "institute a civil action in a court of competent jurisdiction for relief as set forth in" § 740(5), thus providing § 741 plaintiffs with the types of judicial relief set forth in § 740(5), such as injunctive relief, reinstatement and compensation for lost wages.

The waiver language of § 740(7) applies to "institution of an action in accordance with this section [740]." Since an action under § 741 is similarly instituted "in accordance with" § 740, the effect of the waiver provision of § 740(7) must apply to attempts to enforce compliance with § 741, which can only be done under the procedures allowed under § 740. In addition, there is no rational reason to treat health care employees differently than non-healthcare employees who raise concerns about their employer's violations, at least in terms of an election of remedies. If a health care worker chooses to sue his employer for alleged retaliatory action under § 741, he should be relegated to the same choices available to non-health care workers.

### 2. The broad waiver provision of § 740(7) bars the New York common law claims asserted in the Fourth through Seventh Causes of Action.

The waiver provision of § 740(7) has been interpreted broadly by the New York courts.[9] Reliance on the Whistleblower Law irrevocably vitiates any other state-law claims that a plaintiff may have otherwise asserted. "Where competing state claims are at stake, subsection 7 decrees that mere invocation of Labor Law § 740 is enough to vitiate any other claims irrevocably." United States ex rel. Mikes v. Straus, 846 F. Supp. 21, 24 (S.D.N.Y. 1994). The "commencement of an action under Labor Law § 740 precludes any other action by the same

---

[9]    Cornell does not contend that plaintiff's Federal FCA claims are barred by this waiver provision.

plaintiff under any other theory of liability." Gonzalez v. John T. Mather Memorial Hospital,

147 Misc. 2d 1082, 1083-84, 599 N.Y.S.2d 467, 468 (Sup. Ct. Suffolk Co. 1990) (emphasis

supplied). By including a Whistleblower Law claim, a plaintiff "has necessarily abandoned any

breach of contract or other claims arising out of the same events." McGrane v. The Reader's

Digest Association, Inc., 863 F. Supp. 183, 185 (S.D.N.Y. 1994). Alleging a violation of the

Whistleblower Law similarly bars tort claims. Pipas v. Syracuse Home Association, 226 A.D.2d

1097 (2d Dept. 1996).

Dr. Smith alleges purported retaliatory conduct only in paragraph 207 of the Third

Amended Complaint. Each of the state law causes of action relies on this allegation. In Owitz

v. Beth Israel Medical Center, 2004 WL 258087 at *3 (Sup. Ct., N.Y. Co. 2004), the court found

the fact that "in each cause of action plaintiff 'repeats and realleges' everything that went before"

significant in deeming plaintiff's other employment discrimination claims waived because of the

Whistleblower Law claim. Dr. Smith does precisely the same in this case by incorporating

paragraphs 159 through 206 into each cause of action, including the § 741 claim. See Third

Amended Complaint at ¶¶ 418-465; ¶¶ 211-258 (Fourth Cause of Action, Defamation), ¶¶ 267-

314 (Fifth Cause of Action, Intentional Infliction of Emotional Distress), ¶¶ 318-365 (Sixth

Cause of Action, Negligent Infliction of Emotional Distress), ¶¶ 368-415 (Seventh Cause of

Action, Breach of Contract).

There is no question that the defamation claim arises from the same allegedly retaliatory

conduct as alleged in the Eighth Cause of Action where plaintiff specifically alleges that the

unidentified defamatory statements were made "[b]ecause of his investigations and reporting of

the fraud alleged herein." See Third Amended Complaint at ¶ 259. The Fifth and Sixth Causes

of Action (Intentional and Negligent Infliction of Emotional Distress) simply refer to defendants'

G272983.1                                    - 33 -

unspecified "outrageous" conduct (id. at ¶¶ 315, 366), after incorporating all previous

allegations. The only conclusion to be drawn is that plaintiff is referring to the same purported

retaliatory conduct which is described in paragraph 207 of the Third Amended Complaint. The

Seventh Cause of Action (Breach of Contract) alleges that defendants' "intentional retaliation,

discrimination, retaliation [sic] and coercion against plaintiff for having spoken out" is a breach

of plaintiff's purported contract with Cornell. See Third Amended Complaint at ¶ 416. Borden

v. North Shore University Hospital, 275 A.D.2d 335, 712 N.Y.S.2d 155, 157 (2d Dept. 2002)

(waiver provisions bar breach of contract claim arising out of allegedly retaliatory conduct).

Therefore, all of Dr. Smith's causes of action should be dismissed by application of the waiver

provision of § 740 (as imported into § 741).

## C. Cornell is Not an "Employer" as Defined in Section 741.

Section 741(1)(b) defines "Employer" as follows:

> "Employer" means any partnership, association, corporation, the
> state, or any political subdivision of the state which: (i) provides
> health care services in a facility licensed pursuant to article twenty-
> eight or thirty-six of the public health law; (ii) provides health care
> services within a primary or secondary public or private school or
> public or private university setting; (iii) operates and provides
> health care services under the mental hygiene law or the correction
> law; or (iv) is registered with the department of education pursuant
> to section sixty-eight hundred eight of the education law.

Plaintiff fails to allege that Cornell falls within this definition of "employer", which is

necessary to assert a claim under § 741. Indeed, in his Eighth Cause of Action, plaintiff does not

even attempt to make any allegations to satisfy this element of his purported state-law

whistleblower claim, nor could he.

Cornell University, including Cornell, is an educational institution organized under the

laws of New York State. It has a variety of statutorily imposed responsibilities related to its

provision of undergraduate, graduate, and professional education. Cornell does not fall within

G272983.1                                    - 34 -

any of the four categories of a § 741 employer. Cornell does not, as do some other universities, own or operate a hospital, and thus, is not a facility licensed under Articles 28 or 36 of the New York Public Health Law, such as a hospital or diagnostic and treatment center. Similarly, Cornell does not provide the designated services under the New York Mental Hygiene or Correction law and it is not a pharmacy registered with the New York State Department of Education pursuant to New York Education Law. Cornell does provide health care services to their students, as referred to in § 741(1)(iii), but plaintiff does not allege that his claim arose from complaints related to the student health services. Cornell is simply not the type of employer § 741 was intended to reach, and plaintiff makes no allegations to the contrary. The legislature could have included medical schools within the ambit of health care "employer" or it could have included any entity that employed physicians with hospital attending privileges if it had chosen to do so, but it did not. Cornell cannot be held to have violated a statute that does not apply to it.

### D. Dr. Smith Must Allege Improper Quality of Patient Care by his Employer, Not By a Third a Party.

It is important to note that plaintiff is complaining almost exclusively of improper activities on the part of NYPH, not Cornell. The First Cause of Action which alleges violation of the Federal False Claims Act is directed solely at the "Defendant Hospitals." See Third Amended Complaint at ¶¶ 77-93. In fact, plaintiff acknowledges that "[i]n most instances, the University is billing for the correct exam." See id. at ¶ 67. Cases under § 740 prohibit retaliating against employees who complain about practices of their own employer, but the statute does not protect employees who complain about the practices of a third-party employer. Radice v. ElderPlan, Inc., 217 A.D.2d 690, 630 N.Y.S.2d 326 (2d Dept. 1995); Berwerger v. County of

Orange, 121 F. Supp. 2d. 334 (S.D.N.Y. 2000). Therefore, plaintiff fails to make out a claim under § 741 against Cornell.

### E.  Allegations of Improper Billing are not Actionable Under § 741.

Alleged internal disclosures of purported billing compliance issues by a plaintiff cannot support a § 740 claim.  Billing compliance is not the "type of violation which creates a 'substantial and specific danger to the public health or safety'" under § 740.  Remba v. Federation Employment and Guidance Service, 76 N.Y.2d 801, 801, 559 N.Y.S.2d. 961 (1990). As § 741 was enacted to specifically to expand the coverage of § 740 to protect the "health" of a specific patient, there is nothing in § 741 that would include the billing compliance issues purportedly raised by plaintiff.

Section 741 requires that the employer's practices complained of either "present a substantial and specific danger to public health or safety or a significant threat to the health of a specific patient."  § 741(1)(d).  Dr. Smith alleges neither, and only parrots the general words "improper quality of patient care" found in the statute.  See Third Amended Complaint at ¶¶ 466, 468.  The Third Amended Complaint is devoid of the necessary allegations that the public health and safety or the health of a specific patient was or is at risk due to improper billing.

### POINT IV

### THE THIRD AMENDED COMPLAINT
### FAILS TO STATE A CLAIM FOR DEFAMATION

### A.  New York's One-Year Statute of Limitations Bars the Defamation Claim.

Plaintiff fails to set forth anywhere in the Third Amended Complaint the date(s) upon which Cornell allegedly defamed him.  The Third Amended Complaint does, however, allege that plaintiff ended his relationship with Cornell in May 2003. See Third Amended Complaint at

¶ 76. Dr. Smith first asserted a claim for defamation in his Third Amended Complaint filed on January 12, 2005, over one year after the end of his employment at Cornell.

New York C.P.L.R. § 215(3) sets forth a one-year statute of limitations for defamation claims. See, e.g., Solas v. Jones, 2005 WL 525444 (S.D.N.Y., Mar. 7, 2005).[10] Plaintiff has not made any allegation that any allegedly defamatory statements occurred within the year prior to his filing of his Third Amended Complaint. Indeed, given the apparent cessation of his relationship with Cornell in May 2003, which is clearly more than one year prior to the filing of his claim, and the lack of any other dates pleaded in regard to the allegedly defamatory statements, the only conclusion that can be drawn is that plaintiff's defamation claim is untimely under the one-year statute of limitations.

## B. Dr. Smith's Defamation Claim Fails as a Matter of Law, because He Does Not Allege any Defamatory Statements.

To make out a claim for defamation under New York law, a "plaintiff must show: 1) the defendant made a false and defamatory statement about the plaintiff, 2) the defendant published the statement to a third party, 3) fault on the part of the defendant in doing so, and 4) injury to the plaintiff or per se actionability." Deutsche Asset Mgmt. v. Callaghan, No. 01 Civ. 4426 CBM, 2004 WL 758303, *12 (S.D.N.Y. Apr. 7, 2004). A defamatory statement is "one that exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or ... induce[s] an evil opinion of one in the minds of right-thinking persons, and ... deprives one of ... confidence and friendly intercourse in

---

[10]    The applicable substantive law for plaintiff's defamation claim is that of New York, because "[a] federal court... adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989). Further, "[u]nder Connecticut choice of law rules, the applicable substantive law is that of the state with 'the most significant relationship to the occurrence and the parties.'" Burns v. King, No. 3:02CV00897, 2004 WL 2381736, *1 (D. Ct. Sept. 29, 2004) (quoting O'Connor v. O'Connor, 201 Conn. 632, 648, 519 A.2d 13 (1986)).

- 37 -

society.'" Celle v. Filipino Reporter Enterprises, 209 F.3d 163, 177 (2d Cir. 2000) (quoting Kimmerle v. New York Evening Journal, 262 N.Y. 99, 186 N.E. 217 (1933)). New York law requires a defamation plaintiff to set forth "the particular words complained of… in the complaint." N.Y. C.P.L.R. 3016(a). However, the Federal Rules of Civil Procedure govern the pleading requirements for defamation claims in federal court. Deutsche Asset Mgmt., 2004 WL 758303, *12. While the Second Circuit does not require a plaintiff to plead the allegedly defamatory words verbatim, the complaint must be "detailed and informative enough to enable defendant to respond and to raise the defense of res judicata if appropriate." Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986). "The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." Id. To fulfill this standard, "the plaintiff must specify who made the statements, when they were made and in what context, whether they were made to a third party, and whether they were written or oral." Deutsche Asset Mgmt., 2004 WL 758303, *12.

Here, even under the most liberal reading of the notice pleading requirement of the Federal Rules of Civil Procedure, plaintiff's defamation claim must be dismissed because he simply fails to plead a defamatory statement.[11] Instead of sufficiently identifying the offending statements and their allegedly defamatory content, thus enabling the defendants to prepare a defense, plaintiff raises only these vague and conclusory assertions in the Third Amended Complaint:

> "Defendants New York Presbyterian Hospital and Cornell" published "false and defamatory statements of and concerning" plaintiff's "professional practice and competency" to "third parties" at New York Presbyterian Hospital and at Weill

---

[11] Plaintiff's failure to adequately plead a defamatory statement is fatal to his claim even if Connecticut substantive law applies. See, e.g., Kloth v. Citibank (South Dakota), 33 F. Supp. 2d 115, 120-21 (D. Conn. 1998).

Medical College "as well as to third parties outside of these institutions" (¶¶ 259-260);

"Defendants New York Presbyterian Hospital and Cornell," along with their employees and faculty members "including but not limited to" Dr, Sostman and Dr. Hayes, "have engaged in a pattern of… disparagement, in the form of unfounded and false statements" about plaintiff's complaints regarding hospital policies and practices (¶ 261);

"Dr. Sostman has made false and defamatory statements" about plaintiff to "numerous [radiologists] and other individuals" (¶ 262); and

"Dr. Hayes also repeated the false statements to other individuals and made other defamatory comments" about plaintiff (¶ 263).

Additionally, each of these conclusory statements is based solely on plaintiff's "information and belief." Thus, Dr. Smith has not only failed to plead an iota of factual detail to provide defendants with enough information to be able to defend themselves as to the substance of the statements, but also apparently alleged this claim without having any such information himself.[12]

Having utterly failed to identify in any meaningful way the allegedly defamatory statements, plaintiff's defamation claim must be dismissed. See Abrahams v. Young & Rubicam, 979 F. Supp. 122, 128-29 (D. Conn. 1997) (dismissing a claim for defamation as "wholly insufficient," where plaintiff alleged that a written, defamatory memorandum was published "to another," because plaintiff did not "specify who 'another' might be or in what context the statements were made"); Wanamaker v. Columbian Rope Co., 713 F. Supp. 533, 545 (N.D.N.Y. 1989), aff'd, 108 F.3d 462 (2d Cir. 1997) (granting motion to dismiss defamation claim because it "consist[ed] solely of the vague, conclusory statement that defendants defamed him by speaking *or* writing *or* circulating malicious, untrue and damaging comments about his job performance").

---

[12] Dr. Smith also refers to allegedly intentional, false statements supposedly referenced in Paragraphs 107, 110, and 111 of the Third Amended Complaint. Id. at ¶¶ 264-65. In fact, these paragraphs refer in turn to Paragraphs 14, 17, and 18, respectively and do not describe statements of any kind, but merely set forth background information and definitions. Id. at ¶¶ 14, 17-18.

## POINT V

### PLAINTIFF FAILS TO STATE A CLAIM FOR
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### A. Plaintiff's Claim Is Barred by the One-Year Statute of Limitations.

Plaintiff's Fifth Cause of Action attempts to allege a claim for intentional infliction of

emotion distress. However, the statute of limitations for an intentional tort under New York law,

like the defamation claim, is one year. N.Y. C.P.L.R. § 215. See Smith v. Soros, 2003 WL

22097990, *7 (S.D.N.Y. 2003). Accordingly, this claim must also be dismissed.

#### B. Plaintiff Does Not State A Claim For Relief Under New York Law.

Even if the claim was not time-barred, plaintiff fails to state a claim for intentional

infliction of emotional distress. Failing to allege any specific factual basis for his claim, plaintiff

merely incorporates by reference the background facts alleged in the introductory portions of the

Third Amended Complaint, ¶¶ 267-314, and then alleges further that "Dr. Sostman's and Dr.

Hay's conduct was outrageous and supported by NYPH and/or Cornell, their employees,

representatives, Medical Staff and Faculty members as well as the members of their Board of

Trustees." Id. at ¶ 315. Plaintiff's allegations wholly fail to allege a claim for intentional

infliction of emotional distress under New York law.

"Under New York law, a claim for intentional infliction of emotional distress requires a

showing of (1) extreme and outrageous conduct, (2) intent to cause, or reckless disregard of a

substantial probability of causing severe emotional distress, (3) a casual connection between the

conduct and the plaintiff's injury and (4) severe emotional distress." Treglia v. Town of

Manlius, 68 F. Supp. 2d 153, 160 (N.D.N.Y. 1999); see also Freihofer v. Hearst Corp., 65

N.Y.2d 135, 143 (1985); Demas v. Levitsky, 291 A.D.2d 653 (3d Dept. 2002). Conduct is

extreme and outrageous "only if it goes beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society. It is not enough that a defendant's intent was tortious, or even criminal, that its conduct was aimed at inflicting emotional distress or that such conduct was characterized by malice or a degree of aggravation that would support an award of punitive damages in connection with recovering damages for a different tort." Treglia, 68 F. Supp. 2d at 160.

Nothing in Third Amended Complaint even remotely alleges the type of conduct necessary to make out a claim of extreme, outrageous, or atrocious conduct sufficient to support a claim for intentional infliction of emotional distress, nor do any of the underlying facts actually pleaded offer any possibility that plaintiff would be able to plead a viable cause of action if given leave to file and serve yet another amended complaint.

## POINT VI

### PLAINTIFF FAILS TO STATE A CLAIM
### FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's Sixth Cause of Action, titled "negligent infliction of emotional distress," claims "physical sickness and severe emotional distress" as a result of Cornell's "outrageous" conduct. See Third Amended Complaint at ¶¶ 366-367. For the same reasons as set forth in Point V above, the alleged conduct in this case is neither extreme nor outrageous, and even if it could be characterized as negligent, the New York Court of Appeals "has strictly adhered to the basic proposition that when an employee is injured in the course of employment, the sole remedy for the employee lies in the Workers' Compensation Law." Reich v. Manhattan Boiler & Equip. Corp., 91 N.Y.2d 772, 779 (1998). It is well-established that, "when a defense based on the exclusivity of the statutory remedy is interposed, no suit against an employer may be maintained

G272983.1                        - 41 -

for an accidental injury that may be fairly described as 'arising out of and in the course of the employment.'" Burlew v. American Mut. Ins. Co., 63 N.Y.2d 412, 416 (1984) (quoting N.Y. Workers' Compensation Law § 10).

In this case, Dr. Smith's claim based on allegedly job-related injuries that involve allegedly negligent conduct by his employer, Cornell, along with Drs. Sostman and Hayes, who were in the same employ, is barred by the exclusivity provisions of the Workers' Compensation Law §§ 10, 11, and 29(6). Plaintiff is not permitted to sue Cornell for injuries caused by negligence of any kind because the Workers' Compensation Law provides the exclusive remedy for such injuries. See Arroyo v. WestLB Admin., Inc., 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999), aff'd, 213 F.3d 625 (2000); Hayles v. Advanced Travel Management Corp., 2004 WL 26548, *14 (S.D.N.Y. Jan. 5, 2004); see also Maas v. Cornell University, 253 A.D.2d 1, 3, 683 N.Y.S.2d 634, 635-36 (3d Dept. 1999), aff'd, 94 N.Y.2d 87 (1999). Thus, the Sixth Cause of Action against Cornell should be dismissed.

## POINT VII

### PLAINTIFF FAILS TO STATE A CLAIM OF BREACH OF CONTRACT

In his Seventh Cause of Action, plaintiff attempts to mix the alleged retaliation, discrimination and coercion together with Cornell's policies on freedom of expression and corporate compliance, add a dash of implied covenant of good faith and fair dealing, and label it a breach of his employment contract. See Third Amended Complaint at ¶¶ 416-417. Dr. Smith had a term appointment that began in 1999 and was not renewed, effective June 30, 2003, as announced in Dr. Sostman's June 28, 2002 letter. See id. at ¶¶ 62, 207(d). He does not allege any provision of any employment contract that was breached.

G272983.1                     - 42 -

To the extent that Dr. Smith attempts to allege that Cornell and/or its employees breached university policies, his claim is not viable under New York law. Any contention that Cornell failed to adhere to its policies and internal practices and thus breached his employment contract is defective as a matter of law, based on the New York Court of Appeals decision in Maas v. Cornell University, 94 N.Y.2d 87, 93 (1999), which explicitly held that the University's alleged failure to follow its internal policies and procedures could not provide a basis for a breach of contract claim. See also Mason v. Central Suffolk Hospital, 3 N.Y.3d 343, 348 (2004) (no breach of contract lies in failure to follow institutional documents such as bylaws and procedures); Byerly v. Ithaca College, 290 F. Supp. 2d 301, 305-06 (N.D.N.Y. 2003) (applying same rationale to claimed breaches of contract and implied covenant of good faith and fair dealing), aff'd, 113 Fed. Appx. 418, 2004 WL 2338141 (2d Cir. 2004). Cornell requests that the Court dismiss the Seventh Cause of Action in its entirety.

## POINT VIII

### THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST CORNELL FOR INSUFFICIENCY OF PROCESS BECAUSE IT WAS NOT ACCOMPANIED BY A SUMMONS

The Third Amended Complaint should be dismissed with respect to Cornell, pursuant to Fed. R. Civ. P. 12(b)(2)(4) and (5), for insufficient process and insufficient service of process because Cornell has never been properly served with a valid summons conferring personal jurisdiction over it in this FCA action.

Section 3730(b)(3) of the False Claims Act states that after the court orders the complaint to be unsealed and served upon the defendant, service must be completed "pursuant to Rule 4 of the Federal Rules of Civil Procedure." The *qui tam* relator's failure to strictly comply with the filing and service requirements of 31 U.S.C. 3730(b) requires that the complaint be dismissed.

G272983.1                                                                  - 43 -

See United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995 (2d Cir. 1995) (filing and service requirements of the Act are important and mandatory and compel dismissal where the purposes behind those requirements are not satisfied).

Moreover, jurisdiction is not conferred, and there can be no subsequent judicial proceedings, if no summons, or a defective summons is served. See Macaluso v. New York State Dept. of Environmental Conservation, 115 F.R.D. 16, 17-18 (E.D.N.Y. 1986) (service of an unsigned, unsealed summons is not merely a technical defect but considered a complete disregard of Rule 4).

Plaintiff has utterly failed to abide by the requirements of Rule 4 of the Federal Rules of Civil Procedure and Section 3730(b)(3) of the False Claims Act. He did not properly serve Cornell with a valid summons together with either the Second Amended Complaint or Third Amended Complaint, and therefore, personal jurisdiction is lacking.

According to the affidavits of service filed by plaintiff, two process servers delivered documents relating to this case to the Office University Counsel in Ithaca, New York on July 27, 2004. Copies of these affidavits are annexed to the Schulz Declaration as Exhibits "D" and "E", respectively. On July 27, 2004, plaintiff caused to be served what purports to be a summons on Cornell University. See Schulz Decl., Exhibit "D." A copy of this "summons" is annexed to the McCabe Affidavit as Exhibit "A", but there was no accompanying document that purported to be a complaint. The document is addressed to the "Office of the President, Cornell University Joan and Sanford I. Weill Medical College," but it is not identified as a summons, nor does it bear any sort of caption or title. See id. Later on the same date, plaintiff caused to be served what purports to be copies of the "Second and Third Amended Complaint." See McCabe Aff.,

- 44 -

Exhibits "B" and "C"; Schulz Decl., Exhibit "B." According to the Court's docket, plaintiff
subsequently moved to withdraw this version of the Third Amended Complaint.

It is clear from a review of the aforementioned affidavits of service and the copies of the
documents identified therein that Cornell was never served with a valid summons together with
the complaint as required by 31 U.S.C. 3730(b)(3) and Rule 4. In the absence of sufficient
service of process, there is no personal jurisdiction over Cornell, and this defendant should be
dismissed.

## POINT IX

### DEFENDANT CORNELL WAS MISJOINED UNDER RULE 20
### AND THE CLAIMS AGAINST IT SHOULD BE DISMISSED OR SEVERED

Cornell was misjoined in this action with other unrelated defendants and the claims
alleged against it should be dismissed for lack of personal jurisdiction, or at least severed and
transferred.

#### A.  Cornell is Not Properly Joined in this Action.

Federal Rule of Civil Procedure 20(a) permits parties to be joined in a single action as co-
defendants only if two prerequisites are met: 1) plaintiff asserts a right to relief against each
defendant jointly, severally, or in the alternative, any right to relief in respect of or arising out of
the same transaction, occurrence, or series of transactions or occurrences; and 2) there exists a
question of law or fact common to all defendants. See Ginett v. Computer Task Group, 962 F.2d
1085, 1095 (2d Cir. 1992). These two requirements of transactional relatedness and
commonality are cumulative and allow permissive joinder only when both are satisfied. See id.;
4 Moore's Federal Practice § 20.02[1][a] (Matthew Bender 3d ed.)

- 45 -

In the FCA context, courts have routinely rejected plaintiffs' attempts to sue in a single action a group of unrelated, or loosely related individuals and entities by claiming an industry-wide fraudulent scheme. For example, in United States ex rel. Citizens United to Reduce and Block Federal Fraud, Inc. v. Metropolitan Medical Center, Inc., No. 89-0592-CIV, 1990 U.S. Dist. LEXIS 18339 (S.D. Fla., Jan. 11, 1990), plaintiffs alleged that a group of doctors and medical centers, all affiliated with one health maintenance organization, submitted false claims to the United States. The district court ruled that despite some common issues of law surrounding Medicare/Medicaid billing rules, plaintiffs would be required to establish a different set of facts for each individual doctor and medical center in light of the particular circumstances surrounding the allegations against them, and therefore, the requirements of Rule 20 were not met. See id. at *5-6.

Similarly, in United States ex rel. Grynberg v. Alaska Pipeline Co., No. 95-725, 1997 U.S. Dist. LEXIS 5221 (D.D.C., Mar. 27, 1997), plaintiffs were held to have misjoined a number of defendants in an FCA case based on allegations of a common method of fraud. Plaintiffs alleged that some 70 gas and pipeline entities defrauded the government by underrepresenting the volume of gas they harvested from Indian lands. In analyzing transactional relatedness and commonality amongst the defendants under Rule 20, the court refused to permit joinder of defendants who were alleged to have engaged in similar types of fraudulent activity, but who did not act in concert with one another. See id. at *4-6. The court held that, with respect to joinder, "it is not enough for plaintiff to allege that each defendant violated the False Claims Act or even that each violated the [False Claims Act] in a similar manner." Id. at *6.

Here, Dr. Smith's general allegations of fraudulent activity, which is purportedly "widespread and common to all Defendant Hospitals," see Third Amended Complaint at ¶ 6, do

G272983.1                                                    - 46 -

not satisfy the requirements of permissive joinder under Rule 20. He does not plead facts sufficient to establish that the claims against Cornell and the "Defendant Hospitals" arise out of the same transaction, occurrence, or series of transactions or occurrences. Moreover, he cannot make such allegations because plaintiff's FCA claims against Cornell relate to entirely different transactions and occurrences than those alleged against the other defendants. According to the Third Amended Complaint, Cornell's billing for the "Professional Component" of the subject radiological studies occurred under a different billing system and methodology than that used by co-defendant NYPH, Yale New Haven Hospital, Inc. and Yale University (collectively the "Yale defendants"). See Third Amended Complaint at ¶ 67(c) ("The exams that are billed by Cornell are often different than those billed by the New York Presbyterian Hospital for the same patient same exam" [sic]); compare id. at ¶¶ 31-59 with ¶¶ 60-76. Since the transactions and occurrences alleged are distinct as between the defendants, plaintiff fails to meet the transactional relatedness test set forth in Rule 20, and Cornell cannot be permissively joined in this action.

In addition, although Dr. Smith avers that "the consolidation of all of Defendant Hospitals in this jurisdiction in this single action is proper because of common questions of law and fact," Third Amended Complaint at ¶ 6, this type of conclusory pleading does not satisfy the commonality branch of the permissive joinder test under Rule 20. Paragraph 6 of the Third Amended Complaint goes on to allege as follows:

> Common questions of law and fact include the applicability of the FCA to improper Medicare and Medicaid reimbursement claims paid to each Defendant Hospital for the same types of non-reimbursable outpatient Radiology Studies imaging procedures as set forth herein. The techniques used for such improper billing and receipt of payments are pervasive, widespread and common to all Defendant Hospitals, and include the use of computerized software

> and hardware equipment which was specifically designed to enable
> and facilitate such fraudulent billing practices.

Besides the fact that these allegations do not even mention Cornell or any medical school as

opposed to "Defendant Hospitals," this is exactly the type of generalized pleading rejected by the

courts in Citizens United to Reduce and Block Federal Fraud, Inc. and Grynberg. Merely

alleging that each defendant violated the False Claims Act by using similar techniques to

accomplish the fraud, does not satisfy the commonality requirement of Rule 20. The factual

circumstances surrounding Cornell's billing for radiological studies and its alleged retaliation

against plaintiff are completely different and distinct from those pertaining to NYPH and the

Yale defendants. Accordingly, Cornell has been misjoined in the action.

## B. The Misjoinder of Cornell Requires Dismissal of the Claims Against It.

It has been held that the misjoinder of a defendant in a multi-defendant FCA case results

in dismissal where no independent jurisdictional basis exists with respect to the misjoined

defendant. In United States ex rel. North Santiam Watershed Council v. Kinross Gold USA,

Inc., No. C 96-3673, 1998 WL 118176 (N.D. Cal., Mar. 9, 1998) plaintiffs sued a number of

mining companies under the FCA alleging that they defrauded the government by making false

certifications. Id. at *1. The district court had ruled that permissive joinder as to all defendants

was improper because the requirements of Rule 20(a) were not met. Id. at *2. With respect to

personal jurisdiction, plaintiffs argued that since the basis for personal jurisdiction over one

defendant was proper, personal jurisdiction was obtained over all defendants pursuant to 31

U.S.C. § 3732(a). Id. at *3. This section of the False Claims Act provides that in the case of

multiple defendants, an action may be brought "in any judicial district in which any one

defendant can be found, resides [or] transacts business." Id. Plaintiffs argued that one defendant

was headquartered in the district, and therefore, jurisdiction was proper as to all defendants. Id.

G272983.1                              - 48 -

The court in North Santiam Watershed Council, No. 96 Civ. 3673, 1998 WL 118176

(N.D. Cal. 1998), held that, "FCA section 3732 requires that the relators allege facts that if true

would establish an independent basis for personal jurisdiction over each defendant." Id. at *3.

Simply put, pleading proper personal jurisdiction over one defendant does not, by operation of

Section 3732 alone, confer personal jurisdiction over every other named defendant in a multi-

defendant FCA action. See id. Since the relator failed to establish a basis for personal

jurisdiction with respect to each mining company defendant, the court dismissed the claims

against all but one defendant. See id.

The same result should obtain here. Dr. Smith pleads that personal jurisdiction lies with

respect to Cornell by virtue of 31 U.S.C. § 3732(a) and the mere presence of the Yale

defendants. See Third Amended Complaint at ¶¶ 6, 8-10. He utterly fails, however, to plead an

independent basis for the Court's exercise of personal jurisdiction over Cornell, requiring

dismissal.

### C. Absent Dismissal, the Claims Against Cornell Must be Severed and Transferred.

Federal Rule of Civil Procedure 21 states, "[a]ny claim against a party may be severed

and proceeded with separately." The Rule vests broad discretion in the court in determining

whether to order severance. See New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d

Cir. 1988), cert. denied, 488 U.S. 848 (1988) ("The decision of whether to grant severance is

committed to the sound discretion of the trial court."). In exercising its discretion, the court must

consider fundamental principles of fairness and judicial efficiency. See German v. Federal

Home Loan Mort. Corp., 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995). "In deciding whether

severance is appropriate, courts generally consider (1) whether the issues sought to be tried

separately are significantly different from one another, (2) whether the separable issues require

the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted." Id.

Here, notions of fairness and judicial economy dictate that the claims against Cornell be severed from those against the Yale defendants. Clearly, the majority of the causes of action set forth in the pleading are tort, contract and statutory claims based on New York substantive law and they are directed solely at the New York-based defendants. All of the witnesses and all of the documentary evidence relating to plaintiffs' claims against Cornell are located in New York. Moreover, the factual allegations pertinent to Dr. Smith's FCA claims against Cornell, as compared to those relating to the remaining defendants, are also dissimilar. Requiring Cornell to defend itself in the District of Connecticut will work a substantial prejudice on this particular defendant, but no such prejudice will be suffered by Dr. Smith since this matter is only in the pleading stage, and he resides in New York (id. at ¶ 17). Accordingly, the claim against Cornell should be severed, and transferred to the Southern District of New York.

## POINT X

### SHOULD THE COURT DECLINE TO DISMISS THE ACTION AGAINST CORNELL, IT SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

In the event that this Court declines to dismiss the action against Cornell in its entirety, the convenience of the witnesses and the interests of justice compel that action against Cornell be severed and transferred to the Southern District of New York.

28 U.S.C. § 1404(a) provides, in relevant part, as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of the transfer statute "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against the unnecessary inconvenience and expense" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). A review of all of the factors of fairness and convenience in this case militate in favor of a transfer of the action against Cornell to the Southern District of New York.

## A. The Southern District of New York is a Forum With Proper Jurisdiction and Venue.

"The prerequisite to evaluating the propriety of a transfer is whether there is a transferee forum available with proper jurisdiction and venue." Bristol-Myers Squibb Co. v. Andrx Pharmaceuticals, LLC, No. 03 Civ. 2503, 2003 U.S. Dist. LEXIS 21967, *2 (S.D.N.Y. Dec. 5, 2003) (citing Alfadda v. Fenn, 159 F.3d 41, 44 (2d Cir. 1998)). The Southern District of New York is an appropriate transferee forum with respect to the claims against Cornell. Section 3732(a) of the False Claims Act states, "[a]ny action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Undoubtedly, venue would have been proper had Dr. Smith brought his fraud, retaliation and employment claims in an action against Cornell in the Southern District of New York both because this defendant "can be found" there and because the acts proscribed by the False Claims Act were allegedly committed by Cornell in that jurisdiction.

## B. The Relevant Factors Point Decidedly to the Southern District of New York as the Most Appropriate Forum in Which to Litigate the Claims Against Cornell.

Where, as here, the case could have been commenced in the transferee court, the transferor court should assess the convenience and fairness of a transfer. The factors to be considered are:

G272983.1                                                    - 51 -

> (1) the location of the events giving rise to the suit, (2) the
> convenience of the parties, (3) the convenience of the witnesses,
> (4) the relative ease of access of proof, (5) the availability of
> process for unwilling witnesses, (6) plaintiff's choice of forum, (7)
> a forum's familiarity with  the governing law, (8) trial efficiency,
> and (9) the interest of justice

Lescare Kitchens, Inc. v. Home Depot U.S.A., Inc., No. 3:98CV1354, 1998 U.S. Dist. LEXIS

16242, *7 (D. Conn. Sept. 29, 1998) (quoting O'Brien v. Okemo Mountain, Inc., 17 F. Supp. 2d

98, 103-04 (D. Conn. 1998)).  These factors, taken together, tilt the balance in favor of a transfer

to the Southern District of New York.

### 1.  Location of the events giving rise to the action

The locus of operative facts is "traditionally an important factor to be considered in

deciding where a case should be tried."  Bristol-Myers Squibb Co. v. Andrx Pharmaceuticals,

LLC, No. 03 Civ. 2503, 2003 U.S. Dist. LEXIS 21967, *3 (S.D.N.Y. Dec. 5, 2003).  Plaintiff

alleges that he was employed as a Professor of Radiology in the Academic Clinical Track at

Cornell from July 1999 through May 2003, and that during this time he served as an Attending

Radiologist at NYPH located in Manhattan, New York.  See Third Amended Complaint at ¶¶ 62-

63.  According to his pleading, all of plaintiff's claims against Cornell arise out of occurrences

related to his employment with Cornell, including purported complaints he made and facts he

determined concerning radiological billing while he was so employed.  Thus, all of the conduct

engaged in by Cornell that form the bases of plaintiff's Federal and state law claims allegedly

occurred in New York.

### 2.  Convenience of the parties

When considering the convenience of the parties "the logical and relevant starting point

is a consideration of the residence of the parties."  Wine Mkts. Int'l v. Bass, 939 F. Supp. 178,

182 (E.D.N.Y. 1996).  Plaintiff is a resident of the State of New York.  See Third Amended

Complaint at ¶ 7. Cornell is alleged to be a "corporation existing in the State of New York." See id. at ¶ 11. The most convenient forum for both of these parties, geographically speaking, is the Southern District of New York. It is inconvenient for Cornell to continue to defend itself against plaintiff's claims in the District of Connecticut when all of its corporate representatives and University counsel are located in New York.

### 3. Convenience of witnesses

"Convenience of witnesses is the most powerful factor governing the decision to transfer a case." Probatter Sports, LLC v. Southampton Sports Zone, Inc., No. 3:02 CV 1776, 2003 U.S. Dist. LEXIS 18406 (D. Conn. Aug. 27, 2003) (citing United States Surgical Corp. v Imagyn Med. Tech., 25 F. Supp. 2d 40, 46 (D. Conn. 1998). Convenience of the witnesses will be served only if the case against Cornell is severed and transferred to the Southern District of New York. As noted above, plaintiff presently resides in New York. The individuals identified by name in the Third Amended Complaint as employees of Cornell are residents of New York. See Third Amended Complaint at ¶¶ 68-69, 73. Plaintiff cannot demonstrate that it would be more convenient for these witnesses to give testimony and participate in the litigation process in Connecticut. This all-important factor therefore favors transfer.

### 4. Relative ease of access to proof

All of the medical records, including documentation relating to the radiological reports prepared by Cornell radiologists, as well as all of the claims for payment pertaining to the Professional Component of the radiological services alleged to have been submitted by Cornell are maintained in New York. All of the computer information systems operated by Cornell and referred to in the Third Amended Complaint, are located in New York. In addition, all of the records, notes and correspondence relating to plaintiff's alleged complaints are maintained by

Cornell in the Southern District of New York. As noted above, the material witnesses relating to plaintiff's claims against Cornell, including plaintiff himself, are also located within the Southern District of New York.

### 5.  Availability of process for unwilling witnesses

While the ability to compel unwilling witnesses to testify does not appear to point to one district over another, the mere fact that virtually all witnesses are located New York nevertheless supports transfer. See Douglas v. Syracuse Univ. College of Law, 1995 U.S. Dist. LEXIS 13529, *8 (S.D.N.Y. Sept. 18, 1995) ("[C]onsideration of the availability of process to compel attendance of unwilling witnesses probably does not favor either district . . . . At this point, it is more likely, however, that the Northern District is more appropriate because all those identified as witnesses are located in the Northern District.")

### 6.  Plaintiff's choice of forum

In this case, plaintiff is asserting, in part, the rights of the United States Government, pursuant to the *qui tam* provision of the False Claims Act. As such, Dr. Smith's choice of forum should be given little weight. See United States ex rel. Penizotto v. Bates E. Corp., No. 94-3626 1996, U.S. Dist. LEXIS 10316, *2 (E.D. Pa. Jul. 18, 1996); United States ex rel. LaValley v. First Nat'l Bank, 625 F. Supp. 591, 594 (D.N.H. 1985).

### 7.  The Forum's familiarity with governing law

The presence of plaintiff's numerous tort, contract and statutory claims asserted under New York state law favors a transfer of the claims against Cornell to the Southern District of New York. While it is conceded that any district court may handle an FCA case with equal skill, the majority of Dr. Smith's remaining claims are based on New York substantive law, including a relatively new statute, New York Labor Law § 741, which was purportedly enacted to protect

employees in the healthcare field from retaliation stemming from complaints about patient care issues. <u>See</u> Third Amended Complaint at ¶¶ 466-469; <u>see also</u> <u>United States v. Nature's Farm Prods.</u>, No. 00 Civ. 6593, 2004 U.S. Dist. LEXIS 8485, *18 (S.D.N.Y. May 12, 2004) (referring to the presence of state law claims as influencing this factor).

### 8. Trial Efficiency

While the Court may have already developed some familiarity with this case, plaintiff's claims against Cornell are still in the pleading stage, and neither party has engaged in discovery. Moreover, upon information and belief, no rulings have been made as to the merits of any claim advanced against any defendant.[13]  These facts clearly weigh in favor of transfer.

### 9. The Interests of Justice

Simply put, it is unfairly prejudicial to force Cornell to defend itself against Dr. Smith's claims in a forum where neither of these parties reside or transact business, where none of the misconduct by this defendant is alleged to have taken place, and where none of the documentary or testimonial evidence is located. Accordingly, the interests of justice will be served by severing and transferring any claims against Cornell which survive dismissal to the Southern District of New York.

## CONCLUSION

For the foregoing reasons, Cornell's motion to dismiss the Third Amended Complaint in its entirety as against Cornell pursuant to Fed. R. Civ. P. 9(b), 12(b)(2),(4),(5) and (6) should be granted in all respects, with prejudice. In the alternative, any claims against Cornell which may survive dismissal should be severed and transferred to the United States District Court for the Southern District of New York.

---

[13]    This uncertainty is due to the fact that the court file in this matter remains partially sealed.

Dated: Garden City, New York
     April 25, 2005

                DEFENDANT
                Cornell University Joan and Sanford I. Weill
                Medical College

        By: _____

                Gary P. Schulz, Esq. (phv0056)
                Christopher J. Porzio, Esq. (phv0057)
                Stacey B. Collier, Esq. (ct18895)
                NIXON PEABODY LLP
                City Place
                185 Asylum Street
                Hartford, CT 06103
                (860) 275-6820
                (860) 275-6821 (fax)
                gschulz@nixonpeabody.com

                      - and -

                James R. Kahn, Esq.
                Deputy University Counsel
                Cornell University
                Weill Medical College
                Office of University Counsel
                445 East 69th Street
                New York, New York 10021
                ph (212) 746-0463
                fax (212) 746-0495

                Nelson E. Roth, Esq.
                Deputy Univerity Counsel
                ner3@cornell.edu

                Valerie L. Cross, Esq.
                Associate University Counsel
                vlc1@cornell.edu

                Cornell University
                300 CCC Building, Garden Avenue
                Ithaca, New York 14853
                ph (607) 255-5124
                fax (607) 255-2794