that the statute of limitations had run, and that the district court lacked subject matter jurisdiction over the claims asserted. The statute of limitations argument was based upon the fact that the suit against St. Josephs had been brought improperly in the Eastern District of Pennsylvania because St. Joseph's did not have the requisite contacts with the Commonwealth of Pennsylvania. *See* 240 F. Supp. 2d at 886. Therefore, although normally the claims presented in an action that is subsequently transferred to another district relate back to the filing of the initial action (*i.e.,* the statute of limitations is tolled), St. Joseph's asserted that such treatment in this case was not warranted.

At some point during the proceedings in the case, the government conceded that St. Joseph's did not have any contacts with the Commonwealth of Pennsylvania; therefore, the court determined that "if the action had been brought only against St. Joseph's, venue could not have been laid in Pennsylvania pursuant to 31 U.S.C. § 3732(a) . . . ." *Id.* In addition, the court also stated that the presence of the two Pennsylvania hospitals was not sufficient to establish venue under the False Claims Act. *Id.*

In reaching this determination, the court gave weight to the argument by St. Joseph's that the underlying complaint alleged "no conspiracy or concert of action or joint and several liability between the defendants." *Id.* Based upon this fact, the court determined that "there is no claim that would justify joinder of the relator's claims against St. Joseph's with its claims against the two Pennsylvania hospitals, pursuant to . . . F.R.C.P. 20(a) . . . ." *Id.*[2]

---

[2] When the case against St. Joseph's was severed from the initial underlying action and prior to its eventual transfer to the Western District of Arkansas, a new case was filed against St. Joseph's in the Eastern District of Pennsylvania. With respect to this case, the government conceded that "St. Joseph's did not reside in Pennsylvania, could not be found there, did not transact any business there, and did not carry out any act prescribed by [the False

In the case at bar, Relator concedes that all the actions that he criticizes that were taken by NYPH were performed in New York and that NYPH did not act in concert with any Connecticut defendant. Given the language of the amended FCA, its legislative history, analogous case law and prior positions of the United States, the true party in interest here, it is clear that this Court lacks jurisdiction over NYPH.

## II.    THIS MATTER MAY BE LOOKED UPON AS INVOLVING MISJOINDER OF NYPH OR OTHERWISE REQUIRING A CHANGE OF VENUE.

We just have shown that the FCA action against NYPH should be dismissed for lack of personal jurisdiction. We believe that that conclusion is compelled by the plain meaning and intention of the False Claims Act. However, the issue also may be analyzed from the standpoint of joinder and appropriate venue, irrespective of the FCA. Indeed, that alternative mode of analysis also figured in the ultimate disposition of the *St. Joseph's* case discussed *supra*.

Fed. R. Civ. P. 20(a) governs, and the "plain text of the rule makes clear that defendants may be properly joined in an action if (1) the defendants are jointly and severally liable under the claims asserted by the plaintiffs; or (2) the claims for relief by the plaintiffs arise out of the same transaction or occurrence, or series of transactions or occurrences, and there is a common question of law or fact that will arise in the litigation." *Pergo, Inc. v. Alloc, Inc.* et al., 262 F. Supp. 2d 122 (S.D.N.Y. 2003). *See also Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139 (N.D.N.Y. 1999).

---

Claims Act]." 240 F. Supp. 2d at 887. The court explicitly stated that this new case would have been dismissed for lack of venue, had St. Joseph's made such a motion. It did not have to, however, because it was never served.

It is unclear whether there is a common question of law or fact that could arise in this litigation because, at least as to NYPH, the pleadings are so non-specific that it is impossible to identify any arguably false claim, let alone NYPH's role in presenting it to the government, or any retaliatory conduct. However, it is entirely clear, indeed it is conceded, that there can be no joint and several liability on the part of NYPH and anyone else and that there is no common transaction or occurrence, because the defendants are not alleged to have been involved in a group activity. *See Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Casualty Co.*, 497 F.2d 1151 (2d Cir. 1974), *cert. denied*, 419 U.S. 968 (1974); *Movie Sys., Inc. v. Abel*, 99 F.R.D. 129 (D. Minn. 1983); *United States ex rel. Citizens United to Reduce and Block Fed. Fraud, Inc. v. Metropolitan Med. Ctr, Inc., et al.,* No. 89-0592-CIV, 1990 U.S. Dist. LEXIS 18339 (S.D. Fla., Jan. 11, 1990); *United States ex rel. Grynberg v. Alaska Pipeline Co.*, Civ. No. 95-725, 1997 U.S. Dist. LEXIS 5221 (D.D.C., Mar. 27, 1997).

It is well settled in the law that "parties are misjoined when the preconditions of permissive joinder, set forth in Rule 20(a), have not been satisfied." *Puricelli*, 185 F.R.D. at 141-42 (*citing Glendora v. Malone, et al.,*, 917 F. Supp. 224, 227 (S.D.N.Y. 1996) and *Fong v. Rego Park Nursing Home*, No. 95 Civ. 4445, 1996 WL 468660 (E.D.N.Y. Aug. 7, 1996)). Based upon the failure to properly join the parties, the claims against NYPH should be severed from the claims against the other Defendant Hospitals. In that event, the Court has two options. NYPH thinks that the better of these is for the Court simply to dismiss the case in its entirety for any and all of the myriad reasons stated herein. Relator has had four bites at the pleading apple and still hasn't stated a legally-viable case. Alternatively, under 28 U.S.C. § 1404 (a), this Court would have the authority to transfer the action to the district where the action might have been brought. The only such district that would be an appropriate forum for NYPH would be the

Southern District of New York. However, even if reconstituted there, the instant case still would be fatally defective and so dismissal is the more appropriate remedy.

## III.    RELATOR FAILS TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF THE FCA AND THE FEDERAL RULES.

It is clear that the complaint should be dismissed for want of personal jurisdiction over NYPH. However, if the Court is inclined to review the allegations of the pleading itself, it is equally clear that they are legally deficient. While the Third Amended Complaint is considerably longer than Relator's three previous efforts (the latter two of which sought to name NYPH), it is still vacant of legally-essential detail. Especially regarding NYPH, Relator does little more than assert nebulous, conclusory allegations. He utterly fails to satisfy his obligations under the FCA and, particularly under Fed. R. Civ. P. 9(b), which is applicable to an FCA case, as he is unable to set forth with specificity the "circumstances constituting fraud or mistake . . .

in other words . . . the who, what, where and when" of the alleged false claims allegedly submitted. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

Relator claims that NYPH violated the FCA because it allegedly:

    1)    programmed its billing systems so it could bill for Radiology Studies regardless of whether they were ever used in connection with the diagnosis or treatment of a patient's condition. 3d Am. Compl. at ¶ 79;

    2)    has and continues to misrepresent through false certification and improper use of Medicare and Medicaid reimbursement methods. *Id.* at 80;

    2)    presented and submitted claims to, and received payment from, the Medicare and Medicaid Programs for a component of C Status Radiology Studies. *Id.* at ¶ 81;

3)    presented and submitted claims to, and received payment from, the Medicare and Medicaid Programs for the component associated with Radiology Studies of outpatients that were not properly interpreted and/or finalized by a qualified radiologist in a timely fashion relative to the diagnosis and treatment of the patient for the patient to encounter. *Id.* at ¶ 82;

4)    submitted claims to Medicare and Medicaid for payment for delivery of Radiology services comprised solely of the Technical Component and allegedly falsely certified that Radiology Studies were medically necessary. *Id.* at ¶ 83.

That states Relator's purported "case" against NYPH in its best light. These claims are not true, but for present purposes, we need do no more than to note that these claims, which do not identify a single specific allegedly false payment implicating NYPH, are wholly bereft of the detail required to sustain an FCA claim.

The requisite details for a fraud claim – the identity of the actors, the specific time period or particular date on which any false claims were submitted, and detailed information regarding a specific false claim that was submitted for payment – are conspicuously absent from Relator's complaint. *See generally United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 453 (S.D.N.Y. 2001); *United States ex rel. Walsh v. Eastman Kodak Co, et al..*, 98 F. Supp. 2d 141 (D. Mass. 2000); *United States ex rel. Butler v. Magellan Health Care Servs., Inc.*, 101 F. Supp. 2d 1365, 1369 (M.D. Fla. 2000). There is no allegation regarding any specific fraudulent claim, when and whether it was submitted to the government, by whom, and for what amount. These omissions are fatal to Relator's claim. *See United States ex rel. Riley v. Alpha Therapeutic Corp.*, No. Civ. A. 96-cv-0704, 1997 WL 818593, at *3 (N.D. Cal. Nov. 10, 1997)

(identifying persons engaged in the fraud insufficient if complaint fails to identify "a specific false claim made by any of the named persons").

A.   **Applicability of Rule 9(b) to *Qui Tam* Actions.**

It is well settled that Rule 9(b) applies to counts alleging FCA violations. *See* Fed. R. Civ. P. 9(b); *Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2d Cir. 1995); United States ex rel. Clausen v. Lab Corp. of Am., Inc.,* 290 F.3d 1301, 1309 (11th Cir. 2002) (it is "self-evident" that Rule 9(b) applies to allegations of FCA violations) *cert. denied,* 123 S. Ct. 870 (2003). Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The term "circumstances," under Rule 9(b) includes the identity of the person making the misrepresentation; the time, place and content of the misrepresentation; the method by which the misrepresentation was communicated to the plaintiff; and the result of the false representation. *See Gold,* 68 F.3d at 1476. Thus, a complaint must be dismissed unless it "(1) specif[ies] the statements that the plaintiff contends were fraudulent, (2) identif[ies] the speaker, (3) state[s] where and when the statements were made, and (4) explain[s] why the statements were fraudulent." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir. 1995) (internal quotations omitted).

B.   **Relator Fails to Identify a Single False Claim.**

The *sine qua non* of FCA liability is the presentation of a claim that is false; the failure to identify a claim actually submitted is a failure to adequately plead fraud. *See Clausen,* 290 F.3d at 1311. Courts have consistently held that a complaint alleging FCA violations must, at the very least, identify false claims actually submitted to the government to meet Rule 9(b) standards.

Despite the tautology that a False Claims Act suit ought to require identification of a false claim, Relator has completely neglected do so. It is precisely this type of factually devoid pleading

that Rule 9(b) was designed to prohibit. Because the False Claims Act attaches liability, not to any underlying fraudulent activity, but to the actual false claim for payment, failure to specifically identify a false claim that was submitted for payment is fatal. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265-66 (9th Cir. 1996, *cert. denied*, 519 U.S. 1115 (1997); *United States ex rel. Cox v. Iowa Health Sys.*, 29 F. Supp. 2d 1022, 1025 (S.D. Iowa 1998).

The cases of *United States ex rel. Butler v. Magellan Health Servs.*, 74 F. Supp. 2d 1201 (M.D. Fla. 1999) and *United States ex rel. Obert-Hong v. Advocate Health Care*, No. Civ. A. 99 C 5806 (N.D. Ill. Mar. 28, 2001) are instructive. In *Butler*, an FCA complaint was dismissed for failure to comply with Rule 9(b) because the plaintiff alleged the "mechanism of the claimed fraud," but not the particular contents of the misrepresentation. *Id.* at 1216. As in *Butler*, the Relator here alleges a supposed mechanism of the alleged fraud – a billing system – but does not provide a single example of Medicaid or Medicare being improperly billed for 'Technical Services' that were never utilized. Dismissal therefore is warranted.

A similar result was reached in *Obert-Hong*, 2001 U.S. Dist. LEXIS 3767. Like Relator, Obert-Hong was a physician and former employee of a defendant hospital who claimed that the hospital's billing practices violated Medicare Program regulations and the FCA. In reviewing allegations analogous to those here, the court held:

> The complaint is full of conclusory allegations, but includes no details. It outlines *the general methodology of a scheme*, but offers no specific instances of fraud. It . . . does not identify . . . a single false claim. Courts have repeatedly found comparable pleadings insufficient. The complaint does not identify or describe any specific . . . transactions that allegedly give rise to violations of the FCA.

*Id.* at *5 (emphasis added) (internal citations omitted).

When a Relator merely alleges a scheme of fraud, and not specific occurrences or facts that support his or her proposed general scheme, the complaint fails the Rule 9(b) test. *See generally Phipps,* 152 F. Supp. 2d  at, 453; *Walsh,* 98 F. Supp. 2d 141.  Essentially, Relator has set out the process by which defendants could have produced false claims, but provides none of the facts necessary to show that the alleged process ever resulted in the submission of false claims. *See In re Cardiac Devices Qui Tam Litig.,* 221 F.R.D. 318, 337 (D. Conn. 2004) (stating that to plead "only a general scheme of fraud that might have resulted in the submission of false claims" is insufficient).

Despite Relator's lengthy complaint, there is a paucity of information regarding his False Claims Act allegations.  The majority of the complaint is dedicated to detailed descriptions of what actions Relator took during his employment at Cornell Medical School.  *See* 3d Am. Compl. at ¶¶ 64-76.  Given the level of detail Relator offers regarding his own actions and the actions of his colleagues and superiors, it would appear that he is familiar with the specificity requirement of a complaint alleging violations of the False Claims Act.  It is similarly apparent that Relator is able to communicate, with the requisite specificity, the circumstances surrounding certain actions, albeit actions unrelated to the submission of actual false claims, when he is in possession of such knowledge.  With regard to the details necessary for specific false claims, however, Relator has failed to produce the information necessary to maintain an FCA claim against NYPH. His general and conclusory statements simply don't meet the standard.

Furthermore, Relator premises most of his allegations against NYPH "upon information and belief." *See* 3d Am. Compl. at ¶ 79.  Pleading "upon information and belief" is contrary to the policies supporting Rule 9(b) and, as a result, "courts generally dismiss allegations of fraud based upon information and belief." *Reingold v. Deloitte Haskins & Sells,* 599 F. Supp. 1241, 1266 (S.D.N.Y. 1984).  The Second Circuit has expressly held that pleading based on information and

belief must not be mistaken for a free license to base claims on "speculation and conclusory allegations, rather than adduc[ing] specific facts supporting strong inference of fraud." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). Accordingly, Relator, at a minimum, must provide the factual basis supporting his "information and belief." *See United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999)(*citing Thompson*, 125 F.3d at 903); *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375 (5th Cir. 2003). He fails to do so. Instead, his allegations are rife with conclusory statements devoid of any factual underpinnings. Such statements fall far below the requisite information needed to sustain an FCA claim.

### C. Relator Has Not Sufficiently Alleged Who Was Involved in the Submission of False Claims.

Relator fails to identify hospital personnel at NYPH that made the false statements or were otherwise responsible for submitting the alleged false claims. The only two individuals that he identifies by name, Drs. Sostman and Hayes, are Cornell employees, not NYPH employees. To satisfy Rule 9(b)'s "who" requirement when the defendant is a large entity, the Relator must specify the defendant's employees engaged in the alleged unlawful conduct. *See United States ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*, 937 F. Supp. 1039, 1050-51 (S.D.N.Y. 1996) (FCA complaint failed to satisfy Rule 9(b) because it failed to, *inter alia*, "refer to specific employees who may have been involved in submitting false claims" or "identif[y] the individuals involved in the alleged fraud"); *United States ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330, 336-37 (W.D.N.Y. 1998). Here, Relator identifies employees that he worked with and complained to, but fails to identify any hospital employees who were allegedly involved in the fraud or who submitted the allegedly false claims.

**D.    Relator Has Not Sufficiently Alleged a Relevant Time Period.**

The Third Amended Complaint fails to allege any relevant time period that could give notice to NYPH of its alleged scheme to defraud.  Merely citing broad date ranges is not the equivalent of citing actual dates and therefore fails to satisfy Rule 9(b).  The Court in *United States ex rel. Karvelas v. Melrose Wakefield Hosp.,* 360 F.3d 220, 234 (1st Cir 2004), made it clear that vague wide-ranging time periods, such as that which is proffered by Respondent, are unacceptably deficient.  *See id.* (noting that allegation that hospital was improperly certifying therapists from 1994-1997 was insufficient because it provided "no details concerning the dates . . . of the alleged certification").

In the instant case, Relator's allegations as to time are no more specific than "this practice has been in place since at least 1985 . . . " 3d Am. Compl. at ¶¶ 45, 79, or "a practice which, upon information and belief is a practice which has been going on at the New York Presbyterian Hospital for at least 6 years (probably longer)," *id.* at ¶ 67(a). This sort of allegation clearly fails the Rule 9(b) test.  "Allegations of fraud that occurred over the better part of a decade, without any references to a specific point in time, [are] insufficient to withstand a Rule 9(b) challenge." *Butler,* 74 F. Supp. 2d at 1216.

Relator attempts to obfuscate his complete lack of specificity as to the "when" element of the alleged false claims by documenting the relevant dates of his own actions and the unrelated alleged actions of his colleagues and superiors.  Such details, however, do not remedy the obvious insufficiency of Relator's claim.  In order to satisfy jurisdictional prerequisites, Relator is required to have alleged specific dates for each of the acts, *i.e,* alleged false claims, of which he complains.  His failure to do so is fatal to his claim.

**E.**     **Claims Submitted Before July 12, 1996 are Time Barred.**

All allegations that relate to the alleged conduct of NYPH that precede June 24, 1996, must be barred by the FCA's six-year statute of limitations. *See* 31 U.S.C. § 3731. The six-year limitations period of 31 U.S.C. § 3731(b)(1) begins to run on the date the claim is made, or, if the claim is paid, on the date of payment. *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.,* 985 F.2d 1148 (2d Cir. 1993). Relator's allegations contained in paragraphs 45 and 79 of the Third Amended Complaint claim that "this practice has been in place since at least 1985 . . . ." Since Relator filed his lawsuit under seal on June 24, 2002, any claims that accrued prior to June 24, 1996, are thus barred. At a minimum, the Court should dismiss these allegations with prejudice.

**F.**     **Relator's FCA Retaliation Claim is Also Legally Deficient.**

It is at least theoretically possible to set forth an FCA retaliation claim that could survive the dismissal of an underlying FCA claim related to alleged false submissions. The instant case, however, does not allow Relator to do so. FCA retaliation claims require the same specificity as any other type of FCA claim. Here, again, Relator offers absolutely nothing more than the conclusory statement that he was retaliated against by NYPH after allegedly describing what we show *infra* to be non-actionable conduct to people, if identified at all, having no material connection to NYPH or some again-unidentified action by NYPH.

**1.**     **Relator Wasn't an NYPH Employee.**

The retaliation prohibited by the FCA only relates to the acts of an employer. *See* 31 U.S.C. § 3730(h); *Vessell v. DPS Assocs. of Charleston, Inc.,* 148 F.3d 407, 412 (4th Cir. 1998). However, NYPH was not Relator's employer and Relator does not (and cannot) so allege. Although the False Claims Act does not define "employee," the courts that have addressed the issue have held that the False Claims Act's retaliation protection applies only to true

"employees," not independent contractors such as a non-employed physician who only has hospital staff privileges. *See Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322-23 (1992); *see also Watson v. Connecticut Gen. Life Ins. Co.,* 2004 WL 234970 (3d Cir. 2004); *Hardin v. DuPont Scandinavia,* 731 F. Supp. 1202, 1205 (S.D.N.Y. 1990); *Mruz v. Caring, Inc.,* 991 F. Supp. 701 (D.N.J. 1998); *Shapiro v. Sutherland,* 835 F. Supp. 836, 837-38 (E.D. Pa. 1993).

### 2.      Relator Otherwise Fails to State a Valid Claim.

Relator has not established the requisite elements for a retaliation claim against NYPH under the FCA.  In order to establish a claim for retaliation under the FCA, the complaint must demonstrate that Relator engaged in protected conduct under the FCA; and that his employer knew that he engaged in the protected conduct and took adverse action because of it. *Wilkins v. St. Louis Hous. Auth.,* 314 F.3d 927, 932-33 (8th Cir. 2002).

#### a.      Relator Fails to Demonstrate That He Was Engaged In Protected Conduct

Relator fails to describe with particularity that he was engaged in protected conduct under the FCA while he had hospital privileges at NYPH.  Protected conduct requires a nexus with the "in furtherance of an action" prong of a FCA action.  *See Dookeran v. Mercy Hosp. of Pittsburgh,* 281 F.3d 105, 108 (3d Cir., 2002).  Dissatisfaction with one's treatment on the job, as in the case at bar, is not enough to constitute such action. *Hutchins v. Wilentz,* 253 F.3d 176, 188 (3d Cir., 2001); *McKenzie v. Bellsouth Telecomm., Inc.,* 219 F.3d 508, 518 (6th Cir. 2000) (stating that "merely grumbling to the employer about . . . regulatory violations does not satisfy the requirement").  Such complaints fall far short of the requisite investigation, initiation, or assistance required for a claim of retaliation under the FCA.  *See Zahodnick v. IBM,* 135 F.3d 911, 914 (4th Cir. 1997) (stating that "[s]imply reporting his concern of a mischarging to the

government to his supervisor does not suffice to establish that [the plaintiff] was acting 'in furtherance of a *qui tam* action.'").

> **b.    Relator Fails to Demonstrate That his Employer Knew That He Was Engaged in Protected Conduct or Acted Against him.**

NYPH, of course, was not Relator's employer, but even if one assumed that there had been such a relationship, there is nothing in the complaint that would show that NYPH had the requisite knowledge element. An "employer must be on notice that the employee is engaged in conduct that reasonably could lead to an FCA case." *Karvelas,* 360 F.3d 220, 238. ) Notice of the distinct possibility of litigation of an FCA claim is essential because without the knowledge that an employee is contemplating a False Claims Act suit, there would be no basis for the claim that the employer harbored the prohibited motivation, *i.e.*, retaliation. *See Hutchins,* 253 F.3d at 188. There is no such notice alleged in this case.

**G.    The FCA Retaliation Claim Also may be Time barred.**

The Supreme Court currently is considering the case of *United States of America ex rel. Wilson v. Graham County Soil & Water Conservation District*, 367 F.3d 245 (4th Cir. 2004), presenting the question of whether the applicable statute of limitations for retaliation is the six years provided for under the false claim related provisions of the FCA or whether it is governed by substantially shorter limitations periods derived from State law, in this case, one year. *See* N.Y. Lab. Law § 740(4)(a). NYPH wishes to have the benefit of the Supreme Court's decision and so notes the point without further argument at this time. In any event, the FCA retaliation claim here is so deficient as to require dismissal, whatever the statute of limitations might be.

**IV.    RELATOR'S THEORY ABOUT THE ALLEGED IMPROPRIETY OF THE UNDERLYING ACTS IS LEGALLY INSUFFICIENT.**

This is a motion to dismiss, not an analysis of factual disputes. However, putting aside the fact that the complaint should be dismissed for jurisdictional reasons, Relator's underlying theory of liability is legally flawed, thus providing yet another reason for dismissal. Relator assigns liability to NYPH on the basis of an alleged so-called "false certification":

> When the Defendant Hospitals submitted claims to Medicare and Medicaid for payment for the delivery of Radiology Services comprised solely of the Technical Component, involving Radiology Services which were never utilized for diagnostic or therapeutic purposes, Defendant Hospitals falsely certified that the Radiology Studies were medically necessary and provided in a timely fashion in accordance with the standard of care.

(3d Am. Compl. ¶ 83). *See Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001).

With respect to "express false certification," FCA liability accrues because a claim is submitted that falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is prerequisite for payment. That is not alleged here. On the other hand, an "implied false certification" claim is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment. As Relator states numerous times in the Third Amended Complaint, 42 U.S.C. §1395y(a)(1)(A) expressly prohibits payment under the Medicare program for services provided that are not reasonable and necessary for the diagnosis or treatment of illness or injury. *See* 3d. Am. Compl. ¶¶ 22, 24, 25 and 30. Relator thus apparently jumps to the conclusion that NYPH has somehow made implied false certifications (though Relator identifies no specific claims actually submitted by NYPH). This is not a legally viable argument in this Circuit.

Relator's allegations that certain radiology studies performed by NYPH were not medically necessary are, in the most basic sense, based on quality of care issues. Relator claims, for example, that "Radiology Studies taken without diagnostic or therapeutic purpose could be considered harmful because potentially dangerous ionizing radiation is applied without a corresponding benefit to the patient." 3d. Am. Compl. ¶ 12. However, the law is clear that Relator cannot rely upon quality of care issues to show that certain medical tests (in this case radiology studies) were not "medically necessary." *See Mikes*, 274 F.3d at 698-99.

In *Mikes*, a physician brought a lawsuit against her former employers alleging violations of the FCA. Shortly after her hiring, Dr. Mikes raised concerns related to spirometry tests being performed in the group's offices, claiming that spirometers were susceptible to inaccuracy over time and usage and should be subject to certain standards of care described in guidelines published by the American Thoracic Society, which recommended that spirometers be calibrated on a daily basis. Dr. Mikes's medical group did not recalibrate the machines on a daily basis. Therefore, according to Dr. Mikes, because the spirometers were not properly calibrated, the results from the group's tests were so unreliable as to be "false" under the FCA.

The District Court granted summary judgment to the medical group, holding that submitting a claim for service that was not provided in accordance with a relevant standard of care does not make that claim false or fraudulent for purposes of the FCA. *Id. (citing United States ex rel. Mikes v. Straus,* 84 F. Supp. 2d 427 (S.D.N.Y. 1999). The Second Circuit affirmed, holding that Dr. Mikes's objections to the spirometry tests performed by the medical group did not implicate the standard set out in the Medicare billing form, which includes a certification by the rendering physician that the services reflected on the form were "medically indicated and

necessary for the health of the patient . . . ."  However, the Second Circuit drew a distinction between "medical necessity" and "quality of care."

The Second Circuit held that the "term 'medical necessity' does not impart a qualitative element mandating a particular standard of medical care, and [Dr.] Mikes does not point to any legal authority requiring [the Court] to read such a mandate into the form." *Id.*  The Second Circuit further stated that "medical necessity ordinarily indicates the level -- not the quality -- of the service." *Id.*  Therefore, "inasmuch as [Dr.] Mikes challenges only the quality of [the medical group's] spirometry tests and not the decisions to order this procedure for patients, she fails to support her contention that the tests were not medically necessary." *Id.* at 699.  A similar legal conclusion should apply in the case at bar.

As addressed above, the Relator alleges that because certain radiology studies performed by NYPH were not properly interpreted by a qualified radiologist, NYPH should not have billed Medicare or Medicaid for the Technical Component of the radiology study performed.

> If the Technical Component is completed (i.e., images are generated) but the Radiology Study is not medically indicated or is not utilized for diagnostic or therapeutic purposes relative to the patient encounter for which the Study is created, or if no timely interpretation of the study is performed by a qualified radiologist and properly documented, Medicare and Medicaid do not cover the performance of the Study.

3d Amend. Compl. ¶ 30.  Relator is claiming that the decision of the physician (who ordered the radiology study), whether or not to have the study interpreted, has a bearing on whether ordering the study was medically indicated in the first place.  The holding of the Second Circuit in *Mikes* proves that Relator is legally incorrect.  That holding, binding on this Court, shows that factors that come into play after the decision to order a particular medical procedure have no bearing on whether or not such procedure was medically necessary.  Medical necessity is determined at the

time the procedure is ordered, not after it is performed.  The Third Amended Complaint does not contain any allegations that at the time the radiology studies were ordered, such studies were not intended to be used for diagnostic and therapeutic purposes.  In other words, just because the radiology studies were not interpreted after the study was performed does not mean that the studies were not medically necessary at the time they were ordered by the physician.  Therefore, as Relator does not allege facts regarding the decision by physicians to order radiology tests for patients, Relator fails to show that radiology tests performed by NYPH were not medically necessary.  In short, Relator alleges nothing "false" as that term is applied to medical testing by the Second Circuit.

## V.    THE COMPLAINT HAS ADDITIONAL JURISDICTIONAL SHORTCOMINGS.

### A.    Relator has not Pleaded That He is an Original Source.

Under the FCA's *qui tam* regime where, as here, the government declines to participate, a Relator must be "an original source of the information" in order to proceed.  31 U.S.C. § 3730(e)(4)(A). Prior to filing his original complaint in this action, Relator was a party to a lawsuit in Connecticut state court against Yale University, the allegations of which were similar to the allegations of Relator in this case. This constitutes a public disclosure.  *United States v. New York City Health and Hosp. Corp.*, No. 1:95-CV-07649, 2000 WL 1610802, at *4 (S.D.N.Y. Oct. 27, 2000) *aff'd* 252 F.3d 118 (2d Cir. 2001) (*citing Kreindler & Kreindler* , 985 F.2d 1148). However, it is unclear at this point as to whether that disclosure would extend to NYPH.

Plaintiff utterly fails to plead to appropriate jurisdictional prerequisites as to his ability to proceed. Moreover, what he does plead casts considerable doubt as to whether anything he

alleges is the product of "direct or independent knowledge of the information on which the allegations are based [that was] voluntarily provided . . . to the Government . . . ." 31 U.S.C. § 3730(e)(4)(B).  *See Kreindler & Kreindler,* 985 F.2d 1148, *supra.*   This may be viewed as a fatal deficiency in pleading, but it may be decided at a later time.

      **B.**     **Relator has not Pleaded That Claims at Issue Were Presented to an Official of the United States.**

The United States Court of Appeals for the District of Columbia Circuit recently held that claims must be presented to an officer or employee of the government before liability can attach under the False Claims Act. *See United States ex rel. Totten v. Bombardier Corp.,* 380 F.3d 488 (D.C. Cir. 2004).  Relator makes no allegation that this has occurred and would run afoul of the rule in *Totten.*  Prior to settling out of the litigation, former Defendant, Yale University, raised this very defense and the United States appeared specially to urge this Court not to follow *Totten.* Like the original source issue, this is an issue of jurisdiction that can be raised at any time in the litigation. NYPH cites it now merely to preserve it pending further discovery that we hope will be obviated by the dismissal of the action for lack of personal jurisdiction over NYPH and because of the many substantive deficiencies in the complaint.

**VI.**    **RELATOR LACKS STANDING TO ASSERT COMMON LAW AND/OR STATUTORY, CLAIMS THAT ARE NOT SPECIFICALLY AUTHORIZED BY THE FCA.**

In addition to the claim against NYPH for violations of the False Claims Act, Relator alleges state law claims including; defamation, intentional infliction of emotional distress, negligent infliction of emotional distress and violation of an otherwise inapplicable labor law, NY CLS § 741.  These are claims entirely personal to the Relator. However, he is not the party in interest in this case; the United States is. And the FCA does not permit such claims to be made is a case like this one.

Section 3732 of the FCA itself specifically limits what state law claims can be brought by a Relator: "The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730" or retaliatory conduct. Relator's state law claims have nothing to do with the recovery of funds and so are prohibited on the face of the law.[3]

Relator lacks standing to do more because the state claims he would advance are not the claims of the United States. *See, e.g., United States ex rel King v. Jackson County Hosp. Corp.*, 2001 U.S. Dist. LEXIS 21706, at 33-34 (N.D. Fla. 2001); *Phipps*, 2001 WL 812221, at 4; *United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*, 2001 WL 40807, at 6 (N.D. Ill, 2001); *Walsh*, 98 F. Supp 2d at 149.

Although the FCA effects a partial assignment of the Government's damages claim to a relator, and in doing so allows a relator alleging an FCA violation to surmount the Article III standing barrier which would otherwise exist, it does not give relators the right to assert common law claims on behalf of the United States. *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 146 L. Ed. 2d 836, 120 S. Ct. 1858, 2000 U.S. LEXIS 3428, *14 (2000); *United States ex rel. Long v. SCS Bus. & Tech.* Inst., 999 F. Supp. 78, 92 (D.D.C. 1993), *rev'd on other grounds*, 335 U.S. App. D.C. 331, 173 F.3d 870 (D.C. Cir. 1999); *United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218, 225-26 (D. Md. 1995). Because Relator does not claim that he suffered an injury in fact - that, for example, he was defrauded or unjustly enriched

---

[3] We recognize that there are reported False Claims Act cases in which employment and other pendent claims have been allowed. However, the reported decisions of which we are aware do not discuss the point that we raise here, a point that we believe is valid given the plain wording of the statute. If Congress had intended that state law claims unconnected with the recovery of funds paid by a state were permissible, it would not have needed to have included section 3732 in the False Claims Act.

- 27 -

by the defendants - he lacks standing to assert any common law claims in this case. *See Walsh*, 98 F. Supp. 2d at 149.

**VII.    EVEN IF THE FCA ALLOWED PENDENT STATE LAW CLAIMS OF THE SORT RELATOR ADVANCES, HIS CLAIMS FAIL TO MEET THEIR OWN PLEADING PREREQUISITES OR ARE TIME BARRED.**

Relator's claims under New York State Law for negligent and intentional infliction of emotional distress, defamation, and retaliation under NY CLS LABOR § 741, fail to state claims upon which relief can be granted and apparently are barred by the statute of limitations. Even if such claims were permissible adjuncts to an FCA action, they must be dismissed.

**A.    Relator Fails to State a Claim Upon Which Relief Can be Granted for Defamation.**

Relator's defamation allegation is devoid of the facts necessary to maintain such a claim. In order to establish a claim for defamation, a plaintiff must prove: (1) that the defendant published a false and defamatory statement about the plaintiff; (2) that the publication was not privileged; (3) that the defendant acted with intent, recklessness, or negligence; and (4) that the statement caused damage to the Plaintiff. *See* RESTATEMENT (SECOND) OF TORTS §§ 558, 580B. New York law requires that a "claim for defamation must be "detailed and informative enough to . . . afford [the] defendant sufficient notice of the communication complained of to enable him to defend himself." *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir. 1986).

Relator's allegation against NYPH fails this test. The only relevant references to NYPH in Relator's defamation claim is that "NYPH, . . . along with [its] employees and members of [its] faulty and Medical Staff . . . have engaged in a pattern of repressive unwarranted and pretextual disparagement, in the form of unfounded and false statements about [Relator] . . . ", and that "false and defamatory statements of and concerning Plaintiff-Relator Smith were

-28-

published by" NYPH.  Third Amended Complaint, at ¶ 259.  This simply is not enough to

sustain such a claim.

As the court held in *Deutsche Asset Mgmt. v. Callaghan*, 2004 WL 758303  (S.D.N.Y

2004), "the plaintiff must specify who made the statements, when they were made and in what

context, whether they were made to a third party, and whether they were written or oral."

Relator complied with none of these requirements.  Here, Relator fails to plead what defamatory

statements were made about him, when they were made, to whom they were made, or who at

NYPH allegedly made them.  In fact, the only identifiable potential actors named in Relator's

pleadings are employees of Cornell University, not NYPH.[4]  *See Anthony v. Young & Rubicam*,

979 F. Supp. 122, 128 (D. Conn. 1997).  Absent the requisite, much less, any detail, Relator's

defamation claim cannot be maintained.

### B.     Relator Fails to State a Claim Upon Which Relief Can be Granted Under NY CLS § 741.

As with Relator's defamation claim, his statutory retaliation claim fails for lack of

particularity and specificity, and for the fact that Relator does allege the type of activities

protected by the statute.[5]  Relator alleges nothing more than that he disclosed his belief that there

was an "improper quality of patient care."  3rd Am. Compl. at ¶466, "or" that he objected to and

refused to participate in "patient care activities, patient care and billing policies and practices,"

---

[4] The allegation of defamation itself must afford a defendant "sufficient notice of the communication complained of to enable him to defend himself." *Kelly,* 806 F.2d 44, 46.  The instant claim does not.

[5]  The Whistleblower Statute states that:  no employer shall take retaliatory action against any employee because the employee does any of the following: (a) discloses or threatens to disclose to a supervisor, or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (b) provides information to, or testifies before, any public body conducting an investigation, hearing, or inquiry into any such violation of law, rule or regulation by such employer; or (c) objects to, or refuses to participate in any activity, policy or practice in violation of a law, rule or regulation. N.Y. C.L.S. § 740(2)(a-c).

*Id.* at 467. He claims that as a result of these disclosures "he was subjected to retaliatory action by the Defendants in violation of NY CLS § 741."

Such statements are nothing more than generalized, conclusory allegations that do not provide the requisite specificity required for a claim under the statute. *Blumenreich v. North Shore Health Sys., Inc., et al.*, 287 A.D. 2d 529, 530 (NY App. Div. 2001); *see also Pail v. Precise Imps. Corp.*, 256 A.D. 2d 73, 74 (NY App. Div. 1998). This failure of pleading is fatal to the claim.

Furthermore, the statute, by its own terms provides protection for *employees*. *See* N.Y C.L.S. § 741(b). Under the statute an employee is defined as "any person who performs health care services for and under the control and direction of any public or private employer which provides health care services for wages or other remuneration." *Id.* Relator does not allege, and could not allege accurately, that he ever was an employee of NYPH as defined by the statute. He was never under the control or direction of NYPH. Nor did he receive any wages or other remuneration from NYPH. His relationship to NYPH was as a Cornell-employed physician who was granted staff privileges by virtue of that relationship. He therefore fails to comply with a fundamental element of the statute beyond his separate failure to plead actionable conduct with requisite specificity.

**C.    Relator Fails to State a Claim Upon Which Relief Can be Granted for Intentional Infliction of Emotional Distress.**

Relator wholly fails to state a justiciable claim for intentional infliction of emotional distress. Once again, he provides almost no additional information beyond what is contained in the background facts of his complaint. *See* 3d Am. Compl. at ¶¶ 267-314. The only supplemental allegations are those relating the Drs. Sostman and Hayes, employees of Cornell University. *See id.* at ¶315. Relator simply states that "Dr. Sostman's and Dr. Hayes's conduct

was outrageous and supported by Defendants [NYPH] and Cornell." He makes no allegations against any NYPH employees and offers no information about how NYPH allegedly "supported" the Cornell doctors. Such allegations are completely deficient and cannot form the basis for a claim for intentional infliction of emotional distress.

Moreover, Relators allegations are not sufficient to meet the high threshold for conduct that is required for claim of intentional infliction of emotional distress in New York. The New York law of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). In New York, for conduct to qualify as "extreme and outrageous" enough to constitute intentional infliction of emotional distress, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society]." *See Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (quoting RESTATEMENT (SECOND) OF TORTS, §46 cmt. D (1965)).

Simply asserting that he "has been repeatedly disregarded, ignored and subjected to harassment" without spelling out the specific conduct that the Court might evaluate to determine whether it is egregious or "intolerable in a civilized society" is not enough to save such a defective claim.

**D.    Relator Fails to State a Claim Upon Which Relief Can be Granted for. Negligent Infliction of Emotional Distress.**

Relator's claim for negligent infliction of emotional distress suffers the same fatal deficiencies as his claim for intentional infliction of emotional distress. Again, Relator offers none of the requisite information necessary to identify or evaluate the conduct or breach of

alleged duty that gives rise to the claim. He repeats his generalities, and the sparse additional information he supplies applies only to Cornell employees, Sostman and Hayes. In fact, Relator does not even discuss NYPH in his negligent infliction claim other than by reference to the background facts of his complaint. In short, he does not provide a single allegation aimed at NYPH or any of its employees with regard to his negligent infliction claim. Apparently, Relator is of the mistaken belief that including NYPH is the title of his cause of action, is sufficient to establish a claim against NYPH upon which relief can be granted. Such a strategy is clearly unacceptable.

Under New York law, a plaintiff may establish a claim for negligent infliction of emotional distress in one of two ways: (1) the 'bystander' theory, whereby a defendant's conduct is negligent as creating an unreasonable risk of bodily harm to a plaintiff or (2) the 'direct duty theory,'" whereby a plaintiff suffers emotional distress caused by "defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety. *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). New York also recognizes a cause of action in cases where there is "an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious." *Johnson v. State,* 37 N.Y.2d 378 (1975) (upholding claim by woman who was negligently misinformed by hospital that her mother had died); *see also Baker*, 239 F.3d at 422 (predicting that the New York Court of Appeals would hold that a cause of action lies for negligent infliction of emotional distress in the case of a negligent positive result on an HIV test).

Relator alleges that because he was ignored by Cornell faculty, NYPH created an unreasonable risk of physical and emotional harm. Relator fails to allege what type of harm or what, precisely, was the cause of the harm. Moreover, to suggest that even if Drs'. Sostman and

Hayes actions amounted to more than dislike and dismissive action, that it would create an unreasonable risk of bodily harm, is absurd.

### E.    To The Extent Relator's Common Law and Statutory Claims Fall Outside the Applicable Statute of Limitations, they Are Time Barred.

Depending upon when the actions that form the basis of Relator's claims for defamation, intentional and negligent infliction of emotional distress, and NY CLS § 741, specifically occurred, they are likely barred as untimely. The statute of limitations for a claim of defamation in New York is one year. N.Y. C.P.L.R. § 215(3). The statute of limitations for a claim of intentional infliction of emotional distress in New York is likewise, one year. *Id.* And the statute of limitations for a claim under NY CLS § 741 is two years after the alleged retaliatory personnel action was taken. *See* N.Y. C.P.L.R. § 740(4)(d). Relator's complaint alleges that he received a notice of non-renewal from Cornell University on June 28, 2002, resulting in an automatic non-renewal of his privileges at NYPH, to be effective June 30, 2003. *See* 3d Am. Compl. at ¶ 207(d). Relator did not allege his claims for defamation, intentional infliction of emotional distress and N.Y. C.P.L.R. §741 until the filing of his Third Amended Complaint on January 12, 2005, over two years after the cessation of his privileges at NYPH. Absent claims of retaliation regarding anything more than the failure to renew Relator's privileges, which as stated, occurred in June of 2002, Relator makes no claims and references no dates that would inform the Court of any other subsequent retaliatory action. *See Queensborough Cmty. Coll. v State Human Rights Appeal Bd.,* 41 N.Y.2d 926 (1977) (holding that employment discrimination cause of action arose when plaintiff was given notice of decision not to reappoint rather than when current term expired).

Similarly, Relator alleges intentional infliction of emotional distress and defamation over a year and half after his privileges at NYPH ceased. There is nothing in Relator's complaint

alleging that any defamatory statements were made, or actions taken that would cause emotional distress, within the year prior to his filing of the Third Amended Complaint. Thus, without a single allegation to the contrary, the only conclusion to be drawn is that Relator's defamation, intentional infliction of emotional distress, and New York Labor Law claims fall beyond the applicable statute of limitations and are time barred.

**VII.  IF THE COURT DISMISSES THE SOLE FEDERAL (FCA) CLAIM IT SHOULD DISMISS THE STATE-LAW CLAIMS FOR THAT REASON ALONE.**

We have just demonstrated at length that Relator's New York State law claims are impermissible under the FCA and otherwise are legally deficient under state law. However, we also have shown that the FCA claim itself is deficient from both a jurisdictional and substantive standpoint. In the event that the sole federal claim against NYPH is dismissed, the Court can and should dismiss the State claims for that reason alone. Absent the federal claim, there is no remaining basis for maintaining Relator's common law and statutory claims in the District of Connecticut.  *See Haberman v. Murchison*, 468 F.2d 1305, 1311 (2d Cir., 1972); *see also Orientations, Inc., v. Orientations Gallery, Inc.,* 1990 U.S. Dist. LEXIS 4619, 13-14 (D. Ill., 1990); *Saxe v. E.F. Hutton & Co.*, 1985 U.S. Dist. LEXIS 13705, 15-16 (D.N.Y., 1985).

Having shown that this Court lacks jurisdiction over NYPH under the False Claims Act, that Relator's FCA claims are otherwise legally deficient, and that his State law claims are both impermissible and inherently defective, NYPH respectfully submits that the Third Amended Complaint should be dismissed with prejudice as to NYPH. Though the Court is empowered to transfer the case to the Southern District of New York, we respectfully submit that, because the case has been in this Court for several years and because Relator raises issues that should lead to the establishment of local precedent, this Court should act.

## **CONCLUSION**

For the reasons set forth herein, all claims against Defendant New York – Presbyterian

Hospital should be dismissed with prejudice.


Dated: April 25, 2005                              Respectfully submitted,

                                                   EPSTEIN BECKER & GREEN, P.C.

                                                   Attorneys for Defendant
                                                   New York – Presbyterian Hospital

                                                   By: _____
                                                       Stuart M. Gerson,
                                                       Admitted *pro hac vice*
                                                       Federal Bar No. CT03865
                                                       1227 25th Street, NW Suite 700
                                                       Washington, D.C. 20037-1175
                                                       (202) 861-0900

                                                           and

                                                       David S. Poppick,
                                                       Federal Bar No. CT13202
                                                       Jonathan M. Plissner
                                                       Federal Bar No. CT23773
                                                       One Landmark Square, Suite 1800
                                                       Stamford, CT  06901-2601
                                                       (203) 348-373

DC:287643v1

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent on this 25th day of April, 2005 via facsimile and regular U.S. Mail, postage prepaid to:

William J. Doyle, Esq.
Kenneth D. Heath, Esq.
Wiggin & Dana LLP
One Century Tower
265 Church Street, Box 1832
New Haven, CT  06508

Daniel L. FitzMaurice, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT  06103-3499

James R. Kahn, Esq.
Associate University Counsel
Cornell University
445 East 69th Street
New York, NY  10021

J. Alexander Lawrence, Esq.
Carl H. Loewenson, Jr., Esq.
Morrison & Foerster, LLP
1290 Avenue of the Americas
New York, NY  10104-0050

Mary Alice Leonhardt, Esq.
Law Offices of Mary Alice Leonhardt, LLC
102 Oak Street
Hartford, CT  06106

Patrick M. Noonan, Esq.
Donahue, Durham & Noonan, P.C.
Concept Park
741 Boston Post Road
Guilford, CT  06437

Jacques J. Parenteau, Esq.
Madsen, Prestley & Parenteau, LLC
111 Huntington Street
P.O. Box 1631
New London, CT  06320

Peter B. Prestley, Esq.
Craig T. Dickerson, Esq.
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue
Suite 201
Hartford, CT  06106

and that three (3) copies have been mailed in accordance with Rule 5 of the Federal Rules of Civil Procedure and Rules 7(d) and 7(e) of the Local Rules of Civil Procedure to:

Richard Molot, Esq.
John Hughes, Esq.
Assistant United States Attorney
Office of the United States Attorney
157 Church Street, 23rd Floor
New Haven, CT  06510

JONATHAN M. PLISSNER

DC:287583v1