UNITED STATE DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel | : | |
| ROBERT C. SMITH, M.D., | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:02-CV-1205 (PCD) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YALE NEW HAVEN HOSPITAL, INC., | : | |
| YALE UNIVERSITY, NEW YORK- | : | |
| PRESBYTERIAN HOSPITAL AND | : | |
| CORNELL UNIVERSITY JOAN AND | : | |
| SANFORD I. WEILL MEDICAL COLLEGE | : | June 23, 2005 |
| | : | |
| Defendants | : | |

PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT CORNELL UNIVERSITY
JOAN AND SANFORD I. WEILL MEDICAL COLLEGE TO DISMISS THE THIRD
AMENDED COMPLAINT

## I.    INTRODUCTION

Plaintiff, Robert C. Smith, M.D., hereby opposes the Motion to Dismiss by Defendant,

Cornell University Joan and Sanford I. Weill Medical College ("Cornell"), dated April 25, 2005.

Defendant moves this Court to dismiss the Third Amended Complaint in its entirety, or in the

alternative, to transfer those claims against Defendant to the Southern District of New York.

Defendant asserts that the claims advanced by Plaintiff in his Third Amended Complaint are

deficient in many respects, but it utterly fails to satisfy its burden with respect to any of its

contentions.  Accordingly, this Court should deny Defendant's Motion to Dismiss.

## II.    BACKGROUND

Plaintiff incorporates by reference the entire "Background" section of Plaintiff's Opposition to the Motion of Defendant New York-Presbyterian Hospital to Dismiss the Third Amended Complaint, dated June 23, 2005.  (Pl's Opp. to NYPH Mot. to Dismiss at 2-14, attached hereto as Ex. A.)

Defendant Cornell moves this Court to dismiss the Third Amended Complaint in its entirety.  It asserts that (1) Plaintiff's allegations are insufficient to support his claims; (2) service of process upon Defendant Cornell was insufficient; and (3) Defendant Cornell was misjoined in this action.  In the alternative, Defendant Cornell moves this Court to transfer Plaintiff's claims against Defendant Cornell to the Southern District of New York.  Contrary to Defendant's assertions, Plaintiff has adequately plead each cause of action contained in his Third Amended Complaint, and Defendant Cornell was properly served and is a proper party to this action in this venue.  Accordingly, Defendant Cornell's Motion to Dismiss should be denied.

## III.    STANDARD OF REVIEW ON A MOTION TO DISMISS

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  "The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader." *General Motors Corp. v. Watson Enterprises,*

2

*Inc.*, No. 04-CV-120 (WWE), 2004 WL 2472268 at *3 (D. Conn. Oct. 27, 2004) (internal citations and quotations omitted).

Pursuant to Rule 12(b)(6), claims that fail to state a claim upon which relief can be granted are subject to dismissal.  Fed. R. Civ. P. 12(b)(6).  "In analyzing a motion to dismiss, the facts alleged by the plaintiff are presumed to be true and must be liberally construed in the light most favorable to the plaintiff.  While the court need not accept mere conclusions of law, the court should accept the pleader's description of what happened along with any conclusions that can be reasonably be drawn therefrom.  Furthermore, when analyzing a motion to dismiss, the Court will limit its consideration to the facts asserted on the face of the complaint.  A complaint will not be dismissed for failure to state a claim unless it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitled them to relief."  *United States ex rel. Tomeo v. Allied Signal Co.*, No. 97-CV-442, 1997 WL 727563 *1-2 (N.D.N.Y. Oct. 24, 1997)(internal citations omitted).

**IV.    DISCUSSION**

   A.    <u>Defendant Cornell Conspires to, and Administers Practices and Policies which,
         Cause False Claims to be Submitted to Medicare and Medicaid</u>

In an effort to avoid liability under the False Claims Act, Defendant Cornell erroneously depicts Plaintiff's allegations and contends that the Third Amended Complaint "is remarkably devoid of facts with respect to Cornell."  (Def. Cornell Mem. Law at 1.)   Defendant Cornell's assertion is fallacious.  Indeed, the fallacy of Defendant Cornell's assertion is demonstrated by the acknowledgement of Defendant Cornell's co-defendant, NYPH, who writes that "The majority of the complaint is dedicated to detailed descriptions of what actions Relator took during his employment at **<u>Cornell Medical School</u>**."  (Def. NYPH Mem. Law at 16)(emphasis added).

3

Defendant Cornell attributes great significance to the collective reference to the Defendants in the Third Amended Complaint as "Defendant Hospitals" and claims that since Defendant Cornell is not a hospital, it is not the subject of Plaintiff's allegations. (Def. Cornell Mem. Law at 1-2, 6-7, 9-10, 11-12, 13-14.) Contrary to Defendant Cornell's assertion, the term "Defendant Hospitals" employed in the Third Amended Complaint refers collectively to all of the Defendants named in the Third Amended Complaint, including Defendant Cornell. Indeed, Paragraph Two of the Third Amended Complaint states that "the New York Presbyterian Hospital's hospital system, including its affiliate Cornell University Joan and Sanford I. Weill Medical College, are hospitals . . . ." (Third Am. Compl. ¶ 3.)

Defendant Cornell also writes that "According to plaintiff, the Defendant Hospitals, not Cornell, perform and bill for the Technical Component of the radiological studies. See id. at ¶ 16." (Def. Cornell's Mem. Law at 2.) Defendant Cornell's statement distorts and misrepresents Plaintiff's allegations in Paragraph 16 of the Third Amended Complaint. Paragraph 16 does not represent either that Defendant Cornell is not included in Plaintiff's reference to "Defendant Hospitals" or that Defendant Cornell is not intricately involved in the billing for the Technical Component of radiological studies to Medicare and Medicaid. In fact, paragraph 16 of the Third Amended Complaint specifically alleges that the billing systems can be linked directly between the hospital and its group of radiologists . . . ." (Third Am. Compl. ¶ 16.) While Plaintiff's allegations in the Third Amended Complaint do concentrate on the fraudulent bills submitted to Medicare and Medicaid for the Technical Component, as opposed to the bills submitted for the Professional Component, Plaintiff clearly alleges that Defendant Cornell is subject to liability under the False Claims Act for its role in the submission of those false claims for the Technical Component. Indeed, Defendant Cornell was not only complicit in the submission of the bills for

the Technical Component to Medicare and Medicaid, it was actively involved in the administration of the policies and practices that caused false certifications and fraudulent bills to be presented for reimbursement.

For instance, Plaintiff clearly alleges that the same individual, Dr. Sostman, was responsible for the administration of the policies and practices related to the billing for radiology studies at both Defendant Cornell and Defendant NYPH. Dr. Sostman was not only the Radiologist-in-Chief of Defendant NYPH, but he was also the Professor and Chairman of the Department of Radiology, Senior Associate Dean for Clinical Affairs of Defendant Cornell. (Third Am. Compl. ¶ 66.) Plaintiff also clearly alleges that he informed other members of Defendant Cornell's Administration, many of whom have oversight responsibilities over Dr. Sostman, about the false claims and the fraudulent bills. (Third Am. Compl. ¶¶ 67-75.) The Dean of Defendant Cornell's Medical School, acknowledged that allegations Plaintiff made in his correspondence, all of which are incorporated by reference into the Third Amended Complaint, were not limited to just NYPH when he acknowledged that Plaintiff's letter raised "a number of issues concerning WMC [Defendant Cornell] and the [Defendant NYPH]. I have asked Dr. Joseph G. Hayes, Associate Dean for Billing Compliance . . . to investigate your allegations with respect to WMC [Defendant Cornell] . . . ." (Third Am. Compl. ¶ 70.) Thus, Defendant Cornell's attempt to escape liability by throwing Defendant NYPH "under the bus" is contrary to the facts, as well as the "detailed descriptions" contained in the Third Amended Complaint.

Defendant Cornell not only misrepresents the facts alleged by Plaintiff, but the grounds of liability under the FCA as well. Defendant Cornell submits that Plaintiff failed to state a cognizable claim against it under the False Claims Act because "he has failed to plead that

Cornell submitted a false claim for payment to the government stemming from its provision of the Professional Component of the subject radiological studies." (Def. Cornell Mem. Law at 14.) Contrary to Defendant Cornell's assertions, neither Plaintiff's allegations nor grounds for liability under the False Claims Act are so limited. Indeed, "[t]he FCA applies to anyone who 'knowingly assists in causing' 'the government to pay claims grounded in fraud,' 'without direct regard to whether that person has direct contractual relations with the government . . . Thus, a person need not be the one who actually submitted the claim forms in order to be liable." *Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377-78 (5th Cir. 2004)(holding that hospital, as well as co-defendants, were all liable for false claims despite assertions by the physicians that the could not have filed claims regarding hospitalization and by the hospital that it does not bill for physician services).

In this case, Plaintiff alleges that "Defendant Hospitals presented and submitted claims to, and received payment from, the Medicare and Medicaid Programs . . . .," (Third Am. Compl. ¶ 81); "Defendant Hospitals **falsely certified** that the Radiology Studies were medically necessary in a timely fashion in accordance with the standard of care," (Third Am. Compl. ¶ 83)(emphasis added); "Defendant Hospitals **were aware of or should have been aware** of the fact that they had submitted thousands of claims . . . and they **concealed and covered up** the fact that the Radiology Studies for which they had been paid by the Medicare and Medicaid Programs had no diagnostic or therapeutic use . . . .", (Third Am. Compl. ¶ 84)(emphasis added); "Defendant Hospitals, through the acts of their agents, **knowingly made, used, or caused to be made or used, false records or statements** to get false or fraudulent claims paid or approved . . . .", (Third Am. Compl. ¶ 85)(emphasis added); "Defendant Hospitals **individually** and/or in **combination** or **conspiracy**, knowingly presented or caused to be presented . . . false or

6

fraudulent claims for payment or approval, and have used false statements to conceal obligations to refund money to the Medicare and Medicaid Programs, (Third Am. Compl. ¶ 90)(emphasis added).  Likewise, the statutory provisions of Section 3729(a) of the False Claims Act provide for liability on the basis of various and distinct violations.  *See* 31 U.S.C. § 3729(a)(1)-(7)(describing distinct violations giving rise to liability under the False Claims Act).  Thus, Plaintiff's allegations are materially similar to those in *Riley* that "the defendants assisted one another and cooperated in a scheme or pattern of billing for and covering up these alleged false-claim items."  *Riley*, 355 F.3d at 378.

      B.     The Third Amended Complaint Satisfies Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Claims brought under the FCA must satisfy the heightened pleading requirements of Rule 9(b).  *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1477 (2d Cir. 1995).  Rule 9(b)'s requirement for particularity serves several purposes:  "(1) to inform the defendants of the claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect the defendants from unfounded charges of fraud which may injure their reputations."  *United States ex rel. Barmak v. Sutter Corp.*, No. 95 Civ. 7637, 2002 WL 987109 at *5 (S.D.N.Y. May 14, 2002).

> To meet the requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. This strong inference can be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit

> fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Ordinarily, allegations of fraud cannot be founded solely upon 'information and belief,' except as to those matters particularly within the opposing party's knowledge; in the latter instance, allegations must be accompanied by statements of facts upon which such belief is reasonably founded.

*United States ex rel. Phipps v. Comprehensive Community Development Corp.*, 152 F. Supp. 2d 443, 454-55 (S.D.N.Y. 2001) (internal citations and quotations omitted). Said another way, the complaint must allege the who, what, where, when, and how of the fraudulent practice in order to satisfy the pleading requirements of Rule 9(b). *United States ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939, 944-45 (N.D. Ill. 2004) (citing *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Courts have recognized, however, that "the sufficiency of pleadings under Rule 9(b) may depend 'upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004)(quoting *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957)); *Bernstein v. Crazy Eddie*, 702 F. Supp. 962, 976 (E.D.N.Y. 1988)(the level of specificity required under Rule 9(b) "var[ies] with the circumstances of each case"); *Gelles v. TDA Indus., Inc.*, No. 90 Civ. 5133, 1991 WL 39673 *6 (S.D.N.Y. 1991)("Rule 9(b) does not require that a complaint plead fraud with the detail of a desk calendar or a street map. Nor should the word 'particularity' be used as a talisman to dismiss any but a finely detailed fraud allegations brought in a federal court."). For instance, courts have relaxed the pleading standards under Rule 9(b) where allegations of fraudulent conduct are numerous or take place over an extended period of time and when the specific

factual information is peculiarly within the defendant's knowledge or control. *See In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333-34 (D. Conn. 2004)(and cases cited therein); *United States ex rel. Olloh-Okeke v. Home-Care Services, Inc.*, No. Civ.A. 3:97-CV-2738-H, 1999 WL 222356 at *2 (N.D. Tex. Apr. 9, 1999).

In essence, when a plaintiff identifies the victim of the fraud, what type of fraud it was, the general time period in which the fraudulent conduct occurred, where the fraudulent statements were made, and how the statements constituted fraud, Rule 9(b) does not require an FCA claim to "describe in detail a single specific transaction . . . by customer, amount, and precise method". *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). "So long as a defendant has 'fair notice' of the charges against him, the purposes of Rule 9(b) have been satisfied." *United States v. Warnings*, No. Civ. A. 93-45411994, WL 396432 at *2 (E.D. Pa. July 26, 1994).

### 1.    Plaintiff Has Alleged Sufficient Particularity to Put Defendant Cornell on Notice

Courts have held that a plaintiff satisfies the particularity requirements of Rule 9(b) when the Complaint describes the alleged fraudulent conduct in sufficient detail that the defendant is put on sufficient notice that it is able to defend against a *qui tam* claim. The Second Circuit has held that the primary purpose of the Rule 9(b) pleading requirements is to provide a defendant with "fair notice of the plaintiff's claim and the factual background upon which it is based." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).

In *United States ex rel. Gear v. Emergency Medical Assoc. of Illinois, Inc.*, No. 00 C 1046, 2004 WL 1433601 (N.D. Ill. June 25, 2004), a district court held that the complaint, which alleged that a hospital committed Medicare fraud by billing for the services performed by unsupervised residents, satisfied Rule 9(b) because the allegations "identif[ying] the particular

9

hospitals involved, the particular University involved, the particular residents involved, and the specific regulations which were allegedly violated" provided the defendant with "adequate notice of the specific activities constituting the alleged fraud." *Id.* at *6.

In a case within this Circuit, *Mikes v. Strauss*, 889 F. Supp. 746 (S.D.N.Y. 1995), the plaintiff did not cite any specific examples, but alleged that the defendant was defrauding the government by filing Medicare claims for unnecessary and excessively expensive radiological tests. *Mikes*, 889 F. Supp. at 749-750. The court stated that "[a]lthough plaintiff does not detail every specific instance when defendants' alleged overbilling occurred, we think the allegations of spirometry and MRI misuse are sufficiently specific to put defendants on notice of their alleged fraudulent activity under circumstances of a *qui tam* action." *Id.* at 751 n.5. *See also United States v. Warnings*, No. Civ. A. 93-45411994, WL 396432 at *3 (E.D. Pa. July 26, 1994) (holding that, even though it did not contain any specifics as to "date, time, and place descriptions for each fraudulent act at issue," the complaint described "the fraudulent schemes conducted by the defendants with sufficient particularity to provide the defendants with adequate means for substantiating the charges [and] [a]ny remaining uncertainty can be remedied by means of discovery").

In the instant action, Plaintiff has certainly pled sufficient details about the fraudulent conduct alleged to put Defendant Cornell on notice to the extent that it is able to substantiate Plaintiff's allegations and defend against them.

a. *Plaintiff Has Identified the Fraudulent Statements*

Paragraph One of the Third Amended Complaint alleges that "all of Defendant Hospitals violated the FCA by knowingly engaging in improper billing and retaining payments from the Medicare and Medicaid Programs for producing outpatient Radiological Services (x-rays, films,

and images) even though (a) the Studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient encounter when the Studies were taken; (b) the Studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the Studies were taken in accordance with the Medicare and Medicaid Program requirements and/or (c) the Studies were never taken or documented."

Plaintiff's Paragraphs Twelve through Seventeen explain and identify the different components - - the Technical Component and the Professional Component - - that must be performed in order for a Radiological study to be constitute a "Radiological Service" that is compensable under the Medicare and Medicaid programs, as well as how Defendants submit bills for reimbursement.

Paragraphs Eighteen through Thirty explain and identify the relevant Policies and Regulations with which Defendants were required to comply under the Medicare and Medicaid programs.  Relying on the requirements set forth in those Regulations, Plaintiff alleges that Defendants made fraudulent statements including those which falsely certified and billed for the performance of and interpretation of radiological studies that were not medically necessary.  (*See* Third Am. Compl. ¶¶ 26-30.)  The Third Amended Complaint subsequently lists the specific reasons why it violated the False Claims Act for Defendants to falsely certify compliance with Medicare and Medicaid requirements and submit fraudulent bills for reimbursement. Specifically, Plaintiff alleges that billing for Completed but not Read radiological studies violates the FCA because Defendants falsely certified medical necessity on studies which (1) "were never used in connection with the diagnosis or treatment of patients relative to the outpatient patient encounter when the Studies were taken;" or those which (2) "were not interpreted by properly qualified radiologists in a timely fashion to the patient encounter when

the Studies were taken in accordance with the Medicare and Medicaid Program requirements;" or those (3) "for which no required documentation has been created."  (Third Am. Compl. ¶ 67.) Plaintiff also alleges that the computer systems employed by Defendants automatically submit bills to Medicare and Medicaid for the Technical Component at the time that the Radiology study is taken or created, but prior to any proper interpretation and/or report of the study by a qualified radiologist.  By submitting bills for studies which have not been properly interpreted and/or which are not properly interpreted in a timely fashion relative to the patient's diagnosis and/or which are not utilized for diagnostic or therapeutic purposes and for which no required documentation of medical necessity has been created, Defendants falsely certify compliance with the requirements of the Medicare and Medicaid programs that are a prerequisite for reimbursement and submit fraudulent bills for reimbursement.  (Third Am. Compl. ¶¶ 77-83.) In addition to those allegations in the Third Amended Complaint, Plaintiff also provided additional detail of his allegations in various correspondence to various individuals in the Administrations of both Defendant Cornell and Defendant NYPH regarding the violations which are the subject of this action.  Plaintiff's allegations in that correspondence is incorporated by reference into the Third Amended Complaint.  (Third Am. Compl. ¶¶ 66-69, 72-74.)  Many of these correspondence, the contents of which should be readily available to Defendants, contain greater specificity - - including patient names and identification numbers and procedures performed.[1]

> b.    *Plaintiff Has Identified the Speaker*

---

[1] Another Court in this District has held that specific information not alleged in the complaint, but forwarded to the defendant under separate cover to protect patient confidentiality, can also be considered for purposes of analyzing the requirements of Rule 9(b).  *In re Cardiac Devices Litig.*, 221 F.R.D. at 336-37 (D. Conn. 2004).

Plaintiff identifies the billing systems that automatically submit bills for the Technical Component of the radiological studies to Medicare and Medicaid once the studies are created. (Third Am. Compl. ¶¶ 77-79.)  Plaintiff further identifies the individuals at both Defendant Cornell and Defendant NYPH responsible for implementing, administering, and monitoring the policies and practices that caused false certifications to be made and fraudulent bills to be submitted.  (Third Am. Compl. ¶¶ 66-76.)  In the case of one individual, Dr. Sostman, Plaintiff alleges that he had management authority regarding these issues at both Defendant Cornell and Defendant NYPH.  (Third Am. Compl. ¶ 66.)

        c.     *Plaintiff Has Identified Where and When the Fraudulent Statements Were Made*

Paragraph Seven identifies that Plaintiff acquired his information about the False Claims Act violations during his employment for each of the Defendants, including Defendant Cornell, as well as the duration of his different employments.   (Third Am. Compl. ¶ 7.)  Further, Plaintiff has identified the several years when Defendants engaged in their fraudulent practices.  (Third Am. Compl. ¶¶ 66, 67, 68, 69, 72-76.)  With respect to some examples, Plaintiff identifies the particular week of the violation.  (*See* Third Am. Compl. ¶ 74)("MRI cases of Dr. Martin Prince the week of October 7, 2002").

        d.     *Plaintiff Has Explained Why Defendants' Conduct Was Fraudulent*

Throughout his Third Amended Complaint, as well as Plaintiff's specific complaints about these issues which are incorporated within the Third Amended Complaint, Plaintiff explains why and how the conduct alleged constituted fraud against the government.  From the first paragraph, Plaintiff introduces and explains the complicated maze of relevant Medicare

Regulations and explains why Defendants' failure to comply with those Regulations constitutes a fraud upon the government.

Plaintiff has alleged the who, what, where, when, and how of the alleged fraudulent conduct. Thus, Defendant Cornell has received sufficient notice of Plaintiff's claims as is required under Rule 9(b). More importantly, Defendant Cornell has failed to meet its burden on a Motion to Dismiss to demonstrate that "it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitled them to relief."

   e.  *Evidence of False Claims in Documents Incorporated by Reference*

Repeatedly throughout the Third Amended Complaint, Plaintiff incorporates by reference communications and documentary evidence he provided to Defendants in order to support his claims and to assist in the ongoing investigation of Dr. Hayes. In order to further corroborate Plaintiff's allegations, Plaintiff has attached hereto some representative examples of documents and communications that he incorporated by reference in the Third Amended Complaint.

First, in the e-mail from Plaintiff to Dr. Sostman, dated May 11, 2001, Plaintiff complains that a CT of the abdomen was performed on patient number 2882051 without documentation of medical necessity. (Exhibit B.) In this case, Defendant NYPH submitted a false claim for the technical component because they billed for performing a study that was not medically necessary. Likewise, Defendant Cornell submitted a false claim for the professional component by falsely certifying medical necessity in order to obtain reimbursement from the government for its interpretation of the study.

Second, the e-mail from Plaintiff to Dr. Sostman, dated October 7, 1999, attached as Exhibit C, details actual examples in which the type of study performed, dictated, and billed by

Defendant Cornell for the professional component differed from the type of study billed by

NYPH for the technical component of the study.  Furthermore, the patient with the medical

record number 2761491 actually had a CT of the abdomen and pelvis but NYPH billed the

technical charge for a CT of the pelvis and a Doppler ultrasound (where the Doppler ultrasound

was never performed).  With regard to patient number 2761491, Defendants submitted false

claims for the technical and professional component of radiological studies by billing for studies

which were never performed and using incorrect CPT codes for the professional and/or technical

components.  (See e-mail attached as Exhibit C.)

On April 15, 2002, Plaintiff documented in an e-mail to Dr. Sostman, which was copied

to Enrico Perez at NYPH, an example of patient number 2858941 on whom Defendant NYPH

performed a radiological test which was not medically necessary and for which a non-physician

(i.e., an ultrasound technologist) gave a report without physician supervision.  This is an

example of a false claim for the technical component by Defendant NYPH and the professional

component by Defendant Cornell.  (See e-mail attached as Exhibit D.)

Two days later, on April 17, 2002, Plaintiff once again wrote an e-mail to Dr. Sostman,

which was copied to Enrico Perez of NYPH, identifying two cases - - number 2952066 and

number 1988228 - - in which ultrasound examinations were performed and interpreted by an

ultrasound technologists without physician supervision.  (See e-mail attached as Exhibit E.)

Defendants' bills for these examinations constitute false claims for the technical and professional

components because they were not performed under physician supervision.

The documents attached as Exhibit F are requisition forms for patient number

002599616.  Plaintiff was incorrectly listed as the billing radiologist when in fact the test was

interpreted by a different radiologist.  This constitutes a false claim because the doctor listed on

15

the form submitted to the government must be the doctor who actually interpreted the test in order to receive reimbursement from Medicare and Medicaid.

The documents attached as Exhibit G are records from patient number 002919813 which evidence a completed but not read exam. A CT of the abdomen and pelvis was performed on patient number 002919813 on October 28, 2002. In January 2003, Plaintiff was asked by the Chief CT Technologist at NYPH to interpret the study because it had never been interpreted, but NYPH had submitted a bill for the technical component of the test. After Plaintiff refused to interpret the study, Defendant requested that another physician, Dr. Yong Auh, perform the interpretation. Dr. Yong Auh dictated the CT on January 22, 2003 and it was signed/finalized on January 27, 2003 - - three months after the study was performed. Defendant Cornell's professional component bill for the interpretation of the CT study was a false claim because the interpretation was of no diagnostic or therapeutic value to the patient. Similarly, NYPH's bill for the technical component of the study was a false claim because NYPH submitted a bill before the test had been interpreted by a radiologist.

Finally, the documents attached as Exhibit H regarding patient number 002944912 also document false claims by NYPH and Cornell for the technical component and professional component of radiological tests. Patient number 002944912 had a CT of the neck, chest, abdomen, and pelvis on May 14, 2002. The CT of the chest, abdomen and pelvis was not interpreted, however, until January 22, 2003. This case was also finalized by Dr. Yong Auh. The neck CT was not interpreted until January 29, 2003. It was finalized by Dr. Robert Zimmerman. This same patient, number 002944912, also had a CT of the neck on February 8, 2000, that was not interpreted more than two years later on July 10, 2002. NYPH's bills for the technical component of the CT of the neck, chest, abdomen, and pelvis constitute five distinct

false claims because NYPH billed for studies at a time when they were not interpreted. Similarly, Defendant Cornell's bills for the professional component of the studies also constitute five distinct false claims because the interpretation of the studies occurred at a time when it provided no therapeutic or diagnostic value.

Thus, the documents and communications incorporated by reference into the Third Amended Complaint clearly demonstrate that Plaintiff has alleged sufficient particularity to put Defendants on notice and to satisfy Rule 9(b).  Accordingly, Defendant's Motion should be denied.

### 2.    In the Alternative, the Pleading Requirements of Rule 9(b) Should be Relaxed

Other courts have held that the pleading requirements under Rule 9(b) are relaxed when the fraud alleged is complex and spans over a period of several years, or when the specific information and detailed knowledge regarding the plaintiff's claims is in the exclusive possession and control of the defendant.  As both justifications are presented here, the Court should relax the stringent requirements of Rule 9(b).

In *Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055 (S.D. Ohio 1995), the Court denied the defendant's Motion to Dismiss, notwithstanding its holding that the plaintiff had not alleged sufficient particularity to satisfy the requirements of Rule 9(b), because the defendant controlled all the information needed to allege greater specificity and particularity.  In *Wilkins*, the plaintiff had not been employed with the defendant for a couple of years, the defendant had control over all the relevant facts and documentation, and the plaintiff had a great deal of first hand knowledge of the alleged fraudulent scheme – thus the court gave special weight to his allegations.  *Id.* at 1061.  *See also United States ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939 (N.D. Ill. 2004) (holding that plaintiff alleged sufficient particularity under Rule

9(b) by pleading the who, what, where, when and the how of the alleged fraudulent scheme and any failures to plead specifics as to claims and dates and individuals was not fatal because that information was in the exclusive possession of the defendants); *United States ex rel. Durcholz v. FKW, Inc.*, 997 F. Supp. 1143, 1152 (S. D. Ind. 1998) ("Although the Complaint did not allege the precise number of times that FKW fraudulently invoiced the Navy on this project, that omission does not violate Rule 9(b) or otherwise compromise Defendants' right to fair notice. Defendants are in possession of such information, and Plaintiff was not required to plead them prior to discovery."); *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1090 (S.D.N.Y. 1994) (and cases cited therein); *Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998) (particularity requirements of Rule 9(b) are relaxed by a showing that further particulars of the alleged fraud could not be alleged without discovery because the information is exclusively within the defendant's control and the defendant will not produce it voluntarily); *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, (7th Cir. 1998) (particularity requirement of Rule 9(b) relaxed where plaintiff lacks access to all facts necessary to detail his claim and the defendant resists plaintiff's efforts to obtain such information).

Courts within this Circuit have likewise recognize that a relaxed version of the Rule 9(b) requirement applies where additional facts required to plead greater specificity are in the exclusive control and possession of the defendant or the complaint alleges a complex fraud of a long duration. *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333-34 (D. Conn. 2004); *United States ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330, 336 (W.D.N.Y. 1998). Both circumstances exist in this case.

In this case, the violations alleged by Plaintiff are certainly complex and extend over a period of several years. In addition, the information regarding specific bills submitted to the

Government is in the sole possession of Defendants.  Consistent with this authority, the FCA

violations alleged by Plaintiff in the Third Amended Complaint satisfy the requirements of Rule

9(b) under the relaxed pleading standard.

> F.    The Third Amended Complaint States a Claim under Section 3729 Against
>       Defendant Cornell Under Rule 12(b)(6)

The False Claims Act should be broadly construed.  *Harrison v. Westinghouse Savanah*

*River Co.*, 176 F.3d 776, 786, 788 (4th Cir. 1999); *United States v. Incorporated Village of Island*

*Park*, 888 F. Supp. 419, 439 (E.D.N.Y. 1995).  Liability under the False Claims Act occurs when

a person (1) knowingly presents, or causes to be presented, to an officer or employee of the

United States Government ... a false or fraudulent claim for payment or approval; (2) knowingly

makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent

claim paid or approved by the Government; [or] (3) conspires to defraud the Government by

getting a false or fraudulent claim allowed or paid.  31 U.S.C. § 3729(a).  *State v. Evans*, 155

Misc. 2d 348, 589 N.Y.S. 2d 223, 1992 N.Y. Misc. LEXIS 424 (1992); *Mikes v. Straus,* 274 F.3d

687, 697 (2nd Cir. 2001).  To establish liability, a plaintiff must show that the defendant "(1)

made a claim, (2) to the United States Government, (3) that is false or fraudulent, (4) knowing of

its falsity, and (5) seeking payment from the federal treasury."  *Mikes v. Straus*, 274 F.3d at 695.

The Second Circuit has previously held that the submission of Medicare reimbursement

forms "meets the first two elements of a False Claims Act cause of action in that it qualifies as a

claim made to the United States Government."  *Mikes*, 274 F.3d at 695-96.  *See also In re*

*Cardiac Devices Litig.*, 221 F.R.D. 318 (D. Conn. 2004)(HCFA 1450 or UB-92 Form also

constitutes "claim" for reimbursement under False Claims Act); *United States ex rel. Morris v.*

*Crist*, No. C-2-97-1395, 2000 WL 432781 *4 (S.D. Ohio Mar. 29, 2000)(UB-92 form constitutes

"bill to Medicare to get the claim against the United States paid or approved").  Plaintiff clearly

alleges that Defendant Cornell was responsible for the administration of the policies and practices that resulted in the submission of claims to Medicare on HCFA 1450 or UB-92 forms for the Technical Component of radiological studies that had been "completed but not read," and bills for reimbursement for the Professional Component when the medical necessity of the study was not adequately documented. Consequently, the Third Amended Complaint alleges facts that satisfy the first two, as well as the fifth, elements set forth by the Second Circuit. Therefore, the only issues remaining are whether Plaintiff alleges that the claims were false or fraudulent, and whether Defendant Cornell knew that the claims were false.

1.    **Plaintiff Alleges that Defendants Submitted a False or Fraudulent Claim**

a.    *False Certification*

The FCA prohibits making knowingly false statements in order to satisfy a requirement for payment by the federal government, referred to as the "false certification theory." *Mikes v. Straus*, 274 F.3d at 696-97. A "legally false certification" differs from the "factually false certification," where the latter involves a request for payment for goods or services that were never provided. Under the "legally false certification theory," FCA liability is predicated upon a false certification of compliance with a federal statute, regulation or contractual term that is a condition of payment. *Mikes v. Straus,* 274 F.3d at 697; *United States ex. re. Siewick v. Jamieson Science and Engineering, Inc.,* 214 F.3d 1372, 1376 (D.C. Cir. 2000); *Harrison v. Westinghouse Savanah River Co.,* 176 F.3d 776, 786-87, 793 (4th Cir. 1999); *United* States *ex. rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 902 (5th Cir. 1997); *United States ex. rel. Hopper v. Anton,* 91 F.3d 1261, 1266-1267 (9th Cir. 1996); *State v. Evans*, 155 Misc. 2d 348, 589 N.Y.S. 2d 223, 1992 N.Y. Misc. LEXIS 424 (1992). "Violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false

certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *United States v. President & Fellows of Harvard College*, 2004 WL 1447307 at *20 (D. Mass. June 28, 2004) (quoting *United States ex re. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996).

In *Mikes*, the plaintiff claimed that the defendant violated the False Claims Act "by submitting claims for Medicare reimbursement on HCFA-1500 forms . . . [and expressly certifying] that the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate supervision." *Mikes*, 274 F.3d at 698. The Court agreed with the plaintiff that the "defendants certified they would comply with the terms on the form and that such compliance was a precondition of governmental payment." *Id.* Therefore, under *Mikes*, making an express false certification of compliance with the medical necessity requirement or an express false certification that the individual identified on the claim form provided or supervised the services constitutes a false claim under the False Claims Act. In addition, the Second Circuit held in *Mikes* that the submission of the claims form for reimbursement from Medicare also constitutes an implied false certification that the services provided were "reasonable and necessary." *Mikes*, 274 F.3d at 700-01. Therefore, if the services provided were not "reasonable and necessary," then the submission of a claim for reimbursement for those services constitutes a false claim under the FCA.

The *Mikes* court also explained that a medical service billed to Medicare or Medicaid is not medically necessary if the procedure "was deleterious or performed solely for profit" or "where a party seeks reimbursement for a procedure that is not traditionally covered." *Mikes*, 274 F.3d at 698 (citations omitted). In this case, the radiological services were not medically

necessary because they were not "covered" under Medicare.  In order for a radiological service to be covered under Medicare, it must be of therapeutic or diagnostic value.  Since the radiological studies taken were never interpreted by a radiologist, or were interpreted by a radiologist so far removed from the time of the patient encounter that they were of no therapeutic or diagnostic value to the patient, or were interpreted without the necessary or proper clinical information, or were billed for a professional component knowingly using erroneous diagnosis codes.  Moreover, some studies were billed to Medicare without proper documentation of medical necessity.  Under each circumstance, the radiological studies billed by Defendants were not covered under Medicare and therefore, were not medically necessary.

In the instant action, Defendant Cornell's conduct constitutes both express and implied false certification because it caused the submission of claims for reimbursement for studies which were not medically necessary and/or "reasonable and necessary," and which were never read or interpreted by a qualified radiologist in violation of Medicare and Medicaid regulations.

Plaintiff's Complaint alleges facts sufficient to state an FCA claim against Defendants on the basis of both express and an implied false certifications.  Plaintiff alleges that Defendants, through the actions of their agents, made expressly false certifications by falsely certifying compliance with the terms set forth in the HCFA 1450 or the UB-92 form.  The HCFA 1450 form contains the same express certification as the 1500 form. *St. Luke's Episcopal Hosp.*, 355 F.3d at 376.

As the Second Circuit held in *Mikes*, a defendant can expressly certify false compliance with the terms set forth in the 1500 form in two ways:  by falsely certifying that the services performed were medically necessary and that they were performed under the signatory's immediate supervision.  Plaintiff-Relator Smith alleges that Defendants falsely certified that the

studies were medically necessary regardless of whether the study was ever interpreted by a qualified radiologist or used in connection with the diagnosis or treatment of a patient's condition.  Plaintiff alleges that in some instances Defendants falsely certified that the studies were medially necessary when the underlying document supporting the determination of medical necessity was never completed.

Defendant's conduct in the instant action also constitutes an implied false certification. When it submits a Medicare claim, Defendants impliedly certify that they are in compliance with all regulations that are a condition for governmental payment.  Defendants knowingly submitted claims to Medicare, notwithstanding the fact that they were knowingly violating the requirements that the radiological studies are "reasonable and necessary for the diagnosis or treatment of illness or injury or have some diagnostic or therapeutic use to the beneficiaries. (Third Am. Compl. ¶¶ 24, 25, 30, 84.)

b.   *Billing for Completed but not Read Studies*

In another case, *State v. Evans*, 155 Misc. 2d 348, 589 N.Y.S. 2d 223 (N.Y. Sup. 1992), a defendant was convicted of various criminal charges stemming from her submission of claims to Medicaid for reimbursement for radiological studies that were completed but not read by a radiologist.  The Court held that New York Medicaid law only permits payment for radiological services "when both a technical component and a professional component had been performed, that is an image had to be taken, and then it had to be read or interpreted for diagnosis and, finally, a diagnostic report of the interpretation had to be furnished to the requesting professional."  *Id.*, 155 Misc. 2d at 352-53.

In this case, Plaintiff alleges that Defendant Cornell similarly submitted, or caused to be submitted, or conspired to submit, bills to Medicare and Medicaid for studies which had not been

23

read or interpreted by a radiologist.  Consequently, just as in *Evans*, the bills submitted by Defendant Cornell were not compensable under New York law.

### 2.    **Causation**

"The causation element under 31 U.S.C. § 3729 is satisfied if a person 'presents, or causes to be presented,' a false or fraudulent claim to the United States for payment or approval. The FCA reaches any person who knowingly *assisted in* causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government.  Thus, a person need not be the one who actually submitted the claim to be liable."  *Mackby*, 261 F.3d at 827 (internal citations and quotations omitted).

"To 'cause' the presentation of false claims under the FCA, some degree of participation in the claims process is required. . . actually delegating the submission of claims to one who then files a false claim suffices."  *United States v. President & Fellows of Harvard College*, 2004 WL 1447307 at *27 (D. Mass. June 28, 2004).  "A defendant [also] may be liable if it operates under a policy that causes others to present false claims to the government" and has knowledge of the submission of false claims to the government.  *Id.* at *28.

In *Mackby*, the Court held that the defendant caused the false claims to be submitted to the government because he instructed others to place his physician father's PIN on the 1500 form.  *Id.* at 828.  "In so doing, he caused the claims to be submitted with false information."  *Id.*

Likewise, in the instant action, University and Hospital Administrators such as Dr. Sostman, Professor and Chairman of the Department of Radiology at the University, Senior Associate Dean for Clinical Affairs at Defendant Cornell and Radiologist in Chief at NYPH,

caused the false claims to be submitted to the government by directing faculty members, such as Plaintiff, to comply with fraudulent practices.

Furthermore, Defendant Cornell is liable for the actions of faculty members who facilitated or conspired to facilitate or falsely certified compliance with Medicare regulations because those physicians acted within the scope of their apparent authority. *See United States ex rel. Rosales. et. al v. San Francisco Housing Authority,* 173 F. Supp.2d 987, 1003 (N.D. Cal. 2001) ("When, as here, managers and executives are implicated in the knowing submission of false claims to the government, there can be little question that the entity itself is answerable for their conduct.")  "There is nothing in the language of the [FCA] proscribing vicarious liability." *United States v. O'Connell,* 890 F.2d 563, 567-69 (1st Cir. 1989) (holding employer liable for actions of agent with apparent authority even when employer did not benefit from agent's fraud.) "Several circuits have held that vicarious liability applies to a principal corporation under the Act either when an agent of the corporation acts with apparent authority, or when an employee acts within the scope of his employment for the benefit of the corporation." *United States, ex. rel. McCarthy v. Straub Clinic & Hospital, Inc.* 140 F. Supp.2d 1062, 1070 n.7 (D. Hawaii. 2001); *United States v. Incorporated Village of Island Park*, 888 F. Supp. 419, 438 (E.D.N.Y. 1995) (determining that vicarious liability applies to FCA violations committed by employee who acts within the scope his authority for the benefit of the employer, or when the employee has apparent authority to act, whether or not the activity benefits employer).

The above-described billings were not inadvertent submissions.  The completed but not read fraud was the result of policies and practices that were implemented and administered under the direction of Dr. Sostman and his administration.  Plaintiff complained on numerous occasions to not only Dr. Sostman, but also to his superiors within the Administration of both

Defendant Cornell and Defendant NYPH.  Thus, Defendant Cornell was completely aware of the

fraud being perpetuated against the Government as a result of its policies and practices, but it

failed to take corrective action.

3.    **Plaintiff Has Pled that Defendant Had Knowledge of the Fraudulent nature of the Claims Submitted**

"Under the FCA, 'knowing' and 'knowingly' mean that a person, with respect to

information--(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the

truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the

information, and no proof of specific intent to defraud is required."  31 U.S.C. § 3729(b) (1994).

The requisite intent is the knowing presentation of what is known to be false.  'Known to be

false' does not mean scientifically untrue, but a lie."  *Mackby*, 261 F.3d at 828 (internal citations

and quotations omitted).

The *Mackby* court held that the government also satisfied this final element of its FCA

claim.  The Court held that the government presented evidence that the defendant acted with

reckless disregard or with deliberate ignorance for the requirements of Medicare billing.  *Id.*  The

Court explained that the defendant had an "obligation to be familiar with the legal requirements

for obtaining reimbursement from Medicare for physical therapy services, and to ensure that the

clinic was run in accordance with all the laws. . . . By failing to inform himself of those

requirements, . . . he acted with reckless disregard or in deliberate ignorance of those

requirements, either of which was sufficient to charge him with knowledge of the falsity of the

claims in question."  *Id.* at 828.

Plaintiff has alleged each required element of an FCA violation.  The knowing

submission of fraudulent claims and the false certification of compliance with the Medicare

regulations by agents acting within their apparent authority and pursuant to the direction of

University and Hospital Administrators constitute clear violations of the FCA. Accordingly, Plaintiff's claim passes muster under Rule 12(b)(6) and Defendant Cornells' Motion to Dismiss for failure to state a claim should be denied.

> C.    The Third Amended Complaint States a Cause of Action Against Defendant Cornell Under Section 3730(h)

### 1.    Plaintiff's Retaliation Claim is Not Time-Barred

Defendant Cornell contends that Plaintiff's FCA retaliation claim is barred by the applicable statute of limitations. Specifically, Defendants contend that the six-year statute of limitations contained in § 3731(b)(1) of the FCA does not extend to retaliation claims brought under § 3730(h). Defendants argue further that, in lieu of the six-year limitations period, the one-year statute of limitations set forth under N.Y. Labor Law § 740(4)(a) applies to Plaintiff's retaliation claim and thus, it is time-barred.

Defendants' contentions should be rejected. First, the Ninth Circuit notwithstanding, all other circuits to address the issue have concluded that the FCA's six-year statute of limitations period applies to retaliation claims. In the alternative, however, Plaintiff's FCA retaliation claim is still not time-barred as the Court should apply the two-year statute of limitations which applies to claims brought under N.Y. Labor Law § 740(4)(d) or § 215, not – as Defendants contend – the one-year limitations period established under N.Y. Labor Law § 740(4)(a).

> a.    *The Six-Year Statute of Limitations of the FCA Applies*

The Ninth Circuit notwithstanding,[2] a clear majority of courts which have considered this issue have held, on the basis of the plain language rule, that the FCA's six-year statute of

---

[2]  The Ninth Circuit, and three district courts therein, have held that the six-year statute of limitations set forth in § 3731(b)(1) does not apply to retaliation claims brought pursuant to § 3730(h). *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027 (9th Cir. 1998). *See also United States ex rel. Truong v. Northrop Corp.*, No. CV 88-967, 1991 WL 496831 (C.D. Cal. Nov. 26, 1991); *United States ex rel. Satalich v. City of Los Angeles*, 160 F. Supp. 2d 1092 (C.D. Cal. 2001); *United States ex rel. Hinden v. UNC Lear Services*, No. Civ. 02-00107, 2005 WL 639679 (Mar. 15, 2005).

limitations applies to retaliation claims brought under § 3730(h).[3]  *See Neal v. Honeywell, Inc.*,

33 F.3d 860 (7th Cir. 1994); *Wilson v. Graham County Soil & Water Conservation Dist.*, 367

F.3d 245 (4th Cir. 2004), *cert. granted* 125 S. Ct. 823 (Jan. 7, 2005); *Storey v. Patient First

Corp.*, 207 F. Supp. 2d 431 (E.D. Va. 2002); *Grand ex rel. United States v. Northrop Corp.*, 811

F. Supp. 333, 335 (S.D. Ohio 1992); *United States ex rel. Tillson v. Lockheed Martin Energy

Systems, Inc.*, No. Civ.A. 5:00CV-39-M, Civ.A. 5:99CV-170-M, 2004 WL 2403114 (D. Ky.

Sept. 30, 2004).

    While the Second Circuit has not yet addressed the issue, it has repeatedly relied upon

the plain language rule of statutory interpretation in previous cases.  In this Circuit, when

"interpreting a statute, [courts] must first look to the language of the statute itself.  If the

statutory terms are unambiguous, [the] review generally ends, and the statute is construed

according to the plain meaning of its words."  *Torres v. Walker*, 356 F.3d 238, 242 (2d Cir.

2004) (internal citation and quotations omitted).

    The plain language of the False Claims Act states that the statutes six-year statute of

limitations applies to retaliation claims brought under § 3730(h).  Section 3731(b)(1) states that

"[a] civil action under section 3730 may not be brought . . . more than six years after the date on

which the violation of section 3729 is committed . . . ."  31 U.S.C. § 3731(b)(1) (emphasis

added).  Section 3731(b)(1), by its very terms, applies to civil actions under section 3730.  The

provision of the FCA providing for retaliation claims, § 3730(h), was enacted as a part of § 3730.

The statutory terms are unambiguous.  Therefore, § 3731(b) must be construed according to the

---

[3]

 Before the Fourth Circuit's recent decision in *Wilson v. Graham County Soil & Water Conservation Dist.*, 367 F.3d 245 (4th Cir. 2004), a Judge in the District Court for the District of Maryland assumed, without deciding, that the FCA's six-year statute of limitations did not apply to retaliation claims under § 3730(h).  *See United States ex rel. Ackley v. Int'l Business Machines Corp.*, 110 F. Supp. 2d 395 (D.Md. 2000).  The assumption by the *Ackley* court is no longer good, however, after the Fourth Circuit's recent decision in *Wilson*.  *See* 367 F.3d at 249-252, & n.3.

plain meaning of its words and the six-year statute of limitations for which it provides must be applied to retaliation claims brought under § 3730(h).

        b.      *In the Alternative, the Applicable Statute of Limitations Under New York Law is Two Years*

"[W]hen Congress does not supply an express statute of limitations governing a federal cause of action, then 'Congress intended that the courts apply the most closely analogous statute of limitations under state law.'" *United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1035 (9th Cir. 1998) (quoting *Reed v. United Transport Union*, 488 U.S. 319, 323 (1989)). Defendants contend that in lieu of the six year statute of limitations provided for under the False Claims Act, the applicable statute of limitations under Connecticut law for a retaliation claim under § 3730(h) is that set forth under N.Y. Labor Law § 740(4)(a) - - one year. Defendants' contention that § 740(4)(a) provides the applicable statute of limitations is erroneous because it is not the "most analogous" cause of action available under New York law. Rather, the two-year statute of limitations provided for in § 740(4)(d) is most analogous to the circumstances of this case.

        c.      *Even if the One-Year Statute of Limitations Applies, Plaintiff's 3730(h) Claim is Not Time-Barred*

Plaintiff alleges that he was retaliated against for investigating as well as reporting complaints about Medicare fraud to University and Hospital Administrators from October 1999 until June 2003, when his contract with Defendant Cornell was allowed to expire. Plaintiff alleges that Defendant Cornell retaliated against him throughout 2003 by issuing threatening letters to him and refusing to grant him a leave of absence in May 2003. (Third Am. Compl. ¶¶ 75, 76.) Specifically, the defamatory letter from Mr. Forman accused Plaintiff of violating state and federal laws. Upon information and belief, other individuals including Dr. Sostman and Dr.

Hayes were informing others that Plaintiff had engaged in illegal and unethical conduct.  The letter from Mr. Forman was representative of how the tenor of Dr. Hayes' investigation into Plaintiff's allegations had turned into an inquisition in which Plaintiff was persecuted and harassed.  Under the circumstances, Plaintiff requested a leave of absence until the conclusion of the investigation, but Defendant Cornell ignored his request.  Plaintiff filed his Original Complaint in the instant action on July 12, 2002 – well within even the one year statute of limitations period Defendant Cornell proposes.  Contrary to Defendant Cornell's representation to this Court, Plaintiff has plead his claim under § 3730(h) against Defendant Cornell in each version of his complaint in this matter, including the original Complaint.  Accordingly, Plaintiff's FCA retaliation claim under § 3730(h) is not barred by the applicable statute of limitations.

## 2.  Plaintiff Alleges Each Required Element Under § 3730(h)

Section 3730(h) prohibits an employer from retaliating against an employee because of the actions taken by the employee "in furtherance of an action under [the FCA], including investigation for . . . an action filed or to be filed under this section."  31 U.S.C. § 3730(h).  It is "intended to encourage employees with knowledge of false or fraudulent claims to come forward with such evidence."  *Faldetta v. Lockheed Martin Corp.*, No. 98 Civ. 2614, 2000 WL 1682759 at *11 (S.D.N.Y. Nov. 9, 2000).  "To state a claim under § 3730(h), [a] plaintiff must allege that: (1) he was engaging in conduct protected under the statute; (2) the defendants knew he was engaging in such conduct; and (3) the defendant discriminated against him because of the protected conduct."  *United States ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330, 338 (W.D.N.Y. 1998) (citations omitted).

a.    *Plaintiff Alleges He Was Engaged in Protected Conduct*

"Under the FCA, 'protected activity' is to be interpreted broadly. Therefore, an employee's activities may be protected even where an FCA suit has not been filed." *Faldetta v. Lockheed Martin Corp.*, No. 98 Civ. 2614, 2000 WL 1682759 at *11 (S.D.N.Y. Nov. 9, 2000) (internal citations omitted). In order to satisfy the protected conduct element, a plaintiff need "only [allege] that [he] engaged in acts . . . *in furtherance of* an action under [the FCA]." *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 739 (D.C. Cir. 1998) (emphasis in original). The scope of protected conduct includes actions taken "in furtherance of" an FCA claim because Congress sought to "protect employees while they are collecting information about a possible fraud, *before* they have put all the pieces of the puzzle together." *Id.* at 740 (holding that the district court erred when it ruled that the plaintiff's conduct was not protected because he never initiated an FCA claim).

In *Yesudian*, the D.C. Circuit held that "it is sufficient that a plaintiff be investigating matters that <u>'reasonably could lead to'</u> a viable False Claims Act case." *Id.* (emphasis added).[4]

Moreover, the Circuit courts agree that a plaintiff need not even know of the FCA's existence or of the availability of a private cause of action for his conduct to be protected under the statute. *See Yesudian*, 153 F.3d at 741 (and cases cited). Courts do not require any such knowledge because (1) an employee conducting an initial investigation may be unknowingly furthering an FCA action, and (2) such a requirement would limit the protection of the FCA to lawyers, or those well versed in the law. *Id.*

---

[4] Other Circuits have adopted similar or identical tests. *See Childree v. UAP/GA Chem, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996) (requiring only a "distinct possibility" of suit); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) ("plaintiff must be investigating matters which are calculated, or could reasonably lead, to a viable FCA claim"); *Neal v. Honeywell, Inc.*, 33 F.3d 860, 864 (7th Cir. 1994) (limiting protection under § 3730(h) to situations where an FCA claim was a "distinct possibility" or could have been "filed legitimately"); *Wilkins v. St. Louis Housing Auth.*, 314 F.3d 927, 933 (8th Cir. 2002) (good faith and objectively reasonable belief that the employer was committing fraud against the government); *Karvelas*, 360 F.3d at 236 ("conduct that reasonably could lead to a viable FCA action"). In the recent Connecticut Superior Court trial, in which Plaintiff-relator Smith was also a Plaintiff, Yale University stipulated that Smith had a "good faith belief" in the truth of all the allegations he made regarding patient care, patient safety, and fraud.

Courts have held that internal reporting of false claims constitutes protected activity under § 3730(h).  *See Yesudian*, 153 F.3d at 741, n.9 (citing *United States ex rel. McKenzie v. Bellsouth Telecommunications, Inc.*, 123 F.3d 935, 944 (6th Cir. 1997); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th Cir. 1996); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994); *Mikes v. Strauss*, 889 F. Supp. 746, 752 (S.D.N.Y. 1995)); *Karvelas*, 360 F.3d at 238, & n.25 (holding that investigation and internal reporting of fraudulent billing practices to supervisors constitutes protected conduct under the FCA, even though the plaintiff never reported to supervisors that conduct violated the FCA).

In *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994, a case cited by Defendant Cornell on this issue (Def. Cornell Mem. Law at 19), the Court cited with approval several decisions which have held that employees were engaged in protected activity under § 3730(h) when they "express[ed] concerns about possible fraud to their employers."  *Id.* at 951.

In *Mikes v. Straus*, 889 F. Supp. 746, 752 (S.D.N.Y. 1995), a case cited by Defendant Cornell on this issue (Def. Cornell Mem. Law at 17, 18), the Court held that the plaintiff engaged in protected activity by "observing the misuse of spirometry tests, investigating the medical histories of patients she treated indicating that spirometry and MRI tests were overutilized, and confronting defendants with her observations."  *Id.* at 752.

Similarly in *Yesudian v. Howard University*, another case cited by Defendant Cornell on this issue (Def. Cornell Mem. Law at 20), the D.C. Circuit held that the plaintiff engaged in protected conduct under § 3730(h) because he "repeatedly advised Parker's superiors that he had evidence Parker falsified time and attendance records, provided inside information to favored vendors to aid them in the bidding process, accepted bribes from vendors, permitted payments to vendors who did not provide services to the University, and took University property home for

personal use.  Vice President Jones asked him to provide 'more specific information regarding these charges . . . so that they could be properly investigated.' . . . he collected further documentation which he provided to Vice President Fletcher."  153 F.3d at 740.  In addition, because the plaintiff knew that more than 80% of the defendant's money came from the Government, that it was reasonable to conclude there was a "distinct possibility" that false claims were being submitted to the Government.  *Id.*

Plaintiff's conduct in the instant action --- his observance of submission of false claims to Medicare and Medicaid, his investigation into Defendants' billing practices, and his confrontations with, and complaints to, Administrators of Defendant Cornell and NYPH regarding the failure to comply with Medicare and Medicaid billing requirements and the need for corrective action - - constitutes protected activity under § 3730(h).  Through his own personal investigation, Plaintiff alleges that he discovered numerous instances in which Defendant Cornell and Defendant NYPH failed to comply or to properly document compliance with requirements for reimbursement for radiological studies under Medicare and Medicaid.  Furthermore, Plaintiff alleges that he investigated and reported these incidents to Dr. Sostman and other members of the Administration of Defendant Cornell and Defendant NYPH.  In one correspondence incorporated by reference into the Third Amended Complaint, Plaintiff wrote to Dr. Sostman that "there is case law to support a claim of fraud against the hospital if they are not providing the services covered by the technical component of an exam . . . ."  In another correspondence to Dr. Sostman and Enrico Perez, the Administrative Director for Radiology at Defendant NYPH, incorporated by reference into the Third Amended Complaint, Plaintiff once again explained that "We currently have a situation which puts NY Hospital (and secondarily Cornell) at risk for non-compliance.  NY Hospital bills the technical component of outpatient

radiology services based on the Cerner exam type.  This does not always match the exam type billed on the professional side by Cornell . . . This is potentially a serious compliance problem. . . . There is no check to make sure that the study is read and a report is finalized either before or after the Hospital submits the bill for the technical charge . . . the Cerner system is programmed to bill in this manner for the technical charges . . . the Hospital (and secondarily Cornell) is currently at risk for this practice."  Four days later, Dr. Sostman wrote to Plaintiff that his appointment would not be renewed after June 30, 2003.  Over the course of the following year, the retaliation against Plaintiff persisted as he increased his investigative efforts and provided additional documentation to substantiate his complaints to Administrators of both Defendant Cornell and Defendant NYPH.  (Third Am. Compl. ¶¶ 207-09.)  The Dean of Defendant Cornell's Medical School wrote to Plaintiff to inform him that his allegations concerning Defendant Cornell, Dr. Sostman, and the Department of Radiology would be investigated by Dr. Joseph Hayes, the Associate Dean for Billing Compliance at Defendant Cornell."  (Third Am. Compl. ¶ 69-70.)  In March 2003, Plaintiff once again wrote to Dean Gotto regarding "billing fraud and compliance violations . . . and further retaliation."  (Third Am. Compl. ¶ 72.)  On April 14, 2003, Plaintiff provided documentary evidence to Dr. Hayes regarding false claims to Medicare and Medicaid.  (Third Am. Compl. ¶ 74.)

Plaintiff's conduct certainly constitutes "investigations . . . or activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government." *Karvelas*, 360 F.3d at 236.  Thus, contrary to Defendant Cornell's characterization, Plaintiff's complaints did put Defendant Cornell on notice of the potential for liability under the False Claims Act because of its failure to comply with Medicare and Medicaid requirements.  Accordingly, Plaintiff has alleged he engaged in protected conduct under the FCA.

The cases cited by Defendant Cornell are all distinguishable.  First, in *Moor-Jankowski v. Board of Trustees of New York Univ.*, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998), the plaintiff only alleged "no facts to indicate that the NYU Defendants intended to engage in or actually engaged in any improper conduct (such as sending improper or inaccurate bills to the government), that Plaintiffs conducted any type of investigation of purported improper billing that could precede a qui tam action, or that Plaintiffs took any steps directed at exposing a fraud upon the government or that might reasonably lead to and assist in the filing of a viable FCA action relating to a billing fraud."  *Id.* at *11.  In the instant action, Plaintiff allegations satisfy each of the criteria that the plaintiff in *Moor-Jankowski* failed to satisfy.  He alleges facts to support his claim that Defendants submitted false claims to Medicare and Medicaid, that he investigated and found facts to support his claim that false claims were being submitted to the Government and he reported his findings to Defendants Cornell and NYPH, and that could reasonably lead to and assist in the filing of a viable FCA action relating to a billing fraud. Indeed, in several correspondence incorporated by reference into the Third Amended Complaint, Plaintiff informs Defendant Cornell of case law regarding Medicare fraud and the fact that Defendants' non-compliance put it at risk.

Similarly, Plaintiff's protected activities went far beyond those engaged in by the plaintiff in *Faldetta v. Lockheed Martin Corp.*, 2000 WL 1682759 (S.D.N.Y. Nov. 9, 2000), whose "actions appear to be little more than a cursory review as to why the penetrant inspection, a procedure that he had implemented, had been eliminated."  *Id.* at *12.

In *Sahodnik v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997), "the record discloses that Zahodnick merely informed a supervisor of the problem and sought confirmation that a correction was made."  *Id.* at 914.  In *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948,

951 (5th Cir. 1994), the plaintiff "admitted that he never used the terms 'illegal,' 'unlawful,' or 'qui tam action' in characterizing his concerns about Bell's charges" and he kept his investigation into any possible illegality to himself. *Id.* at 951-52. In *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508 (6th Cir. 2000), the plaintiff's "numerous complaints on the matter were directed at the stress from and pressure to falsify records, not toward an investigation into fraud on the federal government . . . these discussions contained no allegations of government fraud." *Id.* at 517. In contrast, Plaintiff in this action did more than merely inform a supervisor of the problem and seek confirmation of a correction and he certainly did not fail to inform others of his concerns of illegality and fraud and non-compliance, and his complaints were connected to a fraud against the government - - as opposed to concerns about consumer fraud, generally. Accordingly, Defendant is unable to prove that Plaintiff did not plead that he engaged in protected activity under § 3730(h).

        b.    *Plaintiff Alleges that Defendants Knew He was Engaging in Protected Conduct*

    "To meet the knowledge element of an FCA retaliation claim, the whistleblower must show the employer had knowledge the employee engaged in protected activity. In other words, the employer must be on notice that the employee is engaged in conduct that 'reasonably could lead to a False Claims Act case.' However, . . . the employer need not know that the employee has filed or plans to file a qui tam action, nor even necessarily be aware of the existence of the FCA." *Karvelas*, 360 F.3d at 238 (internal quotations and citations omitted). An employee can put an employer on notice by "characterizing the employer's conduct as illegal, or fraudulent or recommending that legal counsel become involved. These types of actions are sufficient because they let the employer know . . . that litigation is a reasonable possibility." *Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999). "[O]nce an investigation

involves [false or fraudulent] claims and the employee expresses concern to his employer that there is a likelihood of fraud or illegality, then the notice requirement is met." *Id.* at 868-69.

"[T]he kind of knowledge the defendant must have mirrors the kind of activity in which the plaintiff must be engaged.  What the employer must know is that the plaintiff is engaged in protected conduct, that is investigation or other activity concerning false or fraudulent claims that the employer knowingly presented to the federal government." *Karvelas*, 360 F.3d at 238-239 (internal citations and quotations omitted).

The *Karvelas* court held that the defendant had knowledge of the plaintiff's protected conduct because the plaintiff "notified his employers about the results of his investigation concerning false claims for payment that the hospital knowingly submitted to the government . . . ." *Karvelas*, 360 F.3d at 239.

In *Yesudian*, the Court held that relating evidence of fraud against the government to your employer is sufficient to put the employer on notice under § 3730(h).  *Yesudian*, 153 F.3d at 740.  In contrast to the rule advocated by Defendant Cornell, the Court stated that "[t]hreatening to file a qui tam suit or to make a report to the government . . . clearly is one way to make an employer aware.  But it is not the only way." *Yesudian*, 153 F.3d at 743.

In *Mikes v. Strauss*, 889 F. Supp. 746, 753 (S.D.N.Y. 1995), the court held that the knowledge requirement was satisfied because the plaintiff's actions towards supervisors implied an accusation of Medicare fraud.  Likewise, the Court in *Mikes v. Strauss* stated that "a reasonable jury could conclude that defendants had reason to believe that plaintiff was investigating their alleged fraudulent billing practices in contemplation of a possible *qui tam* action." 889 F. Supp. at 753-54 (emphasis added).  The plaintiff in *Mikes* did not tell her employer that she intended to report her employer's fraudulent conduct to the government or that

she was contemplating instituting a *qui tam* action against her employer.  In fact, the plaintiff in *Mikes* did not even go so far as to expressly accuse her employer of fraud.  *Mikes*, 889 F. Supp. at 753 ("Although these discussion clearly stop short of a specific accusation of fraud, they clearly imply that defendants' activities were unlawful.").  Notwithstanding the failure of the plaintiff in *Mikes* to expressly accuse her employer of fraud, let alone notify her employer that she intended to file a *qui tam* action, the *Mikes* court held that she satisfied the knowledge requirement of § 3730(h).  *See id* at 753-754.

Likewise, in the instant action, Defendants had knowledge of Plaintiff's protected activity.  Just as in *Karvelas*, Plaintiff alleges that he reported incidents of Medicare fraud and the submission of false claims to the government to Hospital and University Administrators on numerous occasions and he provided documentary evidence to support his allegations on at least one occasion.  (Third Am. Compl. ¶¶ 66-76.)

Notwithstanding Plaintiff's extensive efforts to provide Defendants with notice of his allegations that they were submitting false or fraudulent claims to the government (Third Am. Compl. ¶¶ 66-76), including his correspondence detailing allegations against Defendant Cornell to various members of the Administration, Defendant Cornell claims that Plaintiff's efforts were inadequate under § 3730(h).  Specifically, Defendant Cornell claims that it had no reason to believe that there was a possibility of *qui tam* litigation against it because his complaints about billing fraud were merely part of his job as the Associate Chair of Information Technology and Systems Administration.  (Def. Cornell Mem. Law at 25.)

First, Plaintiff's allegations of non-compliance and fraud went far beyond the scope of Plaintiff's responsibilities as the Associate Chair of Information Technology and Systems Administration.  Plaintiff was not under any additional obligation to report or investigate non-

compliance or evidence of billing fraud as a result of his information technology and systems administration related duties.   Plaintiff's efforts to notify Defendants about the substance of his allegations related to non-compliance, billing fraud, and retaliation went well beyond information technology and systems administration.  Plaintiff wrote repeatedly to the top Administrators at both Defendant Cornell and Defendant NYPH, as well as government officials regarding the fraudulent activity he observed and investigated.  Further, Plaintiff provided documentary evidence to the individuals investigating his allegations regarding the illegal conduct he observed.  None of that activity was within the scope of either information technology or systems administration.

Second, at least one court in this Circuit has refused to adopt the rule advocated by Defendant Cornell. *See Mikes v. Straus*, 889 F. Supp. at 753(declining to adopt rule that "before termination the employee must expressly accuse the employer of defrauding the government or threaten a *qui tam* action based thereon" because "To insist upon an express or even an implied threat of such action would impose a requirement that is wholly unrealistic in an employment context.  Despite the protection afforded by § 3730(h) - - of which most employees are doubtless unaware - - those who tell their employers they are preparing to sue them on behalf of a defrauded government can scarcely expect a long and happy tenure").  The D.C. Circuit has similarly declined to adopt stringent notice requirements under § 3730(h):

> since there is no requirement that a plaintiff know his investigation could lead to a False Claims Act action, there likewise can be no requirement that he 'suggest[ ] to defendant' that he is contemplating such an action. A plaintiff who need not even have heard of the False Claims Act can hardly be required to inform his supervisor that he 'intend[s] to utilize his allegations in furtherance of' an action under that Act.  Instead, the kind of knowledge the defendant must have mirrors the kind of activity in which the plaintiff must be engaged.  What defendant must know is that plaintiff is engaged in protected activity as defined above--that is, in activity that reasonably could lead to a False Claims Act case.  As already discussed,

such activity includes the investigation of 'false or fraudulent claims' made to federal grantees like Howard. But like the plaintiff, the defendant need not know, or be advised, that such claims would violate the False Claims Act itself. Indeed, requiring a plaintiff to advise his employer that he has filed or is contemplating filing a qui tam complaint would contravene the qui tam section of the Act itself, which dictates that such complaints be filed in camera, remain under seal for at least sixty days (extendable upon government motion), and 'not be served on the defendant until the court so orders.' 31 U.S.C. § 3730(b). The purpose of these provisions is to "protect the Government's interest in criminal matters" by enabling the government to investigate the alleged fraud without " 'tip[ping] off' investigation targets" at "a sensitive stage." S. Rep. No. 99-345, at 24, *reprinted in* 1986 U.S.C.C.A.N. at 5289. To require a plaintiff to advise his employer of his intentions in order to enjoy whistleblower protection would frustrate this congressional concern. For much the same reasons, there also is no requirement that a plaintiff tell, or threaten, his employer that he will report his allegations to the government--or to anyone outside of the employing institution. As the statute does not require the employee to make an outside complaint in order to render his conduct protected, he cannot be required to advise of or threaten such a complaint. Moreover, as with a requirement that an employee tell his employer he is contemplating filing a qui tam suit, a requirement that an employee announce he has gone outside the institution would undercut the statutory purpose of encouraging employees to expose fraud. *See id.* at 4- 5, 34, *reprinted in* 1986 U.S.C.C.A.N. at 5269-70, 5299. Such an announcement necessarily creates the kind of adversary confrontation that mere internal reporting does not. And even though it may protect the employee from termination, it would also end any hopes he may have for normal advancement as a 'loyal' employee. Many an employee may well decide that kind of protection is not worth obtaining, and so forego an investigation altogether.

*Yesudian,* 153 F.3d at 742-43. *See also Karvelas*, 360 F.3d at 238-39("the employer need not know that the employee has filed or plans to file a qui tam action, nor even necessarily be aware of the existence of the FCA"); *McKenzie v. Bellsouth Telecommunications, Inc.*, 219 F.3d 508, 518 (6th Cir. 2000) ("It is not necessary that McKenzie know the particulars of an FCA action or *qui tam* possibility or use appropriate language when internally reporting wrongdoing, but she must set forth some connection to fraudulent or false claims against the federal government.").

Finally, a rule requiring an employee to notify his employer that he intended to report the

employer's conduct to the government or that he was contemplating filing a *qui tam* action against his employer would be contrary to common sense and the language of the statute, which protects employees who investigate and report fraudulent activity and the submission of false claims internally – not just the filing of *qui tam* actions in court or the reporting of an employer's conduct to the government.

However, even if a factfinder were in agreement with Defendant Cornell on the disputed factual issue of whether Plaintiff's actions were within the scope of his employment and the Court consequently applied a higher standard on the issue of notice, Plaintiff's conduct in this case still provided Defendant Cornell with sufficient notice regarding the possibility of an FCA action. After acknowledging those courts which have imposed a more stringent requirement upon those plaintiffs whose complaints were arguably within the scope of their employment, the Fourth Circuit put forth the following rule:

> an employee tasked with the internal investigation of fraud against the government . . . puts the employer on notice . . . by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility. Such actions would include, but are not limited to, **characterizing the employer's conduct as illegal or fraudulent or recommending that legal counsel become involved**. These types of actions are sufficient because they let the employer know, regardless of whether the employee's job duties include investigating potential fraud, that litigation is a reasonable possibility.

*Eberhardt v. Integrated Design & Construction, Inc.*, 167 F.3d 861, 868 (4th Cir. 1999)(emphasis added)(holding that employee put employer on notice by characterizing the employer's billing practices as illegal and by suggesting that it retain legal counsel).

Plaintiff has alleged that Defendant Cornell was not complying with Medicare and Medicaid regulations that are a prerequisite to reimbursement, characterized Defendant's bills as fraudulent or illegal, informed Dr. Sostman and others of caselaw in the area of Medicare fraud,

stated that Defendants were at risk, complained to the Administration of being retaliated against by Dr. Sostman, and provided documentary evidence of fraudulent bills to those responsible for investigating his allegations, including the Office of University Counsel.  Consequently even under the highest standard for notice advocated by Defendant Cornell, Plaintiff has satisfied the notice requirement of § 3730(h).

            c.     *Plaintiff Has Alleged That Defendants Retaliated Against Him Because of His Protected Conduct*

"The FCA's legislative history states that the employee must show that the retaliation was motivated <u>at least in part</u> by the employee's engaging in protected activity."  *McKenzie*, 219 F.3d at 518 (emphasis added) (internal citations and quotations omitted).  It is normally not appropriate to decide retaliatory motive on a motion to dismiss as it is properly an issue to be resolved by a factfinder.

Plaintiff has alleged that "[b]ecause of his investigation and reporting of" Defendants' fraudulent conduct and submission of false claims for reimbursement to Medicare, Defendants harassed and discriminated against him in the terms and conditions of his employment.  (Third Am. Compl. ¶ 207.)  Plaintiff identifies the specific individuals who were responsible for retaliating against him, such as Dr. Sostman.  (Third Am. Compl. ¶ 207, 209.)  Finally, Plaintiff identifies the individual ways in which Defendants retaliated against him.  (Third Am. Compl. ¶ 207-210).

Finally, this Court should disregard Defendant Cornell's attempt introduce evidence outside the pleadings to support its argument.  (Def. Cornell Mem. Law at 28.)  On a Motion to Dismiss pursuant to Rule 12(b)(6), the Court should limit its review to those allegations on the face of the pleadings, or those documents incorporated by reference.  *See Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)(holding that district court erred by considering documents

attached to Defendant's Motion to Dismiss unless it converted the Motion to one for Summary

Judgment and afforded the plaintiff a similar opportunity to provide additional outside

evidence).[5]

---

[5] If the Court decides that such a conversion is proper, Plaintiff would certainly take advantage of the opportunity to provide additional documentation in support of his claims, as well as the opportunity to engage in discovery to obtain such evidence.

C.    The Third Amended Complaint States a Claim Under N.Y. Labor Law § 741

In an attempt to provide additional protection to employees working in the health care industry, the State of New York enacted Labor Law § 741 in April 2002.  The statute protects persons who provide health care services in the course of their employment from retaliation by their employer.  In order to be protected under § 741, an employee must either "object[] to, or refuse[] to participate in" or "disclose[] or threaten[] to disclose to a supervisor" "any activity, policy or practice of the employer or agent that the employee, **in good faith, reasonably believes** constitutes **improper quality of patient care**."  N.Y. Labor Law § 741(2)(a) & (b)(emphasis added).  "Improper qualify of patient care" is defined in the statute as "any practice, procedure, action or failure to act of an employer which violates any law, rule, regulation or declaratory ruling adopted pursuant to law, where such violation relates to matters which **may** present a substantial and specific danger to public health or safety or a significant threat to the health of a specific patient."  N.Y. Labor Law § 741(1)(d)(emphasis added).  If an employee engages in any of the aforesaid protected activities, then the employer is prohibited from taking any "retaliatory action", including "discharge, suspension, demotion, penalization or discrimination . . . or other adverse employment action . . . in the terms and conditions of employment."  N.Y. Labor Law § 741(1)(f).

Thus, an employee states a claim under § 741 if he alleges (1) that he was/is an employee providing health care services under direction of an employer; (2) that he objected to or refused to participate in, or disclosed or threatened to disclose to a supervisor; (3) any activity, policy or practice of the employer or agent of the employer; (4) that the employee in good faith, reasonably believed was a violation of; (5) a law, rule, regulation or declaratory ruling adopted pursuant to law relating to matters which may present a substantial and specific danger to public

health or safety or a significant threat to the health of a specific patient; and that (6) because the employee engaged in such activity; (7) the employer either discharged, suspended, demoted, penalized or discriminated or took another adverse employment action against the employee in the terms and conditions of his employment.

### 1.    Plaintiff's Section 741 Claim is Not Time-Barred

If an employee can establish each of the aforementioned elements, then § 741(4) authorizes the employee to institute a civil action against his employer through § 740(4)(d) "within two years after the alleged retaliatory personnel action was taken." N.Y. Labor Law § 740(4)(d).

Defendant Cornell asserts that Plaintiff's claim under § 741 is time-barred because it was not alleged within two years of "the last possible act of retaliation by Cornell . . . his notice of non-renewal on June 28, 2002, to be effective June 30, 2003." (Def. Cornell Mem. Law at 30.) Defendant Cornell erroneously reads Plaintiff's allegations of retaliation by Defendant Cornell. At no point in the Third Amended Complaint does Plaintiff state or indicate that the retaliation against him by Defendant Cornell ceased on June 28, 2002, the date on which Dr. Sostman informed Plaintiff of his decision to not reappoint Plaintiff, or that the retaliation about which he complains was limited to Defendant Cornell's refusal to reappoint him. In fact, Plaintiff's alleges that Defendant Cornell continued to retaliate against him throughout his last year of employment until June 30, 2003. For instance, Plaintiff alleges that in October 2002, he wrote to Dean Gotto to complain about retaliation from Dr. Sostman, and once again in March 2003 to complain about "further retaliation." (Third Am. Compl. ¶¶ 68, 69, 72.) Further, Plaintiff alleges that the retaliation persisted throughout at least May 2003 when he was threatened by Steve Forman, (Third Am. Compl. ¶ 75), and when Dean Gotto refused to respond to Plaintiff's

requested leave of absence - - which Plaintiff requested to escape further retaliation while his allegations were being investigated, (Third Am. Compl. ¶ 76). Thus, Plaintiff alleges acts of retaliation that occurred within two years before Plaintiff's claim under § 741 was instituted as part of the instant action. Accordingly, his claim under § 741 is not time-barred.

### 2. **Plaintiff States a Claim Under Section 741**

As they are enumerated above, Plaintiff alleges each element of a claim under § 741.

First, as a radiologist with privileges at Defendant NYPH as a result of his employment with Defendant Cornell, and under the direction of the Chair of Defendant Cornell's Department of Radiology, Dr. Sostman, Plaintiff was certainly an employee "who performs health care services for and under the direction of any public or private employer which provides health care services for wages or other remuneration." N.Y. Labor Law § 741(1)(a).

Second, Plaintiff clearly alleges that he objected to or disclosed to his supervisors, Dr. Sostman, Dr. Hayes, Dean Gotto, Enrico Perez, and others, numerous activities, policies or practices that he reasonably believed in good faith to be in violation of various requirements promulgated under Medicare and Medicaid. Plaintiff repeatedly alleges that he engaged in such protected conduct throughout the Third Amended Complaint, as well as with greater specificity in his communications that are incorporated by reference into the Third Amended Complaint. Specifically, Plaintiff complained about various compliance violations related to improper quality of patient care, including, but not limited to, radiological studies being performed by technicians without adequate supervision from a physician, failure to document medical necessity before radiology studies were performed, elective procedures being performed by technicians without physician supervision and documented as medical necessities in order to obtain reimbursement from Medicare, studies performed by technicians but never interpreted by

a qualified radiologist in a timely fashion relative to the patient encounter in accordance with

Medicare and Medicaid requirements, and numerous other patient care issues involving

substandard care and compromises of patient safety.  Defendant Cornell has certainly not met its

burden to prove that Plaintiff did not reasonably believe in good faith that his complaints

regarding non-compliance with regulatory requirements and inadequate patient care were related

to matters that placed the health of the public, or a particular patient, at significant or substantial

risk.  This is so because Plaintiff's complaints speak generally about the need to change policies

and practices to improve patient care, generally, in addition to documenting specific cases in

which violations complained of have resulted in improper quality of care.  Finally, Plaintiff

clearly alleges that he was retaliated against by Defendant Cornell because of his protected

conduct.  Thus, Plaintiff has alleged each element of a violation of § 741.  Consequently,

Defendant has failed to meet its burden on a motion to dismiss.

### 3.     Defendant Cornell is Certainly an Employer under Section 741

In an effort to avoid liability under this Act, Defendant Cornell attempts to avoid liability

by asserting that, even though it supervises physicians who provide health services at NYPH,

that it is not an employer within the meaning of § 741.  As an initial matter, Defendant Cornell

contradicts its own argument by conceding that it does qualify as an employer under one of the

definitions contained in § 741, (Def. Cornell Mem. Law at 35)("Cornell does provide health care

services to their students, as referred to in § 741(1)(iii). . . ."), and its attempt to minimize that

fact is unavailing as there is no requirement in the statute that a plaintiff's claim must arise from

complaints relating to the specific population for which an employer provides health services.

Beyond that fact, Defendant Cornell is incorrect in its assertions that "Plaintiff fails to allege that

Cornell falls within this definition of 'employer'" and that "Cornell is simply not the type of

employer § 741 was intended to reach, and plaintiff makes no allegation to the contrary." Contrary to Defendant Cornell's assertions, Plaintiff does allege that Defendant Cornell is part of Defendant NYPH's hospital system, (Third Am. Compl. ¶ 3), and that Defendant Cornell was Plaintiff's "employer and an affiliate of" Defendant NYPH, (Third Am. Compl. ¶ 11). Furthermore, Plaintiff alleges facts to support the proposition that Defendant Cornell was intricately involved in the provision of medical services at Defendant NYPH due to the fact that the physicians employed as professors by Defendant Cornell consequently obtained privileges to practice at Defendant NYPH and that the same individual, Dr. Sostman, simultaneously served as the Chairman of the Department of Radiology and Senior Associate Dean for Clinical Affairs at Defendant Cornell and as Radiologist in Chief at Defendant NYPH.  It is not possible on a Motion to Dismiss to describe in detail the full extent of the complex relationship between Defendant Cornell and Defendant NYPH that would establish beyond doubt that Defendant Cornell is beyond doubt an "employer" within the meaning of § 741, but even without such documentation.

D.    Plaintiff Alleges Each Required Element of Other State Law Claims

With respect to the Fourth, Fifth, Sixth, and Seventh Causes of Action brought in the Third Amended Complaint for defamation, intentional and negligent infliction of emotional distress, and breach of contract, respectively, Plaintiff maintains that he has alleged each of the required elements for each cause of action and that Defendant Cornell has not met its burden under Rule 12(b)(6) to establish that "it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitled them to relief."  Consequently, Defendant Cornell's Motion to Dismiss should be denied as to each of those counts.

E.    Service of Process Upon Defendant Cornell Was Not Insufficient

Defendant Cornell submits that this Court does not have personal jurisdiction over it because the summons with which it was served was not attached to the Second and Third Amended Complaint.  Defendant readily admits that it received the summons and the Second and Third Amended Complaint within hours of each other, and the summons with which it was served contains all of the information required by Rule 4(a) of the Federal Rules of Civil Procedure.  Defendant Cornell has not put forward any legal authority to support the contention that such service is so insufficient as to require dismissal for lack of personal jurisdiction. Indeed, the authority to which Defendant Cornell cites involve factual scenarios which are readily distinguishable.

In *Macaluso v. New York State Dept. of Environmental Conservation*, 115 F.R.D. 16, 17-18 (E.D.N.Y. 1986), unlike the facts of this case, service of the summons and complaint was not made in the same day, much less within hours of each other.  Furthermore, Defendant Cornell does not even assert that the purposes of the False Claims Act were thwarted because the summons and the complaints were served upon it a few hours apart as *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995 (2d Cir. 1995) requires.  Consequently, this Court should reject Defendant Cornell's request that the instant action be dismissed on the basis of this mere technicality.

F.     <u>Defendant Cornell is Not Misjoined and Transfer is Not Required</u>

Defendant Cornell submits that it is misjoined under Rule 20(a), but it does not address the significance of the False Claims Act provision which specifically allows for actions such as this against multiple defendants to be brought in a single forum.  31 U.S.C. § 3732 states that: "Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."  Thus, by the plain meaning of § 3732's language, Defendant Cornell's arguments must fail.

Contrary to Defendant Cornell's assertion, there is no requirement in § 3732 that a plaintiff bringing claims against multiple defendants under the False Claims Act demonstrate transactional relatedness or common questions of law and fact.  Section 3732 only requires that, in cases under the FCA involving multiple defendants, the plaintiff file suit in a judicial district in which any one of the defendants "resides, transacts business, or in which any act" prohibited by the FCA occurred.  The instant action is properly in Connecticut under that statutory section as Defendants Yale and YNHH reside, transact business and engage in conduct that violates the FCA in Connecticut.  Indeed, another court in this Circuit rejected a similar venue argument after concluding that one of the defendants transacted business in the forum state.  *See United States ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330, 336 (W.D.N.Y. 1998)("This factor alone would be sufficient to venue this action here.").  Furthermore, Plaintiff alleges that Defendants Cornell and NYPH violated the FCA by engaging in identical conduct as Defendants Yale and YNHH.  Consequently, Defendant Cornell's arguments must fail.

In addition, Defendant Cornell's argument that it is not properly joined in this action in Connecticut because there is no basis for personal jurisdiction over it in this forum is laughable.

50

Defendants Cornell and NYPH are part of a large network of affiliated hospitals, referred to collectively as the "New York-Presbyterian Healthcare System." (*See* Ex. I, webpages describing the New York Presbyterian Healthcare System.)  Three such affiliated hospitals, New Milford Hospital, Stamford Health System, and St. Vincent's Medical Center – Bridgeport, are located in Connecticut.  (*See* webpages attached as Ex. J.)  Upon information and belief, the practices complained of in this Third Amended Complaint also take place in other affiliated medical institutions that are a part of the New York-Presbyterian Healthcare System.  Defendant NYPH also claims to treat patients from the entire tri-state metropolitan area, including residents of Connecticut, at its New York facilities.  (Ex. K.)

Finally, Defendant Cornell's contention that it is necessary to transfer this action to a different venue in the Southern District of New York should similarly be rejected.  The Second Circuit has held that on motions to transfer venue, the moving party has a heavy burden and such motions should be denied "unless the balance is strongly in favor of the defendant [because] the plaintiff's choice of forum should rarely be disturbed." *Ford Motor Co. v. Ryan*, 182 F.3d 329, 330 (2d Cir. 1950).  In *Ryan*, the Second Circuit denied a defendant's motion to transfer venue from New York to Detroit even though "defense witnesses who are in Detroit substantially outnumber all other witnesses who are in New York" because "there will be no great interference with the Ford business if Ford officials must come to New York [from] Detroit to testify . . . the trip from Detroit to New York . . . is a short one . . . records which may be required at trial need not be in New York continuously if the case is tried there . . . ." *Id.* at 330-31.  In summation, the Court concluded that the defendant did not make a "strong enough case for the transfer." *Id.* at 332.

Other courts have accorded plaintiffs in qui tam actions similar deference in relation to their choice of forum.  In *United States v. Metzinger*, a district court in Pennsylvania denied a defendant's motion to transfer venue in a qui tam action to a judicial district in New York because the defendant failed to identify specific evidence or witnesses that were located in New York or their importance and why the documents or witnesses necessitated the transfer. Consequently, since the defendant failed to meet its burden of proof as to why a transfer was required, the Court gave deference to the plaintiff-relator's choice of forum.  *United States v. Metzinger*, 1996 WL 412811 *7-8 (E.D. Pa. July 18, 1996).

In the instant action, Defendant Cornell similarly fails to meet its burden of showing why severing the instant action and transferring the claims against it to a forum in New York is necessary.  Indeed, the distance from the Southern District of New York to this forum is minimal - - especially in light of the Second Circuit's statement in *Ryan* that a transfer was not necessary because the trip from Detroit to New York was short.  Furthermore, since this action involves charges of fraud against the government, the public has an interest in a prompt resolution of Plaintiff's claims.  *United States ex rel. Grand v. Northrop Corp.*, 811 F. Supp. 330, 332 (S.D. Ohio 1992)(denying motion to transfer qui tam action in part to avoid postponing the resolution of the relator's claims of fraud against the government).  Certainly, Plaintiff's claims in the instant action will be resolved more expeditiously if the case is not severed and this Court, which already possesses great familiarity with Plaintiff's complicated allegations, retains jurisdiction over all Defendants.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

PLAINTIFF
ROBERT C. SMITH, M.D.,

By:  _____
Jacques J. Parenteau
Fed. Bar No.: (CT09771)
Madsen, Prestley & Parenteau, LLC
111 Huntington Street
P.O. Box 1631
New London, CT 06320
(860) 442-2466 – Telephone
(860) 447-9206 – Facsimile
Attorneys for the Plaintiff

## CERTIFICATION

I hereby certify that a copy of the foregoing were sent on this 23[th] day of June 2005 via regular U.S. Mail, postage prepaid to:

Richard M. Molot
Assistant United States Attorney
P. O. Box 1834
New Haven, CT 06508

Mary Alice Leonhardt
 Law Offices of Mary Alice Leonhardt, LLC
102 Oak Street
Hartford, CT 06106

Stuart M. Gerson
Epstein Becker & Green, P.C.
1227 25th Street, NW  - Suite 700
Washington, DC 20037-1175

David S. Poppick
Epstein Becker & Green, P.C.
One Landmark Square - Suite 1800
Stamford, CT 06901

Gary Schulz
Nixon Peabody, LLP
990 Stewart Avenue
Garden City, NY 11530

James R. Kahn
Cornell University
445 East 69th Street
New York, NY  10021

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue, & Noonan, P.C.
741 Boston Post Road
Concept Park
Guilford, CT 06437

_____
Jacques J. Parenteau