UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA ex rel. and ROBERT C.
SMITH, M.D.,

                                        Plaintiff,

                  - against -

YALE-NEW HAVEN HOSPITAL, INC., YALE
UNIVERSITY, NEW YORK PRESBYTERIAN HOSPITAL
AND CORNELL UNIVERSITY JOAN AND SANFORD I.
WEILL MEDICAL COLLEGE,

                                        Defendants.

**Civil Action No.
3:02CV01205(PCD)**

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
## MOTION OF DEFENDANT CORNELL UNIVERSITY JOAN AND SANFORD I.
## WEILL MEDICAL COLLEGE TO DISMISS THE THIRD AMENDED COMPLAINT

G276800.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ...............................................................................................................1

ARGUMENT........................................................................................................................2

POINT I

NEW ALLEGATIONS MADE BY PLAINTIFF IN HIS MEMORANDUM
OF LAW IN OPPOSITION TO THIS MOTION TO DISMISS ARE NOT
PROPERLY BEFORE THE COURT ....................................................................2

POINT II

PLAINTIFF HAS FAILED TO PLEAD ADEQUATELY AN
FCA CONSPIRACY CLAIM AGAINST CORNELL..............................................5

POINT III

NEITHER THE COMPLAINT NOR THE MEMORANDUM
EXHIBITS PLAINTIFF NOW INCORPORATES BY
REFERENCE SATISFY THE HEIGHTENED PLEADING
REQUIREMENTS OF RULE 9(b) .........................................................................8

POINT IV

BECAUSE PLAINTIFF HAS FAILED TO IDENTIFY A
SINGLE FALSE OR FRAUDULENT CLAIM SUBMITTED
TO THE GOVERNMENT BY CORNELL, HIS FCA FRAUD
CLAIM MUST BE DISMISSED PURSUANT TO
RULE 12(b)(6)......................................................................................................13

    A.    Plaintiff Has Not Identified Any Claim
        Submitted by Cornell to the Government ..........................................13

    B.    Plaintiff Has Not Pled that Any Claim Submitted
        by Cornell Was False or Fraudulent ..................................................14

    C.    Plaintiff Has Not Pled that any Physician at
        Cornell "Caused" a False Claim to be
        Submitted to the Government ..............................................................16

    D.    Plaintiff Has Not Pled the Requisite Element
        of Scienter ...........................................................................................16

POINT V

PLAINTIFF HAS FAILED TO PLEAD ADEQUATELY
THE THREE REQUIRED ELEMENTS FOR AN FCA
RETALIATION CLAIM ..................................................................................17

     A.   The Allegations of the Third Amended Complaint
        Fail to Set Forth Facts Indicating that Plaintiff
        Was Engaged in "Protected Activity." ...............................................17

     B.   Plaintiff Has Failed to Allege Facts Sufficient to
        Establish that Cornell Had Knowledge of his
        Alleged Protected Activity ..................................................................20

     C.   Plaintiff Has Failed to Allege Facts Sufficient
        to Establish that Cornell Retaliated Against
        him Because of any Protected Activity ...............................................23

     D.   Plaintiff's Sworn Judicial Admissions Conclusively
        Establish the Absence of Retaliation .................................................24

POINT VI

PLAINTIFF HAS NOT STATED A CLAIM THAT
CORNELL VIOLATED NEW YORK'S LABOR LAW .........................................25

POINT VII

PLAINTIFF HAS NOT PLED ADEQUATELY HIS
OTHER STATE LAW CLAIMS ......................................................................26

POINT VIII

CORNELL WAS NOT SERVED WITH A VALID SUMMONS ...........................26

POINT IX

PLAINTIFF HAS NOT ESTABLISHED THAT CORNELL
HAS BEEN PROPERLY JOINED IN THIS ACTION ...........................................27

CONCLUSION.................................................................................................29

# TABLE OF AUTHORITIES

## CASES

B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909  F. Supp. 162
(S.D.N.Y. 1995) ...................................................................................................................4

Beck v. Cantor, Fitzgerald & Co., 621 F. Supp. 1547 (E.D. Ill. 1985) ...........................2, 3

Blusal Meats, Inc. v. United States, 638 F. Supp. 824 (S.D.N.Y. 1986),
aff'd, 817 F.2d 1007 (2d Cir. 1987) ...................................................................................6

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1988)................................................25

Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101 (7th Cir. 1984) .................................2

In re Cardiac Devices Qui Tam Litigation, 221 F.R.D. 318 (D. Conn. 2004)...................11

Center Cadillac, Inc. v. Bank Leumi Trust Co., 808 F. Supp. 213
(S.D.N.Y. 1992), aff'd 99 F.3d 401 (2d Cir. 1995).......................................................7

Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989) ...............................................................2, 4

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985) ...........................................................4

Hagood v. Sonoma County Water Agency, 81 F.3d 1465 (9th Cir. 1996)......................17

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776 (4th Cir. 1999)................10

Itel Container Int'l Corp. v. Atlanttrafik Express Serv., Ltd., 686 F. Supp. 438
(S.D.N.Y. 1988) ..............................................................................................................3

Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518 (S.D.N.Y. 1977) ...............2

Jubran v. Musikahn Corp., CV 86-0616, 1986 U.S. Dist. LEXIS 16227
(S.D.N.Y. Dec. 19, 1986)..................................................................................................5

Luckey v. Baxter Healthcare Corp., 2 F. Supp. 2d 1034 (N.D. Ill. 1998) .................17, 19,
21, 22

Mack v. Augusta-Richmond County, 365 F. Supp. 2d 1362 (S.D. Ga. 2005) .................22

McKenzie v. BellSouth Telecoms, Inc., 219 F.3d 508 (6th Cir. 2000) .............................18

Mikes v. Strauss, 889 F. Supp. 746 (S.D.N.Y. 1995).......................................................20

Moor-Jankowski v. Board of Trustees of N.Y. Univ., 96 Civ. 5997,
    1998 U.S. Dist. LEXIS 12305 (S.D.N.Y. Aug. 10, 1998) ........................................17, 19

New York v. Evans, 155 Misc. 2d 348, 589 N.Y.S.2d 223
    (N.Y. Sup. Ct. Bronx Co. 1992) ...............................................................................14

O'Brien v. National Property Analysts Partners, 719 F. Supp. 222 (S.D.N.Y.
    1989) ................................................................................................................2

Pasternak v. Colonial Equities Corp. (In re Colonial Ltd. Pshp. Litig.),
    854 F. Supp. 64 (D. Conn. 1994) ..............................................................................2

Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749 (2d Cir. 2004) .........................25

Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003) ..................................................................25

United State ex rel. Scott v. Metro. Health Corp., 2005 U.S.
    Dist. LEXIS 12323 (W.D. Mich. June 23, 2005) .......................................................18

United States ex rel. Branham v. Mercy Health Syst., 188 F.3d 510 (6th Cir.
    1999) ................................................................................................................5

United States ex rel. Capella v. Norden Sys., Inc., 2000 WL. 1336487
    (D. Conn. Aug. 24, 2000) ........................................................................................6

United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301
    (11th Cir. 2002) ..............................................................................................9, 10

United States ex rel. Drake v. Norden Sys., Inc., 2000 WL. 1336497
    (D. Conn. Aug. 24, 2000) ........................................................................................6

United States ex rel. Gross v. AIDS Research Alliance-Chicago, 2005 WL.
    1567316 (7th Cir. July 6, 2005) ...............................................................................15

United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220 (1st
    Cir.), cert. denied, 125 S. Ct. 59 (2004) ..............................................................4, 12,
    20, 21

United States ex rel. Mikes v. Straus, 274 F.3d 687 (2d Cir. 2001) ...........................13, 17

United States ex rel. North Santium Watershed Council v. Kinross Gold USA,
    Inc., No. C 96-3673, 1998 WL. 118176 (N.D. Cal. 1998) ..........................................27

United States ex rel. Piacentile v. Wolk, 1995 U.S. Dist. LEXIS 580
    (E.D. Pa. Jan. 13, 1995) ...........................................................................................7

iv

<u>United States ex rel. Riley v. St. Luke's Episcopal Hosp.</u>, 355 F.3d 370 (5th Cir. 2004) ..................................................................................................8

<u>United States ex rel. Russell v. Epic Healthcare Mgmt. Group</u>, 193 F.3d 304 (5th Cir. 1999)...........................................................................................9

<u>United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.</u>, 2000 U.S. App. LEXIS 26914 (10th Cir. Oct. 26, 2000)...............................9

<u>United States ex rel. Taylor v. Gabelli</u>, 345 F. Supp. 2d 313 (S.D.N.Y. 2004)...................6

<u>United States v. Mackby</u>, 261 F.3d 821 (9th Cir. 2001)......................................16

<u>United States v. St. Joseph's Reg'l Health Ctr.</u>, 240 F. Supp. 2d 882 (W.D. Ark. 2002) .....................................................................................................27

<u>Walsh v. Eastman Kodak Co.</u>, 98 F. Supp. 2d 141 (D. Mass. 2000) ....................................9

## STATUTES

31 U.S.C. § 3729(a)(1)...........................................................................................7

31 U.S.C. § 3729(a)(3)...........................................................................................6

31 U.S.C. § 3732...................................................................................................26

Fed. R. Civ. P. 4(a) ..............................................................................................26

Fed. R. Civ. P. 9(b) ...........................................................................................5, 28

Fed. R. Civ. P. 12(b)(6)....................................................................................8, 28

Fed. R. Civ. P. 20.................................................................................................26

v

## **INTRODUCTION**

Defendant Cornell University Joan and Sanford I. Weill Medical College ("Cornell") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Third Amended Complaint, or in the alternative, to sever any surviving claims and transfer the case against Cornell to the Southern District of New York.

Defendant's opposition to the motion is a textbook example of attempted amendment by memorandum reflecting an incredible disregard for the actual content of the Third Amended Complaint. Indeed, plaintiff consistently makes arguments relating to the purported adequacy of the Third Amended Complaint which find no support in the allegations actually set forth in the pleading. In response to the argument that plaintiff cannot maintain a False Claims Act ("FCA") fraud claim against Cornell because he has not identified the submission of a single false bill for the Professional Component of radiology services, plaintiff's counsel hatches an entirely new theory of liability which seeks to impose liability upon Cornell for the alleged billing of the Technical Component under a conspiracy theory that appears nowhere in the Third Amended Complaint. Similarly, in response to the argument that he has not alleged fraudulent conduct with sufficient particularity, plaintiff now proffers documentary exhibits outside of his pleading, which in any event fail to provide the requisite details of a single false claim submitted by Cornell to the government. In opposition to the argument that plaintiff has not adequately alleged he was engaged in and that Cornell was aware of his protected activity under the FCA, plaintiff states in his memorandum of law that he made a litany of complaints concerning false and fraudulent claims submitted to Medicare, which, not surprisingly, are nowhere referenced in the Third Amended Complaint.

In short, in an attempt to avoid the fatal flaws in his fifth iteration of a complaint in this matter, plaintiff has abandoned the actual allegations in his Third Amended Complaint, instead arguing claims he never pled. This disconnect between what the Third Amended Complaint actually alleges and what plaintiff now argues it alleges, serves to confirm again that the current pleading is legally insufficient to state the claims it purports to allege against Cornell.

## ARGUMENT

### POINT I

### NEW ALLEGATIONS MADE BY PLAINTIFF IN HIS MEMORANDUM OF LAW IN OPPOSITION TO THIS MOTION TO DISMISS ARE NOT PROPERLY BEFORE THE COURT

"Allegations made outside of the complaint are not properly before the court on a motion to dismiss." See Pasternak v. Colonial Equities Corp. (In re Colonial Ltd. Pshp. Litig.), 854 F. Supp. 64, 79 (D. Conn. 1994). "On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint, and to any documents attached as exhibits or incorporated by reference." Cosmas v. Hassett, 886 F.2d 8, 15 (2d Cir. 1989) (internal citations omitted). It is, therefore, axiomatic that a complaint may not be amended by the legal memoranda submitted in opposition to a motion to dismiss. See Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); O'Brien v. National Property Analysts Partners, 719 F. Supp. 222 , 229 (S.D.N.Y. 1989); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977).

Moreover, in the Rule 9(b) context, the particulars of the alleged fraud must be alleged in the complaint, not in legal memoranda. In Beck v. Cantor, Fitzgerald & Co., 621 F. Supp. 1547 (E.D. Ill. 1985), for example, where the plaintiff alleged securities law violations and fraud against a broker, the court noted the following:

F. Supp. 162, 166 (S.D.N.Y. 1995) (absent "clear and definite reference" in pleading court refused to entertain extraneous submissions); Jubran v. Musikahn Corp., CV 86-0616, 1986 U.S. Dist. LEXIS 16227, at *8 (S.D.N.Y. Dec. 19, 1986) (same). Significantly, as discussed below, none of the exhibits are claims submitted to the federal government, the indispensable predicate for an FCA complaint.

## POINT II

### PLAINTIFF HAS FAILED TO PLEAD ADEQUATELY AN FCA CONSPIRACY CLAIM AGAINST CORNELL

Although no such claim was pled specifically in the Third Amended Complaint, plaintiff's counsel now contends in the memorandum of law in opposition to the motion to dismiss that Cornell engaged in a conspiracy with NYPH to submit false claims to Medicare and Medicaid for the Technical Component of radiological studies.[2] See Pltf's Mem. at 3. The word "conspiracy" is not even mentioned in the claims against Cornell. Yet, to prop up his FCA fraud claim, plaintiff's attorney now advances the new argument that Cornell participated in a conspiratorial scheme with NYPH to defraud the government by virtue of its affiliation with the hospital. Pltf's Mem. at 4-5. Aside from the fact that this theory of liability against Cornell is unsupported by any factual allegation in his complaint, plaintiff's contention falls far short of adequately pleading a claim for civil conspiracy under Section 3729(a)(3).

There are three elements to an FCA conspiracy claim: (1) a conspiracy with one or more persons to get a false claim paid by the government, (2) an act in furtherance of the conspiracy

---

[2]    Plaintiff attempts to impose FCA liability upon Cornell for NYPH's alleged conduct by conjoining these two defendants and referring to them collectively as "Defendant Hospitals" throughout his pleading and memorandum of law. See Pltf's Mem. at 4. This effort is improper by any reasonable construction of the English language and under Fed. R. Civ. P. 9(b), which requires specific allegations as to each defendant, and is belied by plaintiff's own pleading to the effect that the medical school and the hospital are separate legal entities. See Third Amended Complaint at ¶¶ 10 and 11. "Rule 9(b) does not permit a plaintiff to allege fraud 'by indiscriminately grouping all of the individual defendants into one wrongdoing monolith'" United States ex rel. Branham v. Mercy Health Sys., 188 F.3d 510 (6th Cir. 1999).

> Aside from the fact that many of these new facts are based on
> nothing more that plaintiff's *understanding* and thus constitute
> nothing more than pure speculation as to what the facts really are,
> plaintiff ignores that it is the First Amended Complaint which is at
> issue, not his briefs. "<u>The requirements of Rule 9(b) must be
> fulfilled in the complaint itself…not…in memoranda of points and
> authorities…</u>"

<u>Id.</u> at 1552 (internal references omitted) (emphasis added); <u>see also</u> <u>Itel Container Int'l Corp. v.</u>

<u>Atlanttrafik Express Serv., Ltd.</u>, 686 F. Supp. 438, 446 (S.D.N.Y. 1988) (dismissing fraud claim

under Rule 9(b) where plaintiff identified speaker of the misrepresentation in his brief in

opposition to a motion to dismiss).

In response to Cornell's motion to dismiss the action and to prop up his flawed claims,

plaintiff attempts to introduce a raft of new factual allegations through legal argument in his

memorandum of law and documents attached to the brief. Because none of these new "facts"

were pled in the Third Amended Complaint, they are not properly before the Court.

In a "background" section attached to his memorandum of law, plaintiff provides new

factual detail with respect to his "completed but not read" theory of fraud, but with sparse

citation to the Third Amended Complaint. For instance, he identifies two forms, "the HCFA

1500 form and the UB-92 (HCFA 1450)," that were allegedly used by Cornell to bill Medicare

and Medicaid for the Professional Component of the radiology studies. Plaintiff's Opposition to

Motion of Defendant Cornell University Joan and Sanford I. Weill Medical College to Dismiss

the Third Amended Complaint (hereafter "Pltf's Mem."), Exhibit "A" at 4. None of these

descriptions, however, are alleged as facts in the Third Amended Complaint, nor are there any

actual bills or HCFA billing forms amongst the exhibits attached to plaintiff's memorandum of

law. Further along in plaintiff's background statement, he alleges generally that Cornell

improperly billed for radiology studies using incorrect procedure ("CPT") and diagnosis ("ICD-

9") codes. See Pltf's Mem., Exhibit "A" at 7-8. Once again, none of these "facts" can be found in the Third Amended Complaint. Plaintiff even goes so far as to assert, as a matter of fact, that "some radiologists signed reports for radiology tests even though the radiologist was not present at the time the test was done (either on vacation or at a different site or otherwise)...." Pltf's Mem., Exhibit "A" at 9. Yet, plaintiff fails to plead anywhere in the Third Amended Complaint relevant specific facts such as a doctor's name, a date, or a bill supporting such an occurrence. Since the new "facts" contained in plaintiff's memorandum of law are nothing more than an attorney's speculation, the Court must not allow plaintiff to use them to amend the defective pleading which is the subject of this motion.[1]

Similarly, the documents attached as exhibits to plaintiff's memorandum of law, see Exhibits "B" through "H", must also be rejected as not properly placed before this Court. They were not attached to the Third Amended Complaint, nor were they specifically incorporated into the pleading by reference, nor were they introduced via an affidavit based on personal knowledge. Rather, plaintiff's counsel simply attaches the documents—emails and radiology reports—to the opposition brief and mischaracterizes them as false claims submitted by Cornell to the government. Because they were not attached to the pleading, nor incorporated therein by reference, all of these exhibits fall outside of the four corners of the complaint, and, therefore, they must be ignored. See Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989) (setting forth guidelines for reviewing extraneous materials on a motion to dismiss pleading); Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985); see also B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909

---

[1]    In response to the instant motion, plaintiff could have, but chose not to ask for leave to further amend his complaint. Accordingly, this Court is under no obligation to invite plaintiff to do so. See United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 242 (1st Cir.), cert. denied, 125 S. Ct. 59 (2004) ("Absent exceptional circumstances, a district court is under no obligation to invite a plaintiff to amend his or her complaint when the plaintiff has not sought such an amendment"). Five separate versions of the pleading are more than enough to establish its deficiency.

by one of the conspirators; and (3) damages suffered as a result of the false claim. 31 U.S.C. §

3729(a)(3); United States ex rel. Taylor v. Gabelli, 345 F. Supp.2d 313, 331 (S.D.N.Y. 2004);

Blusal Meats, Inc. v. United States, 638 F. Supp. 824, 828 (S.D.N.Y. 1986), aff'd, 817 F.2d 1007

(2d Cir. 1987); see also United States ex rel. Drake v. Norden Sys., Inc., No. 3:94-CV-963, 2000

WL 1336497 (D. Conn. Aug. 24, 2000) and United States ex rel. Capella v. Norden Sys., Inc.,

No. 3:94-CV-2063, 2000 WL 1336487 (D. Conn. Aug. 24, 2000) (related cases both requiring

plaintiff to establish that defendants conspired to get a fraudulent claim paid and that

conspirators performed an act in furtherance of the conspiracy).

     Plaintiff has failed to plead the requisite elements of an FCA conspiracy claim.

Specifically, plaintiff fails to allege any fact tending to establish that Cornell and NYPH entered

into an agreement to defraud the government by billing for the Technical Component with

respect to "completed but not read" radiological studies. Plaintiff's counsel makes oblique

reference to Cornell's "role in the submission of those false claims for the Technical

Component," but utterly fails to describe what that role was. He further argues that Cornell "was

actively involved in the administration of the policies and practices that caused false

certifications and fraudulent bills to be presented for reimbursement." Plaintiff's pleading does

not, however, identify any of Cornell's "policies or practices" as they relate to billing for the

radiology studies, nor does it explain how Cornell's "administration" of same resulted in the

submission of a single false or fraudulent claim. Most importantly, plaintiff does not allege a

single specific act undertaken by Cornell in furtherance of any conspiratorial agreement.

     "General allegations that defendants 'conspired' in [an alleged] scheme [to defraud] do

not sufficiently attribute fraud to each individual defendant" and do not satisfy requirements of

pleading fraud with particularly. Center Cadillac, Inc. v. Bank Leumi Trust Co., 808 F. Supp.

213, 230 (S.D.N.Y. 1992), aff'd 99 F.3d 401 (2d Cir. 1995). In <u>United States ex rel. Capella v.</u>

<u>Norden Sys., Inc.</u>, Judge Ellen Bree Burns dismissed plaintiff's FCA conspiracy claim because

the complaint merely alluded to an agreement between the defendants, and did not "specify the

particulars of how and when that alleged conspiracy arose, who entered into it, or what act was

committed in furtherance of the conspiracy." 2000 WL 1336487, at *11.

Here, plaintiff points to allegations in the Third Amended Complaint which refer to his

communications with Dr. Sostman, who was both Chairman of the Department of Radiology at

Cornell and the Radiologist-in-Chief at NYPH, to support his nascent conspiracy claim. <u>See</u>

Pltf's Mem. at 5. That Dr. Sostman held titles at both Cornell and NYPH (but was only

employed by Cornell), and that plaintiff raised billing and compliance issues to Dr. Sostman do

not combine to make out a claim that these two separate defendants conspired to defraud the

government. There is no FCA liability where plaintiff alleges mere knowledge of an alleged

false claim, rather than an affirmative act by the defendant. <u>See United States ex rel. Piacentile</u>

<u>v. Wolk</u>, No. 93-5773, 1995 U.S. Dist. LEXIS 580, at *11 (E.D. Pa. Jan. 13, 1995).

In a further attempt to state a claim against Cornell without specifically alleging a

conspiracy to submit a false claim, plaintiff argues that the Act "provide[s] for liability on the

basis of various and distinct violations. <u>See</u> 31 U.S.C. § 3729(a)(1)-(7) (describing distinct

violations giving rise to liability under the False Claims Act)." Pltf's Mem. at 7. But the

complaint does not allege "various and distinct violations" – it alleges a theory of submitting

bills for the Technical Component based on "completed but unread" studies. Plaintiff relies on

the case of <u>United States ex rel. Riley v. St. Luke's Episcopal Hosp.</u>, 355 F.3d 370 (5th Cir.

2004), for the proposition that the FCA applies to anyone who "knowingly assists in causing" the

government to pay false or fraudulent claims.[3]  Plaintiff apparently believes that citation to all

seven subsections the of FCA's liability section and the "knowingly assists" language used by

the Fifth Circuit, is sufficient to plead a violation that exists only in the penumbra of the Act.

This, however, is not the controlling law in this district.  Courts in this district require claims

alleging conspiracy to commit fraud in violation of the FCA to be pled with specificity in strict

accordance with Rule 9(b).  See Drake, 2000 WL 1336497; Capella, 2000 WL 1336487.

Accordingly, plaintiff's FCA fraud claim against Cornell must be dismissed.

### POINT III

### NEITHER THE COMPLAINT NOR THE MEMORANDUM EXHIBITS PLAINTIFF NOW INCORPORATES BY REFERENCE SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b)

Plaintiff takes the position that because his "completed but not read" theory of liability is

a complex one, involving technical descriptions of radiological studies and a multitude of

Medicare/Medicaid regulations, his generalized allegations of fraud against Cornell should

suffice to satisfy the requirements of Rule 9(b).  See Pltf's Mem. at 8-9.  He argues that the Third

Amended Complaint contains "sufficient details" to put Cornell on notice of its alleged

fraudulent billing with respect to the Professional Component of studies performed by its

radiologists.  See id. at 9-10.  In an acknowledgement of the paucity of details concerning

Cornell's alleged fraudulent billing in his pleading, however, plaintiff attaches to his

memorandum of law several documents that purport to serve as illustrative examples of

defendants' fraudulent conduct.  See Exhibits "B" through "H" to Pltf's Mem.  None of these

---

[3]    Riley is inapposite because in that case the plaintiff actually alleged specific facts establishing that the defendants "assisted one another and cooperated in a scheme or pattern of billing for and covering up" the allegedly false claims so as to survive the Fed. R. Civ. P. 12(b)(6) motion.  See 355 F.3d at 378.  Here, no such allegations are made with respect to Cornell.  In addition, in Riley, the circuit court remanded the case with an explicit warning to the district court regarding compliance with Rule 9(b).  Id. at 381-82.

documents are bills submitted to any patient or payer.  Neither the Third Amended Complaint nor the newly proffered exhibits satisfy the heightened pleading requirements of Rule 9(b) because none of them identify a single false or fraudulent claim for payment submitted by Cornell to Medicare/Medicaid.

Qui tam defendants are entitled to the full protection afforded by the strict pleading requirements of Rule 9(b), and qui tam relators are not entitled to a relaxation of the rule regardless of the purported complexity of the fraud they allege.  The rule demands more than mere notice pleading when a plaintiff seeks to recover treble damages and penalties on behalf of the Government.  In United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 309 (5th Cir. 1999), for example, the appellate court refused to slacken the Rule 9(b) requirements for a qui tam relator, holding that to do so would provide the plaintiff a "ticket to the discovery process that the [False Claims Act] does not contemplate."  See also United States ex rel. Schwartz v. Coastal Healthcare Group, Inc., No. 99-3105, 2000 U.S. App. LEXIS 26914 (10th Cir. Oct. 26, 2000) (dismissing FCA complaint against health care provider on grounds that plaintiff "merely alleg[ed] a scheme of fraud, and not specific occurrences or facts which support this general scheme") (quoting United States ex rel. Butler v. Magellan Health Servs. Inc., 101 F. Supp. 2d 1365, 1369 (M.D. Fla. 2000)); Walsh v. Eastman Kodak Co., 98 F. Supp. 2d 141 (D. Mass. 2000) (same).

In United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301 (11th Cir. 2002), the court held that the sine qua non of an FCA fraud action is a false or fraudulent claim requesting an illegal payment from the government.  Id. at 1311.  The qui tam relator made several attempts to plead an FCA claim against a medical testing company that allegedly "engaged in a mutli-faceted, decade-long campaign to defraud the government as a result of its

testing services for LTCF [Long Term Care Facilities]." Id. at 1303. Much like plaintiff does

here, Clausen's pleadings described complex fraudulent schemes involving various medical

testing services and various policies and practices that were alleged to be improper. In

subsequent versions of his complaints, Clausen added illustrative examples of the fraudulent

conduct by providing patient lists, lab results and physician orders for various tests he believed

were fraudulently billed. Id. at 1304-06. Despite his attempt to satisfy the pleading requirements

of Rule 9(b), the court dismissed Clausen's amended complaint, pointing out that none of his

submissions identified a single false or fraudulent claim for payment made upon the government

by the defendant. Id. at 1311 (referring to plaintiff's submissions the court noted "still no copies

of a single actual bill or claim or payment were provided").

Using an analysis that demolishes Smith's argument in this case, the Clausen court

pointed out that in order to state an FCA violation for fraud upon the government, the qui tam

plaintiff must factually relate the fraudulent scheme described to specific wrongful conduct of

the defendant—the submission of a fraudulent bill or false claim that resulted in an improper

payment. "The False Claims Act does not create liability merely for a health care provider's

disregard of Government regulations or improper internal policies unless, as a result of such acts,

the provider knowingly asks the Government to pay amounts it does not owe." 290 F.3d at 1311

(citing Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999)). The

court went on to explain that Rule 9(b), "does not permit a False Claims Act plaintiff merely to

describe a private scheme in detail but then to allege simply and without any stated reason for his

belief that claims requesting illegal payments must have been submitted...." Id. (emphasis

added). This is precisely what Smith is attempting to do in this case. He has described, with

prolixity, a theory as to why billing for the Technical Component of radiology studies constitutes

a fraud, including ambiguous references to defendants' internal "polices and practices," but he has failed to identify a single actual bill submitted to Medicare or Medicaid by a Cornell radiologist for a "completed but not read" study.

Plaintiff tries to analogize his pleadings and factual submissions to those filed by the Government in In re Cardiac Devices Qui Tam Litigation, 221 F.R.D. 318 (D. Conn. 2004). See Pltf's Mem. at 8. In that case, Judge Goettel sustained the Government's FCA complaints because it had "provided categorical information in the complaints about the actual claims that were submitted to the Government, listing the number of false claims involving a particular device." Id. at 336. "This," the court concluded "is not a situation where only a general scheme of fraud was alleged that might have resulted in the submission of false claims." Id. at 337.

Plaintiff's pleading, even when read in conjunction with the documents attached to his memorandum of law, does not contain sufficient detail with regard to Cornell's alleged fraud to accomplish the basic purpose of Rule 9(b). Plaintiff's submissions merely describe a general scheme of fraud—the "completed but not read" theory—that might have resulted in the submission of a false claim. In this regard, plaintiff's pleadings and the documents submitted by Smith are similar to those rejected in Clausen, and are precisely like those relating to a general scheme of fraud that Judge Goettel found were insufficient to state a claim in In re Cardiac Devices.

Plaintiff also argues that by naming Dr. Sostman, the individual "responsible for implementing, administering, and monitoring the policies and practices that caused false certifications to be made and fraudulent bills to submitted," he has identified the speaker of the fraudulent statements. See Pltf's Mem. at 13. Again, he fails to identify any particular radiologist who actually submitted, or caused to be submitted, a false claim or fraudulent bill for

radiology services to the government. Similarly, plaintiff's explanation of "the complicated maze of relevant Medicare Regulations," see Pltf's Mem. at 13, does not suffice to relate his generalized theory of liability to any specific wrongful conduct on the part of Cornell. This type of generalized pleading by a *qui tam* relator alleging fraud against a health care provider was rejected by the First Circuit in United States ex rel. Karvelas v. Melrose-Wakefield Healthcare Corp., 360 F.3d 220, 232-233 (1st Cir.), cert. denied, 125 S. Ct. 59 (2004), when the court explained that:

> Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the "circumstances constituting fraud or mistake" that must be pled with particularity pursuant to Rule 9(b). However, such pleadings invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims submitted to the Government that constitute the essential element of an FCA qui tam action.

(emphasis added).

As noted above, the documentary "evidence" plaintiff attaches to his memorandum of law does nothing to further particularize his theory of defendants' alleged fraudulent scheme. The e-mail communications and radiology reports, see Exhibits "B" through "H" to Pltf's Mem., do not come close to identifying a false claim submitted to the government. First, there is absolutely no indication that any of the proffered documents relate to medical services provided by a Cornell radiologist to a Medicare or Medicaid patient. Second, there is no indication that any Cornell radiologist actually billed for any of the medical services referenced in the documents because none of the documents constitutes a bill or invoice for Cornell physician services. Finally, there is no indication whatsoever that any payer, Medicare/Medicaid or otherwise, paid for any of the medical services mentioned in the documents while laboring under

any misrepresentation of the true facts.  They simply do not satisfy the requirements of Rule 9(b), and plaintiff's FCA fraud claim must be dismissed.

## POINT IV

### BECAUSE PLAINTIFF HAS FAILED TO IDENTIFY A SINGLE FALSE OR FRAUDULENT CLAIM SUBMITTED TO THE GOVERNMENT BY CORNELL, HIS FCA FRAUD CLAIM MUST BE DISMISSED PURSUANT TO RULE 12(b)(6)

Plaintiff's counsel argues that the allegations contained in the Third Amended Complaint plead all of the requisite elements of a fraud claim against Cornell.  Pltf's Mem. at 19-20.  A careful examination of the pleading, however, reveals that key elements of the cause of action are notably absent from his latest attempt to impose liability on Cornell for fraud under the FCA. In the memorandum of law, plaintiff correctly cites the five elements of an FCA fraud claim: (1) a claim, (2) to the Government, (3) that is false or fraudulent, (4) known by the defendant to be false, and (5) which seeks payment from the federal treasury.  See United States ex rel. Mikes v. Straus, 274 F.3d 687, 697 (2d Cir. 2001).[4]  Specific factual allegations supporting each of these elements, as they pertain to Cornell, are nowhere to be found in the Third Amended Complaint.

### A.    Plaintiff Has Not Identified Any Claim Submitted by Cornell to the Government.

Plaintiff's counsel explains that the submission of a claim to Medicare or Medicaid for reimbursement—through the HCFA 1450/1500 and/or UB-92 form—qualifies as a claim made upon the Government and satisfies the first two elements of the cause of action.  See Pltf's Mem. at 19.  Counsel then argues that, "Plaintiff clearly alleges that Defendant Cornell was responsible

---

[4]    Plaintiff's reliance on Mikes for the argument that he has pled an FCA fraud claim sufficient to survive Cornell's Rule 12(b)(6) motion is misplaced.  The district court sustained Mikes's amended complaint only after the motion to dismiss was converted into one for summary judgment and plaintiff had submitted an affidavit particularizing her FCA claims.  See 274 F.3d at 693.  In response to Cornell's motion to dismiss, Smith has not offered anything other than legal argument in support of his deficient pleading.

for the administration of the policies and practices that resulted in the submission of claims to Medicare on HCFA 1450 or UB-92 form for the Technical Component...." Id. at 19, 22. It is important to note here that plaintiff's counsel does not state that the Third Amended Complaint contains allegations that Cornell actually submitted false or fraudulent HCFA 1450 or UB-92 forms. This he cannot do because the Third Amended Complaint makes no reference at all to HCFA 1450 or UB-92 forms, much less to any facts indicating that an individual radiologist at Cornell ever submitted a HCFA 1450 or UB-92 containing any sort of false certification in connection with a specific radiology report for a particular patient. Additionally, none of the exhibits attached to the memorandum include HCFA 1450 or UB-92 forms.

### B.  Plaintiff Has Not Pled that Any Claim Submitted by Cornell Was False or Fraudulent.

Plaintiff's counsel argues that Cornell made both express and implied false certifications to Medicare/Medicaid that the Professional Component was medically necessary and, therefore, appropriate for reimbursement. See Pltf's Mem. at 20-23. He goes to great lengths to explain that the studies were not medically necessary and asserts, "Plaintiff alleges that Defendants, through the actions of their agents, made expressly false certifications by falsely certifying compliance with the terms set forth in the HCFA 1450 or the UB-92 form." Id. at 22. This is simply not true because plaintiff has not set forth the certification language contained in either of these forms in his pleading, nor does he incorporate it by reference, nor does he allege that any Cornell radiologist made such a false certification.[5]

---

[5]  Plaintiff also makes reference to New York v. Evans, 155 Misc. 2d 348, 589 N.Y.S.2d 223 (N.Y. Sup. Ct., Bronx Co. 1992), a criminal case involving the prosecution of a radiologist for violations of New York's Medicaid regulations. After discussing the case, plaintiff's counsel concludes, "just as in Evans, the bills submitted by Defendant Cornell were not compensable under New York law." Pltf's Mem. at 23.  In addition to the fact that plaintiff has failed to identify a single instance wherein a Cornell radiologist submitted a false bill to Medicare, this state criminal case has no applicability whatsoever to the instant matter because FCA liability only reaches fraud practiced upon the federal government.  Moreover, that case is factually

(Footnote continued on next page)

Moreover, counsel's contention that Cornell radiologists falsely certified that radiology studies were medically necessary when according to plaintiff's theory they were not, contradicts the facts alleged in the complaint and is simply illogical. Based on a fair reading of the Third Amended Complaint, see ¶¶ 24-30, the physician who orders the radiology study (triggering the Technical Component) certifies that it is medically necessary and not the radiologist who subsequently interprets the study (the Professional Component). It cannot be reasonably inferred from the regulations or the pleading's construction of the regulations that the interpreting radiologist is required to second-guess the medical necessity of each and every study ordered. Rather, plaintiff's claim as pled in the Third Amended Complaint hinges upon the alleged falsity of the certification of medical necessity of the Technical Component, and not on the certification of the medical necessity of the Professional Component performed by Cornell. Merely referring to forms and certifications as part of generalized scheme of alleged fraud without identifying an actual false claim submitted to the government is insufficient to state a claim under the FCA. See United States ex rel. Gross v. AIDS Research Alliance-Chicago, No. 04-2566, 2005 WL 1567316, at *3-4 (7th Cir. July 6, 2005) (dismissing amended complaint which alleged general false certification theory):

> These conclusory allegations shed no light on the nature or content of the individual forms or why any particular false statement would have caused the government to keep the funding spigot open, much less when any payments occurred or how much money was involved. This does not satisfy "the who, what, when, where, and how" requirement for pleading fraud under Rule 9(b).

---

(Footnote continued from previous page)

distinguishable from the one at bar. In Evans, the prosecution was based on defendants' double billing for suboptimal radiology scans and rescans, conduct which is prohibited under Medicare's regulations. Smith makes no such allegations in his version of the "completed but not read" theory of recovery.

Plaintiff's claims in the present case suffer the same defects as those identified in the <u>Gross</u> case and should suffer the same fate as well.

### C. Plaintiff Has Not Pled that any Physician at Cornell "Caused" a False Claim to be Submitted to the Government.

In an attempt to establish that plaintiff adequately pled "causation" in the Third Amended Complaint, his counsel asserts that "University and Hospital Administrators such as Dr. Sostman…caused false claims to be submitted to the Government by directing faculty members, such as Plaintiff, to comply with fraudulent practices." Pltf's Mem. at 24. He also states that, "The completed but not read fraud was the result of policies and practices that were implemented and administered under the direction of Dr. Sostman and his administration." <u>Id</u>. at 25. No such allegations are contained in the Third Amended Complaint, however.

Plaintiff relies on <u>United States v. Mackby</u>, 261 F.3d 821 (9th Cir. 2001), for the proposition that FCA liability attaches not only where the defendant makes a direct submission of a false claim, but also where the defendant causes a false claim to be submitted to the government by another person. Here, Smith has not alleged in the complaint that Dr. Sostman or any other person working for Cornell under his direction knowingly caused a false claim form to be submitted to Medicare or Medicaid for payment for the Professional Component of a radiology study.

### D. Plaintiff Has Not Pled the Requisite Element of Scienter.

Plaintiff's counsel does not even feign an attempt to establish that Smith has adequately alleged in the complaint that Cornell knowingly submitted false claims to the Government by acting with intent, deliberate ignorance, or reckless disregard. Instead, counsel feebly states, "Plaintiff has alleged each required element of an FCA violation" without so much as passing reference to the Third Amended Complaint. Because plaintiff was a member of Cornell's

administration—the very one he now attacks as having administered "fraudlent practices"—one would assume that he might allege specific conduct from which it could be inferred that the medical school knowingly submitted false claims for the Professional Component. Instead, his attorney proffers documents that suggest (without conceding such) that isolated errors or mistakes might have been made by defendants, which may or may not have resulted in the submission of bills to the government. Such conduct, however, is not punishable under the FCA. See United States ex. rel. Mikes v. Straus, 274 F.3d 687, 703 (2d Cir. 2001) ("We nevertheless find no liability in the instant case because plaintiff makes no showing that defendants knowingly—as the Act defines that term—submitted a claim for the reimbursement of worthless services. We have adopted the Ninth Circuit's standard that the 'requisite intent is the knowing presentation of what is known to be false' as opposed to negligence or innocent mistake.") (quoting Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1478 (9th Cir. 1996)). Accordingly, plaintiff's fraud claim cannot survive the instant motion to dismiss.

## POINT V

### PLAINTIFF HAS FAILED TO PLEAD ADEQUATELY THE THREE REQUIRED ELEMENTS FOR AN FCA RETALIATION CLAIM

#### A. The Allegations of the Third Amended Complaint Fail to Set Forth Facts Indicating that Plaintiff was Engaged in "Protected Activity."

Plaintiff contends that the term "protected activity" must be interpreted broadly under the FCA. Pltf's Mem. at 30. This is not necessarily so. "Protected activity" is interpreted much more narrowly in the FCA context than in common law or state law retaliatory discharge/whistleblower claims, in that a plaintiff must "'demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government.'" Moor-Jankowski v. Board of Trustees of N.Y. Univ., 96 Civ. 5997, 1998 U.S. Dist. LEXIS 12305, at

*33 (S.D.N.Y. Aug. 10, 1998) (quoting <u>Luckey v. Baxter Healthcare Corp.</u>, 2 F. Supp. 2d 1034, 1050 (N.D. Ill. 1998)).  Conversely, "an employee's activities that are not related to exposing or deterring fraud [upon the government] are not 'whistle blowing as envisioned in the paradigm qui tam FCA action.'" <u>Luckey</u>, 2 F. Supp. 2d at 1051(quoting <u>Hopper v. Anton</u>, 91 F.3d 1261, 1269 (9th Cir. 1996)).

Plaintiff's pleading does not allege that he reported to any federal or law enforcement agency alleged conduct by Cornell relating to billing.[6]  Instead plaintiff relies exclusively on alleged internal reporting as the basis for his contention that he was engaged in protected activity.  He concedes as much when he notes "[c]ourts have held that internal reporting of false claims constitutes protected activity under § 3730(h)." Pltf's Mem. at 31.  Plaintiff conveniently understates what is required to constitute "protected activity" in the internal reporting context, in that "[i]nternal reporting may constitute 'protected activity,' but the report <u>must itself allege fraud on the federal Government</u>." <u>United States ex rel. Scott v. Metro. Health Corp.</u>, 1:02-CV-485, 2005 U.S. Dist. LEXIS 12323, at *50 (W.D. Mich. June 23, 2005) (emphasis added); <u>see</u> <u>McKenzie v. BellSouth Telecoms, Inc.</u>, 219 F.3d 508, 516 (6th Cir. 2000) (same).  Plaintiff's current complaint does not allege that any internal report that he made to any of his superiors, including Dr. Sostman, alleged fraud on the government.

Plaintiff asserts that "[i]n one correspondence incorporated by reference into the Third Amended Complaint, plaintiff wrote to Dr. Sostman that 'there is case law to support a claim of fraud against the hospital if they are not providing the services covered by the technical

---

[6]     At one point in his memorandum of law, plaintiff makes a reference to alleged correspondence directed to unspecified "Government officials" concerning his purported findings relating to radiology billing.  <u>See</u> Plaintiff's Mem. at pp. 38-39.  No such allegation appears anywhere in the Third Amended Complaint, nor has Plaintiff alleged that this correspondence constitutes protected activity, or that Cornell was aware of any such correspondence with the government prior to its decision not to renew his employment.

component of an exam . . . .'" Pltf's Mem. at 33.[7]  First, this statement referring to a "claim of
fraud" plainly does not invoke fraud <u>on the government</u>, and does not remotely identify the party
who would possess this theoretical claim.  Indeed, this statement could easily relate to a
purported allegation of fraud on patients who pay for their services themselves and/or fraud on
private insurance companies.  This statement is also phrased in the hypothetical and does not
refer to any actual fraud that was committed by the hospital – it merely notes that some unnamed
party potentially could have a claim of fraud <u>if</u> the hospital were not providing services covered
by the Technical Component.  Finally, this statement in no way complains about Cornell's
billing for the Professional Component, but rather NYPH's billing for the Technical Component.
<u>See</u> Third Amended Complaint at ¶¶ 14-17, 29.  In short, this statement does nothing to establish
that plaintiff was engaged in "protected activity," as that term is defined in the specific context of
the FCA.[8]  <u>See</u> <u>Moor-Jankowski v. Board of Trustees of N.Y. Univ.</u>, 96 Civ. 5997, 1998 U.S.
Dist. LEXIS 12305, at *33 (S.D.N.Y. Aug. 10, 1998) ("protected activity" under § 3730(h)
requires that plaintiff "'demonstrate that her investigation, inquiries, and/or testimony were
directed at exposing a fraud upon the Government,'" (quoting <u>Luckey v. Baxter Healthcare
Corp.</u>, 2 F. Supp. 2d 1034, 1050 (N.D. Ill. 1998))).

    Similarly, plaintiff's alleged complaints concerning "compliance problems," including
that NYPH's and Cornell's separate computer systems did not always bill for the same type of

---

[7]    Plaintiff does not indicate the date of this alleged correspondence to Dr. Sostman in which he referred to this
hypothetical "claim of fraud," nor does he include a copy in his opposition papers, nor does he reference the
pleading.  He therefore makes it impossible to tell whether in fact any such document exists, whether plaintiff
did in fact incorporate it by reference in his Third Amended Complaint and most importantly, whether it pre-
dated Cornell's alleged decision in June 2002 not to renew plaintiff's appointment to the faculty.

[8]    Apparently realizing the insufficiency of this generic statement relating to theoretical fraud which has no nexus
to claims submitted to the Government, plaintiff guilds the lily by suggesting in his memorandum that this
statement and/or other items of correspondence from him informed Cornell of case law regarding "Medicare
fraud and the fact that Defendants' [sic] non-compliance put it at risk."  Plaintiff's Mem. at p. 35.  It is clear,
however, that neither that communication to Dr. Sostman, nor any other from plaintiff to Cornell alleged
Cornell had committed Medicare fraud in connection with its radiology billing.

exam, see Pltf's Mem. at 33, do not refer to any fraud, and certainly do not refer to any false or fraudulent claims submitted to the government. These complaints related to regulatory compliance – part of plaintiff's job responsibilities as Associate Chair of Information Technology and Systems Administration for the Cornell Department of Radiology. They cannot be a basis to conclude that plaintiff was engaged in "protected activity."

Plaintiff cannot avoid the fact that he never documented to Cornell one specific instance of what he classified as a false or fraudulent bill submitted by Cornell to the government. He has failed to allege he took any steps to expose such a fraud. Simply put, the reason plaintiff cannot plead adequately that Cornell or NYPH was engaged in fraud on the government is that he did not investigate or expose any fraud on the government – and therefore was plainly not engaged in protected activity under § 3730(h).

**B.    Plaintiff Has Failed to Allege Facts Sufficient to Establish that Cornell Had Knowledge of his Alleged Protected Activity.**

Plaintiff has failed to allege facts from which it reasonably could be inferred that Cornell had knowledge of any such protected activity at the time it made the decision not to renew his faculty appointment. Plaintiff has failed to satisfy the knowledge requirement of § 3730(h) because he has not adequately alleged that he ever notified Cornell that it was his belief that it was submitting false or fraudulent bills to Medicare or Medicaid. [9]

Plaintiff relies on the case of Mikes v. Strauss, 889 F. Supp. 746 (S.D.N.Y. 1995) for the conclusion that his alleged internal reporting, to the extent it fell short of explicitly alleging Cornell was engaged in Medicare fraud, was sufficient to put Cornell on notice of his protected

---

[9]    Plaintiff argues that he notified the Dean of the Medical College in March 2003 of possible "billing fraud and compliance violations." See Pltf's Mem. at 34. Even if this was enough to establish that plaintiff had engaged in protected activity or that this was sufficient notice, the alleged communication occurred after Cornell had notified in June 2002 plaintiff to the decision not to renew his faculty appointment and employment.

activity. See Pltf's Mem. at 37-38. Unlike plaintiff here, however, Mikes "specifically informed [her employer] that the failure to provide written interpretation of the [spirometry] tests precluded his charging them to Medicare." Id. at 753.

Plaintiff also relies on United States ex rel. Karvelas v. Melrose-Wakefield Hospital, 360 F.3d 220 (1st Cir. 2004), but that case conclusively establishes the inadequacy of his pleading with respect to the knowledge element. As Plaintiff points out, the court in Karvelas held that the knowledge requirement was met in the context of an FCA retaliation claim premised on complaints about false Medicare billing where plaintiff "'notified his employers about the results of his investigation concerning false claims for payment that the hospital knowingly submitted to the Government.'" Pltf's Mem. at 36-37, quoting Karvelas, 360 F.3d at 239. Plaintiff's allegations in Karvelas differed markedly from those in Smith's Third Amended Complaint. Karvelas specifically alleged "that he reported the hospital's knowing falsification of evaluations of dead or discharged patients and its illegal billing to Medicare and Medicaid for those evaluations." Karvelas, 360 F.3d at 239.

Here, Plaintiff fails to allege that he ever informed Cornell that it was billing Medicare or Medicaid for services or charges that it should not have, much less that it or any of its radiologists were knowingly engaged in such conduct. Plaintiff's generalized complaints about patient care issues within which were intermingled billing issues relating to the lack of coordination between Cornell's and NYPH's computer systems simply are not on the order of the specific complaints at issue in Mikes and Karvelas, which drew a direct and unavoidable nexus to the submission of false claims to Medicare/Medicaid.

In a creative effort to camouflage his deficient pleading, plaintiff's counsel argues that Smith accused Cornell of illegal billing impermissible under the applicable Medicare guidelines.

See Pltf's Mem. at 38.[10]  Notably, the portion of the Third Amended Complaint upon which he

relies does not allege what he wishes to lead the Court to believe it alleges.  Similarly, the

documents he purports to incorporate by reference do not contain the type of specific allegations

relating to Medicare fraud which were upheld as sufficient in Mikes and Karvelas  See Luckey

v. Baxter Healthcare Corp., 2 F. Supp. 2d 1034, 1053 (N.D. Ill. 1998) (interpreting Mikes as

follows: "Critical to the court's holding . . . was the fact that the employee's complaints were

coupled with her charges that the employer was inappropriately using – or overusing – the tests

to fraudulently inflate Medicare patients' bills, for which the Government was partially

responsible") (emphasis added).

Based on its interpretation of Mikes, the court in Luckey held that the plaintiff did not

adequately allege facts sufficient to establish the knowledge requirement of an FCA retaliation

claim, under the following rationale:

> [I]t is clear that the employer must be on notice, not only of the
> voiced concerns and investigations of the employee, but that the
> employee's actions are related to the employer's alleged false
> claims to the Government.  In other words, the employee must, at
> least to some degree, couch her concerns or investigation in terms
> of funds her employer fraudulently obtained from the Government.

Luckey, 2 F. Supp. 2d at 1055 (emphasis added).

Notwithstanding plaintiff's effort to recast his pleading in his opposition papers, plaintiff

has failed to allege that his purported communications to Cornell were sufficiently couched in

terms of a fraud upon the government so as to give notice to Cornell that he was engaged in

---

[10]    Later in his memorandum of law, Plaintiff contends he satisfies the knowledge requirement because, inter alia
he has alleged that "Defendant Cornell was not complying with Medicare and Medicaid regulations that are a
prerequisite to reimbursement, characterized Defendant's bills as fraudulent or illegal . . . and provided
documentary evidence of fraudulent bills . . . ." Plaintiff's Mem. at p. 41.  Tellingly, Plaintiff does not provide
a citation to the Third Amended Complaint, or reference to specific documents incorporated into his complaint
by reference, where such allegations could be found – demonstrating again that Plaintiff's arguments
consistently ignore the content of his own pleading.

activity which could form the basis for a *qui tam* action. Plaintiff held the position of Associate

Chair of Information Technology and Systems Administration for the Cornell Department of

Radiology. Finding and addressing billing compliance issues were part of his job. Cornell

would have interpreted Smith's complaints as just that and <u>not</u> as any indication of a possible

FCA claim. See <u>Mack v. Augusta-Richmond County</u>, 365 F. Supp. 2d 1362, 1380 (S.D. Ga.

2005) ("[W]hy would an employer fear that an employee reporting non-compliance, whose job

responsibilities include ensuring regulatory compliance, seeks to file a False Claims Act suit or

report fraud to the government?").

### C.   Plaintiff Has Failed to Allege Facts Sufficient to Establish that Cornell Retaliated Against him Because of any Protected Activity.

Plaintiff's counsel asserts that Smith has adequately pled this third element of a claim

under § 3730(h) – which requires a causal nexus between alleged protected activity and adverse

employment action – in that he has "alleged that '[b]ecause of his investigation and reporting of'

Defendants' fraudulent conduct and submission of false claims for reimbursement to Medicare,

Defendants harassed and discriminated against him in the terms and conditions of his

employment." Pltf's Mem. at 42 (quoting and citing Complaint at ¶ 207). Plaintiff's selective

and limited quotation of his pleading demonstrates its inadequacy in this regard – a review of

Paragraph 207 reveals that it in no way, shape or form alleges that plaintiff was retaliated against

because of his investigation and reporting of the "submission of false claims for reimbursement

to Medicare," as he claims. Instead, Paragraph 207(a) merely alleges "[b]ecause of his

investigation and reporting of the frauds alleged herein, [plaintiff] was harassed and was

discriminated against . . . ." Complaint at ¶ 207; <u>see also</u> <u>id.</u> at ¶ 209 (alleging plaintiff was "the

object of such discrimination . . . because of his investigation and reporting of the frauds alleged

herein, including his reports of the substandard patient care issues, improper billing practices and

falsification of documents"). The problem with this allegation is that, as discussed at length above (Point III, supra), nowhere else in his pleading has plaintiff adequately alleged any fraud upon the government.

### D. Plaintiff's Sworn Judicial Admissions Conclusively Establish the Absence of Retaliation.

Finally, plaintiff's effort to have this Court disregard his prior sworn testimony which negates his FCA retaliation claim – or any retaliation claim for that matter – premised upon the loss of his faculty position, speaks volumes about his desire to avoid that testimony. See Pltf's Mem. at 42. Plaintiff does not even attempt to qualify the submitted testimony in any way.

While Plaintiff argues that he may need discovery on this point, Pltf's Mem. at 42, n.5, it is not clear what discovery he needs with respect to his own sworn judicial admission. He also claims he might take the opportunity "to provide additional documentation in support of his claims." Id. Again, he does not specify what documentation he would submit. Plaintiff has submitted extensive documents in opposition to the motion, but none on this critical point. It is also ironic that plaintiff would invoke the technical rule that only matters within a pleading or those documents explicitly incorporated by reference therein may be considered on a Rule 12(b)(6) motion where he has shown little regard for that rule in his opposition papers. He refers to statements in unidentified documents that were not incorporated by reference into the Third Amended Complaint in an effort to establish the adequacy of his claims. See, e.g., Pltf's Mem. at 14-16 (making reference to Plaintiff's Exhibits "B" through "H"). While it is understandable that plaintiff would like the Court to disregard the prior testimony, he cannot reference favorable materials in support of his claims, while disavowing sworn judicial admissions which are unfavorable.

## POINT VI

### PLAINTIFF HAS NOT STATED A CLAIM THAT
### <u>CORNELL VIOLATED NEW YORK'S LABOR LAW</u>

With one minor exception, plaintiff offers no substantive analysis in opposition to
Cornell's motion to dismiss his claims under New York Labor Law §741. Accordingly, Cornell
relies on the analysis and arguments set forth in its moving papers.

The only issue where plaintiff attempts any real argument relates to the statute of
limitations. Cornell gave plaintiff notice of the non-renewal of his faculty appointment and
employment on June 28, 2002. <u>See</u> Third Amended Complaint at ¶207(d). Recognizing that, as
a matter of law, his claim, if any, arose at that time, plaintiff attempts to argue that the alleged
retaliation continued after notice. <u>See</u> Memorandum of Law in Support of Cornell's Motion to
Dismiss the Third Amended Complaint, at 30-31. Plaintiff contends, in a wholly conclusory
fashion, that he allegedly was subjected to "further retaliation" during his last year of
employment after receiving notice. Pltf's Mem. at 44.

As a matter of law, this purported other, generally unspecified, post-notice conduct is not
a "retaliatory action" prohibited by N.Y. Labor Law §741. Section 741(1)(f) defines retaliatory
actions as:

> The discharge, suspension, demotion, penalization or
> discrimination against an employee, or other adverse employment
> action taken against an employee in the terms and conditions of
> employment.

None of the alleged actions complained of by plaintiff which consist of others being either non-
collegial towards or dismissive of him fall within the specifically prohibited adverse employment
actions set forth in §741(1)(f). Neither do the alleged actions constitute "other adverse
employment action."

An "adverse employment action" is well-defined in the federal courts. An adverse employment action is "a materially adverse change in the terms and conditions of employment." Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (internal citation omitted); see also Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). An adverse employment action must amount to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1988). None of the post-notice conduct described by plaintiff (e.g., denial of a leave request a month before the end of his employment) can be remotely considered a "materially adverse change."

## POINT VII

### PLAINTIFF HAS NOT PLED ADEQUATELY HIS OTHER STATE LAW CLAIMS

Plaintiff asserts no substantive opposition to Cornell's motion to dismiss his state law claims for defamation, intentional and negligent infliction of emotional distress, and breach of contract. Pltf's Mem. at 47. Cornell relies on this concession and the arguments set forth in its original moving papers, and respectfully requests that plaintiff's Fourth, Fifth, Sixth and Seventh Causes of Action be dismissed.

## POINT VIII

### CORNELL WAS NOT SERVED WITH A VALID SUMMONS

Plaintiff argues that Cornell was served with a summons and a complaint in accordance with Fed. R. Civ. P. 4(a). Pltf's Mem. At 48. As Cornell demonstrated in its original moving papers, it has never received a valid summons together with a complaint in this action. The

document which purports to be a summons was defective in all material respects, and as such it failed to bring Cornell within the Court's jurisdiction.

## POINT IX

### PLAINTIFF HAS NOT ESTABLISHED THAT CORNELL HAS BEEN PROPERLY JOINED IN THIS ACTION

In response to that branch of Cornell's motion seeking dismissal on the grounds that it has not been properly joined in this action, plaintiff waves around the venue provision of the FCA, 31 U.S.C. § 3732, as if it were some sort of talisman to cure the fatal defect of misjoinder. See Pltf's Mem. at 48-49. Section 3732 is a venue provision. It does not trump Fed. R. Civ. P. 20 merely because the nature of the claim is an alleged fraud upon the Government. The court in United States ex rel. North Santium Watershed Council v. Kinross Gold USA, Inc., No. C 96-3673, 1998 WL 118176, at *3 (N.D. Cal. 1998), an FCA case against a number of foreign mining companies, held that "[b]ecause relator's claims against each defendant must be addressed separately, section 3732 requires that the relators allege facts that if true would establish an independent basis for personal jurisdiction over each defendant." (emphasis added). "It is not enough for plaintiff to allege that each defendant violated the False Claims Act or even that each violated the FCA in a similar manner." Id. at *6. Plaintiff's failure to satisfy the requirements of Rule 20—that the defendants acted in concert and that there are common questions of law and fact—separate and apart from satisfying the venue requirements of Section 3732, require dismissal of the misjoined defendant. Id. at *7; see also United States v. St. Joseph's Reg'l Health Ctr., 240 F. Supp. 2d 882 (W.D. Ark. 2002) (finding misjoinder of foreign defendant in Medicare fraud case).

Here, plaintiff does not and cannot allege that all defendants are jointly and severally liable. Instead, Smith's attorney dismissively claims that, "Plaintiff alleges that Defendants

Cornell and NYPH violated the FCA by engaging in identical conduct as Defendants Yale and

YNHH." Pltf's Mem. at 49. The mere assertion that the New York based defendants allegedly

engaged in similar conduct as the Connecticut based defendants under the "completed but not

read" theory of liability does not satisfy transactional relatedness and commonality. See North

Santiam Watershed Council, 1998 WL 118176, at *3.

In a feeble attempt to convince this Court that it has jurisdiction over Cornell, plaintiff's

counsel states that Cornell is part of the "New York-Presbyterian Healthcare System" which is

affiliated with three hospitals located in Connecticut. See Pltf's Mem. at 49. This argument

simply does not pass the straight face test. Apparently, counsel believes the word "affiliation"

denotes a legal relationship between the medical school in New York and these Connecticut

hospitals sufficient to establish minimum contacts with his selected forum. If plaintiff's counsel

had bothered to actually read the information presented in the Internet pages attached to his

memorandum of law as exhibits, he would have learned that the "affiliation" is nothing more

than a "federation" of hospitals. Each of the hospitals is a separate and distinct legal entity, and

the defendant medical school is part of Cornell University, another separate legal entity.

Plaintiff has not established that Cornell is properly joined in this action, nor that the

exercise of jurisdiction over it by this Court is appropriate. Accordingly, Cornell should be

dismissed, or in the alternative, that part of the action against Cornell should be severed and

transferred to the Southern District of New York where all of the witnesses and documents are

located.

## **CONCLUSION**

For the foregoing reasons, Cornell's motion to dismiss the Third Amended Complaint as against Cornell pursuant to Fed. R. Civ. P. 9(b), 12(b)(2),(4),(5) and (6) should be granted in all respects with prejudice. In the alternative, any claims against Cornell that may survive dismissal should be severed and transferred to the United States District Court for the Southern District of New York.

Dated: Garden City, New York
        July 27, 2005

<div style="margin-left:40%">

DEFENDANT
Cornell University Joan and Sanford I. Weill
Medical College


By: _____

    Gary P. Schulz, Esq. (phv0056)
    Christopher J. Porzio, Esq. (phv0057)
    Stacey B. Collier, Esq. (ct18895)
    NIXON PEABODY LLP
    City Place
    185 Asylum Street
    Hartford, CT 06103
    (860) 275-6820
    (860) 275-6821 (fax)
    gschulz@nixonpeabody.com

        - and -

    James R. Kahn, Esq.
    Deputy University Counsel
    Cornell University
    Weill Medical College
    Office of University Counsel
    445 East 69th Street
    New York, New York 10021
    ph (212) 746-0463
    fax (212) 746-0495

</div>

Nelson E. Roth, Esq.
Deputy University Counsel
Valerie L. Cross, Esq.
Associate University Counsel
Cornell University
300 CCC Building, Garden Avenue
Ithaca, New York 14853
ph (607) 255-5124
fax (607) 255-2794

## CERTIFICATION OF SERVICE

This is to certify that a true and accurate copy of the foregoing was mailed, postage prepaid, on this 27th day of July, 2005 to the following:

Mary Alice Leonhardt, Esq.
Law Offices of Mary Alice Leonhardt, LLC
102 Oak Street
Hartford, CT  06106

William J. Doyle, Esq.
Kenneth D. Heath, Esq.
Wiggins & Dana LLP
One Century Tower
265 Church Street, Box 1832
New Haven, CT  06508

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue & Noonan, PC
741 Boston Post Road
Concept Park
Guilford, CT  06437

Stuart M. Gerson, Esq.
Epstein Becker & Green, P.C.
1227 25th Street, NW, Suite 700
Washington, DC  20037-1175

David S. Poppick, Esq.
Epstein Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT  06901

Alexander J. Lawrence, Esq.
Carl H. Loewenson
Morrison & Foerster, LLP
1290 Avenue of the Americas
New York, NY  10104-0050

Craig T. Dickinson, Esq.
Madesen, Prestley & Parenteau
44 Capitol Avenue, Suite 201
Hartford, CT  06106

Richard M. Molot
U.S. Attorney's Office-NH
157 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT  06510

_____
GARY P. SCHULZ (phv0056)

G278132.1