## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

UNITED STATES,                          :
ex rel. ROBERT C. SMITH, M.D.,          :
      Plaintiff,                      :
                             :   Case No: 3:02cv1205 (PCD)
  vs.                                 :
                                :
YALE-NEW HAVEN HOSPITAL, INC,           :
et al.                                  :
      Defendants.                     :

### RULING ON YALE-NEW HAVEN HOSPITAL'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant Yale-New Haven Hospital

("YNHH") moves to dismiss the Complaint.  For the reasons stated below, the Motion [Doc. No.

73] is **granted**.

## I.    BACKGROUND:[1]

This lawsuit arises from Plaintiff-Relator's ("Relator") employment with Defendants.

Relator alleges that Defendants have defrauded the Federal Government by falsely billing for

certain radiological procedures, thus violating False Claims Act, 31 U.S.C. §§ 3729, et seq.

("FCA") (Count One); unlawful retaliation against Relator by Yale New Haven Hospital

("YNHH") and Yale University ("Yale") in violation of the FCA, 31 U.S.C. § 3730(h) (Count

Two); unlawful relation by New York Presbyterian Hospital and Cornell University Joan and

Sanford I. Weill Medical Center ("Cornell") in violation of § 3730(h) of the FCA (Count Three);

defamation against New York Presbyterian and Cornell (Count Four); intentional infliction of

---

[1]    Unless otherwise noted, the factual account which follows is taken from Plaintiff-Relator's Third
Amended Complaint.

emotional distress against New York Presbyterian and Cornell (Count Five); negligent infliction of emotional distress against New York Presbyterian and Cornell (Count Six); breach of contract against Cornell (Count Seven); and, as against New York Presbyterian and Cornell, a violation of NY CLS Labor § 741 (Count Eight).[2]

Relator, a resident of New York state, is a medical doctor licensed to practice medicine in the states of Connecticut and New York. Relator was employed by Yale University from July 1, 1990 through June 30, 1999. As of his most recent appointment with Yale, Relator was an Associate Professor, Department of Diagnostic Imaging and Chief, Section of MRI, Department of Diagnostic Imaging at Yale University's School of Medicine, and Director, Magnetic-Resonance Imaging Center and attending staff physician at YNHH. Plaintiff was a Professor of Radiology and Associate Chair of Information Technology and Systems Administration, Department of Radiology, Cornell University Joan and Sanford I. Weill Medical College, New York Presbyterian Hospital from 1999 until the summer of 2003.

The crux of Relator's allegations are that during his employment with Defendants, they knowingly engaged in improperly billing and retaining payments from the Medicare and Medicaid Program for producing outpatient radiological studies (x-rays, films and images) even though (a) the studies were never used in connection with the diagnosis or treatment of patients relative to the outpatient encounter when the studies were taken; (b) the studies were not interpreted by properly qualified radiologists in a timely fashion relative to the patient encounter when the studies were taken in accordance with the Medicare and Medicaid Program

---

[2]    Defendants New York Presbyterian and Cornell have filed separate motions to dismiss. Because this Ruling addresses only YNHH's Motion, the factual allegations which follow omit claims involving New York Presbyterian and Cornell.

requirements; and/or (c) the studies were never taken.

With respect to Yale and YNHH, Relator alleges that the computerized billing system utilized for the technical and professional components of radiological services allows for the billing of all payers (including Medicare or Medicaid) for "C" status radiology studies (i.e. those that were completed, but not read), but were never used for diagnostic or therapeutic purposes and/or for "P" status radiology studies for which no final report by a qualified physician was ever made. Thus, the billing system billed for x-rays which were taken but never properly utilized for any diagnostic or therapeutic purpose. Relator alleges that the practice has been in place since 1985 and that the system could have been programmed to bill only for the technical component after the study was interpreted by a qualified physician at any time, but that it was not.

Relator estimates that approximately 34% of all patients examined at the YNHH Radiology Department are Medicare beneficiaries and 18% are Medicaid beneficiaries. Relator alleges that he has uncovered more than 77,000 completed but not read radiology studies and that at least 10,000 more studies were read by residents or fellows, but not a qualified physician. Relator believes that approximately 50% of those studies were taken for Medicare or Medicaid patients and billed as such. For example, Relator alleges that 76 reports were interpreted by Sally Howell, a non-physician, and 22 by Tony Raccio, also not a physician. Furthermore, other radiology reports were dictated by various residents and fellows and finalized by "Autosign" - an automated procedure.

As a consequence, the services billed were substandard and inadequate in that Yale and YNHH performed radiology studies that were never properly interpreted or read by qualified physicians; were never used in connection with the diagnosis and treatment of patients relative to

3

the outpatient encounter when the studies were taken; the interpretations of the radiology studies were rendered by residents and fellows who lacked the required supervision by qualified radiologists; the interpretations were performed by unqualified physicians or personnel; and/or the studies were never actually taken. Relator alleges that these practices amount to knowingly (individually or as part of a conspiracy) billing for Medicare and Medicaid programs with no diagnostic or therapeutic value and falsely certifying that the services were medically necessary as required by those statutes, see 42 U.S.C. § 1320a-71. As a consequence, the United States has been damaged and the FCA has been violated.

Relator further alleges that as a result of his investigation and reporting of the frauds alleged herein, he was harassed and discriminated against in the terms and conditions of his employment. Relator states that his salary was cut, he was stripped of administrative positions and titles of Chief of MRI, Abdominal Imaging, Fellowship Director and Coordinator of Abdominal Schedule. He alleges that two other individuals, Drs. Arthur T. Rosenfeld and Morton I. Burrell, suffered similar retaliation and harassment for their involvement in the investigation of Relator's claims. Ultimately Relator was forced to resign.

Relator filed the present qui tam action on or about July 12, 2002. Although not detailed in the Complaint, Relator filed a previous qui tam action also against YNHH and Yale on or about July 19, 2000. For the purposes of this Ruling, the earlier filed action, 3:00cv1359 (PCD), will be referred to as Qui Tam One and the present action Qui Tam Two. A Motion is currently pending to consolidate the two actions. Finally, prior to filing either Qui Tam One or Qui Tam Two, Relator brought an action in state court alleging violations of state law concerning his employment with Defendants. The details of these other actions, as necessary, will be discussed

4

below.

## II.    STANDARD OF REVIEW:

A Rule 12(b)(1) motion seeks dismissal of a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The burden of establishing subject matter jurisdiction lies with the plaintiff.  Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)

Generally, a Rule 12(b)(6) motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir. 2001), quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984).  A motion to dismiss must be decided on the facts alleged in the complaint.  Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001).  All facts in the complaint are assumed to be true and are considered in the light most favorable to the non-movant.  Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d 387, 390 n.1 (2d Cir. 2001).

However, it is well-established that suits under the FCA are subject to Fed. R. Civ. P. 9(b) and the circumstances constituting fraud must be pled with particularity.  Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-1477 (2d Cir. 1995); see also Fed. R. Civ. P. 9(b) (requiring the circumstances constituting fraud be "stated with particularity").  Generally speaking, this requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Shields v. Citytrust Bancorp., 25 F.3d 1124, 1128 (2d Cir. 1994).  Consistent with Rule 9(b), scienter, however, may be plead generally.  Gold, 68 F.3d at 1477 (citing 31 U.S.C. § 3729(b)); see also Fed. R. Civ. P. 9(b) ("malice, intent,

knowledge, and other condition of mind of a person may be averred generally").

When a party moves to dismiss under Fed. R. Civ. P. 12(b)(1) as well as other bases such as 12(b)(6), "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."  Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

## III.    DISCUSSION:[3]

"The False Claims Act authorizes private citizens to sue on behalf of the United States to recover treble damages from those who knowingly make false claims for money or property upon the Government or who knowingly submit false statements in support of such claims or to avoid the payment of money or property to the Government."  United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc., 377 F.3d 145, 146 (2d Cir. 2004); 31 U.S.C. § 3729 et seq.  The FCA establishes liability for any person who

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid...

31 U.S.C. § 3729(a).

"The Act contains a so-called qui tam provision, which empowers private persons --

---

[3]    YNHH adopts the Motion and arguments in support of Yale's Motion to Dismiss in Qui Tam One. Thus, any reference to YNHH's briefs will be abbreviated as "YNHH Mem. Supp. Mot. to Dismiss."  Relator, however, adopts both its Opposition Brief in Qui Tam One and files a separate brief in this action.  Accordingly, references to the adopted Brief will be abbreviated as Pl. Mem. Opp. Mot. to Dismiss and references to the additional Brief filed in this case will be referenced as "Pl. Mem. Opp. YNHH Mot.".

called relators -- to sue false claimants on behalf of the government." United States ex rel. Drake v. Norden Sys., 375 F.3d 248, 251 (2d Cir. 2004); 31 U.S.C. § 3730(b). "A relator commences a false claim action by filing the complaint under seal and giving the government an opportunity to intervene." Id. The Government has initial period of 60 days to decided whether to intervene, however, this period may be extended for good cause shown. Id. If the Government chooses not to intervene, the relator may proceed on the Government's behalf and, in either case, the relator is entitled to a percentage of any award received. Id.; 31 U.S.C. §§ 3730(c)(3); 3729(d).

The FCA also prohibits retaliation against relators, providing that

[a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole...

31 U.S.C. § 3730(h).

However, the FCA contains a public disclosure bar and one cannot proceed as a relator based on information that is in the public domain unless the relator is the original source of that information. See 31 U.S.C. § 3730(e)(4)(A) (No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing ... unless ... the person bringing the action is an original source of the information). The purpose of § 3730(e)(4)(A) is to balance encouraging "those with knowledge of fraud against the government to bring that information to the fore" against the desire to discourage "individuals seeking quick cash without assisting in exposing the fraud" from filing qui tam actions. United States ex rel. Doe v. John Doe Corp., 960 F.2d 318, 321 (2d

Cir. 1992).  "To qualify as an original source, a qui tam plaintiff must have (1) had direct and

independent knowledge of the information on which the allegations are based, (2) voluntarily

provided such information to the government prior to filing suit, and (3) directly or indirectly

been a source to the entity that publicly disclosed the allegations on which the suit is based."

United States v. New York Med. College, 252 F.3d 118, 120 (2d Cir. 2001) (citations omitted);

31 U.S.C. § 3730(e)(4)(B).

    A.    Whether the Public Disclosure Rule Bars ths Action:

Pursuant to Fed. R. Civ. P. 12(b)(1), YNHH argues that the disclosures made in the state

court action brought by Relator amount to a public disclosure and because Relator is not an

original source, this Court is deprived of jurisdiction over the matter.  YNHH Mem. Supp. Mot.

to Dismiss at 6-19.

    1.    Propriety of a 12(b)(1) Motion:

Relator challenges the appropriateness of considering YNHH's arguments on a 12(b)(1)

motion.  Pl. Mem. Opp. Mot. to Dismiss at 8-11.  Relator argues that the Second Circuit has

never "squarely addressed" whether a 12(b)(1) motion is the appropriate vehicle to challenge

subject matter jurisdiction.  Pl. Mem. Opp. Mot. to Dismiss at 10.  Considering this silence,[4]

Relator contends that the issue of jurisdiction is too closely intertwined with the merits and

should be examined under 12(b)(6) or on summary judgment pursuant to Fed. R. Civ. P. 56, not

12(b)(1).  Id. at 10-11.

It is "clear" that the "the satisfaction of . . . § 3730(e)(4) is . . . an issue of subject matter

jurisdiction".  United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985

---

[4]    Relator does not point to any cases raising the issue.

F.2d 1148, 1157 (2d Cir. 1993). In <u>Kreindler</u> because there was a prior public disclosure of the allegations or transactions in a public trial, and this was the only basis for the relator's knowledge, that relator was not considered an original source and the Second Circuit affirmed dismissal pursuant to a 12(b)(1) motion for lack of subject matter jurisdiction. <u>Id</u>. 1159.[5] While it is true that YNHH does not come forward with any decision explicitly rejecting Relator's argument regarding 12(b)(1) motions, the decision in <u>Kriendler</u> has certainly implicitly done so. <u>See Id</u>. at 1155-56 (pointing out the district court's error in not considering first a 12(b)(1) motion pursuant to 31 U.S.C. § 3730(e)(4)(A) and dismissing the case for want of such jurisdiction). Irregardless, it seems clear that a rule entirely prohibiting consideration of the issue of public disclosure on a 12(b)(1) motion is unfounded.

First, on either a 12(b)(1) or a 12(b)(6) motion, the Court may consider certain outside evidence. <u>See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000) (district courts may in resolving a 12(b)(1) motion "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing"); <u>Rothman v. Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000) (on a 12(b)(6) motion, a district court may consider "any statements or documents incorporated in [the complaint] by reference" matters of public record, and "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit"). Plaintiff argues that if the Court were to evaluate the Motion under 12(b)(6) it should not consider the outside

---

[5]      Lack of subject matter jurisdiction was raised before the district court, but not addressed. <u>United States ex rel. Kreindler & Kreindler v. United Technologies Corp.</u>, 985 F.2d 1148, 1150 (2d Cir. 1993). On appeal, the Second Circuit affirmed dismissal, but on the basis that subject matter jurisdiction was absent. <u>Id</u>.

evidence submitted by YNHH.  Pl. Mem. Opp. Mot. to Dismiss at 11.  YNHH's arguments are

based either on the text of the Complaint and Plaintiff's actual allegations, or the prior state

action, which is a matter of public record and could be considered under either standard.

Second, while it is true that when "jurisdiction is so intertwined with the merits that its

resolution depends on the resolution of the merits, the trial court should employ the standard

applicable to a motion for summary judgment." London v. Polishook, 189 F.3d 196, 198 (2d Cir.

1999).  Being an original source is not by definition so entwined with the merits that it cannot be

considered separately.  Section 3730(e)(4) is a jurisdictional bar and "if the information on which

a qui tam suit is based is in the public domain, and the qui tam plaintiff was not a source of that

information, then the suit is barred."  United States ex rel. Dick v. Long Island Lighting Co., 912

F.2d 13, 18 (2d Cir. 1990).  "Public disclosure of the allegations divests district courts of

jurisdiction over qui tam suits, regardless of where the relator obtained his information." Doe,

960 F.2d at 324.  On the other hand, the FCA "imposes liability upon any person who knowingly

presents, or causes to be presented, to an officer or employee of the United States Government or

a member of the Armed Forces of the United States a false or fraudulent claim for payment or

approval." Kreindler, 985 F.2d at 1152.  The question of liability under that Act and where and

how Plaintiff obtained the information forming the basis of his allegations regarding a fraudulent

claim or whether that information has already been publicly disclosed are logically, conceptually,

and factually distinct.  Further, to the extent that there remain factual questions over the question

of jurisdiction, it is within the court's discretion to order discovery on the question of

jurisdiction.  Mariner Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981).  The

Court need not resort to summary judgment to resolve the dispute now raised.  Accordingly, the

Court will consider the merits of YNHH's motion regarding jurisdiction.

## 2.     Whether the Allegations Were Publicly Disclosed:

YNHH argues that disclosure took place no later than January 7, 2000, when Plaintiff filed the action in state court, well before the filing of this action, and six months before the filing of Qui Tam One.  YNHH Mem. Supp. Mot. to Dismiss at 7.  Plaintiff does not dispute that this constituted a disclosure and simply argues that Plaintiff qualifies as an original source prior to the disclosure and this is sufficient.  Pl. Mem. Opp. YNHH Mot. at 10-11.  Thus, the dispositive question is whether Plaintiff qualifies as an original source despite the public disclosure.  See 31 U.S.C. § 3730(e)(4)(A) ("[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions ... unless ... the person bringing the action is an original source of the information").

## 3.     Whether Plaintiff has Direct and Independent Knowledge:

In order to be an original source, one must have direct and independent knowledge of the circumstances constituting the alleged fraud, New York Med. College, 252 F.3d at 120, and a third party cannot be the source of the core information underlying the allegations.  See e.g. Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1477 (2d Cir. 1995) (complaint dismissed because relator "gleaned the information underlying [the allegations] from the media, from administrative reports..., and from arbitration hearings").  In particular, a relator cannot use the process of discovery to gain the information underlying the complaint.  See Kreindler, 985 F.2d at 1159 (relator acted as counsel in prior case which resulted in disclosure of the information underlying his allegations); United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1155-1156 (3d Cir. 1991) (suit based on "[i]nformation gleaned in

11

litigation and on file in the clerk's office" is barred).  The Second Circuit has interpreted this to

mean that "a qui tam plaintiff does not satisfy the first requirement if a third party is 'the source

of the *core information*' upon which the qui tam complaint is based."  See New York Med.

College, 252 F.3d at 121 (noting Kriendler's interpretation as such)(emphasis added).  It is

therefore not necessary for a relator to have all the relevant information in order to qualify as

independent so long as the relator possesses substantive, or core, information about the particular

fraud.  Possessing background information which enables the relator to understand the

significance of a publicly disclosed transaction or allegation is insufficient.  See United States ex

rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1160 (3d

Cir. 1991), cited by Kreindler, 985 F.2d at 1159.

> a.  Which Complaint to Consider:

As an initial question, YNHH argues that the Court should only look to the Original

Complaint and not the Third Amended Complaint to determine whether Plaintiff has properly

plead facts to support the existence of direct and independent knowledge.  YNHH Mem. Supp.

Mot. to Dismiss at 9 n. 5.  YNHH cites no direct support for this proposition in this Circuit and

the Court is aware of none.[6]  The only case cited appearing to support YNHH's position held that

because the original complaint was "framed before any possible distortions associated with

---

[6]      In United States ex rel. Kinney v. Stoltz, 327 F.3d 671 (8th Cir. 2003), a case cited by YNHH, the
district court did not allow the relator to amend the complaint and the Eight Circuit upheld this
ruling as within the court's discretion not based on any rule prohibiting amendment for the
purposes of determining whether one is an original source.  327 F.3d at 674.  The court later stated
that if the relator "had possessed direct knowledge of the asserted fraud..., he was obligated to
identify them in his initial complaint," Id. at 675, but this was far from a holding and had nothing
to do with the propriety of considering an amended complaint as that issue had already been dealt
with on other grounds.  Similarly, United States ex rel. Ortega v. Columbia Healthcare, 240 F.
Supp. 2d 8, 14 (D.D.C. 2003), another case cited by YNHH, dealt not with the issue here, but with
the question of relation back and the first-file bar in § 3730(b)(5).

discovery took place, [it] is the most reliable evidence of" direct and independent knowledge. United States ex rel. Ackley v. IBM, 76 F. Supp. 2d 654, 660 (D. Md. 1999).[7]

There is an intuitive reasonableness to this position that would seem to serve the plain intent of the FCA to avoid "parasitic" lawsuits based on publicly disclosed information.  See John Doe, 960 F.2d at 321 ("The 1986 amendments attempt to strike a balance between encouraging private citizens to expose fraud and avoiding parasitic actions by opportunists who attempt to capitalize on public information without seriously contributing to the disclosure of the fraud").  However, as stated above, it is not necessary for a relator to have all the relevant information in order to qualify as independent, so long as he possesses more than simple background information which enables him to understand a publicly disclosed transaction or allegation, and the relator possesses substantive information, or core information, about the particular fraud.  Stinson, 944 F.2d at 1160.  Further, the reasonableness of YNHH's position is mitigated by the fact that in this case, the alleged taint, or disclosure, took place before the filing of even the Original Complaint.  The taint YNHH raises is the state court action, not discovery in *this* case and it is therefore unclear how the Ackley decision, which was concerned with discovery in the same action, applies.  See 76 F. Supp. 2d at 659 (basing ruling on concern that

---

[7]      YNHH also cites Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 831-32 (1989) for the proposition that a complaint cannot be amended to alter defects in jurisdictional facts to produce jurisdiction where none existed.  YNHH Mem. Supp. Mot. to Dismiss at 9 n. 5.  Newman-Green stands for the proposition that through amendment pursuant to 28 U.S.C. § 1653, one can only "remedy inadequate jurisdictional allegations, but not defective jurisdictional facts."  490 U.S. at 832.  This was a very limited holding, made under very different factual circumstances, confined solely to the specific statutory base as the Court allowed amendment to drop a non-diverse party, pursuant to Fed. R. Civ. P. 21.  Id. at 837-38.  It is not clear what YNHH means to assert, whether it challenges the propriety of the initial amendment, the use of the Amended Complaint here, or any future amendment to remedy a jurisdictional defect found by this Court.  However, in Newman-Green, the determination had already been made that subject matter jurisdiction was lacking and the issue was whether and how amendment would be permitted to remedy that lack.  Id. at 829.  Should the issue arise in this matter, the Court will address it when raised.

"information obtained by way of discovery [may] skew[] the picture of what information Ackley

actually derived from public disclosures and what he may be an original source of").

Accordingly, there is no basis raised to discount the allegations of the Third Amended

Complaint.

> b.    Whether Relator has Direct Knowledge of Allegations taking place
> after he left Yale:

Plaintiff was employed by Yale University from July 1, 1990 through June 30, 1999 and

at Cornell University Joan and Sanford I. Weil Medical College, New York Presbyterian

Hospital from 1999 through the summer of 2003.  YNHH argues that Relator cannot have direct

and independent knowledge of events that took place after he left his employment at Yale.

YNHH Mem. Supp. Mot. to Dismiss at 12-13.  The time line of the allegations in the Third

Amended Complaint is not well-explained.  Part of the confusion at this stage, however, stems

from the fact that Complaint has been amended subsequent to YNHH's Motion and at this point

some of the paragraphs suggesting Relator was alleging unlawful conduct outside of the period of

his employment by Yale have been removed.  Furthermore, the arguments of both sides are in

large part directed to the Complaint in Qui Tam One, which while quite similar, does have some

differences in specific allegations.  It does not appear here that Relator's allegations reach beyond

his employment.  Nevertheless, to the extent that Relator is seeking to establish direct and

independent knowledge over conduct that occurred after his departure from YNHH, he is

permitted so long as the allegations flow from matters over which he had direct knowledge while

employed.  Stinson, 944 F.2d at 1160 ( a relator need not have direct knowledge every fact

alleged).  Assuming conduct substantially similar to the conduct Relator has direct knowledge of

continued after his departure, it would be not be in the ultimate interest of Government recovery to limit an action solely to conduct that occurred during his employment.

        c.      Whether Disclosure in the State Court Action Defeats Jurisdiction:

YNHH next argues that Relator's allegations were largely disclosed during the discovery process of his previous state court action. YNHH Mem. Supp. Mot. to Dismiss at 13-16. As stated above, disclosure by itself is only enough to defeat jurisdiction if the relator is not the source of the information disclosed. Dick, 912 F.2d at 18 ("if the information on which a qui tam suit is based is in the public domain, and the qui tam plaintiff was not a source of that information, then the suit is barred").

It would not be unreasonable to conclude, based on Relator's employment with YNHH and his duties therein, that he would have had the occasion to observe the conduct underlying his allegations or have other direct and independent knowledge of the conduct. However, YNHH's evidence regarding Relator's statements during the state court action also cast doubt on this conclusion. See YNHH Mem. Supp. Mot. to Dismiss at 14 (YNHH presents evidence that Relator admitted to being unaware of whether Yale was actually billing for the services he alleges were improperly billed).

As stated above, while in principle it would be possible to resolve this issue on a 12(b)(1) motion, the factual record here is not sufficiently developed to determine jurisdiction conclusively. While the burden is on Relator to establish jurisdiction, this fact alone is not fatal to Relator's argument as on a 12(b)(1) motion, "[a]t the initial stage of litigation, a party seeking to establish jurisdiction need only make a prima facie showing by alleging facts which, if true, would support the court's exercise of jurisdiction." Shlomo Marcus v. "Five J" Jewelers

Precious Metals Industry Ltd., 111 F. Supp. 2d 445, 447 (S.D.N.Y. 2000) (citing New Moon

Shipping Co. v. Man B&W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997)).  It is only after discovery

with regard to jurisdiction that the non-moving party in a motion to dismiss may be called upon

to prove by a preponderance of the evidence that jurisdiction exists.  See Cutco Industries v.

Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (before discovery, plaintiff need make only a prima

facie showing of personal jurisdiction).  Accordingly, where jurisdiction is in dispute, it is within

the court's discretion to order discovery on the question of jurisdiction.  Mariner Midland Bank,

664 F.2d at 904.  This would be the appropriate course under the present circumstances with the

parties given the opportunity to reargue the issue of jurisdiction after further discovery.

However, based on the findings below, jurisdiction fails on other grounds and further discovery

is ultimately uncessessary.

     B.     First to File Bar:

     The FCA provides that "[w]hen a person brings an action under this subsection, no person

other than the Government may intervene or bring a related action based on the facts underlying

the pending action."  31 U.S.C. § 3730(b)(5).  YNHH argues for the first time in its Reply Brief

that Qui Tam Two is barred by the filing of Qui Tam One.   It goes without saying that a reply

brief should respond only to issues and arguments raised in the opposition brief.  See D. Conn. L.

Civ. R. 7(d) (A reply brief "must be strictly confined to a discussion of matters raised by the

responsive brief..."); Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be

made for the first time in a reply brief.").

     Nevertheless, courts have considered the bar in § 3730(b)(5) a jurisdictional one.  See e.g.

Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1278 (10th Cir. 2004) ("This provision

is a jurisdictional limit on the courts' power to hear certain duplicative qui tam suits"); United States ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1189 (9th Cir. 2001) (affirming a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction); United States by DOD v. CACI Int'l, 1999 U.S. App. LEXIS 1728, *2-3 (2d Cir. 1999) (unpublished opinion dismissing for lack of subject matter jurisdiction pursuant to § 3730(b)(5))[8]; United States ex rel. Capella v. United Techs. Corp., 3:94-CV-2063(EBB), 1999 U.S. Dist. LEXIS 10520, *23 (D. Conn. June 3, 1999) (Burns, J.) ("Section 3730(b)(5) acts as a jurisdictional bar to a qui tam action"); United States ex rel. Pratt v. Alliant Techsystems, Inc., 50 F. Supp. 2d 942, 950-951 (D. Cal. 1998) (treating § 3730(b)(5) as a jurisdictional matter).  To the extent that the issue is a jurisdictional one, the Court cannot ignore it regardless of how it was raised.  See United States v. Hays, 515 U.S. 737, 742, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995) ("federal courts are under an independent obligation to examine their own jurisdiction").  Accordingly, the Court must address the issue here.[9]

The application of § 3730(b)(5) raises two questions: one whether it should apply to two cases involving the same plaintiff-relator and, two, whether the two cases are in fact "related" or "based on the same underlying facts."  31 U.S.C. § 3730(b)(5).  With respect to the former, the plain language of the statute is clear: once "a person brings an action under this subsection, *no*

---

[8]  The Court recognizes that as this opinion is unpublished, it is not binding or necessarily reflective of Second Circuit law, and is only cited as potentially persuasive authority.

[9]  There is some basis to question whether § 3730(b)(5) is really a jurisdictional provision.  For example, the statute does not specifically identify § 3730(b)(5) as a jurisdictional bar, as it does with § 3730(e)(4)(A).  Nevertheless, the Court would still consider the argument as raised here based on the fact that Relator could have sought to address the argument in a surreply and was able to address at least the similarity between the two actions in response to the Motion to Consolidate filed in this action.

17

*person other than the Government* may intervene or bring a related action based on the facts underlying the pending action." Id. (emphasis added). If a qui tam action has been brought, no one other than the Government may intervene or bring another related action. The statute does not say "no other person except the Government may bring an action," it simply says "no person" which would apply equally to the original relator as any other person. "By drafting the statute in such unequivocal language, Congress made the strongest possible statement against private party intervention in qui tam suits" or by extension bringing another related suit. United States ex rel. LaCorte v. Wagner, 185 F.3d 188, 191 (4th Cir. 1999). The plain language of the statute is exception-free and other courts have rejected offers to read any exception into the language. See e.g. Lujan, 243 F.3d at 1187 ("We reject Lujan's contentions because they would require this court to read exceptions into the statute's plain language").

There is no reason therefore to consider the legislative history or intent, as the statutory language is unambiguous. See Brodie v. Schmutz (In re Venture Mort. Fund, L.P.), 282 F.3d 185, 188 (2d Cir. 2002) ("It is axiomatic that the plain meaning of a statute controls its interpretation" and that legislative history "may be relied upon only if the terms of the statute are ambiguous"). However, even if the language was imprecise, the legislative history supports the notion that "an exception-free, first-to-file bar conforms with the dual purposes of the 1986 amendments: to promote incentives for whistle-blowing insiders and prevent opportunistic successive plaintiffs." Lujan, 243 F.3d at 1187. While a subsequent suit filed by the same plaintiff-relator is not exactly a copy cat suit within the usual meaning employed by courts addressing this issue, see e.g. Grynberg, 390 F.3d at 1279, preventing plaintiff-relators from filing one suit, finding more information during the pendency of that suit and then bringing a

18

second derivative suit does serve the purpose of the FCA.  "The first-filed claim provides the government notice of the essential facts of an alleged fraud, while the first-to-file bar stops repetitive claims."  Lujan, 243 F.3d at 1187.   Furthermore, as the bar in § 3730(b)(5) is exception-free, there is no allowance made for subsequent suits filed by those who have direct and independent knowledge if the suit is related.  See Minn. Ass'n of Nurse Anesthetists v. Allina Health System Corp., 276 F.3d 1032, 1046 n. 10 (8th Cir. 2002) (the fact that "once a qui tam action is pending, no new relator can bring suit on the same fraud, no matter how he or she discovered it" is "not inconsistent with Congress's scheme that some claimants who are not parasitic nevertheless do not get to be relators").  As no exception exists for a different original source, there is no reason to create an exception simply because the same original source is bringing both suits.  In fact, the burden is properly placed on the original relator to ensure that he or she comes forward with all the information he or she has in the first suit, rather than file piecemeal lawsuits.[10]  The only question then is whether the two suits are related within the meaning of § 3730(b)(5).

"[E]very ... circuit to have addressed this issue has ... rejected an 'identical facts' test in favor of an 'essential claim' or 'same material elements' standard.  Grynberg, 390 F.3d at 1279 (citations omitted).  Although, this Court is aware of no Second Circuit decision addressing the issue, it sides with the majority of circuit courts and rejects an identical facts test.  The Third, Ninth, and D.C. Circuits have applied a same material facts test.  United States ex rel. St. John

---

[10]   It is worth noting that Relator did not file Qui Tam One until his employment with YNHH had terminated, thus there is no reason to believe that somehow the information underlying the allegations in Qui Tam Two was somehow unavailable to him at the filing of Qui Tam One.  To argue otherwise would be an implicit acknowledgment that Relator was not an original source of the allegations against YNHH in Qui Tam Two.

Lacorte v. Smithkline Beecham Clinical Lab., 149 F.3d 227, 238 (3d Cir. 1998); Lujan, 243 F.3d at 1189; United States ex rel. Hampton v. Columbia/Hca Healthcare Corp., 318 F.3d 214, 217 (D.C. Cir. 2003).  The Tenth Circuit looks to whether the "subsequent complaint raises the same or a related claim based in significant measure on the core fact or general conduct relied upon in the first qui tam action."  Grynberg, 390 F.3d at 1279.  A court in this district has applied a hybrid test of these approaches holding that § "3730(b)(5) bars a later claim unless: (1) it alleges a different type of wrongdoing, based on different material facts than those alleged in the earlier suit; and (2) it gives rise to a separate recovery of actual damages by the government."  Capella, 1999 U.S. Dist. LEXIS 10520 at *27.  This Court agrees that hybrid approach is helpful looking to whether the complaints allege the same material facts, i.e. whether they involve the same core conduct, and would give rise to separate recovery.

The allegations in Qui Tam One are almost identical to the allegations in this action.  Qui Tam One focuses on the fraudulent billing of Medicare and Medicaid for radiological studies that have not been interpreted by qualified physicians.  The allegations are summarized as including billing for services "which were (1) worthless and not used for patient diagnosis or treatment, (2) not medically indicated and medically unnecessary, (3) substandard, and/or (4) never actually provided."  Qui Tam One Second Amen. Compl. ¶ 1.[11]  Relator fleshes out these allegations by detailing the billing for interpretation of "old studies", or those which were read or interpreted after they were no longer medically necessary, Qui Tam One Second Amen. Compl. ¶¶ 55-56; interpretations by non-qualified persons and falsification and alteration of records through use of

---

[11]     The Second Amended Complaint in Qui Tam One actually reaches a broader array of conduct than the Third Amended Complaint in Qui Tam Two.

the "autosign" procedure (also mentioned in Qui Tam Two), Id. ¶¶ 57-82; the use of residents and fellows to finalize reports for billing purposes, Id. ¶¶ 83-88; and the billing for studies not medically necessary and based on inflated cost reports, Id. ¶¶ 89-94.  Furthermore, Relator brings retaliation, and defamation claims against YNHH similar to those in Qui Tam Two.  See Counts Two and Three of Qui Tam One Second Amen. Compl..

In Relator's Opposition Brief, he notes that as between Qui Tam One and Qui Tam Two, the "autosign" allegations "share[] a similarity to the 'completed but not read' fraud alleged in Qui Tam Two, because these frauds both rely upon the fact that YNHH submitted a bill for payment when the Technical Component was not accompanied by a Professional Component when, for whatever reason, the film was lost before a qualified radiologist could interpret the film and document the diagnosis."  Pl. Mem. Opp. YNHH Mot. at 5-6.  However, he states that the Complaint in Qui Tam One did not "ultimately include the 'completed but not read' fraud claim." Id. at 6.  The Court finds this difference to be immaterial.  The material or essential factual allegations revolve around the nature of the fraud asserted, namely, billing for radiological services that were lacking in professional interpretation.  The Defendants are identical and the services are identical.  The differences asserted, while serving to flesh out the details of the particular fraud and the particular method, are not material or different enough to render this case not subject to § 3730(b)(5).  Indeed, if this case is not related to Qui Tam One under § 3730(b)(5), it is difficult to understand how the anything but an identical fact test would be required.  See e.g., Grynberg, 390 F.3d at 12780 (relator "has not managed to avoid § 3730(b)(5)'s first-to-file bar simply by alleging additional facts relating to how [defendant] mismeasured the natural gas, even though some of those specific allegations were not mentioned

in the Precision complaint"); <u>LaCorte</u>, 149 F.3d at 235-37 (original qui tam action alleging the fraudulent charges to the Government for blood testing barred later suits that alleged new facts detailing more precisely how the defendant overcharged the Government).  Accordingly, this case is barred by Qui Tam One and YNHH's Motion is **granted**.[12]  There is no need to consider any other arguments raised.

IV.    **CONCLUSION:**

For the reasons stated herein, YNHH's Motion to Dismiss [Doc. No. 73] is **granted**.  All claims are dismissed against YNHH.  As a consequence of this Ruling, YNHH's Motion to Consolidate [Doc. No. 60] is **denied** as moot.  There are no longer any common parties between the two actions and it is unclear that there would be any overlap in discovery between entirely separate entities, regardless of the similarity of claims.

---

[12]    This Ruling does not impact Cornell and New York Presbyterian's pending motions to dismiss. Neither of those parties raise § 3730(b)(5) and appropriately so as neither Defendant was party to the original suit and are entirely separate entities from Yale and YNHH such that it is unlikely the cases would be deemed related.

SO ORDERED.

Dated at New Haven, Connecticut, August  22 , 2005.

_____
/s/
Peter C. Dorsey, U.S. District Judge
United States District Court