UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel : <br> ROBERT C. SMITH, M.D., : <br>  : <br> Plaintiffs, : <br>  : <br> v. : <br>  : <br> YALE NEW HAVEN HOSPITAL, ET AL : <br>  : <br> Defendants : | CIVIL ACTION NO. <br> 3:02-CV-1205 (PCD) <br><br><br><br><br> September 8, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF RULING ON YALE-NEW HAVEN HOSPITAL'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Plaintiff, Robert C. Smith, M.D., hereby respectfully moves the Court to reconsider its Ruling on Yale-New Haven Hospital's Motion to Dismiss, filed August 25, 2005 (hereinafter "Ruling"). On November 16, 2004, Defendant Yale-New Haven Hospital (hereinafter "YNHH") moved the Court to dismiss Plaintiff's claims against it in the instant action, "Qui Tam Two", for the reasons that it set forth in support of its Motion to Dismiss in another case involving the parties, 3:00cv1359(PCD), ("Qui Tam One"). After Plaintiff filed his Opposition to YNHH's Motion to Dismiss, YNHH filed a Reply in which it asserted, for the first time, that an additional reason - - the "first to file" bar - - warranted dismissal of Plaintiff's claims in Qui Tam Two. In its Ruling, the Court refused to dismiss Plaintiff's claims against YNHH in Qui Tam Two for the reasons initially advanced by YNHH, but it granted dismissal on the basis of the "first to file" bar. Here, Plaintiff respectfully moves the Court to reconsider its Ruling in light of points of law and fact which the Court may have overlooked in its decision. In the alternative, if

the Court denies Plaintiff's Motion for Reconsideration, Plaintiff hereby notifies the Court that he intends to amend his Complaint in Qui Tam One to explicitly re-incorporate the particulars of the "completed but not read" allegations against YNHH - - in light of the Court's conclusions in its Ruling that the "completed but not read" allegations against YNHH in Qui Tam Two were contained in the more general allegation in Qui Tam One of billing for studies for which no professional interpretation was rendered.

## II. BACKGROUND

### A. Employment History

The instant action arises out of Plaintiff's observation of fraudulent billing practices in violation of the law governing Medicare and Medicaid while employed as an Associate Professor of Radiology at Yale University (hereafter "Yale") assigned to cover the radiology service at YNHH from 1990 until 1999, and as a Professor of Radiology and Associate Chair of Information Technology and Systems Administration in the Department of Radiology at Cornell University, Joan and Sanford I. Weill Medical College, New York Presbyterian Hospital ("NYPH") from 1999 until the summer of 2003.  (Third Amend. Compl. ¶ 7.)  While at each institution, Plaintiff observed that Defendants YNHH and NYPH unlawfully billed Medicare and Medicaid for radiological studies that did not satisfy the requirements for a radiological service under the regulations promulgated by the federal government.

While at Yale, Plaintiff observed that the billing system utilized by YNHH allowed YNHH to bill for the Technical Component for radiological studies or tests which were never interpreted or read, and therefore, never utilized for diagnostic or therapeutic purposes.  This practice resulted in the billing for studies or tests which were

2

"completed but not read," referring to the status of the study on the computer system known as the "DECrad or IDXrad" system.  Plaintiff observed that YNHH automatically submitted bills to Medicare and Medicaid for studies performed on beneficiaries once they were completed, or placed in "C" status, even though those studies were never interpreted or read by a qualified physician and for which no report documenting the interpretation was ever issued.  (Third Amend. Compl. ¶¶ 17, 44-59, 77-93.)

By submitting claims to Medicare and Medicaid for the delivery of radiological services comprised solely of the Technical Component, YNHH falsely certified that the studies were medically necessary and provided in accordance with the requisite standard of care, an impossibility if no interpretation ever took place.  (Third Amend. Compl. ¶ 48.)  While still employed by Yale, Plaintiff uncovered tens of thousands of "completed but not read" radiology studies, and alleges that approximately 52.5% of the studies were taken for Medicare or Medicaid beneficiaries.  (Third Amend. Compl. ¶¶ 46-47, 55.)

Subsequently, Plaintiff obtained employment at Cornell University (hereafter "Cornell") providing services to NYPH commencing in July 1999.  Plaintiff observed that NYPH was likewise billing Medicare and Medicaid for "completed but not read" radiology studies which were never interpreted by a qualified physician or used in the diagnosis or treatment of patients.

    B.    <u>History of this Case</u>

After leaving Yale in 1999, and after numerous meetings with representatives of the United States Department of Justice in Connecticut, Plaintiff filed Qui Tam One in July 2000, under seal, against Yale and YNHH.  The original Complaint in Qui Tam One, a copy of which is attached hereto as Exhibit A, contained Plaintiff's allegations against

YNHH concerning false claims for studies which were "completed but not read." (July 2000 Complaint, attached as Ex. A, ¶¶ 53-69.) As originally constructed, Plaintiff alleged four theories of liability in Qui Tam One, including YNHH's false claims for studies that had been "completed but not read." In addition to the "completed but not read" fraud, Plaintiff also alleged in Qui Tam One that Yale and YNHH were perpetrating other fraudulent billing schemes against the government, including (1) the Neuroradiology Fellows fraud, where the Professional Component and the Technical Component were billed by Yale and YNHH when the qualified physician had falsely certified that he/she had reviewed the film and the preliminary report; (2) the Clean-up Project, a circumstance that found Yale falsely certifying that films were reviewed in order to bill the Professional Component; and (3) the "Autosign" billing fraud, which allowed YNHH to bill for the Technical Component when the film or study was lost **after** it was documented to have been reviewed by a resident, but **before** it was reviewed by a qualified radiologist. In contrast to those three types of fraud alleged, including Autosign, the "completed but not read" radiological studies were **never** documented to have been interpreted or reviewed by a resident or by a qualified physician.

After some time at Cornell and NYPH, Plaintiff realized that NYPH was likewise billing the government for radiological studies that had been "completed but not read." Plaintiff filed the complaint in this action, Qui Tam Two, in July 2002 against NYPH and other New York and Connecticut hospitals and the case was assigned to Judge Eginton.

Therefore, as of July 2002, both Qui Tam One and Qui Tam Two contained the allegation that the defendant YNHH was submitting false claims to Medicare and Medicaid for studies that were "completed but not read." In 2003 amended his complaint

4

in Qui Tam and deleted the particulars of the "completed but not read" allegations against YNHH. As a result of this amendment of the pleadings in 2003, only Qui Tam Two contained the completed but not read allegations against YNHH. Plaintiff amended his complaint in Quit Tam One in this fashion for convenience and administrative purposes so that Plaintiff's claims against all the hospitals that billed the Government for "completed but not read" studies could all be adjudicated in a single action. Accordingly, Plaintiff did not wait to file his claim against YNHH concerning "completed but not read" studies until he filed Qui Tam Two. Nor did Plaintiff learn that YNHH was billing Medicare and Medicaid for "completed but not read" studies during the pendency of Qui Tam One and subsequently file claims against YNHH in Qui Tam Two on the basis of that later-acquired information. Plaintiff's allegations against YNHH concerning studies that had been "completed but not read" were a part of Qui Tam One from its inception. Accordingly, dismissing Plaintiff's claims against YNHH in Qui Tam Two would not serve any of the purposes of the "first to file" bar such as preventing repetitive claims, or copy-cat lawsuits, or forcing plaintiff-relators to bring all their claims in the first instance.

On October 21, 2004, Defendant YNHH moved to consolidate Qui Tam Two with Qui Tam One, in which the Motion to Dismiss of Defendants YNHH and Yale was already pending. In response to Defendant YNHH's Motion to Consolidate, Judge Eginton issued an "Order of Transfer," dated November 3, 2004, transferring Qui Tam Two to this Court. Thereafter, on November 16, 2004, Defendant YNHH moved to dismiss Plaintiff's allegations against it in Qui Tam Two for the same reasons that it argued required dismissal of Plaintiff's claims in Qui Tam One. After Plaintiff opposed YNHH's Motion to Dismiss in Qui Tam Two, YNHH submitted its Reply in support of

5

its Motion to Dismiss. In its Reply, YNHH argued that Plaintiff's claims against YNHH in Qui Tam Two should be dismissed because they were precluded by the "first to file" bar in the False Claims Act. 31 U.S.C. § 3730(b)(5).

In its Ruling, filed August 25, 2005, the Court refused to dismiss Plaintiff's claims in Qui Tam Two against YNHH on the grounds originally asserted by YNHH, but granted YNHH's Motion on the basis of the "first to file" bar. The Court held that: (1) the plain meaning of the "first to file" bar prohibited Plaintiff from bringing an action against YNHH in Qui Tam Two on the basis of the "completed but not read" studies because those allegations are "related" to Plaintiff's claims against YNHH in Qui Tam One; (2) there are no exceptions to the "first to file" bar - - even when the same relator who is an original source brings both actions; and (3) the "allegations in Qui Tam One are almost identical to the allegations in [Qui Tam Two]" and the differences between the "completed but not read" fraud alleged against YNHH in Qui Tam Two and Plaintiff's other allegations against YNHH in the Amended Complaint in Qui Tam One were "not material or different enough" to fall outside the scope of the "first to file" bar.

While the Court concluded that Plaintiff's allegations against YNHH in Qui Tam Two were "related" to his claims against YNHH in Qui Tam One within the meaning of § 3730(b)(5), and its characterization of Plaintiff's claims was correct as the pleadings currently stand, the Court's Ruling did not reflect an understanding that Plaintiff's allegations were originally a part of Qui Tam One.

Several points of both fact and law warrant reconsideration of the Court's Ruling, however:

6

(1) Under the circumstances of this case, where Plaintiff's "completed but not read" allegations against YNHH were originally filed as part of Qui Tam One and later included in Qui Tam Two, the allegations against YNHH in Qui Tam Two cannot be accurately characterized as a "subsequent suit" or a "repetitive claim" or a failure "to come forward will all the information he has in the first suit" or a "piecemeal lawsuit." In light of this information which was overlooked in the Court's Ruling, reconsideration is required

(2) Since the Court's Ruling, the Ninth Circuit has decided *Campbell ex rel. United States v. Redding Medical Center*, - - - F.3d - - -, 2005 WL 2001085 (9th Cir. Aug. 22, 2005). In *Campbell*, the Ninth Circuit limited its holding in *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181 (9th Cir. 2001), upon which the Court relied in its Ruling, to the facts of that case and held that it is appropriate to acknowledge exceptions to the "first to file" bar under certain facts where an "exception-free" rule would be contrary to Congressional intent. As not acknowledging an exception to the "first to file" rule in this case would be contrary to congressional intent, the Court should reconsider its Ruling and recognize an exception to the "first to file" bar in order to avoid an unreasonable result.

Thus, as set forth more fully below, Plaintiff respectfully moves the Court to reconsider its Ruling on Yale-New Haven Hospital's Motion to Dismiss.

### III. STANDARD OF REVIEW ON A MOTION FOR RECONSIDERATION

"The function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or fact or to consider newly discovered

evidence." *Abundis v. Deboo*, No. Civ. A. 3:03cv276(CFD), 2004 WL 1793292 *1 (D. Conn. Aug. 6, 2004)(citations and quotations omitted). The Second Circuit has acknowledged that motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). But it has held that it is not an abuse of discretion for a district court to grant a motion for reconsideration in an absence of controlling precedent if the moving party presents other information, such as "substantial" legislative history and decisions from other circuit courts, which might reasonably be expected to alter the conclusion reached by the court. *Id.*

## IV. ARGUMENT

In its Ruling, the Court concluded that the "first to file" bar required the dismissal of Plaintiff's "completed but not read" allegations against YNHH in Qui Tam Two. In reaching its conclusion, the Court made several statements concerning the application of the "first to file" bar to Plaintiff's claims against YNHH in Qui Tam Two: (1) "preventing plaintiff-relators from filing one suit; finding more information during the pendency of that suit and then bringing a second derivative suit does not serve the purpose of the FCA"; (2) "the first-to-file bar stops repetitive claims"; (3) "the burden is properly placed on the original relator to ensure that he or she comes forward with all the information he or she has in the first suit, rather than file piecemeal lawsuits"; and (4) "[a] subsequent suit filed by the same plaintiff-relator is not exactly a copy cat suit within the usual meaning employed by courts addressing this issue . . . ." (Ruling at 18-19.)

While those statements concerning the "first to file" bar are accurate in the abstract, none of them apply to Plaintiff's allegations against YNHH in Qui Tam Two. (1) Plaintiff did not file one suit, find more information during the pendency of that suit and then bring a derivative suit - - Plaintiff brought all his claims against YNHH, including the "completed but not read" claims, in Qui Tam One. (2) Plaintiff's claims against YNHH were not repetitive claims. (3) Plaintiff did come forward with all his information in the first lawsuit - - he did not file piecemeal lawsuits. (4) Plaintiff's allegations against YNHH in Qui Tam Two were not a "subsequent suit"; they were originally brought as part of Qui Tam One, but were included in Qui Tam Two so they could be adjudicated in a single action along with Plaintiff's "completed but not read" claims against other defendant hospitals.

While the Court's characterization of Plaintiff's claims against YNHH in Qui Tam Two are correct as the pleadings currently stand, they do not accurately reflect the procedural history of Plaintiff's claims against YNHH in Qui Tam Two.[1]  Therefore, reconsideration of the Court's Ruling is required so that the Court may consider the fact that Plaintiff's claims alleging that YNHH billed the Government for "completed but not read" studies were originally a part of Qui Tam One, but were included in Qui Tam Two

---

[1] There was also a factual error in the Court's Ruling that may have contributed to an erroneous characterization of Plaintiff's claims against YNHH, and to an erroneous decision. On page 21 of the Ruling, the Court states "However, [Relator] states that the Complaint in Qui Tam One did not 'ultimately include the 'completed but not read' fraud claim.'" (Ruling at 21)(citing Pl. Mem. Opp. YNHH Mot. at 6.) That was an inaccurate quotation from Plaintiff's Memorandum in Opposition. Plaintiff did not write that the **"Complaint"** did not ultimately include the "completed but not read" fraud claim, as the Court's Ruling indicates. That statement is demonstrably inaccurate as a factual matter. (*See* July 2000 Complaint, attached as Ex. A, ¶¶ 53-69.) Plaintiff wrote that the **"Amended Complaint"** did not ultimately include the "completed but not read" fraud claim. (Plaintiff's Opposition to Motion to Dismiss, dated December 7, 2004, at 6.) It is only because this factual inaccuracy pertains to a material fact that may have contributed to what Plaintiff contends is an erroneous decision that Plaintiff feels compelled to point it out to the Court at this time.

so they could be adjudicated in a single action along with Plaintiff's "completed but not read" claims against the other defendant hospitals.

    A.    <u>The Court Should Recognize an Exception to the "First to File" Bar</u>

        1.    *"First to File" Bar is No Longer an Exception-Free Rule*

In its Ruling, the Court repeatedly relies on the Ninth Circuit case, *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181 (9th Cir. 2001), for the proposition that there are no exceptions to the "first to file" bar. (Ruling at 18.) After the Court signed its Ruling, however, persuasive authority from the Ninth Circuit limited its holding in *Lujan* and held that, in certain circumstances, exceptions to the "first to file" bar should be recognized. As the instant action is a case which calls out for an exception to the "first to file" bar, the Court should reconsider its Ruling.

On the same day that the Court signed the Ruling, August 22, 2005, the Ninth Circuit decided *Campbell ex rel. United States v. Redding Medical Center*, No. 03-17082, --- F.3d --- , 2005 WL 2001085 (9th Cir. Aug. 22, 2005). In *Campbell ex rel. United States v. Redding Medical Center*, the Ninth Circuit limited its holding in *Lujan* that there are no exceptions to the "first to file" bar to the facts of that case and held that *Lujan* could not be applied in cases where it would be contrary to congressional intent. *Id.* at **4-5. In *Campbell*, an exception to the first the file rule was necessary where the relator in the first action was not an original source under section 3730(e)(4). Failing to recognize an exception in such a case, the Court held, would be contrary to congressional intent to encourage more private enforcement suits and reward original sources who provide information to the Government. *Id.* at *6-7. "Construing § 3730(b)(5) to create an absolute bar would permit opportunistic plaintiffs with no inside information to

displace actual insiders with knowledge of the fraud . . . **This cannot be what Congress intended**." *Id.* (emphasis added). In addition, the Court noted that Congress amended the FCA in 1986 "to repeal overly-restrictive court interpretations of the qui tam statute." *Id.* at *6.

Thus, under *Campbell*, exceptions to the "first to file" bar are appropriate in circumstances where failing to recognize an exception would be contrary to congressional intent. Here, just as in *Campbell*, refusing to recognize an exception to the "first to file" bar would be contrary to congressional intent. Accordingly, the Court should reconsider its Ruling and recognize an exception to the "first to file" bar.

2. *An Exception to the "First to File" Bar is Required in This Case*

Numerous circuit courts, including the Second Circuit, have recognized congressional intent in the 1986 amendments to the FCA to encourage relators to pursue civil enforcement of false claims act violations. *See United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998 (2d Cir. 1995); *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995); *Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 931-32 (10th Cir. 2005); *Riley v. St. Lukes Episcopal Hosp.*, 252 F.3d 749, 754 (5th Cir. 2001); *United States ex rel. Seqouia Orange Co. v. Baird Neece Packing Corp.*, 151 F.3d 1139, 1144 (9th Cir. 1998); *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1341 (4th Cir. 1994). Consistent with that purpose, Congress included a provision in the FCA to protect the rights of relators who continue to prosecute an action under the FCA after the Government declines to intervene. At two places, the False Claims Act states that if the Government does not intervene in the action, it is the

11

plaintiff-relator who "**shall have the right to conduct the action**." 31 U.S.C. § 3730(b)(4); 31 U.S.C. § 3730(c)(3)(emphasis added).

Here, if allowed to stand, the Court's Ruling is contrary to those statutory provisions and the underlying policy goal. Pursuant to his statutory "right to conduct the action," Plaintiff included the "completed but not read" allegations against YNHH into Qui Tam Two so they could be adjudicated in a single action along with his "completed but not read' claims against the other defendant hospitals after the government elected not to intervene in Qui Tam One. Dismissing Plaintiff's claims against YNHH under the "first to file" bar because he exercised his "right to conduct the action" "cannot be what Congress intended." *See Campbell ex rel. United States v. Redding Medical Center*, 2005 WL 2001085 *6. Accordingly, Plaintiff's Motion for Reconsideration should be granted and the Court should recognize an exception to the "first to file" bar in this case to avoid punishing Plaintiff for exercising his rights as a relator under the FCA.

       3.    *Following the "Plain Meaning" of § 3730(b)(5) Would be Unreasonable*

Applying the "plain meaning" of § 3730(b)(5) and failing to recognize an exception to the "first to file" bar under the facts in this case would be unreasonable and contrary to the policy of the FCA. Accordingly, the Court should reconsider its Ruling and recognize an exception to the "first to file" bar for the circumstances of this case.

It is well-settled that a court should not follow the "plain meaning" of statutory language if doing so would lead "to absurd or futile results" or "an unreasonable [result] plainly at variance with the policy of the legislation as a whole." *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1940). When the "plain meaning" dictates an absurd, futile, or unreasonable result that is contrary to the policy of the

statute, courts should look "beyond the words to the purpose of the act." *Id.* *See also Marriot In-Flite Servcs. v. Local 504*, 557 F.2d 295, 298-300 (2d Cir. 1977)(discussing the obligation of the judiciary to look beyond plain meaning of the words in a statute to avoid absurd, futile, or unreasonable results that are contrary to policy of the statute); *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 297-98 (2d Cir. 1998)(holding that the district court properly recognized an exception to the "plain meaning" of the statutory language and stating that "[t]his exception to the [plain meaning] rule is particularly pertinent when construing a recent amendment to a complex statute that produces an unexpected result and when there is strong reason to doubt that Congress intended that result.").

In its Ruling, the Court held that its conclusion was dictated by the plain meaning of § 3730(b)(5). *See Ruling* at 17-18 ("the **plain language** of the statute is clear . . . [i]f a qui tam action has been brought, no one other than the Government may intervene or bring another related action . . . [t]his appl[ies] equally to the original relator as any other person")(emphasis added). Under the facts of this case, however, when the claims against YNHH in the related action, Qui Tam Two, were initially brought as part of the original action, Qui Tam One, granting YNHH's Motion to Dismiss would be unreasonable and contrary to the policy of the statute. Indeed, dismissal of Plaintiff's claims against YNHH in Qui Tam Two is certainly unreasonable and contrary to the policy of the False Claims Act considering the fact that Plaintiff included his "completed but not read" claims against YNHH in Qui Tam Two pursuant to his statutory "right to conduct the action." *See* 31 U.S.C. § 3730(c)(3). Accordingly, the Court should reconsider its Ruling and recognize an exception to the "plain meaning" of the "first to

file" bar in order to avoid an unreasonable result that is contrary to the policy of the False Claims Act.

    B.    <u>In the Alternative, Plaintiff Notifies the Court of His Intent to Explicitly Re-Incorporate Particulars of His Completed but Not Read Allegations Against YNHH Into Qui Tam One</u>

If the Court denies Plaintiff's Motion for Reconsideration, Plaintiff intends to explicitly re-incorporate the particulars of his allegations against YNHH concerning "completed but not read" studies into Qui Tam One. Therefore, Plaintiff requests that the Court consider Plaintiff's "completed but not read" allegations against YNHH as part of Qui Tam One when the Court rules on the Motion to Dismiss that is currently pending in that action.

The Court already concluded in its Ruling that the "completed but not read" studies at issue in Qui Tam Two are part of the same type of scheme of fraud alleged against YNHH in Qui Tam One - - "billing for radiological services that were lacking in professional interpretation." (Ruling at 21.) The Court also concluded that "[t]he allegations in Qui Tam One are almost identical to the allegations in this action . . . . [t]he Defendants are identical and the services are identical." (Ruling at 20-21.) According to the Court, "[t]he differences asserted . . . are not material or different enough to render this case not subject to § 3730(b)(5)." (Ruling at 21.)

In accordance with the Court's conclusion that Plaintiff's claims against YNHH in the two actions are "almost identical," Plaintiff intends to explicitly re-incorporate the particulars of his allegations against YNHH concerning "completed but not read" studies into Qui Tam One if his Motion for Reconsideration is denied. As the Court has already concluded that the "completed but not read" studies are merely one element of a larger

14

scheme of fraud already contained in Qui Tam One, "billing for radiological services that were lacking in professional interpretation," such an amendment of Plaintiff's pleadings will not result in any prejudice against YNHH. Furthermore, justice requires permitting Plaintiff to amend his Complaint in Qui Tam One in such a fashion because they were originally a part of the action and were only included in Qui Tam Two in accordance with the statutory framework of the FCA so that Plaintiff's "completed but not read" theory of fraud could be adjudicated in a single action against all defendants.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Reconsideration. In the alternative, the Court should consider Plaintiff's "completed but not read" claims against YNHH when ruling on the Motion to Dismiss that is currently pending in Qui Tam One as Plaintiff intends to explicitly re-incorporate those allegations into Qui Tam One in light of the Court's Ruling.

                                    PLAINTIFF
                                    ROBERT C. SMITH, M.D.,

By:   _____
      Jacques J. Parenteau
      Fed. Bar No.: (CT09771)
      Madsen, Prestley & Parenteau, LLC
      111 Huntington Street
      P.O. Box 1631
      New London, CT 06320
      (860) 442-2466 – Telephone
      (860) 447-9206 – Facsimile

**CERTIFICATION**

I hereby certify that a copy of the foregoing were sent on this __th day of September 2005 via regular U.S. Mail, postage prepaid to:

| | |
|---|---|
| Richard M. Molot<br>Assistant United States Attorney<br>P. O. Box 1834<br>New Haven, CT 06508 | Mary Alice Leonhardt<br>Law Offices of Mary Alice Leonhardt, LLC<br>102 Oak Street<br>Hartford, CT 06106 |
| Stuart M. Gerson<br>Epstein Becker & Green, P.C.<br>1227 25th Street, NW  - Suite 700<br>Washington, DC 20037-1175 | David S. Poppick<br>Epstein Becker & Green, P.C.<br>One Landmark Square - Suite 1800<br>Stamford, CT 06901 |
| Gary Schulz<br>Nixon Peabody, LLP<br>990 Stewart Avenue<br>Garden City, NY 11530 | James R. Kahn<br>Cornell University<br>445 East 69th Street<br>New York, NY  10021 |
| Patrick M. Noonan, Esq.<br>Delaney, Zemetis, Donahue, & Noonan, P.C.<br>741 Boston Post Road<br>Concept Park<br>Guilford, CT 06437 | |

_____
Jacques J. Parenteau