UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES ex rel., <br> ROBERT C. SMITH, M.D., <br>     Plaintiff, <br> <br> v. <br> <br> YALE UNIVERSITY; YALE-NEW HAVEN HOSPITAL, INC., NEW YORK PRESBYTERIAN HOSPITAL and CORNELL UNIVERSITY JOAN AND SANFORD I. WEILL MEDICAL COLLEGE, <br>     Defendants. | : <br> : <br> : <br> : <br> :   Case No: 3:02cv1205 (PCD) <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**RULING ON MOTIONS TO DISMISS**

In this False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., case, Plaintiff Smith, ("Relator"), asserts false claims by Defendants.  See 3d Am. Compl.  The United States declined to intervene in the action.  This case, also referred to as "Qui Tam Two," has been consolidated with a related action, 3:00cv1359 (PCD) ("Qui Tam One").  The claim of fraud arises from radiological studies allegedly improperly billed to Medicare or Medicaid as purportedly performed in care of beneficiaries of one program or the other.  Such studies have two components.  The Technical Component consists of x-rays performed by hospital technicians, whereas the Professional Component consists of physicians' ordering particular x-rays to aid in the diagnosis and treatment of patients, reviewing or reading developed x-ray films and reporting the findings to a data processing system and/or a patient's medical record.  Defendants move to dismiss the Third Amended Complaint on several grounds, discussed herein.

**I.  YALE-NEW HAVEN HOSPITAL'S ("YNHH") MOTION TO DISMISS [DOC. NO.**

**73]**[1]

The claim against defendant YNHH relates to technology. Professional services were rendered by doctors, typically employed by Yale University ("Yale") through its medical school, which was affiliated with, but remained separate from, YNHH. All claims against Yale have been dismissed pursuant to the parties' stipulation of dismissal.

Radiological services by YNHH start with the scheduling of a study when a physician requests particular x-rays. The completed study is identified as in "C" status, indicating that it has been completed technically. See 3d Am. Compl. ¶ 17b. The study is then available for the professional services to be rendered in relation thereto. Relator claims that YNHH billed for its technical services despite the fact that studies were "completed but not read" and/or were subjected to "Autosign" processing, an electronic sign-off process that did not require the performance of professional services by qualified physicians. Relator claims YNHH's DecRad electronic data processing was programmed to bill for technical services when a radiological study was placed in "C" status, regardless of whether the related professional services had been performed, as required to qualify the study for billing to Medicare or Medicaid. See 3d Am. Compl. ¶ 45. The deficiencies which precluded entitlement to payment were studies read by Residents or Fellows but not by qualified physicians, some of which were falsely certified, see 3d Am. Compl. ¶ 47, studies not used for diagnostic or therapeutic purposes and thus medically unnecessary, see 3d Am. Compl. ¶ 48, and studies that were finalized by "Autosign" procedures.

---

[1] Although YNHH's Motion to Dismiss was already granted, see Doc. No. 110, on the ground that the allegations against YNHH in Qui Tam Two were barred by the first-to-file bar, this Court, in granting the Motion for Reconsideration, consolidated Qui Tam One and Qui Tam Two and permitted the allegations against YNHH in the Third Amended Complaint to remain in the suit. Thus, this Court is dealing here with YNHH's arguments on the merits for dismissing the claims.

See 3d Am. Compl. ¶ 55b.  Thus YNHH allegedly billed Medicare and Medicaid for technical services that were not qualified for payment under statutes and regulations by which a provider became entitled to compensation for radiological services.  Relator alleges that by obtaining payments to which it was not entitled to receive, YNHH perpetrated fraud on the government.  3d Am. Compl. ¶¶ 51-59.

Initially, YNHH premises its Motion to Dismiss on the basis that there is no condition precedent to its entitlement to bill for the technical services once the services have been completed.  It argues that neither the Medicare or Medicaid statutes nor the regulations pertaining to an entity's entitlement to payment for the Technical Component of studies require that related "professional services" as defined and described in the statutes and regulations be performed and certified as such by it.  See YNHH Reply at 5.  Relator responds to YNHH's arguments in his Opposition to YNHH's Motion to Dismiss at 12-13 ("defendant [YNHH] knowingly submitted bills to Medicare and Medicaid for the Technical Component for radiological studies or tests which were never interpreted or read, and, therefore, never utilized for diagnostic purposes"), and his Opposition to YNHH's Motion to Dismiss in Qui Tam One at 42-43 ("the hospital is only permitted to bill for the Technical Component of complete radiological studies, i.e. those which have a corresponding Professional Component.  Through the use of Autosign, the Hospital billed Medicare for the Technical Component of radiological studies that were never reviewed by a Teaching physician, and, therefore, which were incomplete radiological studies for which Medicare should never have been billed.").  Relator does not, in either document, support his bald statements with a citation of a statutory or regulation provision.  The statements ignore the separate Technical Component rendered or performed by hospital technicians and not by

physicians.  Physicians, subject to stated qualifications, perform the Professional Component by ordering studies, reading them, reporting what they show and using them to diagnose and treat patients.  YNHH is not alleged nor shown to be involved in nor knowledgeable about the performance or non-performance of related professional services, through its agents or employees, in medical determinations as to studies reasonably required nor the use made thereof.  The essential element of "knowing assistance" required to hold an additional entity—i.e., one other than the one which submitted the claim forms—liable for an FCA violation, United States v. Mackby, 261 F.3d 821, 827-28 (9th Cir. 2001), was neither alleged nor shown.  YNHH's certification of the technical services upon completion of radiological studies is neither alleged nor shown to constitute certification of either the medical efficacy nor full performance of professional services related thereto.

     Relator does assert that there is an overriding requirement that services for which payment is sought from Medicare and/or Medicaid must be reasonable and medically necessary for diagnosis and treatment of a beneficiary of either program.  His allegations treat the Professional and Technical Components as a unit, but the distinction between the two cannot be ignored when it comes to the differing obligations which attach to each.  As a provider of technical services, YNHH's obligations are not automatically merged with those of providers of professional services.  A provider of technical services is entitled to rely on the judgment of physicians who order radiological studies and who diagnose and treat patients using those studies.  Physicians' professional conduct is not shown to be a contingency to which YNHH is or should be subject in order to be entitled to compensation for rendered technical services.  Relator's argument would, illogically, disqualify YNHH from being paid for services rendered if

the physician's request or intended use of the study deemed, before the fact, to be medically necessary, was found, after the fact, to be medically unreasonable and/or unnecessary.

Relator does not allege that YNHH ordered studies performed nor made professional decisions as to the processing and/or use of completed studies. Relator also does not allege or show that YNHH had knowledge of or the ability to prevent the deficiencies claimed, which, if true—as is assumed for the purpose of deciding the pending motion—are deficiencies as to the Professional, not the Technical Component. If proven, the allegations may, at most, demonstrate the lack of qualification for compensation for the Professional Component of healthcare services as required by the pertinent statutory and/or regulatory provisions. There is, however, no allegation or demonstration of authority that would hold YNHH responsible for fulfilling the requirements related to the Professional Component of radiological studies, their reasonable medical necessity, their processing after same are completed or their use in the diagnosis and treatment of patients. There is, therefore, no basis to find that YNHH is not entitled to be compensated for technical services for studies completed but, as categorized by plaintiff, not read by a "qualified" physician or improperly processed as final either from Medicare or Medicaid. To hold YNHH responsible and deny payment if professional services related to completed radiological studies were not performed would deny YNHH compensation based on deficiencies of which it would not necessarily have knowledge and for which it has not been shown to have responsibility or control. Absent a demonstrated obligation on the part of YNHH to withhold billing for technical services rendered, it would not be contrary to law for YNHH to bill for such services. Relator has not alleged nor demonstrated authority or a factual basis establishing such an obligation. Any billing for completed studies by YNHH would not constitute fraud as there

has been no showing of a falsehood on the part of YNHH in doing so. Relator's claim asserts a default by YNHH with respect to an obligation not shown to have been lawfully imposed on it.

Relator's allegations that YNHH billed for technical services rendered in completed radiological studies when professional services related thereto were not completed or performed would not prove falsehoods and thus would not constitute "fraud" as required for an FCA claim. Relator's claims against YNHH must be dismissed as the Third Amended Complaint does not state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

Relator's claim against YNHH requires that he allege and prove: (1) that its radiological studies, though technically complete, were not followed by medically required professional services and that (2) nonetheless, YNHH billed Medicare and/or Medicaid for the technical services.  The FCA also requires Relator to allege and prove that he is the original source of the information upon which the complaint is based, 31 U.S.C. §3730(e)(4)(A), failing which the court lacks subject matter jurisdiction over his claim.  See United States ex. rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1157 (2d Cir. 1993) (holding that "the satisfaction of § 3730(e)(4) is an issue of subject matter jurisdiction") (citations omitted). Relator has the burden of proving subject matter jurisdiction of his claim.  See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) ("The burden of proving jurisdiction is on the party asserting it") (citations omitted).  The original source requirement for subject matter jurisdiction insures that monetary rewards for bringing perpetrators of fraud to account to the government for their unlawful gains goes to persons who disclose first hand information and not  to opportunists seeking to profit from a disclosure of fraud to which they made no contribution.  See United States ex rel. Doe v. John Doe Corp., 960 F.2d 318, 321 (2d Cir. 1992) (explaining that the

public disclosure bar or original source requirement was added to the FCA in 1986 in an effort to strike a balance between encouraging "those with knowledge of fraud against the government to bring that information to the fore" and "avoiding parasitic actions by opportunists who attempt to capitalize on public information without seriously contributing to the disclosure of the fraud.").

For the purpose of considering a motion to dismiss, the Court accepts the allegations of the Third Amended Complaint as true. Examination of whether Relator has met his burden begins with the complaint and the allegations therein, which must demonstrate a factual basis for this Court's subject matter jurisdiction. Beyond the allegations, the court must determine if there are facts which sustain subject matter jurisdiction by resolving disputed or questioned factual issues. See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) (in resolving an issue of subject matter jurisdiction, district courts may "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing"); see also Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) ("When the defendant has thus challenged the factual basis of the court's jurisdiction . . . the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.").

For the reasons set forth in this Court's Ruling on Defendant Yale-New Haven Hospital's Motion to Dismiss, see United States ex. rel Smith v. Yale Univ., 3:00cv1359 (PCD), 2006 U.S. Dist. LEXIS 7382, *17-61 (Feb. 14, 2006), Relator has failed to establish, through the allegations in his Third Amended Complaint, subject matter jurisdiction over his claims. Specifically, he has not demonstrated that he is an original source of the facts on which his claims are based. See

id. at *27-61.  Additionally, his allegations fail to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, in that they fail to plead fraud with particularity.  See Smith, 2006 U.S. Dist. LEXIS 7382 at *62-82.  Generally speaking, Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Shields v. Citytrust Bancorp., 25 F.3d 1124, 1128 (2d Cir. 1994); Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004).  Relator's allegations suggest, in a conclusory manner, that professional services related to radiological studies were not performed and that YNHH billed for such studies.  His complaint, as noted in the Ruling, relates to essentially the same allegations as in Qui Tam One, ("plaintiff concedes that there is similarity regarding the claims made against YNHH in this action with those made in [00cv1359]," Pl's Opp. Mot. Dismiss at 1-2; "Plaintiff's allegations in [this case, Qui Tam Two,] are clearly as detailed and specific as those in [00cv10359]," id. at 7).  The allegations in Relator's complaint are fraught with assumptions and conclusions which do not suffice to establish the essential facts of an FCA claim and are devoid of the facts necessary to support such a claim.  See United States ex. rel Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1312 & n.21 (11th Cir. 2002) (finding that "[n]o amounts of charges were identified," "[n]o actual dates were alleged, "[n]o policies about billing or even second-hand information about billing practices were described," and "[n]o copy of a single bill or payment was provided," and that at least "some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)").  What Relator alleges to be his "observations" are not shown to be within his personal experience.  His claims are not shown to have the quality reflected in the cases on which he relies, namely

"first-hand knowledge" and "direct and independent knowledge."  Relator's Opposition to the Motion for Summary Judgment cites no factual or foundational basis for his claims but repeatedly refers only to the bald and conclusory allegations in the complaint as the source of the essentials for his cause of action.  Particularity is the hallmark of the level of allegations required to state a valid FCA claim.  Due to Relator's failure to plead with particularity pursuant to Rule 9(b) and the fact that he has not shown himself to be the original source of the facts on which his claim against YNHH is based, the claims against YNHH in this action are dismissed.

## II.  NEW YORK PRESBYTERIAN HOSPITAL'S ("NYPH") MOTION TO DISMISS [DOC. NO. 92]

NYPH, a New York Corporation, operates a hospital in New York in affiliation with Cornell University Joan and Sanford I. Weill Medical College ("Cornell").  Relator's claims against NYPH are founded on acts and conduct committed in the State of New York.  See 3d Am. Compl. ¶ 60.  There are no allegations of acts or conduct that were committed in or have any effect in Connecticut and no allegations of any interrelated conduct between NYPH and any person or entity located in Connecticut.  Although the theory of Relator's claims against NYPH is the same as the theory of his claims against YNHH and there is a common method by which each are claimed to have perpetrated a fraud in violation of FCA, the complaint lacks any common denominators in the form of any of the same persons or acts alleged to be involved and there is no alleged collusion in the execution of the two allegedly fraudulent schemes.  Relator alleges separate frauds by each hospital that are claimed to have been committed in the same manner, one allegedly occurring in Connecticut and the other in New York.  Although Relator has alleged the hospitals "individually and/or in combination or conspiracy" presented fraudulent

claims to the government, see 3d Am. Compl. ¶ 90, he does not allege any facts to substantiate that totally conclusory allegation or which, in any stretch of the imagination, suggest any joint action, agreement, understanding, involvement, dependence, assistance, encouragement or furtherance. Relator has not alleged that NYPH committed fraud within the District of Connecticut or participated in any activity in concert with any entity located in the District of Connecticut, e.g., Yale or YNHH. It is likewise true that no acts constituting a basis for Relator's New York State law claims in Counts Four through Eight of the Third Amended Complaint are alleged to have been committed in or to have had any effect in Connecticut.

> 31 U.S.C. § 3732(a) provides as follows:
>
> Any action under section 3730 [31 USCS § 3730] may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 [31 USCS § 3729] occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

Congress added the current venue provision in 31 U.S.C. § 3732(a), allowing plaintiffs to reach multiple defendants in a jurisdiction where only one defendant is found, in an effort to permit an action against multiple defendants to take place in one district in order to avoid the necessity of "multiple suits involving the same scheme or pattern of fraudulent conduct." S. REP. NO. 99-345 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5297; see also John T. Boese, Civil False Claims and Qui tam Actions, § 5.06(A)(1), (2d ed. 2003-2 Supplement). Importantly, however, Congress only intended for venue in one district to be appropriate for multiple defendants when those defendants have engaged in a common scheme of fraud against the government. Accordingly, the Senate Report states that:

> Many suits brought under the [False Claims] Act involve several defendants and only infrequently can all defendants be "found" in any one district. Many False Claims Act suits are brought after criminal litigation *involving the same or similar conduct.* Typically, for a variety of reasons, the individuals involved have moved from the area where the wrongdoing occurred and where they once were "found." This, in turn, may force the Department of Justice to file multiple suits *involving the same scheme or pattern or fraudulent conduct* against each defendant in the district in which he or she may be found at the time suit is commenced.

S. REP. NO. 99-345 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5297 (emphasis added). Relator's contention that the language of § 3732(a) was intended to permit joinder of claims against multiple defendants in one district when the defendants are alleged to be involved, not in one fraud but in a number of distinct and independent frauds, has no merit. See United States v. St. Joseph's Reg'l Health Ctr., 240 F.Supp. 2d 882, 886 (W.D. Ark. 2002) (holding that the presence of two Pennsylvania hospitals is not sufficient to establish venue in Pennsylvania pursuant to 31 U.S.C. § 3732(a) over a hospital with no Pennsylvania contacts when the complaint alleged "no conspiracy or concert of action or joint and several liability between the defendants"). Although the False Claims Act provides that if one defendant can be "found" in a jurisdiction, venue is proper for all other defendants in the same action who are involved in the same false claims, see 31 U.S.C. § 3732, this does *not* mean that defendants accused of similar but *unrelated* conduct may be sued in that same district. See Boese, supra, at § 506(A)(1). Relator's argument for nationwide service of process pursuant to § 3732(a) cannot sanction the joinder of multiple defendants involved in multiple, distinct and independent frauds in one case in a district where only one or two defendants are found. The fact that the present form of § 3732(a) has been in effect since 1986 with no authority sustaining Relator's position suggests that Relator's argument lacks legal merit. See Fed. R. Civ. P. 20(a).

Even if the foregoing were not sufficient to warrant dismissal of the case against NYPH, the only tie to Connecticut has been severed today by the dismissal of the case against YNHH, and thus, there remains no justification for venue in the case against NYPH to lie in this District.

The arguments discussed herein serve to dismiss Counts One through Three of the Third Amended Complaint. Counts Four through Eight of the Third Amended Complaint assert New York State Law claims, which also cannot appropriately be pursued in this court.

In addition to the jurisdictional and venue arguments, NYPH also bases its motion to dismiss on: (1) Relator's failure to plead with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure; (2) Relator's failure to plead valid claims of fraud and thus be entitled to relief pursuant to Rule 12(b)(6) and (3) the fact that the court is without subject matter jurisdiction to entertain the FCA claim as Relator has failed to adequately allege that he is an original source of the information on which the complaint is based. See NYPH's Mem. Supp. Mot. to Dismiss. The dismissal of the case on jurisdictional and venue grounds renders it unnecessary to resolve the issues thus raised.

### III. CORNELL'S MOTION TO DISMISS [DOC. NO. 91]

Cornell bases its Motion to Dismiss on the same grounds as does NYPH, namely that the Court lacks personal jurisdiction over Cornell and that venue in the District of Connecticut is improper. See Cornell's Mem. Supp. Mot. to Dismiss. The discussion and dismissal of Relator's claims against NYPH equally apply to his claims against Cornell and therefore, Cornell's Motion to Dismiss is similarly granted and the claims against Cornell are similarly dismissed.

### IV. CONCLUSION

For the foregoing reasons, YNHH's Motion to Dismiss [Doc. No. 73], NYPH's Motion to Dismiss [Doc. No. 92] and Cornell's Motion to Dismiss [Doc. No. 91] are **granted** and Relator's claims in the Third Amended Complaint are hereby dismissed. The clerk will close the file.

SO ORDERED.

Dated at New Haven, Connecticut, March  7 , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court